IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., | |
| Plaintiff, | Civil Action No. 6:23-cv-252 |
| v. | |
| WHINSTONE US, INC., | |
| Defendant. | |

**DEFENDANT WHINSTONE US, INC.'S MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendant Whinstone US, Inc. ("Whinstone") moves to dismiss Plaintiff SBI Crypto Co., Ltd.'s ("SBI") Original Complaint (the "Complaint") (ECF No. 1) in its entirety.

## I.  SUMMARY OF ARGUMENT

SBI fails to state a viable breach of contract claim.  First, the contract clearly bars SBI's claims for failing to allege it complied with its notice requirements.  SBI fails to plead ***when*** it became aware of any alleged breaches, ***when*** it provided written notice to Whinstone concerning the alleged breaches, ***when*** (if ever) SBI made any payments under the at-issue contract, ***what*** amounts (if any) SBI paid to Whinstone.  As a result, SBI fails to plead that it performed the contract (because it did not perform the contract).  Finally, even if SBI's claims were proper—which they clearly are not—SBI's recovery is limited to less than the damages claimed.  The Court should, therefore, dismiss SBI's breach of contract claim with prejudice, or at a minimum, require SBI to replead.

SBI's claims of fraud, fraudulent inducement, fraud by nondisclosure, and negligent bailment are facially improper and barred by contract and/or the economic loss rule.  SBI's lawsuit

derives entirely from the parties' contract.  Yet, SBI relies on contractual obligations to support

tort claims for fraud, fraud by nondisclosure claims, and negligent bailment claims that are facially

barred by the economic loss. For this reason alone, these tort claims should be dismissed. Further,

SBI expressly disclaimed reliance in the contract, barring its fraudulent inducement claim as a

matter of well-settled law. Finally, SBI fails to satisfy the heightened pleading standards imposed

by Federal Rule of Civil Procedure 9(b) to bring the fraud, fraudulent inducement, and fraud by

nondisclosure claims (let alone state a claim under normal pleading standards).  The Court must

dismiss these claims with prejudice.

## II.  FACTUAL BACKGROUND

**A.  SBI agreed to a notice provision, damages cap, and integration clauses in the October 24, 2019 Agreement.**

Whinstone owns and operates a bitcoin mining facility (the "Facility") in Rockdale,

Texas.[1]  Compl.  (Apr. 5, 2023) ¶ 9.  SBI engages in cryptocurrency mining through third-party

colocation agreements, thus avoiding the cost, expense, and risk of owning, developing and

operating its own mining facilities.  *Id*. ¶ 5.

It is undisputed that Whinstone and SBI entered into a hosting services agreement dated

October 24, 2019 (the "Agreement") by mutual agreement, pursuant to which Whinstone and SBI

agreed to co-locate SBI cryptocurrency mining servers ("Miners") at the Facility, which SBI used

to mine cryptocurrency.  *Id*. ¶ 20.  A true and correct copy of the Agreement is attached as Exhibit

1 (filed under seal).[2]   The Agreement limits Whinstone's liability through a damages cap and

---

[1] Except as noted herein, in moving to dismiss, Whinstone accepts SBI's allegations as true for the limited purposes of this motion only.  Nothing in this motion or related briefing, however, is intended to waive Whinstone's right to contest, disprove, and rebut all allegations and inferences asserted by SBI.

[2] In ruling on this motion, the Court can consider the Agreement because SBI refers to the agreement in the Complaint and the agreement is central to SBI's claims.  *Carter v. Target Corp.*, 541 Fed. Appx. 413, 416

**MOTION TO DISMISS COMPLAINT**                                                                                      2

integration clauses, and by providing that "Whinstone shall not be liable for any claim arising under this Agreement unless [SBI] gives Whinstone written notice of the claim within twelve months of becoming aware of circumstances giving rise to the claim."  Ex. 1 §§ 8.6 (damages cap), 8.7.2 (damages cap), 8.11 (notice provision), 17.1-.3 (integration clause).  The Complaint facially ignores these limitations.

In the Complaint, SBI brings claims for breach of the Agreement, fraud, fraudulent inducement, fraud by nondisclosure, and negligent bailment, all based on the same set of alleged facts and circumstances.  Compl. (Apr. 5, 2023) at Counts I-IV.  Specifically, SBI alleges that: (1) Whinstone made certain misrepresentations and omissions to induce SBI into entering into the Agreement; (2) Whinstone's services and facilities did not comply with the Agreement's terms and Whinstone's other purported representations not set forth in the Agreement; and (3) SBI was damaged as a result.  *See generally id*.  As detailed below, SBI fails to plead a valid claim.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move for dismissal on grounds that a plaintiff's complaint fails to state a claim for which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*,

---

(5th Cir. 2013); *Phalanx Group Int'l v. Critical Sols. Int'l*, No. 3:18-CV-0244-B, 2019 WL 954727, at *3 (N.D. Tex. Feb. 26, 2019).

**MOTION TO DISMISS COMPLAINT**                                                                 3

550 U.S. at 555 (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement." *Id.*

In bringing a claim for fraud and fraudulent inducement, Federal Rule of Civil Procedure 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud." *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 582 (N.D. Tex. 2013).  As a result, the Fifth Circuit holds the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent" (*i.e.*, the "who, what, when, and where" of the fraud). *Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir. 2023).  Moreover, "[s]imple allegations that defendants possess fraudulent intent" will not satisfy Rule 9(b).  *Id.*  Instead, the plaintiff "must set forth *specific facts* supporting an inference of fraud." *Id*. (emphasis in original).

## IV.  ARGUMENTS & AUTHORITIES

**A.      SBI's breach of contract claims must be dismissed.**

*1.      SBI's breach of contract claims are barred by the Agreement.*

The Agreement mandates that SBI provide timely notice of any claim under the Agreement, and that any failure to do so is a firm bar on Whinstone's liability.  SBI wholly ignores these obligations.

The contract's notice requirements provides as follows:

> "Whinstone shall *not* be liable for any claim arising under this [Hosting Services] Agreement *unless* [SBI] gives Whinstone written notice of the claim within *twelve months* of becoming aware of the circumstances giving rise to the claim."

Ex. 1 § 8.11 (*emphasis* added).  As plead, SBI admits it failed to provide timely notice, warranting

**MOTION TO DISMISS COMPLAINT**                                                                               4

dismissal.

Namely, though SBI twice alleges it provided notice to Whinstone—which Whinstone does not admit—of Whinstone's purported misrepresentations, omissions, and breaches of the Agreement (the "Notices"), SBI admits that it did not so ***until*** May 27, 2022 and June 3, 2022. Compl. (Apr. 5, 2023) ¶ 51.   SBI therefore judicially admits notice was untimely under the Agreement.  Specifically, SBI admits it was aware of the following purported misrepresentations, omissions, and/or breaches ***more than twelve months before*** the Notices were sent:

- <u>Insufficient Power</u>:  SBI pleading Whinstone did not secure power contracts "until just before operations began in the summer of 2020," which "delayed . . . SBIC's mining operations."  *Id*. ¶¶ 23, 27.

- <u>Failure to Obtain Certifications and Inspections</u>:  SBI alleging that it "learned that certain certifications and inspections" "necessary to operate at full capacity" in "June 2020 (when delayed operations finally began)."  *Id*. ¶¶ 28-29.

- <u>Failure to Provide Notice of Power Outages and Curtailments</u>:  SBI claiming that Whinstone "regularly failed to provide SBIC" with notice of the "occurrence of multiple power outages and curtailments" after operations began in June 2020.  *Id*. ¶ 31.

- <u>Failure to Regularly Provide Invoices and Power Meter Data</u>:  SBI stating that Whinstone was required to, but allegedly failed to, provide invoices and power meter data at regularly contractual interviews after operations began in June 2020.  *Id*.

- <u>Decrease in Mining Equipment</u>:  SBI alleging the number of its mining machines decreased from 16,200 in September 2020 to approximately 14,600 in April 2021.  *Id*. ¶ 32.

- <u>Inadequate Hash Calculations, Overheating Equipment, and Poor Datacenter Conditions</u>:  SBI pleading that it hired Canaan around December 2020 to investigate SBI's mining equipment "not perform[ing] hash calculations as expected" and Canaan allegedly determining that the equipment was "overheating "and the "data logs contained other indicia of poor datacenter conditions."  *Id*. ¶¶ 33-37.

- <u>Purchase of Additional PSUs</u>:   SBI claiming it purchased an additional 4,000 PSUs in April 2021 to correct the poor performance of SBI's equipment.  *Id*. ¶ 39.

**MOTION TO DISMISS COMPLAINT**                                                                      5

- Inadequate "Licensed Areas": SBI stating that Whinstone allegedly failed to put SBI's mining equipment in two separate buildings, provide adequate rack systems, and an evaporative cooling system to prevent overheating when operations began in June 2020. *Id* ¶¶ 40-43.

Second, to the extent not covered by the above categories of purported misrepresentations, omissions, and/or breaches, SBI fails to plead factual allegations demonstrating when it became aware of the circumstances giving rise to its claims and, therefore, has not plead the elements required to support a breach of contract claim. *Id*. ¶¶ 49-50. As such, Count I must be dismissed under the terms of the Agreement.

> 2.   *SBI fails to state a claim for breach of the Agreement.*

Even assuming that SBI's claims are not barred by the Agreement's notice requirement, to survive a motion to dismiss, SBI must plead "sufficient facts to raise a right to relief for breach of contract above the speculative level." *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 692 (E.D. Tex. 2009). The elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). SBI fails to adequately plead elements two and four when considering the Agreement's terms.

First, SBI fails to plead any facts surrounding its own performance of the Agreement (because SBI, itself, failed to perform) and, as such, SBI fails to meet the second element for breach of contract. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) ("But a plaintiff must allege her own performance, because 'a party to a contract who is [herself] in default cannot maintain a suit for its breach.'").

Further, SBI fails to plead the fourth element of breach of contract by failing to account for the clear contractual limitation of liability clause in the Agreement. A motion to dismiss breach

**MOTION TO DISMISS COMPLAINT**                                                                                   6

of contract claims may be granted when the at-issue contract contains a limitation of liability

clause.  *See, e.g., Moon Soo Kim v. Stanley Convergent Sec. Sols., Inc.*, No. 3:12-CV-4445-M,

2013 WL 1715789, at *3 (N.D. Tex. Apr. 19, 2013) (Lynn, J.).  Other than claims for fraud and

fraudulent misrepresentation, SBI agreed that:

> "[C]laims for outstanding payment, the aggregate liability of each party to the other
> in contract, tort (including negligence), for breach of statutory duty or otherwise
> arising under or in connection with this Agreement or its subject matter shall be
> limited to a sum equal to the greater of:  (i) the aggregate Charges payable by the
> Customer to Whinstone in the twelve-month period immediately prior to the date
> on which the cause of action first arose or, if the Agreement had been in force for
> less than twelve (12) months at that date, the annualized amount of charges payable
> by that date; and (ii) United States dollars two hundred fifty thousand only
> (US$250,000).
>
> . . . [N]otwithstanding anything else in this [Hosting Services] Agreement, the
> aggregate liability of:
>
> . . .
>
> Whinstone to the Customer for damage to property, in contract, tort (including
> negligence) or otherwise arising under of in connection with this [Hosting Services]
> Agreement shall be limited to a sum equal to the aggregate Charges payable by the
> Customer to Whinstone in the twelve-month period immediately prior to the date
> on which the cause of action first arose or, if the [Hosting Services] Agreement has
> been in force for less than twelve months on such date, the annualized amount of
> the Charges payable by that date."

Ex. 1 §§ 8.6, 8.7.2.

Again, despite these provisions capping damages at the greater of the amount of money

paid during the prior twelve months of the breach or $250,000, SBI seeks to recover at least $15

million and $16 million in purported lost profits and equipment damage.  Compl. (Apr. 5, 2023)

¶¶ 64, 88.  SBI ignores that its claim is limited under the Agreement and fails to plead how much

it paid in the twelve months immediately preceding each of it claims, an element essential to

proving damages sustained by SBI.  *See generally id.*  Thus, without pleading the amount SBI paid

to Whinstone over the prior twelve months, SBI's damages are incapable of calculation and its

**MOTION TO DISMISS COMPLAINT**                                                                    7

pleading fails to meet the fourth requirement for a breach of contract claim.  Ignoring that SBI's breach of contract claims are barred by the Agreement itself, Count I must be dismissed for failure to state a claim.

**B.      SBI's tort claims are barred by the economic loss rule and integration clauses.**

SBI claims that it relied on alleged representations of Whinstone both in: (i) entering into the Agreement; and (ii) in continuing to perform its obligations under the Agreement.  Compl. (Apr. 5, 2023) ¶¶ 70, 78.  As a threshold matter, SBI fails to plead which alleged representations it relied on when entering into the Agreement as opposed to which statements it relied on in continuing to perform its obligations thereunder.  Any alleged representations and warranties within the Agreement that SBI relied upon concern the subject matter of the Agreement itself and the economic loss rule require these claims to be plead as breach of contract rather than fraud claims (particularly as SBI fails to plead Whinstone did not intend to perform the Agreement). Further, to the extent that SBI relied on any alleged representations of Whinstone outside of the Agreement itself, SBI is barred by the integration clauses which expressly disclaims reliance on any outside statements.

> 1.      *SBI's fraud/fraudulent inducement, fraud by nondisclosure, and negligent bailment claims are really breach of contract claims in disguise.*

To the extent SBI's fraud/fraudulent inducement, fraud by nondisclosure, and negligent bailment claims rely on statements made within the contract, these claims are really repackaged breach of contract claims.  In Texas, the economic loss rule "precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties." *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016).  To avoid the economic loss rule, SBI must plead: (1) a source of duty arising independent from the Agreement; and (2) harm other than economic loss of a contractual benefit.  *ICI Constr., Inc. v. Hufcor, Inc.*, No. CV H-22-3347, 2023 WL 2392738, at *19 (S.D.

Tex. Mar. 7, 2023); *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718

(Tex. 2014).  SBI clearly fails to satisfy either prong.

Here, SBI's fraud and fraud by nondisclosure claims are based on the exact same

misrepresentations and/or omissions:

1) Whether the Facility was well-designed and conformed to industry standards;

2) Whether the Facility could be and was built in compliance with contractual requirements;

3) Whether Whinstone was required to obtain certain building permits, city inspections, and other additional certifications in order to provide services under the Agreement;

4) Whether the Facility was experiencing problems related to heat and dust;

5) Whether Whinstone had a gigawatt of available aggregate electrical power on or before October 24, 2019;

6) Whether Whinstone had secured 50 megawatts of power on October 24, 2019; and

7) Whether the Facility's construction was fully complete or near complete.

Compl. (Apr. 5, 2023) ¶¶ 49, 67, 75.

SBI seeks to recover at least $15 million in "benefit-of-the-bargain damages" for its

purported lost profits arising from the Agreement and at least $16 million for alleged damage to

SBI's cryptocurrency mining equipment based on Whinstone's alleged failure to "maintain and

operate the equipment according to the terms of the Agreement."  *Id.*  ¶¶ 71, 79, 88.

No independent duty exists to satisfy the first requirement in avoiding the economic loss

rule.  SBI's relationship with Whinstone occurred only because of the Agreement.  *See generally*

*id.*  Indeed, many of SBI's claims simply mirror Whinstone's obligations under the Agreement:

- Permits, Inspection, Certification:  Whinstone representing and warranting that "building or other permits, city inspection, or certification is not

**MOTION TO DISMISS COMPLAINT**                                                                                         9

required with regard to providing services under this Agreement." Ex. 1 § 2.1.5.

- Heat and Dust:  Whinstone agreeing to use its best efforts to ensure a maximum temperature at the Facility, maintaining sufficient air flow, using evaporative cooling, ensuring air inside Facility is "free of dust, insects, corrosion, precipitation and condensation," and ensuring dust particles do not collect inside SBI equipment. *Id*. § 2.2.13.

- Available Power:  Whinstone representing and warranting that "it has secured rights to at least one hundred (100) acres of leased land for at least (2) two years for the Data Center and secured for commercial access up to one (1) gigawatt of aggregated electricity that can be delivered to the Data Center, of which a portion of that may be incrementally offered to [SBI]." *Id*. § 8.13.

Not surprisingly, SBI alleges no statute, regulation, or any other authority that imposes duties independent of the Agreement.  *See generally* Compl. (Apr. 5, 2023).

Nor does SBI allege an economic loss outside of any contractual benefit, the second required element in avoiding the economic loss rule.  *Id*.  SBI seeks to recover the ***exact same*** damages for its fraud/fraudulent inducement, fraud by nondisclosure and negligent bailment claims as it does its breach of contract claim.  *Id.* ¶¶ 64, 71, 79.  Indeed, SBI seeks to recover its purported "lost profits" arising under the Agreement.  *Id*. ¶¶ 71, 79.  The Court must dismiss Counts II (fraud/fraudulent inducement), III (fraud by nondisclosure), and IV (negligent bailment) with prejudice.  *AXA Art Americas Corp. v. Pub. Storage*, 208 F. Supp. 3d 820, 827 (S.D. Tex. 2016) (dismissing tort claims under economic loss rule when the "injury and damages allegations for the tort and contract theories [were] the same").

    2.    *Any claims SBI relied on in entering the Agreement are barred by the integration clauses.*

The Agreement contains integration clauses that specifically disclaimed reliance, which provides, in pertinent part:

**MOTION TO DISMISS COMPLAINT**           10

"This Agreement constitutes the entire understanding between the parties concerning the subject matter of the Agreement and supersedes any previous agreement or understanding between the parties in relation to the subject matter.

With effect from the date of this Agreement all Services shall be provided solely in accordance with the terms of this Agreement and all prior agreements and understandings between the parties in relation to the same shall be deemed terminated from the date hereof. . . ."

Ex. 1 §§ 17.1-.2.  Additionally, SBI disclaimed any reliance when entering into the Agreement:

"Each party acknowledges and agrees that in entering into the Agreement or in amending any part of this Agreement, it has not relied on any statement, representation, warranty, understanding, undertaking, promise or assurance (whether negligently or innocently made) of any person (whether party to this Agreement or not) other than as expressly set out in the Agreement."

*Id.* § 17.3.

Despite agreeing to these provisions, SBI still alleges it relied on Whinstone's alleged misrepresentations when entering into and continuing to perform under the Agreement.  Compl. (Apr. 5, 2023) at Count II.  To the extent any of the alleged representations on which SBI relied are not representations within the Agreement itself, the integration clauses are sufficient to dismiss the claim.  *E.g., Jacuzzi, Inc. v. Franklin Elec. Co., Inc.*, No. CIV.A. 3:07-CV-1090-, 2008 WL 190319, at *7 (N.D. Tex. Jan. 22, 2008) (granting defendant's motion to dismiss on fraudulent inducement claim when at-issue license agreement contained an entire agreement clause and plaintiff disclaimed reliance on extracontractual representations when entering into the agreement) (Fitzwater, J.).

## C.    SBI's claims for fraud/fraudulent inducement and fraud by nondisclosure fail.

Not only are SBI's claims for fraud, fraudulent inducement, and fraud by nondisclosure repackaged breach of contract claims barred by the economic loss rule, but SBI fails to plead them in a manner that satisfies Rule 9(b)'s heightened pleading requirement (let alone normal pleading requirements).  *See generally* Compl. (Apr. 5, 2023).  SBI pleads few, if any, factual allegations

as to when and where the purported misrepresentations and/or omissions occurred, other than to recite provisions of the Agreement and repeatedly allege that Whinstone failed to meet its obligations thereunder. *Id*. In short, SBI does not plead factual allegations supporting an inference of fraud. *Id*. Instead, SBI makes legal conclusions that Whinstone's purported conduct was fraudulent. *Id.* The Court must dismiss Counts II and III. *Elson*, 56 F.4th at 1010 (affirming trial court's dismissal of fraud claim when the plaintiffs failed to plead the "who, what, when, and where" and "explain why the statements were fraudulent").

> 1.    *SBI's fraud/fraudulent inducement claim fails because SBI cannot show that Whinstone had no intention of performing its obligations.*

The elements of fraud are:  "(1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Miller*, 970 F. Supp. 2d at 582.  A claim for fraudulent inducement has the same elements as fraud except the plaintiff must also establish the existence of a contract. *Id.*

SBI wholly fails to plead any alleged representations and/or omissions arising independent of SBI's claims of Whinstone's alleged breach of its obligations under the Agreement. *See* Compl. (Apr. 5, 2023)*.*  Instead, SBI appears to primarily allege that purported breaches of specific provisions of the Agreement are themselves sufficient to bring a claim for fraudulent inducement. In so doing, SBI fails to state a claim for fraudulent inducement, as SBI omits any allegation that Whinstone had no intention to perform its contractual obligations. *H.C. Oil & Gas Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. CIV.A.3:96-CV-2923-D, 2005 WL 265166, at *5 (N.D. Tex. Feb. 2, 2005) (dismissing claim based in fraud because promises of future performance

**MOTION TO DISMISS COMPLAINT**                                                             12

require allegations that "the promise was made with no intention of performing at the time it was made" and no such allegations were made); *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) ("As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. However, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud."). Count II (fraudulent inducement) must be dismissed.

       2.      *SBI's fraud by nondisclosure claim fails because SBI does not plead the existence of a confidential or fiduciary relationship.*

The elements of fraud by nondisclosure requires: "(1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure, which resulted in injury." *CBE Group, Inc. v. Lexington Law Firm*, 993 F.3d 346, 353 (5th Cir. 2021). As a general rule, there is no duty to disclose in the absence of a confidential or fiduciary relationship. *Id.*

Nowhere in the Complaint does SBI plead factual allegations establishing an extra-contractual confidential or fiduciary relationship between SBI and Whinstone. *See generally* Compl. (Apr. 5, 2023). Rather, SBI conclusorily declares that Whinstone had a duty to disclose certain "facts" prior to entering into the Agreement in an arms' length transaction. *Id.* ¶¶ 76, 78. This claim is without merit because Texas law provides that no fiduciary duty or confidential relationship arises in a business transaction unless the relationship "exist[ed] prior to, and apart from the agreement made the basis of the suit." *Willis v. Donnelly*, 199 S.W.3d 262, 277 (Tex. 2006). The Court must dismiss Count III.

**MOTION TO DISMISS COMPLAINT**                                                                 13

## V.  CONCLUSION

For these reasons, Whinstone requests the Court dismiss the Complaint in its entirety and

award Whinstone all other relief to which it is entitled.

Respectfully Submitted,

FOLEY & LARDNER LLP

By:   /s/ Robert T. Slovak
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US., INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2023, a copy of the foregoing document was filed

electronically and a notice will be sent by operation of the Court's electronic filing system to all

parties indicated on the electronic filing receipt.

/s/ Brandon C. Marx
Brandon C. Marx

**MOTION TO DISMISS COMPLAINT**                                                                14