**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,** | Civil Action No.: 6:23-cv-252-ADA-JCM |
| *Plaintiff,* | |
| v. | |
| **WHINSTONE US, INC.,** | |
| *Defendant.* | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, SBI Crypto Co. Ltd. ("SBIC"), files this Response to Defendant Whinstone US, Inc.'s ("Whinstone") Motion to Dismiss Plaintiff's Amended Complaint, and shows as follows:

### SUMMARY OF ARGUMENT

SBIC asserts three causes of action: (1) fraudulent inducement, (2) fraudulent concealment and (3) breach of contract. Whinstone erroneously contends that SBIC inadequately pleaded its fraud claims and, moreover, that the economic loss rule and the contract's merger clause completely bar those claims. Whinstone further contends that SBIC's breach of contract claim is barred by the contract's notice provision (as a condition precedent to that claim) and, inexplicably, that its breach of contract claim is completely barred by the contract's limitation of liability provision. Whinstone is wrong on all counts and the Court should deny its Motion to Dismiss.

The Hosting Service Agreement (the "Agreement") expressly excludes SBIC's fraud claims from its merger clause and limitation of liability provisions.[1] Under long-standing Texas law, the economic loss rule does not apply to fraudulent inducement claims, nor does it generally

---

[1] A copy of the Agreement was filed under seal as <u>Exhibit 1</u> to Whinstone's Motion to Dismiss.

bar fraudulent concealment claims. Further, SBIC adequately pleaded both claims and SBIC need not plead a fiduciary or confidential relationship to support its fraud claims under Texas law.

Contrary to Whinstone's assertion, SBIC asserted generally (and specifically) that it performed all conditions precedent to its breach of contract claims, including providing timely notice under the Agreement and, therefore, adequately pleaded its breach of contract claim. Finally, Whinstone's contention that the Agreement's limitation of liability provision completely bars SBIC's breach of contract claim has no basis in law or fact—particularly when the limitation of liability provision, by its own terms, does not apply if SBIC's breach is accompanied by fraud. For these and other reasons outlined herein, the Court should deny Whinstone's Motion to Dismiss in its entirety.

**I.**
**SUMMARY OF FACTUAL ALLEGATIONS**

In July 2019, Whinstone and SBIC entered into an agreement for Whinstone to host 20,000 cryptocurrency miners in Pyote, Texas. Pl. Am. Compl. at ¶¶ 77–84. However, that agreement fell through due to Whinstone's failure to secure sufficient electrical power. *Id.* at ¶¶ 11–12. SBIC alleges that Whinstone then induced SBIC to enter into a subsequent hosting service agreement (the Agreement) by falsely representing that Whinstone had, *inter alia*,[2] "secured for commercial access up to one (1) gigawatt of aggregated electricity" for its Rockdale facility. *Id.* at ¶¶ 11–12. This, and other representations added to the Agreement, were false at the time they were made in October 24, 2019. *Id.* at ¶¶ 20, 24, 48, 70.

After operations began (June 2020), SBIC notified Whinstone in August and September

---

[2] To further induce SBIC to enter into the new Hosting Service Agreement, Whinstone represented that additional building permits, city inspections, and certifications were "not required with regard to providing services" under the Hosting Service Agreement. Pl. Am. Compl. at ¶¶ 13, 28, 70. This representation was also false at the time it was made. *Id.*

2020 that, based on the production of Bitcoin mined, it appeared to SBIC that not all of its machines were up and running at full capacity. *Id.* at ¶ 32. In response, Ashton Harris at Whinstone blamed the underperformance of SBIC's equipment on software issues and Whinstone's CEO, Chad Harris, claimed that the equipment's manufacturer, Canaan, Inc. ("Canaan"), had provided poorly-built mining equipment. *Id.* When Canaan found indicia of possible overheating and poor datacenter conditions, Whinstone provided SBIC with misleading information and denied that there were any heating issues at the facility and further suggested that SBIC replace some of its equipment. *Id.* at ¶¶ 32–35.

As a result of Whinstone's concealment and misrepresentations, SBIC only became aware of the facility's environmental conditions when its employees visited the facility on June 10, 2021. *Id.* at ¶¶ 41, 46, 53. The visit revealed to SBIC the dirty floors and racks, lack of dust filters, inadequate recirculation of air, and the non-operating water-cooling curtains at the facility. *Id.* at ¶¶ 41. Prior to then, SBIC relied on the multiple representations from Whinstone's representatives concerning the causes of SBIC's Equipment's underperformance, as well as the representations and warranties made in the Agreement. *Id.*

Contrary to Whinstone's assertions, SBIC has specifically alleged that it performed all of its obligations under the Agreement and all applicable conditions precedent to its breach of contract claim. *Id.* at ¶ 56. It delivered to Whinstone 20,000 A10-model mining machines and other equipment, it timely paid all requisite costs and fees to Whinstone as agreed, and it provided timely notice of its claim under the Hosting Service Agreement. *Id.* at 56, 64. As a direct result of Whinstone's conduct, SBIC suffered lost profits in excess of $15,000,000 when the conditions at Whinstone's facility damaged SBIC's Equipment and caused it to go unused and underperform. SBIC also suffered additional damages in excess of $16,000,000, the approximate cost of the SBIC

Equipment damaged at the Rockdale facility, which otherwise could have been resold at a profit but for Whinstone's concealment of material facts concerning the Rockdale facility. *Id*. at 59–60.

## II.
### ARGUMENT AND AUTHORITIES

**A. Standard of Review.**

In evaluating a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019). Additionally, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). The moving party has the burden of proving that no legally cognizable claim for relief exists. *Dunn v. Quicken Loans, Inc.*, No. 1:18-CV-371-RP, 2019 WL 1131423, at *1 (W.D. Tex. 2019) ("The movant bears the burden of proof for a 12(b)(6) motion."). If an issue raised in a motion to dismiss requires the court to "look beyond the pleadings to make a factual determination," such an issue is "inappropriate on a motion to dismiss." *Cat & Dogma, LLC v. Target Corp.*, No. 20-50674, 2021 WL 4726593, at *1 (5th Cir. 2021).

**B. SBIC sufficiently pleaded its Fraud Claims.**[3]

*1. The Agreement's integration clause does not "clearly and unequivocally" disclaim reliance.*

Whinstone argues that the Agreement's "integration clauses are sufficient to dismiss" SBIC's Fraud Claims because the parties disclaimed reliance. Def. Mtn. at 11–12. Whinstone is wrong. First, under Texas law, "a merger clause, standing alone, does not prevent a party from

---

[3] In this Response, SBIC refers to its various fraud-based claims, including fraud, fraudulent inducement, fraudulent non-disclosure, and fraudulent concealment, as its Fraud Claims.

suing for fraudulent inducement." *IBM v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229 (Tex. 2019)

(citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 327 (Tex.

2011)). While "[p]ure merger clauses, without an expressed *clear and unequivocal intent to

disclaim reliance* or waive claims for fraudulent inducement, have never had the effect of

precluding claims for fraudulent inducement," *Italian Cowboy*, 341 S.W.3d at 334 (emphasis

added), "a clause that clearly and unequivocally expresses the party's intent to disclaim reliance

on the specific misrepresentations at issue can preclude a fraudulent-inducement claim." *IBM*, 573

S.W.3d at 229 (citing *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60-61 (Tex. 2008);

*Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997)).

Moreover, even if a court concludes that a contract provision contains a clear and

unequivocal disclaimer of reliance, it must examine the contract and the totality of the surrounding

circumstances to determine whether a contractual provision waives reliance. *Italian Cowboy*, 341

S.W.3d at 336 n.8. Here, the Agreement's integration/merger clauses provide the following:

> This Agreement constitutes the entire understanding between the parties
> concerning the subject matter of the Agreement and supersedes any previous
> agreement or understanding between the parties in relation to the subject matter.

> With effect from the date of this Agreement all Services shall be provided solely in
> accordance with the terms of this Agreement and all prior agreements and
> understandings between the parties in relation to the same shall be deemed
> terminated from the date hereof . . .

> Each party acknowledges and agrees that in entering into the Agreement or in
> amending any part of this Agreement, it has not relied on any statement,
> representation, warranty, understanding, undertaking, promise or assurance
> (whether negligently or innocently made) of any person (whether party to this
> Agreement or not) ***other than as expressly set out in the Agreement***. Agreement
> 17.1-3. (emphasis added).

Whinstone argues that the above provisions prevent SBIC from relying on Whinstone's

misrepresentations. *See* Def. Mtn. at 11. However, Whinstone ignores the fact that SBIC's

fraudulent inducement claim plainly relies on representations "expressly set out in the Agreement," including, its allegation that Whinstone falsely represented that it had "secured for commercial access up to one (1) gigawatt of aggregated electricity that can be delivered to the Data Center, of which a portion of that may be incrementally offered to [SBIC]." Pl. Am. Compl. at ¶ 22. Second, Whinstone also ignores Section 17.5 of the Agreement that immediately follows the integration clause, which plainly states that "[n]othing in Clauses 17.1 to 17.3 (inclusive) shall limit or exclude any liability for fraud." Agreement § 17.5. Whinstone further omits from its analysis Section 8.5.2, which also provides that "[n]either party excludes or limits its liability to the other party for: fraud or fraudulent misrepresentation."

Consequently, the Court should reject Whinstone's argument that the Agreement's integration clauses bars SBIC's fraud claims. *See Italian Cowboy*, 341 S.W.3d at 335 (concluding that because the parties' merger clause did not clearly and unequivocally disclaim reliance as a preliminary step, the contract language did not defeat plaintiff's claim for fraudulent inducement as a matter of law). Here, SBIC alleges that it relied on multiple misrepresentations from Whinstone's representatives concerning the causes of SBIC's Equipment's underperformance, as well as the representations "expressly set out in the Agreement." These claims are not barred by the Agreement's integration clauses or Texas law.

*2. SBIC's Fraud Claims are not barred by the economic loss rule.*

Whinstone argues that SBIC's Fraud Claims should be dismissed as "contract claims in disguise" under the economic loss rule. Def. Mtn. at 9–11. Once more, Whinstone is wrong. The independent injury rule or economic loss rule provides that the "mere nonfeasance under a contract creates liability only for breach of contract." *Crawford v. Ace Sign*, 917 S.W.2d 12, 13 (Tex. 1996) (per curiam). *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016). Whinstone argues that SBIC fails to

allege any "statute, regulation, or any other authority that imposes duties independent of the Agreement—because none exist" and therefore, "[n]o independent duty exists to satisfy" the economic loss rule analysis. Def. Mtn. at 9–10. Whinstone, however, had a legal duty, independent from its obligations under the Agreement, to not fraudulently induce the Agreement and to not fraudulently conceal material facts to induce SBIC's continued performance under the Agreement.

First, Texas courts have long recognized that the economic loss rule does not bar a fraudulent inducement claim. In *Formosa Plastics Corp. United States v. Presidio Engineers & Contractors*, the Supreme Court of Texas expressly held that the economic loss rule does not apply when fraud is used to induce a binding contract. 960 S.W.2d 41, 47 (Tex. 1998). The Court concluded that "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Id.*[4]

Second, the economic loss rule also does not apply to the general fraud[5] and fraudulent non-disclosure/concealment claims as alleged by SBIC. Indeed, when fraudulent

---

[4] The Court reasoned that "[a]llowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim is inconsistent with this well-established law, and also ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement." *Id.*; *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011) ("Texas law has long imposed a duty to refrain from fraudulently inducing a party to enter into a contract, and our prior decisions [make] it clear that tort damages were not precluded simply because a fraudulent representation caused only an economic loss.").

[5] Texas state and federal courts recognize that common-law fraud includes several sub-categories, such as fraudulent inducement, fraud in the performance, fraudulent omission, fraudulent concealment, and fraudulent non-disclosure, all of which share essential elements. *See IAS Serv. Grp., LLC v. Jim Buckley & Assocs.*, No. SA-14-CA-180-FB, 2015 WL 13651006, at *3 (W.D. Tex. 2015) ("The causes of action for fraudulent inducement and fraud by non-disclosure are both based on the alleged original representations and the alleged facts or new information that show the alleged original representations were either false when made (fraudulent inducement) or were no longer true (fraud by non-disclosure) in light of later facts or new information.") *rev'd on other*

---

concealment/non-disclosure claims relate to a contract or arise from misrepresentations made after the parties entered into a contract, those claims are treated like fraudulent inducement claims and are excluded from the economic loss rule. *See Experian Info. Sol'ns, Inc. v. Lexington Allen, L.P.*, Case No. 4:10-CV-144, 2011 WL 1627115, at *12 (E.D. Tex. April 7, 2011) ("The economic loss rule does not apply to fraud claims, including claims for fraud in the performance and fraudulent omission."); *Kajima Intern., Inc. v. Formosa Plastics Corp., USA*, 15 S.W.3d 289, 293–94 (Tex. App.—Corpus Christi 2000, pet. denied) (concluding that the economic loss rule does not apply to any sub-categories of fraud as long the "fraud theory involves intentional or reckless conduct"); *see also Sharpe v. Kilcoyne*, 962 S.W.2d 697, 703 (Tex. App.—Fort Worth 1998, no pet.) ("*Formosa* dictates that fraud damages are available in a case where actual damages are based on an economic breach of contract loss."). Even when a fraud claim is based on a promise "made after a contract was formed, a plaintiff can recover for fraud if he proves the promise was false when made." *Infomart (India), PVT., LTD. v. Metrowerks Corp.*, Civil Action No. 3:04-CV-1299-N, 2005 WL 292433, at *3 (N.D. Tex. 2005) ("Texas authority does not limit plaintiffs in Infomart's circumstances to fraudulent inducement claims. The touchstone of whether an action sounds in tort or contract is whether at the time the promisor made the promise, he made it with no intention of performing -- in other words -- the promise must have been false when made.").

Here, SBIC pleaded that—even after the parties entered into the Agreement—Whinstone made affirmative misrepresentations that where false when they were made, failed to disclose

---

*grounds*, 900 F.3d 640; *see also United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567-68 (5th Cir. 2005) ("Courts in Texas have consistently held that fraud by non-disclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose.").

material facts, and actively concealed the truth. Pl. Am. Compl. at ¶ 77–84. In response, Whinstone

merely asserts that several of SBIC's fraud/fraud-by-nondisclosure and contract claims "are based

on the exact same misrepresentations and/or omissions." Def. Mtn. at 9–10. ("To avoid the

economic loss rule, SBI must plead: (1) a source of duty arising independent from the Agreement;

and (2) harm other than economic loss of a contractual benefit."). However, whether breach of

contract and fraud claims involve common facts is irrelevant to the Court's inquiry. The operative

question is whether an independent duty existed when the relevant facts occurred. SBIC has

already shown above that Whinstone had an independent legal duty not to fraudulently induce the

contract and that such duty continued through the performance of the Agreement's term. *See*

*Infomart*, 2005 WL 292433, at *3.

Third, the language of the Agreement shows that the parties did not intend the Agreement

to serve as a complete defense to fraud. *See* Agreement §§ 8.5.2, 17.5 (stating that nothing in the

Agreement limits liability for fraud or fraudulent misrepresentation). In fact, the parties expressly

provided for the possibility that valid fraud claims could arising during the contract term.

Therefore, because SBIC alleged facts to show Whinstone had an independent duty to not make

misrepresentations before and during the performance of the Agreement, SBIC's fraud claims are

not barred by the economic loss rule.

Moreover, in the context of a 12(b)(6) motion, Whinstone has the burden to establish

whether the economic loss rule applies, not SBIC. *See Gallentine v. Hous. Auth.*, 919 F. Supp. 2d

787, 795 (E.D. Tex. 2013) ("[A] district court should not dismiss a complaint for failure to state a

claim unless a plaintiff has failed to plead enough facts to state a claim to relief that is plausible

on its face.") (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 555). *Dunn*, 2019 WL

1131423, at *1 ("The movant bears the burden of proof for a 12(b)(6) motion.").

Though the economic loss rule is technically not an affirmative defense,[6] the Western District of Texas treats it as one for 12(b)(6) purposes. *See Gehan Homes, Ltd. v. NIBCO Inc.*, No. 5:19-CV-1478-JKP, 2020 WL 5110707, at *5 (W.D. Tex. 2020) ("[A]lthough a defendant may raise the defense through a motion to dismiss under Rule 12(b)(6), the courts view it through the standards applicable to such motions."). Therefore, an economic loss rule defense may only support a dismissal when the plaintiff's "pleading *conclusively* establishes the affirmative defense." *Id.* at *19–20; *see Reagan v. U.S. Bank, Nat. Ass'n*, No. CIV.A. H-13-00043, 2013 WL 510154, at *2 (S.D. Tex. 2013) (addressing res judicata defense). Both the Supreme Court of Texas and the Fifth Circuit have stated that during an economic loss rule analysis, "consideration must be given" to the source of the duty and nature of the remedy. *See Ibe*, 836 F.3d at 526 (quoting *Crawford*, 917 S.W.2d at 13 (Tex. 1996)). Neither court has analyzed the relevant factors *as elements*. Therefore, under the established 12(b)(6) affirmative defense standard, Whinstone has no basis for claiming that SBIC *must plead* certain required elements to defeat its averment to the economic loss rule. Instead, Whinstone has the burden to show that SBIC's pleading conclusively establishes that the economic loss rule applies, which Whinstone fails to do.

3.  *A fiduciary or confidential relationship is not required to state a claim for fraud by non-disclosure.*

Whinstone argues that SBIC's fraud by non-disclosure claim fails because SBIC failed to plead "factual allegations establishing an extra-contractual confidential or fiduciary relationship between" the parties. Def. Mtn. at 14. Whinstone is correct that, "*[i]n general*, there is no duty to disclose without evidence of a confidential or fiduciary relationship." *Bombardier Aerospace*

---

[6] *See Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 360 F. Supp. 3d 494, 517 n.21 (N.D. Tex. 2019) (citing *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867-68 (Tex. 2007).

*Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019) (emphasis added) (citing *Ins. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)). However, absent a confidential or fiduciary relationship, "[t]here may also be a duty to disclose when the defendant: (1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Bombardier*, 572 S.W.3d at 219–20.[7]

Here, SBIC specifically alleges that, when the manufacturer of SBIC's mining equipment found indicia of possible overheating and poor datacenter conditions, Whinstone's executives denied it and provided misleading information to SBIC by affirmatively communicating that no heating issues existed at the facility and further suggesting that SBIC replace some of its equipment. Pl. Am. Compl. at ¶¶ 32–35. SBIC only became aware of the facility's true environmental conditions when its employees visited the facility on June 10, 2021. Because SBIC has alleged that Whinstone made misleading representations and voluntarily disclosed some information to create a false impression, SBIC was not required to plead a fiduciary or confidential relationship.

    *4.  SBI adequately pleaded fraud under the requirements of FRCP 9(b).*

Without identifying any specific deficiencies in its Amended Complaint, Whinstone broadly asserts that "[SBIC] does not plead factual allegations supporting an inference of fraud" and "continues to plead few, if any, factual allegations as to who purportedly made

---

[7] *See* also, *Morris*, 981 S.W.2d at 674; *BP Am. Prod. Co. v. Marshall*, 288 S.W.3d 430, 446 (Tex. App.—San Antonio 2008), *rev'd on other grounds*, 342 S.W.3d 59 (Tex. 2011); *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners*, 237 S.W.3d 379, 385 (Tex. App.— Houston [14th Dist.] 2007, no pet.); *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 212 (Tex. App.— Houston [14th Dist.] 2001, pet denied) (concluding that the existence of a confidential or fiduciary relationship is "but one of the bases for imposing a duty to disclose information").

misrepresentations and omissions, and when and where they occurred—other than to recite provisions of the Agreement and repeatedly allege that Whinstone failed to meet its obligations thereunder." Def. Mtn. at 12. Whinstone's contention is demonstrably false.

SBIC alleges that the parties originally entered into an agreement in July 2019 for Whinstone to host SBIC cryptocurrency miners in Pyote, Texas. Pl. Am. Compl. at ¶ 11. That agreement fell through, in part, because of Whinstone's failure to secure sufficient electrical power for the proposed Pyote facility. *Id.* at ¶¶ 11–12, 18-19, 24, 26. Then, as specific inducement for SBIC to enter into a subsequent agreement, Whinstone represented that it *had* "secured for commercial access up to one (1) gigawatt of aggregated electricity" [8] for its Rockdale facility. Pl. Am. Compl. at ¶ 22–24. Because of the prior failure to secure sufficient electricity for the Pyote facility, this specific representation was added to the Agreement for the Rockdale facility, not as a promise of future performance, but as an express representation of an existing fact.[9] Similarly, Whinstone falsely represented "that building or other permits, city inspection, or certification is not required with regard to providing services under the agreement" to assure and thereby induce SBIC to enter into the subsequent host servicing agreement (the Agreement) for the Rockdale facility. Pl. Am. Compl. at ¶¶ 13, 28, 70; *see also*, Agreement § 2.1.5. As alleged in the Amended Complaint, these representations, which induced SBIC to enter into the Agreement, were false *at the time they were made* on October 24, 2019—the execution date of the Agreement. *Id.* Thus, contrary to Whinstone's assertion, SBIC did not need to assert that Whinstone had no intention of

---

[8] Whinstone also represented that additional building permits, city inspections, and certifications were "not required with regard to providing services" under the Hosting Service Agreement. This representation was also false.

[9] *See* Agreement § 8.13 ("Whinstone represents and warrant to [SBIC] that it has … secured for commercial access up to one (1) gigawatt of aggregated electricity that can be delivered to the [Rockdale] Data Center, … .")

performing its contractual obligations in the future because Whinstone's statements were false representations of existing facts at the time they were made. *Transport Ins. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995) (false statement of fact).

Whinstone erroneously contends that "[SBIC's] fraud/fraudulent inducement claim fails because SBI cannot show that Whinstone had no intention of performing its obligations." Def. Mtn. at 12. While Rule 9(b) requires that "all averments of fraud . . . be stated with particularity," allegations of "malice, intent, knowledge, and other condition of mind of a person may be averred generally." *H.C. Oil & Gas Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. CIV.A.3:96-CV-2923-D, 2005 WL 265166, at *5 (N.D. Tex. Feb. 2, 2005). SBIC satisfied Rule 9(b)'s requirement by generally averring that "Whinstone knew its representations were false at the time it made representations, including representations made in the [Agreement], and/or lacked knowledge of the truth concerning certain representations, and/or had no intention of performing certain obligations at the time promised, and/or no intention of performing in the future." Pl. Am. Compl. at ¶ 71.

SBIC also provided sufficient additional allegations supporting the "who, what, when, and where" of its fraud claims. SBIC alleged, *inter alia*, that after operations began (June 2020), Whinstone actively concealed from and/or failed to disclose certain facts to SBIC, including that the Rockdale facility was experiencing significant problems related to heat or dust. Pl. Am. Compl. at ¶¶ 32–44, 52. SBIC notified Whinstone in August and September 2020 that, based on the production of Bitcoin mined, it appeared to SBIC that not all of its machines were up and running at full capacity. *Id*. at 32. SBIC specifically alleges that, in response, Ashton Harris at Whinstone blamed the underperformance of SBIC's equipment on software issues and Whinstone's CEO, Chad Harris, claimed that Canaan provided poorly manufactured mining equipment. *Id*. at ¶¶ 32–

33. When Canaan's review of Whinstone data logs indicated that SBIC's machines were overheating, as well as other indicia of poor datacenter conditions, Ashton Harris and Chad Harris asserted that there were no heating or other issues at the facility. *Id*. at ¶¶ 32–35, 43. These and other allegations in the Amended Complaint plainly satisfy the requirements of FRCP 9(b).

## C. SBIC sufficiently pleaded its breach of contract claim.

"Under Texas law, a plaintiff alleging a breach of contract must show (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (internal quotations omitted). In its Motion, Whinstone argues that SBIC's contract claim is barred by the Agreement's notice provision and that SBIC failed to state a claim for breach of contract by not pleading the second (performance) and fourth (damages) elements. *See* Def. Mtn. at 5–8.

*1. The Agreement's notice provision does not bar SBIC's contract claim.*

Section 8.11 of the Agreement provides that "Whinstone shall not be liable for any claim arising under this Agreement unless [SBIC] gives Whinstone written notice of the claim within twelve months of becoming aware of the circumstances giving rise to the claim." Whinstone's notice argument raises two distinct issues: (1) whether SBIC sufficiently pleaded performance of the condition precedent and (2) whether SBIC actually provided timely notice under Section 8.11. *See Naranjo v. Nick's Mgmt.*, No. 3:21-CV-2883-B, 2023 WL 416313, at *6–7 (N.D. Tex. 2023) (analyzing whether party sufficiently pleaded performance of a condition precent separately from whether that same party actually met the condition precedent). The first question is the proper subject of a 12(b)(6) motion to dismiss—the second is not.

Contrary to Whinstone's assertion, a plaintiff is not required under the Federal Rules to "plead 'specific allegations' that all conditions are met." *Probado Techs. Corp. v. Smartnet, Inc.*, 2010 WL 2232831, at *2 (S.D. Tex. June 2, 2010) ("Courts have found that simply alleging a contract is in force or that a party has performed its obligation under a contract is sufficient to satisfy the generally pleading requirements of Rule 9(c)."); *see* FED. R. CIV. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."). Courts in the Fifth Circuit have concluded that "a plaintiff has no duty to plead performance or occurrence of a condition precedent unless the condition precedent is an element of the claim." *Naranjo*, 2023 WL 416313, at *6. Citing the Agreement's notice provision, Whinstone suggests that SBIC was required to specifically plead "when it became aware of the circumstances giving rise to its claims" because such information constitutes an "element[] required to support a breach of contract claim." Def. Mtn. at 6–7. However, the elements of a breach of contract claim are well established under Texas law and do not include notice. *See Villarreal, N.A.*, 814 F.3d at 767. Thus, SBIC's general averment that it satisfied all conditions precedent is sufficient.

Even if the Court agreed with Whinstone that notice is an element of SBIC's claim, SBIC specifically pleaded compliance with Section 8.11 by alleging that it provided written notice of Whinstone's breaches (and misrepresentations) on May 27, 2022 and June 3, 2022. Pl. Am. Compl. at ¶¶ 51, 56, 65. Whinstone asserts that SBIC's Amended Complaint "wholly ignores" the Agreement's notice provision, but then immediately contradicts itself by arguing that SBIC's notice was *untimely*. Def. Mtn. at 5. By acknowledging that SBIC specifically pleaded written notice, Whinstone admits that SBIC specifically alleged performance of the condition precedent at issue. SBIC's Amended Complaint actually exceeds the federal pleading requirements and there

is no valid argument for dismissing SBIC's claim based on a failure to plead performance of a notice condition.

Second, Whinstone argues that SBIC's claims are barred by Section 8.11 of the Agreement because SBIC became aware of *some* relevant facts more than twelve months before its first notice. Def. Mtn. at 5–6. In so arguing, Whinstone asks the Court to examine the timeliness of SBIC's notice. However, courts have consistently held that whether a party has "met [a] condition precedent is a factbound issue ill-suited for resolution on a motion to dismiss." *Naranjo*, 2023 WL 416313, at *7.[10] Because determining whether SBIC's gave sufficient notice would require an investigation of factual issues, the Court should reject Whinstone's request to look beyond the pleading at the 12(b)(6) stage. *See Cat & Dogma*, 2021 WL 4726593, at *1.

Even if the factual sufficiency of SBIC's notice was the proper subject of a 12(b)(6) motion, SBIC provided timely notice. Whinstone's entire argument rests on a faulty premise—that SBIC necessarily became "aware of the circumstances giving rise to [SBIC's] claim"[11] at the same time that SBIC alleges the breaches occurred. SBIC plainly alleges that, as a result of Whinstone's concealment and misrepresentations, SBIC only became aware of the facility's environmental conditions when its employees visited the facility on June 10, 2021. Pl. Am. Compl. at ¶¶ 32–39, 53, 78–81. At this stage, SBIC allegations must be accepted as true and the Court should reject

---

[10] *See WG Monterrey Venture LLC v. DIG Monterrey Vill., LLC*, 2021 WL 327708, at *4 (W.D. Tex. 2021) ("The failure of a condition precedent, or whether such failure may be excused, presents factual issues ill-suited to resolution on a motion to dismiss.") (internal quotations omitted); *Leake v. Kroger Tex., L.P.*, Civil Action No. 3:04-CV-2707-D, 2006 WL 2842024, at *10 (N.D. Tex. 2006) (concluding that question of whether party complied with notice provision under employee benefit plan was question of fact, not law).

[11] *See* Agreement § 8.11.

Whinstone's contention that SBIC's notice was untimely. *See Inclusive Cmtys. Project*, 920 F.3d at 899.

> 2. *SBIC has pleaded performance under the Agreement.*

Whinstone argues that SBIC "fails to plead any facts surrounding its own performance of the [Agreement]." Def. Mtn. at 6. Yet again, Whinstone is wrong. SBIC alleges that it "delivered to Whinstone 20,000 A10-model mining machines along with $3.4 million in power supply unit[s] ("PSUs")" (Pl. Am. Compl. at ¶ 21.) and that it "timely paid all requisite costs and fees to Whinstone under the Hosting Service Agreement," including a prepayment to Whinstone of "$9,685,00 for power and fees to help Whinstone finance the final buildout of the Rockdale facility." Pl. Am. Compl. at ¶¶ 21, 64.

Further, courts in the Fifth Circuit have held that a plaintiff may sufficiently plead performance by identifying contractual obligations and describing how those obligations were fulfilled.[12] Here, SBIC identified and described how it performed two essential obligations under the Agreement. SBIC alleged that the Agreement required certain payments and that SBIC's payment constituted performance. *See Garrison*, 2014 WL 4187207, at *5. Ultimately, SBIC's factual allegations are sufficient to identify the obligations and describe how SBIC fulfilled them. *See Baron*, 2018 WL 1156002, at *5. Conversely, Whinstone fails to allege a single refutable fact

---

[12] *See Electrostim Med. Servs. v. Health Care Serv. Corp.*, 614 F. App'x 731, 739 (5th Cir. 2015) (concluding that district court should not have dismissed breach of contract claim in part because plaintiff "alleged that it performed under the agreement by providing its services and products to subscribers"); *Baron v. Baron*, Civil Action No. 3:16-CV-3465-C-BH, 2018 WL 1156002, at *5 (N.D. Tex. 2018) (concluding that plaintiff failed to allege performance because merely stating that plaintiff "attempted to honor the [a]greement does not identify which obligations were fulfilled or how") (internal quotations omitted); *Garrison v. Select Portfolio Servicing, Inc.*, No. 5:14-CV-337-DAE, 2014 WL 4187207, at *5 (W.D. Tex. 2014) (concluding that second element was not met because "[p]laintiff does not allege what type of performance the contract called for or that his 'payment' constituted performance.").

regarding SBIC's performance. *See Villarreal*, 814 F.3d at 767 (concluding that plaintiff failed to meet second element because she "failed to allege any facts showing her own performance and did not refute" facts showing she was in default). In the absence of contrary facts, SBIC meets the federal pleading standard merely by describing how it fulfilled specific contractual obligations. *See id.*; *Baron*, 2018 WL 1156002, at *5. Therefore, the Court should not dismiss SBIC's breach of contract claim for failure to plead performance.

3. *The Agreement's limitation of liability provision does not preclude SBIC's damages.*

Whinstone argues that SBIC failed to plead the damages element of a breach of contract claim because Whinstone's liability has been contractually limited by the Agreement. Def. Mtn. at 7–8. However, whether the parties agreed to limit damages is irrelevant to whether SBIC sufficiently *pleaded* damages. Indeed, Whinstone does not explain how a provision that merely limits the amount of damages warrants a complete dismissal of SBIC's breach of contract claim.

Whinstone cites a single case to support the proposition that "[a] motion to dismiss breach of contract claims may be granted when the at-issue contract contains a limitation of liability clause." *See* Def. Mtn. at 7; *Moon Soo Kim v. Stanley Convergent Sec. Sols., Inc.*, No. 3:12-CV-4445-M, 2013 WL 1715789, at *3 (N.D. Tex. Apr. 19, 2013). But, in *Moon Soo Kim*, the court did not dismiss the plaintiff's entire breach of contract claim. Instead, the court dismissed a *portion* of the plaintiff's breach claim after the defendant specifically requested partial relief. *Id.* at *6. Here, not only is Whinstone's requested relief different from the relief requested in *Moon Soo Kim*, but the case's legal reasoning is contrary to the great weight of federal cases interpreting the scope of Rule 12(b)(6). Though the Fifth Circuit has not spoken on the subject, federal courts in several circuits have held that the text of Rule 12(b)(6) "does not permit piecemeal dismissals of *parts* of claims." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (original emphasis) ("[T]he

question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."); *see* FED. R. CIV. P. 12(b)(6) ("Every defense to a *claim* for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . failure to state a *claim* upon which relief can be granted.) (emphasis added).[13] By comparison, the text of Rule 56 allows parties to "indentif[y] . . . [a] part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a); *BBL, Inc.*, 809 F.3d at 325.

In *Moon Soo Kim*, the court adopted—without express justification—the reasoning of a single Illinois District Court applying Texas law. *Moon Soo Kim*, 2013 WL 1715789, at *7; *see Children's Surgical Found. v. Nat'l Data Corp.*, 121 F. Supp. 2d 1221 (N.D. Ill. 2000). *Children's Surgical* similarly contains no clear legal explanation for how a district court may carve up a plaintiff's claim at the 12(b)(6) stage. By all indications, the courts deciding *Moon Soo Kim* and *Children's Surgical* did not consider the federal cases prohibiting partial claim dismissal under Rule 12(b)(6). For these reasons, the holding from *Moon Soo Kim* is not applicable.

Finally, unlike *Moon Soo Kim*, the Agreement in this case expressly provides that "neither party excludes or limits liability to the other party for: … fraud or fraudulent misrepresentation." Agreement § 8.5.2. Consequently, any exclusion of damages or limitation of liability under the

---

[13] *See also Swenson v. Falmouth Pub. Schs.*, No. 2:19-cv-00210-GZS, 2019 WL 4739667, at *5 (D. Me. 2019) ("Once the Court determines that a count is adequately pled to survive a motion to dismiss, the Court need not separately analyze each individual theory if the scope of discovery will not be significantly affected by doing so") (citing *Elena v. Municipality of San Juan*, 677 F.3d 1, 8 (1st Cir. 2012)); *Pinnacle Ventures LLC v. Bertelsmann Educ. Servs. LLC*, No. 18-cv-03412-BLF, 2019 WL 4040070, at *3 (N.D. Cal. 2019) ("[S]everal district courts within the Ninth Circuit have found that [b]y its own terms, there does not appear to be any way to grant partial dismissal of a claim under Fed. R. Civ. P. 12(b)(6).") (internal quotations omitted); *Winstead v. Lafayette Cty. Bd. of Cty. Comm'r*, 197 F. Supp. 3d 1334, 1334 (N.D. Fla. 2016) ("Dismissal of theories (as opposed to claims) is inappropriate at the motion to dismiss stage.").

Agreement should not apply because Whinstone's breaches, as plainly alleged by SBIC, "were accompanied by and accomplished through fraud." Pl. Am. Compl. at ¶ 67.

For the foregoing reasons, the Court should deny Whinstone's Motion seeking to dismiss SBIC's breach of contract claim based on the Agreement's limitation of liability provision.

**D.  In the alternative, SBIC should have an opportunity to amend its pleading.**

Alternatively, if the Court is inclined to grant Whinstone's Motion, SBIC should be allowed an opportunity to amend its pleading. Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave" for a party to amend its pleading "when justice so requires." In the Fifth Circuit, "district courts must entertain a presumption in favor of granting parties leave to amend." *Mayeaux v. La. Health Serv. & Indem. Co*., 376 F.3d 420, 425 (5th Cir. 2004). Thus, in the absence of "undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." *Id.* None of the Fifth Circuit's exceptions apply in this case. As such, SBIC respectfully requests that the Court grant SBIC leave to amend its Complaint.

## III.
### REQUESTED RELIEF

For the reasons set forth herein, Plaintiff SBIC requests that the Court deny Defendant Whinstone's Motion to Dismiss, and that SBIC be awarded such other and further relief to which it shows itself to be entitled.

Respectfully submitted,

*/s/ Joshua M. Sandler*
Joshua M. Sandler
Texas Bar No. 24053680
jsandler@winstead.com
Cory Johnson
Texas Bar No. 24046162
cjohnson@winstead.com
Matthew Hines
Texas Bar No. 24120892
mhines@winstead.com
D. Blake Wilson
Texas Bar No. 24090711
bwilson@winstead.com
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF**
**SBI CRYPTO CO. LTD**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure via *Electronic Case Filing* on August 4, 2023.

*/s/ Joshua M. Sandler*
Joshua M. Sandler