IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> WHINSTONE US, INC., <br><br> Defendant. | No. 6:23-CV-252 |

**DEFENDANT WHINSTONE US INC.'S MOTION TO COMPEL**

Pursuant to Federal Rule of Civil Procedure 37, Defendant Whinstone US, Inc. ("Whinstone") files this Motion to Compel against Plaintiff SBI Crypto Co., LTD. ("SBI") and asks the Court to overrule SBI's objections and order SBI to completely answer certain interrogatories and produce responsive documents.

## I.   SUMMARY OF ARGUMENT

Whinstone owns and operates a cryptocurrency mining center located in Rockdale, Texas (the "Facility"), which SBI utilized pursuant to a hosting agreement ("Hosting Agreement"). Whinstone terminated in May 2021. SBI raised no issue with the termination. Instead, ***two years later***, SBI sued Whinstone for alleged breach of contract and fraud that spanned the course of the parties' relationship, seeking to recover more than $30 million in purported damages. Am. Compl. (Jul. 7, 2023) (ECF No. 11)¶¶ 59-60. Those damages are contractually precluded. Specifically, SBI admits that it did not provide any notice until May 27, 2022 and June 3, 2022—far more than twelve months after the required notice as a condition precedent to recovery. *Id.* ¶ 51; Mot. Dismiss (Jun. 15, 2023) Ex. 1 § 8.11 (ECF No. 9).  Further, SBI seeks to recover an amount exponentially greater than the damages potentially allowed per contract. Mot. Dismiss (Jun. 15, 2023) Ex. 1

§§ 8.6, 8.7. Further still, SBI expressly disclaimed reliance on extracontractual statements—which bars its fraudulent inducement claim as a matter of well-settled law. *Id.* § 17.

Whinstone served discovery on SBI to uncover the factual bases for SBI's wide-ranging allegations. SBI improperly provided evasive and incomplete answers and refused to produce information relevant to the merits of its claims and damages. In so doing, SBI refused:

- To provide the dates it became aware of the circumstances giving rise to each of its claims (in a transparent effort to avoid summary dismissal of its time-barred claims);

- To provide the factual bases for its claims (*e.g.*, refusing to identify the inspections, permits, or certifications for the construction and operation of the Facility that SBI contends it **learned** were required); and

- To identify its damages calculation and produce information needed to test its alleged damages, including, but not limited to, financial statements, general ledgers, and performance data of SBI's other mining operations.

Whinstone asked SBI to correct the discovery deficiencies enumerated herein. Email (May 28, 2024), attached as Exhibit 1. SBI rebuffed those efforts. *Id.* The need for Whinstone to quickly obtain this information is great. Currently, the deadline to complete fact discovery is July 31, 2024. Sched. Order (Nov. 27, 2023) (ECF No. 32). In that light, Whinstone repeatedly asked for deposition dates and locations for at least two of SBI's witnesses located in Japan and the United Arab Emirates. Email (May 20, 2024), attached as Exhibit 2. But, to date, SBI has not provided any available deposition dates and the locations of those depositions have not been agreed upon. *Id*.

Left with no other option, Whinstone is forced to file this motion to compel so that it can obtain the information to dispose of SBI's claims through summary judgment and, if necessary, prepare for trial. Whinstone thus requests that the Court overrule SBI's objections and order SBI to provide complete interrogatory responses and produce the information regarding damages that SBI is withholding.

## II. BACKGROUND

On April 5, 2023, SBI—almost two years after Whinstone terminated the Hosting Agreement—sued Whinstone. Compl. (Apr. 5, 2023) (ECF No. 1). The crux of SBI's allegations is that Whinstone fraudulently induced SBI into entering into the Hosting Agreement and breached or fraudulently performed the Hosting Agreement by:

- Misrepresenting the Facility's power capacity. *E.g.*, Am. Compl. (Jul. 7, 2023) ¶¶ 12, 14, 19, 23;

- Misrepresenting that no building permits, city inspections, and certifications were required to construct and operate the Facility. *Id.* ¶¶ 12-14, 28-29, 38;

- Concealing the environmental conditions at the Facility. *Id.* ¶¶ 13, 35-36, 41; and

- Failing to install and operate an evaporative cooling system. *Id.* ¶¶ 36-38.

As a result of the foregoing, SBI claims that the Facility's construction was delayed, and its cryptocurrency mining equipment did not operate as intended and/or was damaged—which caused SBI to lose more than $15 million in lost profits and incur at least $16 million in equipment damage. *Id.* ¶¶ 14-15, 27-28, 59-60.

On August 22, 2023, Whinstone served discovery on SBI to understand the factual bases of those allegations. Req. Prod., attached as Exhibit 3; Interrog., attached as Exhibit 4. SBI responded to the discovery on October 5, 2023 by largely asserting boilerplate, general objections and failing to completely respond. Interrog. Resp., attached as Exhibit 5; Req. Prod. Resp., attached as Exhibit 6.

In April and May 2024, Whinstone made a good faith attempt to meet and confer with SBI to correct its discovery deficiencies. Ex. 1. SBI refused to do so. *Id.*

## III. ARGUMENTS & AUTHORITIES

Rule 26 provides that a party may obtain discovery that is relevant to a claim or defense

and proportional to the needs of the case. *See* Fed. R. Civ. Proc. 26(b)(1). The Federal Rules of Civil Procedure provide that an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. Proc. 37(a)(4). When a party responding to discovery fails to answer an interrogatory or fails to produce relevant documents, the party serving discovery can file a motion to compel and be awarded its fees. Fed. R. Civ. Proc. 37(a)(4-5).

When responding to discovery, objections must be specifically asserted. Fed. R. Civ. Proc. 33(b)(4), 34(b)(2)(B). Otherwise, the objection is waived and/or invalid Fed. R. Civ. Proc. 33(b)(4); *Phillips v. Murphy Oil USA, Inc.*, No. EP-23-CV-00294-KC, 2024 WL 677711, at *2 (W.D. Tex. Feb. 12, 2024). Furthermore, "general, generic objections" that are included in a preliminary section of discovery responses and incorporated into each discovery response "violate the Federal Rules and are invalid." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014).

**A.  SBI cannot refuse to answer an interrogatory in the hopes of avoiding summary dismissal of its claims.**

In Interrogatory Nos. 2-5, Whinstone asked SBI to simply provide the date it became aware of the circumstances giving rise to each alleged breach of contract and fraudulent act:

> **INTERROGATORY NO. 2:** For each breach of contract that YOU allege in the DEMAND LETTER, identify the date YOU first became aware of the circumstances giving rise to each breach.
>
> **ANSWER:** SBIC objects to Interrogatory No. 2 because the terms "first became aware of the circumstances giving rise to each breach" are vague and ambiguous and because, to the extent that the Interrogatory requires SBIC to interpret a term of the Rockdale Hosting Services Agreement, the Interrogatory calls for one or more legal conclusions. To the extent that "first became aware of the circumstances giving rise to each breach" refers to when SBIC became aware of each circumstance that gave rise to each breach, SBIC objects because the Interrogatory is overbroad and unduly burdensome and because it seeks information which is not relevant nor calculated to lead to the discovery of admissible evidence.
>
> Subject to the foregoing objections, and to the extent that "first became aware of the circumstances giving rise to each breach" means when SBIC had sufficient knowledge of all circumstances necessary to give rise to a breach of the Rockdale Hosting Services Agreement, SBIC responds to this Interrogatory as follows: SBIC became aware of the circumstances giving rise to the breaches described in the Demand Letter on June 10, 2021.

**INTERROGATORY NO. 3**: For each act of fraud that YOU allege in the DEMAND LETTER, identify the date YOU first became aware of the circumstances giving rise to each act.

**ANSWER**: SBIC objects to Interrogatory No. 3 because it seeks information which is not relevant nor calculated to lead to the discovery of admissible evidence, because it requires SBIC to marshal all of its evidence, and because the terms "first became aware of the circumstances giving rise to each act" are vague and ambiguous.

Subject to the foregoing objections, SBIC responds to this Interrogatory as follows: SBIC became aware of the misrepresentations related to the environmental conditions in the Rockdale Facility on June 10, 2021. SBIC also became aware of misrepresentations related to the Rockdale Hosting Service Agreement shortly after Riot Blockchain, Inc. filed its Form 8-K with the United States Securities and Exchange Commission on May 26, 2021.

**INTERROGATORY NO. 4**: For each breach of contract that YOU allege in the COMPLAINT, identify the date YOU first became aware of the circumstances giving rise to each breach.

**ANSWER**: SBIC objects to Interrogatory No. 4 because the terms "first became aware of the circumstances giving rise to each breach" are vague and ambiguous and because, to the extent that the Interrogatory requires SBIC to interpret a term of the Rockdale Hosting Services Agreement, the Interrogatory calls for one or more legal conclusions. To the extent that "first became aware of the circumstances giving rise to each breach" refers to when SBIC became aware of each circumstance that gave rise to each breach, SBIC objects because the Interrogatory is overbroad and unduly burdensome and because it seeks information which is not relevant nor calculated to lead to the discovery of admissible evidence.

Subject to the foregoing objections, and to the extent that "first became aware of the circumstances giving rise to each breach" means when SBIC had sufficient knowledge of all circumstances necessary to give rise to a breach of the Rockdale Hosting Services Agreement, SBIC responds to this Interrogatory as follows: SBIC became aware of the circumstances giving rise to the breaches alleged in the Complaint on June 10, 2021.

**INTERROGATORY NO. 5**: For each act of fraud that YOU allege in the COMPLAINT, identify the date YOU first became aware of the circumstances giving rise to each act.

**ANSWER**: SBIC objects to Interrogatory No. 5 because it seeks information which is not relevant nor calculated to lead to the discovery of admissible evidence, because it requires SBIC to marshal all of its evidence, and because the terms "first became aware of the circumstances giving rise to each act" are vague and ambiguous.

Subject to the foregoing objections, SBIC responds to this Interrogatory as follows: SBIC became aware of the misrepresentations related to the environmental conditions in the Rockdale Facility on June 10, 2021. SBIC also became aware of misrepresentations related to the Rockdale Hosting Service Agreement shortly after Riot Blockchain, Inc. filed its Form 8-K with the United States Securities and Exchange Commission on May 26, 2021.

Ex. 5 at Resp. Interrog. Nos. 2-5. However, instead of answering these straightforward requests, SBI asserted general, boilerplate objections in a preliminary section and tried to incorporate those objections into each individual response—which is a "waste of time for opposing counsel and the court." *Heller*, 303 F.R.D. at 483.

Additionally, SBI objected that the phrase "first became aware of the circumstances giving rise to each breach" is vague and ambiguous and amounts to a legal conclusion. *Id.* SBI cannot seriously take the position it does not understand the phrase given that the interrogatory uses language lifted from the Hosting Agreement—to which SBI agreed. Mot. Dismiss (Jun. 15, 2023) Ex. 1 § 8.11. Nor is the interrogatory a "legal conclusion" as Whinstone does not ask SBI whether its claims are barred; rather, Whinstone asked the ***date*** SBI became aware of the facts giving rise to its claims (*i.e.*, a ***fact***). Fed. R. Civ. Proc. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . ."). SBI also improperly asserted boilerplate objections that the Interrogatory is overboard, unduly burdensome, and seeks irrelevant information. Ex. 5 at Resp. Interrog. Nos. 2-5. SBI waived these objections by failing to be specific. Fed. R. Civ. Proc. 33(b)(4); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (holding interrogatory objections must be specific); *George-Botros v. Sun Life Assurance Co. of Canada*, No. 3:16-CV-1264-C, 2017 WL 3730585, at *3 (N.D. Tex. Mar. 23, 2017) (overruling objections general, boilerplate objections). This information is highly material because SBI knowingly brought claims that are untimely under the Hosting Agreement. Section 8.11 of the Hosting Agreement expressly relieves Whinstone from liability unless SBI "g[ave] Whinstone written notice of the claim within twelve months of becoming aware of the circumstances giving rise to the claim." Mot. Dismiss (Jun. 15, 2023) Ex. 1.

**WHINSTONE'S MOTION TO COMPEL** 6

In addition to waiver, Whinstone is entitled to discovery on facts regarding the claims and defenses at-issue in this case. Fed. R. Civ. Proc. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired under Rule 26(b)."). Here, the requested dates specifically go to whether SBI complied with the Hosting Agreement's notice provision. Mot. Dismiss (Jun. 15, 2023) Ex. 1 § 8.11. SBI must provide the specific dates of when it became aware of the circumstances giving rise to each of its claims. *E.g.*, *UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*, No. 6:11-CV-496-LED, 2014 WL 12521379, at *2 (E.D. Tex. June 4, 2014) (granting motion to compel plaintiff to completely answer interrogatory by providing the specific date that the plaintiff purchased or acquired each of 81 different at-issue products); *c.f., Eubank v. Lockhart Indep. Sch. Dist.*, No. A-15-CV-1019-RP-ML, 2016 WL 11214437, at *3 (W.D. Tex. Nov. 8, 2016), ("It is not overly burdensome to expect a plaintiff to identify the specific acts that caused her harm. . . . LISD is entitled to know the factual basis for any claims of discrimination or retaliation that Eubank may make at trial."), *aff'd*, 734 Fed. Appx. 295 (5th Cir. 2018); *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-CV-2498-B, 2016 WL 2997744, at *9 (N.D. Tex. May 25, 2016) ("Plaintiff must amend its answer to identify the requested details of any allegedly false and deceptive affirmative representation or statement on which Plaintiff will rely in support of its claims against Defendants.").

Finally, the qualifier "sufficient knowledge of all circumstances" is an evasive answer, to which the law mandates a response. *C.f., e.g., T2 Modus, LLC v. Williams-Arowolo*, No. 4:22-CV-00263, 2023 WL 6221429, at *5 (E.D. Tex. Sept. 25, 2023) (ordering party responding to interrogatory cannot simply regurgitate the statutory language as to what constitutes a trade secret and must instead respond "via a list that separately breaks out each of the claimed trade secrets and identified claimed trade secrets with sufficient particularity so that Defendant understands how

each clamed trade secret differs from information in the public domain"). Judicial economy and the Federal Rules of Civil Procedure do not permit SBI to refuse to answer—which is a transparent attempt to try to avoid summary dismissal of time-barred claims.

The Court should overrule SBI's "general objections" and objections in its responses to Interrogatory Nos. 2-5 and order SBI to specifically identify each alleged breach of contract or fraudulent in a list and provide the date SBI first became aware of the circumstances giving rise to *each* claim.

**B. SBI must provide the factual bases for its claims.**

In Interrogatory Nos. 8-10, 12, 14, 18, and 20, Whinstone asked SBI to identify the facts supporting its breach of contract and fraud claims:

> **INTERROGATORY NO. 8**: Identify the amount of power that YOU contend WHINSTONE was obligated to provide to YOU under the OCTOBER HOSTING AGREEMENT.
>
> **ANSWER**: SBIC objects to Interrogatory No. 8 because it seeks information that may be more easily obtained from other sources, specifically the Rockdale Hosting Services Agreement and SBIC's Amended Complaint.
>
> Subject to the foregoing objection, SBIC responds as follows: Per the Rockdale Hosting Services Agreement, Whinstone promised to provide at least 5 megawatts by October 31, 2019, 50 megawatts by December 15, 2019, and further represented, as an inducement for entering into the Rockdale Hosting Services Agreement, that it had "secured for commercial access up to one (1) gigawatt of aggregated electricity that can be delivered to the Data Center, of which a portion of that may be incrementally offered to [SBIC]."

> **INTERROGATORY NO. 9**: Identify the certifications and inspections that YOU allege in the COMPLAINT that WHINSTONE was required to obtain.
>
> **ANSWER**: SBIC objects to Interrogatory No. 9 because the Interrogatory requires SBIC to marshal all of its evidence, because the Interrogatory is premature as discovery is ongoing, and because Whinstone has equal, if not better, access to the information requested.
>
> Subject to the foregoing objection, Section 2.1.5 of the Rockdale Hosting Services Agreement provides that "Whinstone represents and warrants that building or other permits, city inspection, or certification is not required with regard to providing services under this Agreement." In its Amended Complaint, SBIC alleges that "certain certifications and inspections were, in fact, required to turn on power." Otherwise, discovery is ongoing and SBIC reserves the right to supplement and amend this answer pursuant to the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 10**: Identify each attempt YOU made to resell YOUR mining equipment used at the FACILITY, including by listing the party to who resale was offered, the manner of each communication offering to the resale, the price for each offer of resale, and the response to each offer of resale.

**ANSWER**: SBIC objects to Interrogatory No. 10 because the terms "resell," "resale," and "offered" are vague and ambiguous.

Subject to the foregoing objection, SBIC responds to the Interrogatory as follows: SBIC discussed the sale of its Avalon A10 miners with Ray Redding of Smith & Associates in late July 2021, however nothing came of the discussions. SBIC had other informal discussions regarding the sale of its mining equipment, including with Kaboomracks, but those discussions also did not result in a sale.

**INTERROGATORY NO. 12**: As alleged in paragraph 12 of the COMPLAINT, identify each alleged misrepresentation YOU contend Whinstone made, including by listing the date the misrepresentation was made, the method of communication, where the misrepresentation occurred, and the identity of the person making the misrepresentation.

**ANSWER**: SBIC objects to Interrogatory No. 12 because the terms "paragraph 12" and "each alleged misrepresentation" are vague and ambiguous and because the Interrogatory requires SBIC to marshal all of its evidence. Paragraph 12 of SBIC's Amended Complaint does not independently identify alleged misrepresentations. To the extent that "paragraph 12" and "each alleged misrepresentation" means the misrepresentations alleged in both paragraphs 12 and 13, SBIC objects to the Interrogatory because it seeks, in part, information that may be more easily obtained from other sources, specifically paragraphs 12 and 13 of SBIC's Amended Complaint.

Subject to the foregoing objections, SBIC responds to the Interrogatory as follows: SBIC alleges in paragraphs 12 and 13 of the Amended Complaint that Whinstone's representations and warranties concerning (1) power capacity, (2) permits, and (3) operating conditions were false because Whinstone misled SBIC into believing it held the requisite building permits and power contracts to perform as promised and then concealed the substandard conditions at its facility. Whinstone's power capacity misrepresentations were made during conversations between representatives of SBIC and Aroosh Thillainathan near the Rockdale Facility during September 2019 while representatives of SBIC visited the Rockdale Facility and in the Rockdale Hosting Services Agreement itself. Whinstone's permits misrepresentations were made in the Rockdale Hosting Services Agreement itself and in verbal conversations with Aroosh Thillainathan and Chad Harris in the first half of 2020. In August 2020, Chad Harris tried to deflect blame away from the conditions of the Rockdale Facility by accusing Canaan of providing poorly manufactured equipment. Whinstone's other operating conditions misrepresentations were made during calls between representatives of SBIC and Ashton Harris. Discovery is ongoing and SBIC reserves the right to supplement and amend this answer pursuant to the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 14**: As alleged in paragraph 22 of the COMPLAINT, identify each alleged misrepresentation YOU contend Whinstone made, including by listing the date the misrepresentation was made, the method of communication, where the misrepresentation occurred, and the identity of the person making the misrepresentation.

**ANSWER:** SBIC objects to Interrogatory No. 14 because the terms "paragraph 12" and "each alleged misrepresentation" are vague and ambiguous and because the Interrogatory requires SBIC to marshal all of its evidence. Paragraph 22 of SBIC's Amended Complaint does not independently identify alleged misrepresentations.

To the extent that "paragraph 22" and "each alleged misrepresentation" means the one misrepresentation alleged in both paragraphs 22 and 23, SBIC objects to the Interrogatory because it seeks, in part, information that may be more easily obtained from other sources, specifically paragraphs 22 and 23 of SBIC's Amended Complaint.

Subject to the foregoing objections, SBIC responds to the Interrogatory as follows: SBIC alleges in paragraphs 22 and 23 of the Amended Complaint that Whinstone's representation that it had secured for commercial access up to one gigawatt of aggregated electricity that can be delivered to the Data Center was false at the time it was made because Whinstone had not, in fact, secured commercial access to that amount of electricity. This misrepresentation was made during conversations between representatives of SBIC and Arrosh Thillainathan near the Rockdale Facility during the fall of 2019 while representatives of SBIC visited the Rockdale Facility and in the Rockdale Hosting Services Agreement itself.

**INTERROGATORY NO. 18**: As alleged in paragraph 34 of the COMPLAINT, identify all facts to support YOUR contention that WHINSTONE refused CANAAN's request for physical access to the FACILITY.

**ANSWER:** SBIC objects to Interrogatory No. 16 because it requires SBIC to marshal all of its evidence. Subject to the foregoing objection, SBIC responds to the Interrogatory as follows: Despite Canaan's desire to physically access the Rockdale Facility, and after Representatives of Canaan and Ashton Harris had verbal discussions, Whinstone did not grant Canaan access to inspect SBIC's mining machines and the environmental conditions of the Rockdale Facility.

**INTERROGATORY NO. 20**: As alleged in paragraph 48 of the COMPLAINT, identify each alleged misrepresentation and/or omission YOU contend Whinstone made, including by listing the date the misrepresentation and/or omission was made, the method of communication, where the misrepresentation and/or omission occurred, and the identity of the person making the misrepresentation and/or omission.

**ANSWER:** SBIC objects to Interrogatory No. 20 because it is unreasonably cumulative and duplicative of Interrogatory Nos. 12, 14, and 15, because the Interrogatory requires SBIC to marshal all of its evidence, and because it seeks, in part, information that may be more easily obtained from other sources, specifically paragraph 48 of SBIC's Amended Complaint.

Subject to the foregoing objections, SBIC responds to the Interrogatory as

> follows: SBIC alleges in paragraph 48 of the Amended Complaint that Whinstone made the following misrepresentations:
>
> (1) misrepresenting that the datacenter was well designed, and conformed to industry standards after operations began (while actively concealing the truth of the same); these misrepresentations were made during conversations between representatives of SBIC and Arrosh Thillainathan near the Rockdale Facility during September 2019 while representatives of SBIC visited the Rockdale Facility and in the Rockdale Hosting Services Agreement itself;
>
> (2) misrepresentations that the datacenter and racks were built and configured to contractual requirements (actively concealing the truth of the same); these misrepresentations were made in the Rockdale Hosting Services Agreement itself;
>
> (3) misrepresenting in the Hosting Service Agreement that building or other permits, city inspections, or certifications were not required with regard to providing services pursuant to the parties' contract; these misrepresentations were made in the Rockdale Hosting Services Agreement itself and in verbal conversations with Aroosh Thillainathan and Chad Harris in the first half of 2020;
>
> (4) misrepresenting that the facility was not experiencing problems related to overheating or excessive dust (deliberately concealing harmful environmental conditions at the facility which inevitably caused suboptimal performance SBIC equipment and physical damage to the same); these misrepresentations were made in verbal conversations with Chad Harris during 2020 and during SBIC's site visit in June 2021;
>
> (5) misrepresenting in the Hosting Service Agreement that one (1) gigawatt of power was available at its Rockdale site and that 50 megawatts of power had been secured on October 24, 2019; these misrepresentations were made during conversations between representatives of SBIC and Arrosh Thillainathan near the Rockdale Facility during September 2019 while representatives of SBIC visited the Rockdale Facility and in the Rockdale Hosting Services Agreement itself; and
>
> (6) misrepresenting in 2019 and 2020 the availability of power after delays despite not securing power until May 2020; these misrepresentations were made during conversations between representatives of SBIC and Arrosh Thillainathan near the Rockdale Facility during September 2019 while representatives of SBIC visited the Rockdale Facility and in the Rockdale Hosting Services Agreement itself.

Ex. 5 at Interrog. Resp. Nos. 8-10, 12-14, 18, and 20. SBI again improperly incorporated general, boilerplate objections. *Compare id. with Heller*, 303 F.R.D. at 483.

SBI also baselessly asserted general objections, such as the terms "paragraph 12," "act," and "each alleged misrepresentation" are vague and ambiguous and Whinstone asking SBI to identify the factual bases for its claims is a request to "marshal all of its evidence" and the information "may be more easily obtained from other sources." *E.g.*, Ex. 5 at Interrog. Resp. Nos.

**WHINSTONE'S MOTION TO COMPEL** 11

8-10 8-10, 12, 14, 18, and 20. SBI's failure to specifically object waives these objections. Fed. R. Civ. Proc. 33(b)(4); *McLeod*, 894 F.2d at 1485; *George-Botros*, 2017 WL 3730585, at *3.

And, yet again, SBI failed to completely answer the Interrogatories. Rule CV-26(b)(3-4) expressly imposes upon the responding party to supply certain information when that party is asked to "identify" "persons" or "documents." SBI wholly failed to comply with this rule. Ex. 5 at Interrog. Resp. Nos. 8-10, 12, 14, 18, and 20.

This information that SBI refuses to provide is highly material. For example, SBI contends Whinstone fraudulently induced SBI into entering the Hosting Agreement by representing and warranting that Whinstone had "secured for commercial access up to one (1) gigawatt of aggregated electricity that can be delivered to the Data Center, of which a portion of that may be incrementally offered to [SBI]." *E.g.*, Am. Compl. (Jul. 7, 2023) ¶¶ 22-27. In another example, SBI specifically alleged that Whinstone "deliberately misled [SBI] into believing it held the requisite building permits . . . to perform as promised" and that "certain certifications and inspections were, in fact, required to turn on power, despite Whinstone's prior false representations to the contrary." *Id*. ¶¶ 13, 28. Yet, instead, of providing this information, SBI only offered evasive and incomplete answers:

- Resp. Interrog. No. 8: SBI refused to provide the incremental power it contends Whinstone was obligated to provide SBI;

- Resp. Interrog. No. 9: SBI—despite alleging certifications and permits were required (a fact that SBI learned)—refused to identify a single such certification or permit;

- Resp. Interrog. No. 10: SBI failed to provide the specific terms of the formal equipment resale attempt with Ray Redding and largely did not provide any of the requested factual information in regard to "informal discussions;"

- Resp. Interrog. No. 12: SBI did supply the identity of the SBI "representatives;"

**WHINSTONE'S MOTION TO COMPEL**　12

- <u>Resp. Interrog. No. 14</u>: SBI did supply the identity of the SBI "representatives;"

- <u>Resp. Interrog. No. 18</u>: SBI did not identify facts such as the identity of the Canaan "representatives," what was said during "verbal discussions," and what Canaan actually requested from Whinstone; and

- <u>Resp. Interrog. No. 20</u>: SBI did supply the identity of the SBI "representatives."

With respect to the incremental power and certifications and permits, either SBI had no good-faith basis to bring the claim, is improperly refusing to answer the interrogatory because no such certification or inspection was required, or SBI is wrongly refusing to provide Whinstone with the facts supporting SBI's claims. As for the remainder, SBI cannot refuse to provide Whinstone with the factual details supporting its claims. The Court should order SBI to supply this requested information. *Eubank*, 2016 WL 11214437, at *3; *McKinney/Pearl Rest. Partners*, 2016 WL 2997744, at *9.

**C.  SBI must provide information regarding its damages.**

In Interrogatory No. 6 and Requests for Production Nos. 20 and 116-17, Whinstone asked SBI to identify its damages calculation and information concerning the same:

[*remainder of page intentionally left blank*]

**INTERROGATORY NO. 6**: For each claim YOU assert in the COMPLAINT, identify the amount of damages that YOU seek to recover and include the calculation thereof.

**ANSWER:** SBIC objects to Interrogatory No. 6 because it is duplicative in that it seeks information that SBIC has already provided in its Initial Disclosures and because the request is premature. SBIC will provide timely provide calculations of its damages consistent with the discovery deadlines in this case, including expert reports.

Subject to the foregoing objection, SBIC responds to this Interrogatory as follows: First, SBIC contends that, as a proximate result of Whinstone's breaches of the Hosting Services Agreement, SBIC suffered benefit-of-the-bargain damages, including lost profits, damages related to the cost of damaged equipment, and/or as out-of-pocket costs in reliance on the Parties' Hosting Services Agreement. SBIC is entitled to recover its reasonable attorneys' fees for prevailing in its breach of contract claim against Whinstone pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code and the indemnity provision found in ¶ 8.3 of the Hosting Service Agreement. Second, SBIC contends that, as a proximate result of Whinstone's intentional misrepresentations upon which SBIC relied, SBIC suffered benefit-of-the-bargain damages, in excess of $15,000,000, damages related to the cost of damaged equipment in excess of $16,000,000 as well as out-of-pocket costs in reliance on Whinstone's fraudulent misrepresentations. Additionally, Whinstone's fraudulent acts and omissions were committed knowingly, intentionally, willfully, maliciously, or with wanton and gross negligence for which SBIC should be awarded exemplary damages. SBIC is entitled to recover its reasonable attorneys' fees against Whinstone pursuant to the indemnity provision provided in ¶ 8.3 of the Hosting Service Agreement. Third, SBIC contends that, as a proximate result of Whinstone's failure to disclose certain material facts to SBIC, SBIC suffered benefit-of-the-bargain damages, including lost profits in excess of $15,000,000, damages related to the cost of damaged equipment in excess of $16,000,000, as well as other out-of-pocket costs in reliance on Whinstone's fraudulent misrepresentations. Whinstone's fraudulent acts and omissions were committed knowingly, intentionally, willfully, maliciously, or with wanton and gross negligence for which SBIC should be awarded exemplary damages. SBIC is entitled to recover its reasonable attorneys' fees against Whinstone pursuant to the indemnity provision provided in ¶ 8.3 of the Hosting Service Agreement. SBIC's damages will be supported by calculations provided by its designated experts as well as SBIC's representatives and personnel. SBIC reserves the right to supplement these Disclosures in accordance with the Parties' Scheduling Order and the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 20**: All COMMUNICATIONS regarding the maintenance of YOUR mining equipment at any other location than the FACILITY.

**RESPONSE:** SBIC objects to the Request SBIC objects to this Request because it is overbroad and unduly burdensome, because the request constitutes a fishing expedition, and because it seeks information which is not relevant nor calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 116**: As alleged in paragraph 59 of the COMPLAINT, all INFORMATION supporting YOUR contention that "[a]s a direct result of Whinstone's acts and omissions, SBIC suffered lost profits of $15,000,000 when SBIC's Equipment went unused, underperformed, and was damaged by the conditions at Whinstone's facility."

**RESPONSE:** Subject to the General Objections, SBIC will produce responsive documents and communications at a mutually agreeable time and place.

> **REQUEST FOR PRODUCTION NO. 117:** As alleged in paragraph 60 of the COMPLAINT, all INFORMATION supporting YOUR contention that "[a]s a direct result of Whinstone's acts and omissions, SBICE suffered additional damages in excess of $16,000,000, which is the approximate cost of the SBIC Equipment damaged at the Rockdale facility, which otherwise could have been resold at a profit."
>
> **RESPONSE:** Subject to the General Objections, SBIC will produce responsive documents and communications at a mutually agreeable time and place.

Ex. 5 at Interrog. Resp. No. 6; Ex. 2 at Req. Prod. Resp. Nos. 20, 116-17. SBI's incorporation of its preliminary "general objections" is improper. *Heller*, 303 F.R.D. at 483. Again, SBI's boilerplate objections are waived. Fed. R. Civ. Proc. 33(b)(4); *McLeod*, 894 F.2d at 1485; *George-Botros*, 2017 WL 3730585, at *3.

More to the point, SBI refused to produce information required to test its alleged damages. SBI specifically alleges it has "suffered lost profits in excess of $15,000,000." Am. Compl. (Apr. 5, 2023) ¶ 57. Ex. 5 at Interrog. Resp. No. 6; Ex. 6 at Req. Prod. Resp. Nos. 20, 116-17. SBI must supply the calculation now. *Northpoint Tech., Ltd v. Directv, Inc*, No. 1-09-CV-506 JRN, 2010 WL 11425556, at *2 (W.D. Tex. Oct. 28, 2010) (granting motion to compel responding party to provide damages calculation in response to interrogatory because the Federal Rules of Civil Procedure require that disclosure "*without awaiting a discovery request*") (emphasis in original). Without it, Whinstone is unable to prepare for depositions.

Moreover, SBI refused to produce its financial statements, general ledgers, and operation and performance information regarding its cryptocurrency mining equipment at other locations— all of which are necessary to determine whether SBI's equipment at the Facility operated differently and the amount of SBI's alleged lost profits (if any). SBI cannot shield the production of its financial statements, general ledgers, and miner performance data (which are necessary to determine any alleged lost profits) or maintenance and performance data regarding its miners at locations other than the Facility (which is necessary to determine if these miners operate differently from those at the Facility). *I&I Hair Corp. v. Beauty Plus Trading Co., Inc.*, No. 3:20-CV-02179-

**WHINSTONE'S MOTION TO COMPEL**                                                                                          15

M, 2024 WL 758095, at *3 (N.D. Tex. Feb. 22, 2024) ("[A]ny 'opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained."); *Lashify, Inc. v. Qingdao Lashbeauty Cosmetic Co., Ltd.*, No. 6:22-CV-00776-ADA-DTG, 2024 WL 170781, at *5 (W.D. Tex. Jan. 16, 2024) ("Lashify is seeking to recover lost profits . . . from Defendants in this case. Defendants and their experts are entitled to a complete picture of Lashify's financial positions over time in order to adequately evaluate the damages-related issues in the case.") (Gilliland, J.). The Court should compel this information.

## IV. CONCLUSION

Whinstone respectfully requests that the Court overrule SBI's "general objections" and objections to Interrogatory Nos. 2-6, 8-10, 12, 14, 18, and 20 and Requests for Production Nos. 20 and 116-17, order SBI to completely respond to the same and produce all responsive documents without objection within ten days, and award Whinstone all such other relief to which it is entitled.

Respectfully submitted,

FOLEY & LARDNER LLP

By: */s/ Robert T. Slovak*
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE U.S. INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2024, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Brandon C. Marx*
Brandon C. Marx

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 29, 2024 I made a good faith attempt to confer with SBI's counsel regarding the relief requested herein and SBI refused to correct its discovery deficiencies.

*/s/ Brandon C. Marx*
Brandon C. Marx
