## AFFIDAVIT OF SERVICE

UNITED STATES DISTRICT COURT
Western District of Texas

Case Number: 6:23-CV-252-ADA-JCM

Plaintiff:
**SBI CRYPTO CO., LTD.**

vs.

Defendant:
**WHINSTONE US, INC.**

Received these papers on the 9th day of September, 2024 at 9:15 am to be served on **LANCIUM, LLC by delivering to its Registered Agent, REGISTERED AGENTS, INC., 5900 Balcones Drive, Suite 100, Austin, Travis County, TX 78731.**

I, Vivian Smith, being duly sworn, depose and say that on the **9th day of September, 2024** at **10:40 am, I:**

hand-delivered a true copy of this **Plaintiff's Notice of Intent to Service Subpoena Duces Tecum on NonParty Lancium, LLC with Exhibit "1",** to **LANCIUM, LLC by delivering to its Registered Agent, REGISTERED AGENTS, INC.** by and through its authorized agent, **MARY MORRISON,** at the address of: **5900 Balcones Drive, Suite 100, Austin, Travis County, TX 78731,** having first endorsed upon such copy of such process the date of delivery.

I certify that I am approved by the Judicial Branch Certification Commission, Misc. Docket No. 05-9122 under rule 103, 501, and 501.2 of the TRCP to deliver citations and other notices from any District, County and Justice Courts in and for the State of Texas. I am competent to make this oath; I am not less than 18 years of age, I am not a party to the above-referenced cause, I have not been convicted of a felony or a crime of moral turpitude, and I am not interested in the outcome of the above-referenced cause.

Subscribed and Sworn to before me on the 9th day of September, 2024 by the affiant who is personally known to me.

NOTARY PUBLIC

Vivian Smith
PSC-12617, Exp. 5/31/2026

Our Job Serial Number: THP-2024005685
Ref: 2530122



HELEN BROUSSARD
Notary ID #130429927
My Commission Expires
November 16, 2027

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a



IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF TEXAS WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**WHINSTONE US, INC.,**<br><br>*Defendant.* | Civil Action No.: 6:23-cv-252<br><br>Jury Trial Demanded |

## PLAINTIFF'S NOTICE OF INTENT TO SERVICE SUBPOENA DUCES TECUM ON NONPARTY LANCIUM, LLC

TO: Nonparty, LANCIUM, LLC, c/o Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, TX 78731; and

Defendant Whinstone US, Inc., by and through its counsel of record, Robert T. Slovak and Brandon C. Marx, FOLEY & LARDNER LLP, 2021 McKinney Avenue, Suite 1600, Dallas, TX 75201.

Plaintiff SBI Crypto Co., Ltd. hereby provides notice of its intent to serve the Subpoena Duces Tecum attached hereto as Exhibit 1 on nonparty, Lancium, LLC ("Lancium"), for the production of all documents, responsive to the document requests listed in Exhibit A of the Subpoena, which are in its possession, custody or control as required by the Federal Rules of Civil Procedure. The Subpoena will be deemed served on Lancium in 10 days.

Dated September 6, 2024.                Respectfully submitted,

**WINSTEAD PC**

By: */s/ Joshua M. Sandler*
Joshua M. Sandler
Texas Bar No. 24053680
jsandler@winstead.com
Cory Johnson
Texas Bar No. 24046162
cjohnson@winstead.com
Matthew Hines
Texas Bar No. 24120892
mhines@winstead.com

2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF
SBI CRYPTO CO. LTD**

## CERTIFICATE OF SERVICE

I certify that, on September 6, 2024, a true and correct copy of the foregoing was served via electronic mail to all counsel of record.

/s/ Cory C. Johnson
Cory C. Johnson

# EXHIBIT "1"

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Western District of Texas

| | |
|---|---|
| SBI CRYPTO CO., LTD. ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. 6:23-cv-252 |
| WHINSTONE US, INC. ) | |
| *Defendant* ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: LANCIUM LLC, c/o Registered Agents Inc., 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: *See* **Exhibit A** attached hereto.

| Place: Winstead, PC 2728 N. Harwood Street, Ste 500, Dallas, TX 75201 | Date and Time: September 27, 2024, at 9:00 am *or other mutually agreed-upon date and time |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: September 6, 2024

| CLERK OF COURT | | |
|---|---|---|
| _____ | OR | /s/ Joshua M. Sandler |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* **Plaintiff SBI Crypto Co., Ltd** , who issues or requests this subpoena, are:
Joshua M. Sandler, 2728 N. Harwood Street, Suite 500, Dallas, Texas 75201, (214) 745-5400

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 6:23-cv-252

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

**RETURN / AFFIDAVIT PROOF / ATTACHED**

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

**DOCUMENTS TO BE PRODUCED**

**I.**
**DEFINITIONS[1]**

1. "SBIC" refers to Plaintiff SBI Crypto Co., Ltd. and includes its past and present agents, legal representatives, non-legal representatives, personal representatives, attorneys, employees, successors and assigns, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of SBIC.

2. "Whinstone" refers to Defendant Whinstone US, Inc. and each of its current and past employees, officers, agents, directors, shareholders, members, managers, supervisors, parents, subsidiaries, accountants, attorneys, partners, affiliates, or representatives, and all other persons or entities acting on its behalf including but not limited to Northern Data AG and Riot Blockchain, Inc.

3. "Lancium" refers to Lancium LLC and each of its current and past employees, officers, agents, directors, shareholders, members, managers, supervisors, parents, subsidiaries, accountants, attorneys, partners, affiliates, or representatives, and all other persons or entities acting on its behalf.

4. "Priority Power" refers to Priority Power Management, Inc., and each of its current and past employees, officers, agents, directors, shareholders, members, managers, supervisors, parents, subsidiaries, accountants, attorneys, partners, affiliates, or representatives, and all other persons or entities acting on its behalf.

5. "Pyote Facility" means Whinstone's hosting facility located in Pyote, Texas.

6. "Rockdale Facility" means Whinstone's hosting facility located in Rockdale,

---

[1] All defined terms retain their definitions even if they are not capitalized herein.

Exhibit A – Page 1

Texas.

7. "Power Capacity" means the amount of accessible electricity at a given facility, as limited by relevant power purchase agreements and facility, local, and regional energy infrastructure.

8. "Permits" means any classification, permission, certification, or license granted by a Third Party, including, but not limited to, utility services - including for power/energy supply, zoning codes, property-use restrictions, or grades assigned following any inspection.

9. "Permit Applications" means any applications for Permits.

10. "Equipment" means any item used for the purpose of mining cryptocurrency, including but not limited to cryptocurrency miners, power supply units, power meters, cables, switches, networking equipment, sensors, control systems, management systems, etc.

11. "Customer" or "Customers" means any party or parties (other than Whinstone) authorized, through agreement or otherwise, to store, host, or operate Equipment in a Whinstone facility.

12. "Electronically Stored Information" means electronic information that is stored in a medium from which it can be retrieved and examined, and includes, but is not limited to, the following: voice-mail messages and files; e-mail messages and files; text messages and files; deleted files; temporary files; system-history files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer-activity logs; metadata; electronic files and electronic storage contained in a computer system, network, or phone; and electronic files

contained on magnetic, optical, or other storage media, including hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, and integrated-circuit cards (*e.g.*, SIM cards).

13. "Communication" or "communications" means, without limitation, letters, memoranda, notes, electronic mail, text messages, electronic instant messages, statements, discussions, conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia, whether written or oral. Such term also includes, without limitation, both communications and statements which are face-to-face and those, which are transmitted by other methods. The term "communication" or "communications" specifically includes all Electronically Stored Information.

14. "Document" or "documents" means, without limitation, any tangible or reproducible material, whether typed or handwritten, printed, recorded, or otherwise, or any photographs, photostat, microfilm, or reproduction thereof, including, but not limited to, originals (or copies where originals are unavailable) of all papers, records, studies, analyses, notes, logs, data logs, comments, telephone messages, calendars, diaries, telexes, telegrams, facsimiles, photographs, models, diagrams, plans, specifications, charts, blueprints, drawings, minutes of meetings, correspondence, memoranda, reports, ledgers, journals, contracts, agreements, bank statements, statements of account, cancelled checks, inventories, receipts, invoices, work orders, purchase orders, partnership agreements, articles of incorporation, corporate minutes, resolutions, stock certificates, stock certificate transfer records, bylaws, and any other corporate record, sales records, or receipts, tape recordings, video records, films, or other audio or visual recordings, computer hard disks or other computer or software storage devices of any type, and any other items similar to any of the foregoing, however

Exhibit A – Page 3

denominated. This definition includes all handwritten, typewritten, printed, photocopied, photographic or recorded matter, and includes pictures, photographs, diagrams, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems and also includes but is not limited to any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); any "deleted" but recoverable electronic file on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from a random access memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data). The term "document" or "documents" specifically includes all Electronically Stored Information.

As used in this Definition, a document is deemed to be in your "control" if you have the right to secure the document or a copy thereof from another person, public, or private entity having actual physical possession thereof. If any document requested was, but is no longer, in your possession or subject to your control, state what disposition was made of it, and the date or dates or approximate date or dates on which such disposition was made.

15. "Archives" means a copy of data on stored and/or maintained on one or more electronic files; magnetic, optical, or other storage media including hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, and integrated-circuit cards (e.g., SIM cards), desktop and laptop computers, handheld devices and cell

phones, network hard disks, remote internet storage or the "cloud," and iPods/iPads and other MP3 players.

16. "Backup" means a copy of active data, intended for use in restoration of data.

17. "Computer" includes but is not limited to network servers; cryptocurrency miners; desktop, laptop, notebook, and netbook computers; employees' home computers; mainframes; iPads and other tablet computers; smartphones, handheld devices, and/or cell phones; hard drives; removable media drives (i.e., floppy disks, tapes, CDs, DVDs); optical disks; PDAs (personal digital assistants, such as PalmPilot, Casseopeia, HP Jornada and other such handheld computing devices) of You and Your employees; and digital cell phones, including smartphones, pagers, and handheld devices.

18. "Data" means any and all information stored on media that may be accessed by a computer.

19. "Network" means a group of connected computers that allow people to share information and equipment (e.g., local area network [LAN], wide area network [WAN], crypto mining pool, metropolitan area network [MAN], storage area network [SAN], peer-to-peer network, client-server network).

20. The word "or" is inclusive, referring to any one or more of the disjointed words or phrases and the terms "any" and "all" include "each and every."

21. "Person" means any individual, firm, partnership, joint venture, association, corporation, or any other type of entity, public or private.

22. "Identify," when used in connection with a Person, means to state such full and complete information as is necessary to enable the requesting party to locate, contact, and subpoena the Person.

23.     "Identify," when used in connection with a document, means to provide such information as to enable the requesting party to identify, locate, and subpoena for production of the document. In the alternative you may produce a copy of the document and refer to it by exhibit or document number for purposes of identification and reference. "Explain" or "state" mean to specify in detail and includes the recitation of all relevant dates and places and the responsibility to identify, as defined above, all persons who have information which relates to the event, occurrence, condition, legal or factual contention, or other matter that is subject to the request.

24.     "Address" means street address; suite or apartment number, if applicable, city; state; and zip code.

25.     "Relating to" means embodying, pertaining, concerning, involving, constituting commenting upon, comprising, reflecting, discussing, evidencing, mentioning, referring to, consisting of, responding to, supporting or controverting a contention, or having any logical or factual connection whatever with the subject matter in question.

26.     All other terms not explicitly defined herein are to be construed in accordance with their plain and ordinary meanings in the English language and the context in which those terms are used.

## II.
### INSTRUCTIONS

In responding to any of the requests hereinafter set forth, you are instructed as follows:

1.      All information which is not privileged and which is in your possession or the possession of your attorney, investigators, agents, employees, or other representatives

is to be divulged.

2. To the extent you find a discovery request objectionable, state with specificity the objection and respond to the remaining part of the request, which you do not find objectionable. To the extent you refuse to produce responsive documents, identify those documents in your written response to the relevant request in accordance with the definitions above, and all reasons for your nonproduction. Include in your formal response where the documents were found, how they were organized, and how they will be produced for copying or inspection. To the extent the documents are reorganized or rearranged, state with particularity how they were originally kept and the reasons for the reorganization.

3. All requests herein refer to the time period from January 1, 2019 to January 1, 2023.

4. All documents shall be produced that respond to any part or clause of any paragraph of this request. If any document request cannot be produced in full, produce such document to the extent possible and indicate specifically in your response to this request your inability to produce the remainder and sufficient information concerning the unproduced document or portion thereof so that the Court and counsel can determine if a motion to compel is appropriate and can determine if in camera inspection is needed to test the validity of any claim, privilege or other reason for non-production.

5. File folders with tabs or labels identifying documents called for shall be produced intact with such documents.

6. Selection of documents from the files and other sources shall be performed in such a manner as to ensure that the source of each document may be determined.

7. Documents attached to each other should not be separated unless sufficient

Exhibit A – Page 7

records are kept to permit reconstruction of such grouping.

8. If any document requested is objected to or withheld, in whole or in part, pursuant to a claim of privilege, provide the following information with respect to each such document:

    a. date;

    b. author(s), and their title or position;

    c. addressee(s), and their title or position;

    d. person(s) receiving a copy and their title or position;

    e. general description of subject matter (*e.g.*, opinion of counsel on merits of claims);

    f. the nature of the privilege claimed (*e.g.*, attorney/client, work product, etc.);

    g. the factual and legal basis for the claim of such privilege (e.g., communication between attorney for corporation and outside counsel relating to acquisition of legal advice);

    h. the identity of each person who was present when the documents was prepared and who has seen the document; and

    i. the identity of every other document which refers to or describes the contents of such document.

9. You are required to file a written response stating with respect to each request that an inspection and copying will be permitted as requested unless the request is objected to, in which event the reason for the objection shall be stated.

10. You are requested to produce the documents responsive to these requests as they are kept in the usual course of business, or to organize and label them to correspond with the categories specified below. Electronic or magnetic data should be produced in its native or original format included along with any associated metadata reflecting the content, quality, condition, history and other characteristics of the

underlying data. By way of example, email may be produced in .pst or .nsf format.

## III.
### DOCUMENTS REQUESTED

Please produce the following:

1. All agreements between Whinstone and Lancium related to the Rockdale Facility.

2. All agreements between Whinstone and Northern Data related to the Rockdale Facility.

3. All agreements between Whinstone and Riot Blockchain related to the Rockdale Facility.

4. All communications internal to Lancium or between Lancium and any party regarding power at the Rockdale Facility, including but not limited to the planning, negotiating, securing, establishing, supplying, metering and monitoring of power and related rates and costs.

5. All documents and communications related to Power Capacity at the Rockdale Facility, including, but not limited to, power purchase agreements and other documents describing power purchase amounts, installation dates for step-down transformers, and when certain amounts of power were available to Whinstone and its Customers at the Rockdale Facility.

6. All documents and communications between Lancium and Whinstone, Northern Data, and/or Riot Block Chain related to any power service interruptions or failures at the Rockdale Facility.

7. All documents and communications related to the amounts of power made available to SBIC or any other Customer at the Rockdale Facility and the dates of such availability.

8. All documents and communications related to the unpacking, configuration, positioning, installation, powerup, commissioning, test and addition to the miner pool of SBIC's Equipment, including documents containing the dates of installation and activation of each miner.

9. All documents and communications related to any hardware, software or firmware modifications, software updates or configuration changes performed on SBIC's Equipment before, during or after their installation, and the reasons for such modifications.

10. All documents and communications related to the amounts of power consumed by SBIC's Equipment at the Rockdale Facility, including, but not limited to, documents containing data related to the power consumed by SBIC's Equipment, and documents related to the monitoring, tracking,

and billing of power consumed by SBIC's Equipment.

11. All communications between Lancium and Whinstone related to the amounts of power consumed by SBIC's Equipment at the Rockdale Facility.

12. All documents related to the amounts of power consumed by Customers' Equipment at the Rockdale Facility, including, but not limited to, documents related to Whinstone's efforts to monitor, track, and bill for power consumed by Customers' Equipment.

13. All communications and documents regarding the condition of SBIC's Equipment at the Rockdale Facility.

14. All communications and documents related to the hardware failure rates of SBIC's Equipment at the Rockdale facility, Whinstone's repair efforts on failed miners, and uptime statistics.

15. All documents and communications related to the hash rate of SBIC's Equipment while in use at the Rockdale Facility, including documents containing data related to the daily, weekly, or monthly hash rate of SBIC's Equipment, both for individual miners and collectively for the pool of miners.

16. All documents and communications regarding any issues or problems integrating or powering on SBIC's Equipment at the Rockdale Facility.

17. All communications and documents regarding the environmental conditions of the Rockdale Facility.

18. All communications and documents related to the capabilities of the Rockdale facility to perform demand response, load response or offer any surplus energy into the real-time energy marketplace in Texas, including the specifics of events when Whinstone energy allocations were sold back to the grid, and any impacts these events could have on the SBIC miners.

19. Any communications or documents related to the power efficiency of the Whinstone Rockdale datacenter, including measured or estimated Power Usage Effectiveness (PUE) or hashrate per Watt of energy consumed.

20. If not already provided in response to another request herein, all documents evidencing the performance of SBIC's Equipment at the Rockdale Facility, including data logs and telemetry data.

21. If not already provided in response to another request herein, all documents evidencing the consulting and development services that Lancium provided to Whinstone.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,** *Plaintiff,* v. **WHINSTONE US, INC.,** *Defendant.* | Civil Action No.: 6:23-cv-252<br><br>Jury Trial Demanded |

### BUSINESS RECORDS AFFIDAVIT FOR THE CUSTODIAN OF RECORDS OF LANCIUM, LLC

  Before me, the undersigned authority, personally appeared _____, who being by and duly sworn, deposed as follows:

  My name is _____. I am of sound mind, am capable of making this affidavit, am personally acquainted with the facts herein, and state that they are true and correct:

  I am a custodian of records for _____ ("_____"). Attached hereto are \_\_\_\_ pages of records from _____ that are kept in the regular course of business, and it was in the regular course of business of _____ for any employee or representative of _____ with knowledge of the act or event to make the records or to transmit information thereof to the inclined in such records; and the records were made at or near the time of the act or event or reasonably soon thereafter. The records attached hereto are exact duplicates of the original.

                                 _____
                                 Custodian of Records/Affiant

STATE OF _____ §
                 §
COUNTY OF _____ §

  SUBSCRIBED AND SWORN BEFORE ME, the undersigned authority on this the \_\_\_\_\_ day of _____, 2024.

                                _____
                              Notary Public in and for the State of Texas