IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**WHINSTONE US, INC.,**<br><br>*Defendant.* | Civil Action No.: 6:23-cv-252 |

### PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT

Pursuant to Judge Manske's September 16, 2024 Text Order (Dkt. 43), Federal Rule of Civil Procedure 37(a)(3)(B) and Local Rule 26(a), Plaintiff SBI Crypto Co., Ltd. ("Plaintiff" and/or "SBI") files this Motion to Compel Discovery from Defendant Whinstone US, Inc. ("Defendant" and/or "Whinstone"), and seeks an order compelling Whinstone to comply with its discovery obligations and produce relevant documents pursuant to Federal Rules 26(b)(1) and 34.

### I. BACKGROUND

This matter came for hearing before Judge Manske on September 16, 2024, but was unsuccessfully resolved. The Court then issued an order permitting the filing of this Motion to Compel. [Dkt. 43].

Plaintiff SBI Crypto Co., Ltd ("SBI") is a Bitcoin mining company. Defendant Whinstone US, Inc. ("Whinstone") to hosts crypto mining computers in its datacenter facilities in Rockdale, TX (the "Facility"). In October 2019, SBI and Whinstone entered into a Hosting Services Agreement (the "Agreement") for crypto mining operations at the Facility. The computing power necessary to engage in large scale mining results in high

electrical and cooling costs. Thus, the performance of mining equipment directly correlates with electrical power and environmental conditions. Conversely, inadequate cooling, ventilation, and dust filtration negatively impact the speed and efficiency of mining equipment. Consequently, maintaining an optimal environment by ensuring the highest speed and performance of mining equipment is essential to maximize mining operation profitability.

In this suit, SBI alleges that Whinstone fraudulently induced SBI to enter into the Agreement, fraudulently concealed material information regarding the substandard conditions at the Facility, and breached certain terms of the Agreement. SBI contends that Whinstone willfully misrepresented and concealed securing construction and building permits, the Facility's promised capacity to deliver power, and when Whinstone secured contractual rights to power the Facility, the construction and design of the Facility, as well as the environmental conditions under which Whinstone operated the Facility. SBI contends that Whinstone's acts and omissions led to the delay in SBI's mining operations, and caused underperformance of SBI's mining equipment and physical damage to its equipment.

On November 17, 2023, SBI served its first set of written discovery requests on Whinstone (SBI's "Requests"). A true and correct copy of the Requests is attached hereto as **Exhibit B**. Consistent with its allegations and causes of action, SBI requested information and documents related to (1) the historic and periodic power capacity Whinstone delivered to customers at the Facility; (2) the permits and certifications for construction and operations at the Facility; (3) the design, as-built construction schedules, blueprints, plans and internal configuration of the Facility; (4) the installation,

operation, and maintenance of miners at the Facility; and (5) monitoring and maintenance of environmental conditions such as heat and dust abatement at the Facility.

The information sought is plainly relevant to SBI's allegations that Whinstone misrepresented certain physical characteristics of the Facility and failed to perform its obligations under the terms of the Agreement. Further, many of the documents responsive to the Requests would be reasonably expected to be produced pursuant to the claims and defenses in this case. Indeed, Whinstone's Rule 26 disclosures state that it would produce "[d]ocuments evidencing the construction of [its] Bitcoin mining data center in Rockdale, Texas." A true and correct copy of Whinstone's Initial Disclosures are attached hereto as **Exhibit A**.

On December 22, 2023, Whinstone served its Responses to SBI's Requests. A true and correct copy of Whinstone's Responses to SBI's Requests for Production is attached hereto as **Exhibit B**. A true and correct copy of Whinstone's Answers to SBI's Interrogatories are attached hereto as **Exhibit C**. In response to many of SBI's Requests, Whinstone improperly attempts to limit the scope of its production to exclude topics squarely at issue in this lawsuit, arguing that its production should be limited to certain buildings and equipment because (1) SBI's equipment was only ever housed in Building B (or Building 2) at the Facility and (2) information related to other buildings and other customers is not relevant to SBI's claims or Whinstone's defenses.

On Monday, September 16, 2024, the parties held a discovery conference with the Court. At the conference, Whinstone erroneously claimed that it had valid objections based, in part, on the factually unsupported assertion that SBI's equipment was only operated in a single building, Building B. Whinstone's assertion is contrary to

communications and documents produced in this case and should be rejected as a factual basis for limiting SBI's discovery requests as outlined below.

## I. ARGUMENT AND AUTHORITIES

Federal Rule of Civil Procedure 37(a)(2)(B) and (3) empowers the Court to compel the production of documents and complete responses to interrogatories upon this Motion by SBI.

Federal Rule of Civil Procedure 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b). Discoverable information is not limited to admissible evidence, but includes anything "reasonably calculated to lead to the discovery of admissible evidence." See *Crosby v. La Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The scope of discovery is broad. *Id.*

A discovery request is relevant when the request seeks admissible evidence or "is reasonably calculated to lead to the discovery of admissible evidence." *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004). Rule 37 (a), Fed. R. Civ. P., provides that if a party fails to answer an interrogatory or produce requested documents, the discovering party may move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a)(3). An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). The party resisting discovery must show how each discovery request is not relevant or otherwise objectionable. See *McLeod, Alexander, Powell & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

**A. The Court should reject Whinstone's effort to improperly limit the scope of relevant discovery.**

In its Responses to SBI's Requests, Whinstone has objected to the relevance of information related to the operation, maintenance, and provision of power to the Facility as whole, and instead limited its production to documents solely related to SBI's equipment, the building purportedly housing SBI's equipment, and the specific power made available to SBI. Specifically, Whinstone seeks to limit the scope of its responses and production to the following categories of Requests:

- **Power Requests**: In response to Request for Production Nos. 19, 21, 22, 27, 28, and 29, which relate to the power capacity at the facility and the amounts of power made available to customers at the Facility, Whinstone generally objected that the Requests seek information that "do[es] not have a tendency to make SBI's allegations more or less probable," and either stated that it would "limit the Request to concern documents related to the amount of power provided to SBI" or failed to state that whether it would produce any responsive documents.

- **Permit Requests**: In response to Requests for Production Nos. 27, 28, 40, and 41, and Interrogatory No. 4, which relate to permits obtained by Whinstone to operate the Facility, Whinstone generally objected that permits "for buildings that did not house SBI's equipment do not have a tendency to make SBI's allegation more or less probable," and stated that it would "limit the Request [or Interrogatory] to concern the buildings that housed SBI's equipment only."

- **Design, Construction, Build-Out/Layout Requests**: In response to Request for Production Nos. 42, 44, 45, and 60, which related to the design, construction, and build-out of the Facility and the layout of the warehouses, Whinstone generally objected that the design and construction for buildings that did not house SBI's equipment do not have a tendency to make SBI's allegations more or less probable," and stated that it would "limit the Request to concern the buildings that housed SBI's equipment only."

- **Environmental Requests**: In response to Request for Production Nos. 72, 78, and 79, which related to Whinstone's efforts regarding dust/dirt and temperature control, Whinstone generally objected that "[d]ocuments concerning [the condition of buildings or] temperature control for buildings that housed third-parties' equipment do not have a tendency to make SBI's allegations more or less probable," and stated that it would "limit the Request . . . to the buildings that housed SBI's equipment only."

As stated above, Whinstone's objections are founded on its assertions that (1) SBI's equipment was only ever housed in Building B (or Building 2) at the Facility and (2) information related to other buildings and other customers is not relevant to SBI's claims or Whinstone's defenses. Though neither assertion is true or supported by affidavit, Whinstone continues to represent to the Court that it has a valid basis to exclude information related to Building A (or Building 1) from discovery. To the extent it even raised a valid objection to producing responsive documents that relate in any way to Building A, Whinstone's objections should be overruled.

First, Whinstone's representation that SBI's equipment was only ever housed in Building B is contrary to communications between the parties, which show that Whinstone housed and operated SBI's miners in both Buildings A and B. A true and correct copy of relevant emails are attached hereto as **Exhibit D**. For example, on June 5, 2020, SBI communicated to Whinstone: "Can you provide [SBI] a short update here via email of where we are at getting the few miners we have only in building [A]? Whinstone responded, "… We will be powering up a first section Friday afternoon and then we will ***add more miners in building A next week***." SBIC0001910, Exhibit D (emphasis added). That statement is consistent with a prior email from Whinstone to SBI on April 23, 2020, which references the "setup of a temporary powered work area" for "identifying potential issues with any miners prior to the ramp up period." SBIC0000154, Exhibit D.

Second, the Agreement between the parties expressly provided for the availability of at least two buildings (Buildings A and B) for use by SBI's equipment. *See* Agreement, 2.1.1 [Whinstone will provide an installation environment for the Customer Equipment, including, but not limited to, the Licensed Area in two buildings . . . .] [Dkt. 10]. SBI

specifically alleges that Whinstone falsely represented to SBI in the Hosting Services Agreement that it would provide an installation environment for SBI's Equipment, including but not limited to specific "Licensed Areas" in two separate buildings as well as rack systems, electricity supply (including a power distribution unit), transforming equipment, free airflow, and an evaporative-cooling system. But despite its contractual representations, Whinstone failed to provide the separate buildings, adequate rack systems, and electricity supply. [Dkt. 11, ¶ 36].

Because documents produced in this case create, at the very least, an issue about where SBI's miners were operating in the summer of 2020, discovery related to Building A is more than relevant—it is necessary. And, because the documents show that SBI's equipment was indeed housed in Building A, Whinstone's objection that it "will limit the Request to concern the ***buildings that housed SBI's equipment only***," (emphasis added), is not actually an objection to producing documents regarding Building A. Whinstone has already agreed to produce documents related to the buildings in which SBI's equipment was housed. Therefore, Whinstone objection should be construed as a bar to discovery related to Building A and Whinstone should be compelled to produce documents responsive to all Requests in which it has stated it would otherwise limit its production to "buildings that housed SBI's equipment only."

Even if the Court disregards the parties' communications regarding the multi-locations of SBI's equipment and concludes that Whinstone has a valid basis to not produce documents regarding Building A, Whinstone's objection should still be overruled because the particular categories of information related to the entire Facility are nonetheless, highly relevant to SBI's claims and Whinstone's defenses in this lawsuit. For example, one of SBI's central allegations in this case is that Whinstone falsely represented

in the Agreement that it had "secured for commercial access up to one (1) gigawatt of aggregated electricity that can be delivered to the Data Center, of which a portion of that may be incrementally offered to [SBI]." [Dkt. 11, ¶ 22-25]. SBI should therefore be allowed discovery related to the overall capability and actual deliverability of power to the Facility, as well as how much power was delivered to other customers during the relevant time period.

Despite the Facility's *overall* power capacity and the power made available to all customers being relevant to one of SBI's central claims, Whinstone has expressly refused to provide information related to Building A or information related to the power delivered to other customers. In response to Request for Production Nos. 19, 21, 22, 27, 28, 29, Whinstone objects to providing information or documents related to power provided to any other customer. As described above, SBI's allegations concern Whinstone's representations concerning the power capacity of the Facility as a whole. Specifically, SBI alleges that it was induced into entering into the agreement based on Whinstone's express representation that it had secured one (1) gigawatt of electricity for the Facility. [Dkt. 11 ¶¶ 22-25].

Similarly, whether Whinstone misrepresented that the Facility held the necessary permits is a specific allegation in support of SBI's fraud and breach of contract claims. [Dkt. 11 ¶¶ 12-14, 28-29, 48, 70 & 78]. Permits relating to whether the Facility could provide sufficient water for water curtains, for example, would likely be related to the entire facility, not just Building B. However, in response to Request for Production Nos. 37, 38, 40, 41, and Interrogatory No. 4. Whinstone stated that it "will limit the Request to concern the buildings that housed SBI's equipment only." Whinstone should not be

allowed to unilaterally foreclose discovery regarding Building A when it is plainly relevant to SBI's claims and allegations and supported by evidence produced in this case.

Further, Whinstone has argued that it was only obligated to provide its "best efforts" with regard to certain provisions under the Agreement. To the extent Whinstone was able, for example, to provide heat and dust abatement to other customers' equipment, including in Building A, such information is relevant to whether Whinstone met its purported "best efforts" obligations. In other words, Whinstone's ability to provide adequate heat and dust abatement to other customers, is directly relevant to whether it used its best efforts to service SBI's equipment. In fact, information related to the environmental quality of other buildings at the Facility could very well bolster Whinstone's defense that it was providing environmental services at a professional industry standard.

For these forgoing reasons, Whinstone's objections to Request for Production Nos. 19, 21, 22, 27, 28, 29, 37, 38, 40, 41, 42, 44, 45, 60, 72, 78, 79, 81, 82, and Interrogatory No. 4, should be overruled and Whinstone should be compelled to produce responsive documents and information.

**B. Whinstone's inability to produce any responsive construction documents for Building B only underscore SBI's need for information related to the entire Facility.**

Documents and communications related to the construction and operation of the Facility as a whole are plainly relevant to SBI's allegations. They tend to show whether Whinstone designed and constructed its datacenter to industry standards and that the Facility was capable of housing and operating cryptocurrency miners at the level that Whinstone represented. Moreover, representations made to other customers regarding the provision of power, design, construction, and maintenance of the Facility are highly

relevant to SBI's allegations that Whinstone knowingly made false representations concerning these topics to SBI.

Whinstone, however, has failed to produce certain basic documents, such as the as-built design, construction, build-out, or layout of any building, including Building B. Last week, for the first time since serving its Request *last November*, Whinstone admitted that it does not possess any as-built construction drawings or layouts for Building B. By failing to provide such documents and information, Whinstone is unfairly depriving SBI of the opportunity to test the veracity of Whinstone's representations to SBI or determine the scope of Whinstone's concealment of material information regarding the Facility.

Upon information and belief, Buildings A and B are substantially similar in construction and design. Whinstone should not be allowed to withhold relevant construction documents related to Building A if those documents are the only evidence as to the construction and design of the Facility and Whinstone should be compelled to produce documents relevant to Building A, accordingly.

## REQUEST FOR RELIEF

Plaintiff SBI Crypto Co., Ltd. moves the Court to issue an order compelling Defendant Whinstone US, Inc. to provide a full and complete answer to Interrogatory No. 4 and that Whinstone be ordered to produce the documents responsive to Request for Production Nos. 19, 21, 22, 27, 28, 29, 37, 38, 40, 41, 42, 44, 45, 60, 72, 78, 79, 81, 82, within seven (7) days of the Court order. SBI further requests that it be awarded such other and further relief to which it may justly be entitled to receive.

Respectfully submitted,

By: */s/ Joshua M. Sandler*
Joshua M. Sandler
Texas Bar No. 24053680
jsandler@winstead.com
Cory Johnson
Texas Bar No. 24046162
cjohnson@winstead.com
Matthew Hines
Texas Bar No. 24120892
mhines@winstead.com
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF
SBI CRYPTO CO. LTD**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure via the court's e-filing system on September 23, 2024.

*/s/ Joshua M. Sandler*
Joshua M. Sandler