IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

SBI CRYPTO CO., LTD.,

       Plaintiff,

v.

WHINSTONE US, INC.,

       Defendant.

No. 6:23-CV-252

**DEFENDANT WHINSTONE US INC.'S MOTION TO COMPEL**[1]

Pursuant to Federal Rules of Civil Procedure 37, Defendant Whinstone US, Inc. ("Whinstone") files Motion to Compel against Plaintiff SBI Crypto Co. Ltd.'s ("SBI") and asks the Court to overrule SBI's objections and order SBI to produce certain email communications that SBI is withholding, improperly claiming privilege.

## I.    SUMMARY OF ARGUMENT

During the hearing ("Hearing") on September 16, 2024, the Court ruled that communications between former SBI employees were likely not privileged. Despite that ruling, SBI still refuses to produce those emails and/or to produce a privilege log. Email (Sept. 19, 2024), attached as Exhibit 1. Therefore, Whinstone files this motion to compel the production of these improperly withheld communications.

## II.    BACKGROUND

On April 5, 2023, SBI—almost two years after Whinstone terminated the hosting agreement ("Hosting Agreement") to mine cryptocurrency at Whinstone's facility ("Facility")

---

[1] Whinstone will be filing a separate response to Plaintiffs' Motion to Compel (ECF # 44) and move for a protective order.

located in Rockdale, Texas—sued Whinstone. Compl. (Apr. 5, 2023) (ECF # 1). SBI does not dispute the validity of that termination. *Id.* Instead, the crux of SBI's allegations is that Whinstone fraudulently induced SBI into entering into the Hosting Agreement and breached or fraudulently performed the Hosting Agreement by:

- Misrepresenting the Facility's power capacity. *E.g.*, Am. Compl. (Jul. 7, 2023) ¶¶ 12, 14, 19, 23 (ECF # 11);

- Misrepresenting that no building permits, city inspections, and certifications were required to construct and operate the Facility. *Id.* ¶¶ 12-14, 28-29, 38;

- Concealing the environmental conditions at the Facility. *Id.* ¶¶ 13, 35-36, 41; and

- Failing to install and operate an evaporative cooling system. *Id.* ¶¶ 36-38.

As a result of the foregoing, SBI claims that Building B's construction was delayed, and its cryptocurrency mining equipment did not operate as intended and/or was damaged—which caused SBI to lose more than $15 million in lost profits and incur at least $16 million in equipment damage. *Id.* ¶¶ 14-15, 27-28, 59-60.

On August 22, 2023, Whinstone served discovery on SBI to understand the factual bases of those allegations. Whinstone Req. Prod., attached as Exhibit 2. In so doing, Whinstone asked SBI to produce communications regarding:

- The performance, alleged breaches, and termination of the Hosting Agreement. *Id.* at Req. Prod. Nos. 4-6;

- SBI providing notice of any breach of the Hosting Agreement. *Id*. at Req. Prod. No. 7;

- The amount of power provided to SBI at the Facility. *Id*. at Req. Prod. Nos. 9-10;

- The type, performance, and maintenance of SBI's cryptocurrency mining equipment at the Facility. *Id.* at Req. Prod. Nos. 11-12, 14, 19.

- Evidence supporting various contentions in SBI's Amended Complaint. *Id.* at Req. Prod. Nos. 21-128.

**WHINSTONE'S MOTION TO COMPEL**                                             2

SBI responded to the discovery on October 5, 2023, asserting boilerplate, general objections and generally agreed to produce responsive documents. *See generally* Req. Prod. Resp., attached as Exhibit 3.

During Jonathan Tanemori's deposition, SBI's former General Manager, on August 15, 2024, he testified as follows:

> Q. Since you left SBI, have you had other conversations with Carson Smith about this lawsuit?
>
> A. Yes, we've . . .
>
> Q. When did those happen?
>
> A. Planned two or three occasions.
>
> . . .
>
> Q. Have you exchanged written communications with Carson Smith since you left SBI?
>
> A. We've—there's an email chain that we have requested—me asking him a few questions about, you know, when did this happen or that. But not—you know.
>
> Q. Have you provided that email chain to your lawyers?
>
> A. No, I haven't.
>
> Q. Do you still have it available?
>
> A. It would be available.

J. Tanemori Dep. Tr. (Aug. 15, 2024) at 64:15-19, 65:2-12, attached as Exhibit 4.

In August and September 2024, Whinstone made a good faith attempt to meet and confer with SBI to produce these improperly withheld communications—or, at a minimum, to provide a privilege log. Ex. 1; Email (Aug. 28, 2024), attached as Exhibit 5. SBI refused to do so—even going so far as refusing to affirmatively state whether an attorney was on the withheld emails. *Id.*

### III.    LEGAL STANDARD

When a party fails to produce responsive documents, the other party may move to compel

the production of those documents. Fed. R. Civ. Proc. 37(a)(3)(B)(iv). When responding to discovery, objections must be specifically asserted. Fed. R. Civ. Proc. 33(b)(4), 34(b)(2)(B). Otherwise, the objection is waived and/or invalid Fed. R. Civ. Proc. 33(b)(4); *Phillips v. Murphy Oil USA, Inc.*, No. EP-23-CV-00294-KC, 2024 WL 677711, at *2 (W.D. Tex. Feb. 12, 2024). Furthermore, "general, generic objections" that are included in a preliminary section of discovery responses and incorporated into each discovery response "violate the Federal Rules and are invalid." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014).

## IV.    ARGUMENTS & AUTHORITIES

SBI—by "provid[ing] sufficient facts by way of detailed affidavits or other evidence"—has the burden to prove the withheld emails between its former employees are privileged. *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004). SBI has not and cannot provide any evidence to meet its burden.[2]

"'The attorney-client privilege shields confidential communications between an attorney and client made for the purpose of furnishing or obtaining professional legal advice and assistance.'" *Sedtal v. Genuine Parts Co.*, No. 1:08-CV-413-TH, 2009 WL 10676766, at *2 (E.D. Tex. May 19, 2009). An attorney's communications with a former employee can be privileged if: "(1) if the communication relates to knowledge obtained or conduct that occurred during the course of the former employee's employment; or (2) if the communication concerns conversations which were themselves privileged and which occurred during the employment relationship." *Id.* And to the extent an attorneys' communications are discussed amongst non-attorneys, privilege only extends to those communications if the non-attorneys are "client representatives" that: "(1) had the

---

[2] SBI's general, boilerplate objections and incorporation of general objections in response to Whinstone's discovery requests are improper. *Heller*, 303 F.R.D. at 483; *George-Botros v. Sun Life Assurance Co. of Canada*, No. 3:16-CV-1264-C, 2017 WL 3730585, at *3 (N.D. Tex. Mar. 23, 2017).

**WHINSTONE'S MOTION TO COMPEL**                                        4

authority to obtain professional legal services on behalf of the client; (2) had authority to act on legal advice rendered to the client; or (3) made or received the confidential communication while acting within the scope of his employment for the purpose of effectuating legal representation to the client." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 475 (N.D. Tex. 2004).

Here, SBI claims that the withheld emails are privileged because Messrs. Tanemori and Smith are SBI "client representatives." Ex. 1. But, in so doing, SBI only offers "general allegation[s] of privilege" in support—which is "insufficient to meet [its] burden." *Navigant*, 220 F.R.D. at 475. SBI is required to submit a detailed affidavit that these former employees had authority to act on behalf of SBI or received communications "while acting within the scope of [their] employment." *Id*. But SBI cannot offer such an affidavit for the reasoning offered by the Northern District of Illinois in *Clark Equip. Co. v. Lift Parts Mfg. Co., Inc.*:

> "Former employees are not the client. They share no identity of interest in the outcome of the litigation. Their willingness to provide information is unrelated to the directions of their former corporate superiors, and they have no duty to their former employer to provide such information. It is virtually impossible to distinguish the position of a former employee from any other third party who might have pertinent information about one or more corporate parties to a lawsuit. Thus, this Court holds that post-employment communications with former employees are not within the scope of the attorney-client privilege."

No. 82 C 4585, 1985 WL 2917, at *5 (N.D. Ill. Oct. 1, 1985). The Court should overrule SBI's objections and order SBI to produce the withheld communications.

## V.    CONCLUSION

Whinstone respectfully requests that the Court should overrule SBI's objections and compel the production of the withheld emails within five days of the Court's order, and award Whinstone all such other relief to which it is entitled.

Respectfully submitted,

FOLEY & LARDNER LLP

By:    /s/ Robert T. Slovak
      Robert T. Slovak
      Texas Bar No. 24013523
      rslovak@foley.com
      Brandon C. Marx
      Texas Bar No. 24098046
      bmarx@foley.com
      2021 McKinney, Suite 1600
      Dallas, Texas 75201
      Telephone: (214) 999-3000
      Facsimile: (214) 999-4667

      **ATTORNEYS FOR DEFENDANT**
      **WHINSTONE U.S. INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2024, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Brandon C. Marx
Brandon C. Marx

## CERTIFICATE OF CONFERENCE

I hereby certify that on at least August 28, 2024 and September 19, 2024, I made a good faith attempt to confer with SBI's counsel regarding the relief requested herein and we could not come to an agreement.

/s/ Brandon C. Marx
Brandon C. Marx