IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD.,<br><br>      Plaintiff,<br><br>  v.<br><br>WHINSTONE US, INC.,<br><br>      Defendant. | No. 6:23-CV-252 |

## DEFENDANT WHINSTONE US INC.'S MOTION FOR PROTECTIVE ORDER AND RESPONSE TO PLAINTIFF SBI CRYPTO CO., LTD.'S MOTION TO COMPEL

Pursuant to Federal Rules of Civil Procedure 26 and 37, Defendant Whinstone US, Inc. ("Whinstone") files this Motion for Protective Order and Response to Plaintiff SBI Crypto Co. LTD.'s ("SBI") Motion to Compel and asks the Court to: (1) sustain Whinstone's objections and enter a protective order to limit the scope of SBI's discovery to Whinstone and subpoenas (the "Subpoenas") to Lancium, LLC ("Lancium") and GMO Gamecenter USA, Inc. and GMO Internet Group, Inc. (together, "GMO");[1] and (2) deny SBI's motion to compel (ECF # 44).

## I. SUMMARY OF ARGUMENT

SBI improperly moves to compel discovery from Whinstone and to subpoena information from third parties regarding the entirety of Whinstone's cryptocurrency mining facility ("Facility") located in Rockdale, Texas, which includes: (1) power usage and operations; (2) construction drawings; and (3) all documents and information exchanged and produced between and among Whinstone and third parties, including in litigation with some of these parties over separate contracts. SBI's discovery is improper for several reasons.

---

[1] GMO Internet Group Subpoena, attached as Exhibit 1; GMO Gamecenter Subpoena, attached as Exhibit 2; Lancium Subpoena, attached as Exhibit 3.

GMO is in Japan, and SBI improperly attempts to serve GMO's attorneys from a separate litigation in New York. SBI cannot shirk international law and service of process requirements by serving GMO's attorneys in New York. *Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968); *Ferrara v. 4JLJ, LLC*, No. 2:15-CV-182, 2016 WL 4800891, at *1 (S.D. Tex. Sept. 14, 2016); *Fujikura Ltd. v. Finisar Corp.*, No. 15MC80110HRLJSC, 2015 WL 5782351, at *7 (N.D. Cal. Oct. 5, 2015). On that basis alone a protective order should issue on the GMO Subpoenas.

Second, to support its fishing expedition, SBI claims it operated at Building A in the Facility. It did not. SBI offers no evidence in support of this claim—only speculation. Indeed, SBI's former Chief Executive Officer Carson Smith already testified SBI's miners were located in Building B. C. Smith Dep. Tr. (Aug. 21, 2024) at 232:18-24, attached as Exhibit 4. Whinstone repeatedly communicated this to SBI's counsel. Email (Sept. 19, 2024), attached as Exhibit 5. SBI's counsel refused to accept counsel's affirmation, instead responding with unfounded claims and demanding evidence to the contrary. Whinstone offers that evidence now.

As the Court recognized at the hearing ("Hearing") on September 16, 2024, discovery regarding the mining operations at Facility buildings other than Building B (*i.e.*, the sole building SBI's miners were operated) should not be permitted. Despite that ruling and Whinstone's counsel's representations, SBI still seeks discovery regarding Building A from Whinstone, Lancium, and GMO. Exs. 1-3, 5. SBI also improperly seeks communications with third parties claiming statements to third parties demonstrate a pattern to support claims of misrepresentations made to SBI—even going so far as to request every document produced in discovery in unrelated litigation.[2]  SBI fails to cite to a single case to support discovery for these irrelevant topics, and the case law shows this discovery is improper.

---

[2] Ex. 1 at Req. Prod. No. 7; Ex. 2 at Req. Prod. No. 7.

**WHINSTONE'S MOTION FOR PROCTECTIVE ORDER AND**
**RESPONSE TO MOTION TO COMPEL**                                              **2**

For these reasons, the Court should sustain Whinstone's objections, grant Whinstone's motion for protection to preclude the issuance of the GMO Subpoenas *in toto* and limit the scope of the Lancium Subpoena to Building B and to SBI only. The Court should also deny SBI's motion to compel and award Whinstone its reasonable attorneys' fees incurred with this briefing.[3]

## II.    BACKGROUND

### A.  The only relevant information concerns Building B—which the Court has already ruled.

Whinstone owns and operates the Facility, which SBI utilized pursuant to a hosting agreement ("Hosting Agreement"). There are currently seven buildings at the Facility. D. Schatz Decl. ¶¶ 3-4, attached as Exhibit 6. Four of those buildings were constructed after the SBI Hosting Agreement was executed. *Id.* SBI operated only in Building B at the Facility. *Id.* The other buildings are or were used by other of Whinstone's customers. *See id.* Building B is the only Facility building relevant to this dispute.

As detailed above, despite the Court's ruling to that effect during the Hearing, SBI still seeks discovery regarding Building A from Whinstone, Lancium, and GMO, improperly asserting that it conducted mining operations there. Ex. 5. It did not. To support this inaccurate assertion, SBI cites to several emails and mischaracterize their import. As those emails corroborate, a handful of SBI's miners were tested in Building A during June 2020 in preparation for their use in Building A. A. Harris Decl. ¶ 3, attached as Exhibit 7. In July 2020, Whinstone installed SBI's miners in a portion of Building B. Ex. 1 at 232:18-24; Ex. 6 ¶ 4. Carson Smith confirmed this. Ex. 4. Whinstone reminded SBI of these facts. Ex. 5. Whinstone also repeatedly told SBI that no building or other permits, city inspection, or certifications were required to construct the Facility and that Whinstone could not locate, but eventually confirmed, there are no "as built" drawings or

---

[3] Whinstone will prove up its fees in a subsequent fee application.

constructions schedules for Building B (or "as built" drawings for Building A as Whinstone's counsel learned).[4] Ex. 5; Ex. 6 ¶¶ 6-7. Whinstone already produced its power agreement with TXU for the Facility. The amount of power provided to other Facility customers is irrelevant. If SBI really wants to examine the characteristics of Building B at the Facility—it can serve a request for inspection. It has not. SBI instead filed the motion to compel.

**B. SBI's allegations concern Whinstone's performance of the Hosting Agreement alone.**

On April 5, 2023, SBI—almost two years after Whinstone terminated the Hosting Agreement—sued Whinstone. Compl. (Apr. 5, 2023) (ECF # 1). SBI does not dispute the validity of that termination. *Id.* Instead, the crux of SBI's allegations is that Whinstone fraudulently induced SBI into entering into the Hosting Agreement and breached or fraudulently performed the Hosting Agreement by:

- Misrepresenting to SBI the Facility's power capacity. *E.g.*, Am. Compl. (Jul. 7, 2023) ¶¶ 12, 14, 19, 23 (ECF # 11);

- Misrepresenting to SBI that no building permits, city inspections, and certifications were required to construct and operate the Facility. *Id.* ¶¶ 12-14, 28-29, 38;

- Concealing from SBI the environmental conditions at the Facility. *Id.* ¶¶ 13, 35-36, 41; and

- Failing to install and operate an evaporative cooling system in Building B. *Id.* ¶¶ 36-38.

As a result of the foregoing, SBI claims that Building B's construction was delayed, and its cryptocurrency mining equipment did not operate as intended and/or was damaged—which caused SBI to lose more than $15 million in lost profits and incur at least $16 million in equipment damage. *Id.* ¶¶ 14-15, 27-28, 59-60.

---

[4] Whinstone has produced a few of the construction schedules for Building A that is in its possession, custody, or control.

**WHINSTONE'S MOTION FOR PROCTECTIVE ORDER AND RESPONSE TO MOTION TO COMPEL** **4**

**C. SBI seeks overbroad and irrelevant discovery that is not proportional to the needs of the case.**

Although its allegations clearly concern its contract with Whinstone, its operations in Building B and alleged statements of Whinstone to SBI, on November 17, 2023, SBI served wildly overbroad discovery that sought information regarding the entire Facility and other Whinstone customers. *E.g.*, SBI Req. Prod. at Nos. 19, 27, 35, 42, attached as Exhibit 8; Interrog. at Nos. 2-3, 5, 9, attached as Exhibit 9.

In response, Whinstone specifically objected that SBI's discovery was overbroad and sought information not relevant to a claim or defense in the case:

> <u>REQUEST NO. 19:</u> All documents related to Power Capacity at the Rockdale Facility, including, but not limited to, power purchase agreements and other documents describing power purchase amounts, installation dates for step-down transformers, and when certain amounts of power were available to Whinstone and its Customers at the Rockdale Facility.
>
> **RESPONSE:** Whinstone objects to the Request as being overbroad and seeking information that is not relevant to any claim or defense in this litigation. SBI has claimed that it was defrauded by Whinstone when entering into the specific hosting agreement in this case and Whinstone breached that same contract. Documents related to the amounts of power available to third-parties do not have a tendency to make SBI's allegations more or less probable. Whinstone will limit the Request to concern documents related to the amount of power provided to SBI. Whinstone objects to the Request to the extent it seeks the production of attorney-client privileged information and attorney work-product.
>
> Subject to the foregoing objections to definitions and instructions and specific objections, Whinstone will produce non-privileged responsive documents on a rolling basis. To the extent there are privileged documents and communications, Whinstone will be withholding them.

*E.g.*, Whinstone Resp. Req. Prod. at No. 19, attached as Exhibit 10, Whinstone Resp. Interrog. at No. 3, attached as Exhibit 11.

Separately, on September 6, 2024, SBI provided notice of its intent to issue subpoenas to Lancium and GMO, seeking not just information concerning the entire Facility but also all documents produced in GMO's **breach of contract** lawsuit[5] against Whinstone and Whinstone's

---

[5] GMO's only claim against Whinstone is for breach of its hosting agreement. *See* Fourth Am. Compl. (Oct. 19, 2023) at Cause of Action (Breach of Contract) (ECF No. 106), *GMO Gamecenter USA, Inc., et al., v. Whinstone US, Inc.*, Case No. 1:22-cv-05974-JPC-KHP, in the United States District Court for the Southern District of New York.

performance of its contracts with GMO:

> 7.  All Documents and Communications exchanged between You and Whinstone as part of discovery in the GMO Lawsuit that pertain to Whinstone's performance of the obligations pursuant to the colocation agreement(s) with You, including but not limited to those Documents and Communications concerning the conditions at the Rockdale Facility, the supply of power at the Rockdale Facility, and any sharing of profits from power sales, shutdowns, or curtailments pursuant to ERCOT demand respond or load resource programs, agreements with power providers, or otherwise.

> 12.  All Documents and Communications related to Whinstone's performance of its obligations pursuant to its colocation agreement(s) with You.

*E.g.,* Ex. 1 Req. Prod. Nos. 7, 12; Ex. 2 at Req. Prod. Nos. 7, 12; *see also, e.g.*, Ex. 3 at Req. Prod. Nos. 4-5, 7.

Whinstone's counsel repeatedly met and conferred in good faith with SBI's counsel regarding the scope of these subpoenas, including by reiterating that SBI's miners only operated out of Building B at the Facility. *See, e.g.,* Ex. 5. However, SBI continued to demand discovery beyond Building B regarding all matter of operational detail and communications with third parties, and despite the Court's ruling at the Hearing. *Id.*

## III.    LEGAL STANDARD

Rule 26 provides that a party may obtain discovery that is relevant to a claim or defense when that discovery is proportional to the needs of the case. *See* Fed. R. Civ. Proc. 26(b)(1). A party has "standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery" when subpoenas are issued to non-parties. *Hirsch v. USHealth Advisors, LLC*, No. 4:18-CV-245-P, 2020 WL 1271588, at *2 (N.D. Tex. Feb. 14, 2020) (citing Federal Rule of Civil Procedure 26(c)), *aff'd*, No. 4:18-CV-00245-P, 2020 WL 1271374 (N.D. Tex. Mar. 12, 2020). In so doing, attorneys' fees may be awarded if successful. Fed. R. Civ. Proc. 26(c)(3), 37(a)(5).

## IV.    ARGUMENTS & AUTHORITIES

### A.  The GMO Subpoenas are patently improper.

The Fifth Circuit holds that service of a subpoena on an attorney violates the Federal Rules of Civil Procedure. *Harrison*, 404 F.2d at 273; *Ferrara*, 2016 WL 4800891, at *1. Service of the GMO Subpoenas must occur on GMO. *Id.* Moreover, SBI must comply with the U.S.-Japan Consular Convention—which it has not done. *Fujikura*, 2015 WL 5782351, at *7. SBI cannot usurp Japanese sovereignty. A protective order should issue to preclude the GMO Subpoenas to be issued *in toto*.

### B.  The Court limit discovery to Building B and SBI only.

SBI's attempt to obtain discovery regarding other Facility buildings and Whinstone's performance of contracts with other Facility customers is overbroad, seeks irrelevant information, and not proportional to the needs of the case.

First, this is primarily a breach of contract case—the contract between Whinstone and SBI. While SBI has brought claims for fraud, the Hosting Agreement contains an entire agreement clause:

## 17.  ENTIRE AGREEMENT

17.1.  This Agreement constitutes the entire understanding between the parties concerning the subject matter of the Agreement and supersedes any previous agreement or understanding between the parties in relation to the subject matter.

17.2.  With effect from the date of this Agreement all Services shall be provided solely in accordance with the terms of this Agreement and all prior agreements and understandings between the parties in relation to the same shall be deemed terminated from the date hereof. Save in respect of rights and liabilities arising prior to such date, all such prior agreements and understandings shall cease to be of effect from the date of signature of this Agreement. In no event shall the pre-printed terms and conditions found on any Customer purchase order, acknowledgement, or other form be considered an amendment or modification of this Agreement, even if such documents are signed by representatives of both parties; such pre-printed terms and conditions shall be null and void and of no force and effect.

Hosting Agmt. (Jun. 16, 2023) (ECF # 10). Meaning, the only relevant evidence regarding fraud

is whether Whinstone—prior to executing the Hosting Agreement on October 24, 2019—had any intention to perform the Hosting Agreement. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) ("'As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. However, when one enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud.'"). The only relevant discovery regarding Whinstone's conduct after the post-Hosting Agreement was signed is whether Whinstone complied with its contractual obligations ***to SBI***. *Id.* Representations allegedly made to other parties about separate contracts—either before or after the Hosting Agreement was signed—have nothing to do with this case.

Second, Texas federal courts limit discovery to proving or disproving the elements of ***SBI's*** claims—not proving or disproving ***third parties'*** claims. *E.g., BNSF Ry. Co. v. Panhandle N. R.R. LLC*, No. 4:16-CV-01061-O, 2018 WL 4076487, at *2 (N.D. Tex. Jan. 11, 2018) ("Agreements and communications with non-party competitors are unlikely to be relevant to litigation of a contract dispute, as the other contracts would have been negotiated separately, contain different terms, and derive from different underlying circumstances."); *Dizdar v. State Farm Lloyds*, No. 7:14-CV-402, 2015 WL 12780640, at *5 (S.D. Tex. Jan. 21, 2015) ("The Court will not allow Plaintiffs to fish into unrelated third-party matters because that information cannot reasonably support whether *Plaintiffs'* claims were undervalued. Even if Plaintiffs were to establish an ostensible pattern or practice of undervaluation of claims in the Rio Grande Valley, it would not prove that this individual claim was undervalued.") (emphasis in original); *U.S. v. Austin Radiological Ass'n*, No. A-10-CV-914-AWA, 2013 WL 1136668, at *11 (W.D. Tex. Mar. 18, 2013) (holding plaintiff's job performance history at prior employers was irrelevant to proving her retaliation claim against defendant employer), *order clarified sub nom. U.S. ex rel. Simms v. Austin Radiological Ass'n*, 292 F.R.D. 378 (W.D. Tex. 2013). That is because Whinstone's conduct with

**WHINSTONE'S MOTION FOR PROCTECTIVE ORDER AND**
**RESPONSE TO MOTION TO COMPEL**                                                                 **8**

third-parties does not make it more or less probable that Whinstone fraudulently induced SBI into entering the Hosting Agreement or otherwise breached the same.[6] *Id.*

Accordingly, the Court should sustain Whinstone's overbreadth and irrelevance objections to SBI's Interrogatory No. 4 and Request for Production Nos. 19, 21, 22, 27, 28, 29, 37, 38, 40, 41, 42, 44, 45, 60, 72, 78, 79, 81, and 82, grant the motion for protection concerning the Subpoenas as being overly broad, seeking irrelevant information, and not being proportional to the needs of the case, limit the Subpoenas to concern Building B and SBI only, and deny SBI's motion to compel.

## V. CONCLUSION

Whinstone respectfully requests that the Court should sustain Whinstone's objections to SBI's Interrogatory No. 4 and Request for Production Nos. 19, 21, 22, 27, 28, 29, 37, 38, 40, 41, 42, 44, 45, 60, 72, 78, 79, 81, and 82, grant Whinstone's motion for protection to preclude the issuance of the GMO Subpoenas *in toto* and limit the scope of the Lancium Subpoena to Building B and SBI only, deny SBI's motion to compel, award Whinstone its reasonable attorneys' fees incurred with the filing of this briefing, and award Whinstone all such other relief to which it is entitled.

---

[6] The real reason SBI seeks irrelevant information is simple: SBI wants to argue that because Whinstone allegedly acted one way with a third-party then it means that Whinstone acted the same way here. That is improper. Texas federal courts are clear that SBI cannot use "impermissible propensity character evidence" in the form of Whinstone's conduct with third-parties to prove SBI's claims. *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 582 (5th Cir. 2004) ("This testimony is impermissible propensity character evidence because Kanida would use Parks' reaction towards Coates to show that Parks' reacted the same way towards her.") (citing Fed. R. Evid. 404(b)).

**WHINSTONE'S MOTION FOR PROCTECTIVE ORDER AND**
**RESPONSE TO MOTION TO COMPEL**                                                    **9**

Respectfully submitted,

FOLEY & LARDNER LLP

By:    /s/ Robert T. Slovak
        Robert T. Slovak
        Texas Bar No. 24013523
        rslovak@foley.com
        Brandon C. Marx
        Texas Bar No. 24098046
        bmarx@foley.com
        2021 McKinney, Suite 1600
        Dallas, Texas 75201
        Telephone: (214) 999-3000
        Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE U.S. INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2024, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

        /s/ Brandon C. Marx
        Brandon C. Marx

## CERTIFICATE OF CONFERENCE

I hereby certify that on at least August 28, 2024 and September 19, 2024, I made a good faith attempt to confer with SBI's counsel regarding the relief requested herein and we could not come to an agreement.

        /s/ Brandon C. Marx
        Brandon C. Marx