# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**WHINSTONE US, INC.,**<br><br>*Defendant.* | Civil Action No.: 6:23-cv-252 |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL

Plaintiff SBI Crypto Co., Ltd. ("Plaintiff" and/or "SBI") files this Response (the "Response") to the Motion to Compel ("Whinstone's Motion") filed by Defendant Whinstone US, Inc. ("Defendant" and/or "Whinstone").

## I.
## SUMMARY

There at least three reasons why this Court should deny Whinstone's Motion. First, it is untimely. At the September 16, 2024 Zoom conference, the Court specifically ordered Whinstone to file its Motion to Compel within seven (7) days following the aforementioned conference. [Dkt. 43]. Whinstone failed to meet that court-ordered deadline by two days when it filed this Motion on September 25, 2024. Therefore, the Court should deny Whinstone's Motion as untimely.

Second, the Motion seeks to compel the production of email communications between two former SBI employees made nearly one year after this lawsuit's inception. Those communications are privileged. They were made in the former employees' capacities as client representatives for the specific purpose of facilitating the rendition of professional legal services for the client, SBI, which makes them privileged; and

separately, they are communications between former employees related to events that occurred at the time of their employment, which also makes them privileged. In support of their position, Whinstone cites a single case which is contrary to "every federal court to address the issue," which holds that "the privilege extends to former employees in certain contexts," which are applicable to this case.

Third and finally, the communications sought are plainly outside the relevant time scope defined in Whinstone's Request for Productions and, therefore, are not responsive to any request for production propounded by Whinstone. The entire premise of Whinstone's Motion is misguided and wrong and should be summarily denied.

## II.
### BACKGROUND

**A.  Post-employment, SBI agreed to compensate Carson Smith and Jonathan Tanemori to continue their efforts to aid the litigation of this case**

During all times relevant to the facts of this lawsuit, SBI's business operations were managed by Carson Smith (former CEO) and Jonathan (former General Manager). Mr. Smith and Mr. Tanemori have the most first-hand knowledge of SBI's relationship with Whinstone and the facts giving rise to SBI's claims in this lawsuit. Messrs. Smith and Tanemori participated in drafting SBI's responses to Whinstone's discovery requests and are the only SBI employees who communicated with Whinstone. In fact, Messrs. Smith and Tanemori are the only SBI employees identified by either SBI or Whinstone as possessing any relevant or discoverable information regarding this lawsuit.[1]

---

[1] *See* SBI and Whinstone's Initial Disclosures, Section 4(i), respectively. Relevant excerpts from Mr. Smith's Deposition are attached hereto as **Exhibit C**. Relevant excerpts from Mr. Tanemori's Deposition are attached hereto as **Exhibit D**.

Messrs. Smith and Tanemori were still SBI employees when SBI filed suit on April 5, 2023. Mr. Smith left SBI in October 2023 and Mr. Tanemori left SBI in March of 2024. Ex. C, Smith Depo. at 23; Ex. D, Tanemori Depo. at 15. While neither Mr. Smith nor Mr. Tanemori are currently full-time SBI employees, for the reasons articulated above, SBI agreed to continue compensating them for their continued participation and aid in the prosecution of this lawsuit. Ex. C., Smith Depo. at 24:3–10, 24:15–21; Ex. D., Tanemori Depo. at 15:6–16, 43:12–14.

**B.     The Parties dispute whether post-Complaint emails between Messrs. Tanemori and Smith are privileged communications**

During Mr. Tanemori's deposition, Whinstone asked about post-Complaint email communications between Messrs. Tanemori and Smith (the "Post-Complaint Emails"):

> Q. Have you exchanged written communications with Carson Smith since you left SBI?
>
> A. We've -- there's an email chain that we have requested -- me asking him a few questions about, you know, when did this happen or that. But not -- you know.

Tanemori Depo. at 65:2–16.

In a series of emails following Messrs. Tanemori and Smith's depositions, counsel for Whinstone demanded that SBI produce the Post-Complaint Emails or produce a privilege log. In response, counsel for SBI explained that any Post-Complaint Emails in existence between Messrs. Tanemori and Smith were privileged as confidential communications from and between client representatives for the provision of legal services.[2] The Post-Complaint Emails (listed) contain communications related to

---

[2] Counsel for SBI further explained that the E-Discovery Order in this lawsuit expressly states that, "[i]n the event that any privilege log is requested to be produced, the Parties are not required to include any privilege and/or work product information

collecting documents and deposition preparation pursuant to communications with SBI's counsel and are privileged.

| Date | Description | Subject | Privilege |
|---|---|---|---|
| 7.22.24 | Email from Jonathan Tanemori to Airi Okuda (SBI), Nicholas Vitalis (SBI), and Carson Smith | Spreadsheet from Smith | Client representative communications for the provision of legal services; attorney work product. |
| 7.22.24 | Email string btw Jonathan Tanemori to Airi Okuda (SBI), Nicholas Vitalis (SBI), and Carson Smith | Spreadsheet from Smith | Same. |
| 7.29.24 | Email string btw Jonathan Tanemori and Carson Smith | Phone Call | Same. |
| 8.1.24 | Email string btw Jonathan Tanemori, Carson Smith and Nicholas Vitalis (SBI) | Spreadsheet from Smith | Same. |
| 8.9.24 | Email string btw Jonathan Tanemori and Carson Smith | Spreadsheet from Smith | Same. |
| 8.15.24 | Email string between Jonathan Tanemori, Carson Smith and Nicholas Vitalis (SBI) | Deposition | Same. |

On September 16, 2024, pursuant to the Court's Docket Control Order (Dkt. 30), the parties held a Zoom conference (the "Conference") to discuss ongoing discovery disputes. The Court instructed the parties to submit one-page letter briefs outlining their respective requests for discovery relief.[3] In its one-page brief,[4] Whinstone sought (1) to compel production of post-complaint communications between Messrs. Smith and

---

generated after the filing of the Complaint in this lawsuit." [Dkt. 23]. Thus, SBI was not required to make a privilege log for the Post-Complaint Emails at issue.

[3] A true and correct copy of the Court's Clerks Aug. 28, 2024 email is attached hereto as **Exhibit A**.

[4] A true and correct copy of which is attached hereto as **Exhibit B**,

Tanemori, two former employees currently under contract with SBI and (2) to prevent the issuance of certain third-party subpoenas recently served by SBI.

That same day, following the Conference, the Court issued a short text Order [Dkt. 43]. In that Order, the Court stated that "Counsel is further ordered to file a motion to compel ***within seven (7) days***." (emphasis added). On September 23, 2024, seven (7) days after the Court's text order, and pursuant to the time computation rules under Federal Rule of Civil Procedure 6(a), SBI filed its Motion to Compel ("SBI's Motion") based on the affirmative request for relief described in its pre-Conference letter brief. On September 25, 2024, more than seven (7) days after the Court's Text Order, Whinstone filed the instant Motion [Dkt. 46] and a second motion [Dkt. 47], combining its second affirmative request for relief raised at the Conference with its response to SBI's Motion.[5]

### III.
### ARGUMENT AND AUTHORITIES

**A.      Whinstone's Motion is untimely**

As a threshold issue, Whinstone failed to file its Motion in accordance with the Court's Order. The Court's text Order is unequivocal: the parties were required to file motions based on the subject-matter of the Conference within seven (7) days of September 16, 2024. Per Rule 6, which provides that the day of the triggering event is not counted, the seven-day period ended on September 23, 2024. Therefore, Whinstone did not file its Motion within seven (7) days in accordance with the Court's text Order and should be denied for that reason alone.

---

[5] The Motion and Response at issue here concern only Whinstone's first affirmative request for relief related to post-complaint communications. Whinstone's second request presented at the Conference is the subject of a separate Motion for Protective Order. SBI will address Whinstone's second motion separately.

B. **The Post-Complaint Emails are privileged**

1. **The Post-Complaint Emails were made by client representatives for the specific purpose of facilitating the rendition of professional legal services for the client, SBI**

Under the Texas Rule of Evidence, which govern the substantive law of privilege in this diversity-jurisdiction case, "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client." TEX. R. EVID. 503(b); *see In re Avantel, S.A.*, 343 F.3d 311, 323 (5th Cir. 2003). Under Texas law, communications between representatives of a client are protected if they otherwise meet the requirements of the Rule, a lawyer need not be involved in a communication. *In re Stephens Inc.*, 579 S.W.3d 438, 445 (Tex. App.—San Antonio 2019, no pet.) ("This is a very broad privilege as now written."); *see In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 49-50 (Tex. 2012) ("Rule 503(b) protects not only confidential communications between the lawyer and client, but also the discourse among their representatives."); *see also Homeland Ins. Co. of New York v. Clinical Pathology Labs., Inc.*, 643 F. Supp. 3d 675, 682 (W.D. Tex. 2022). A "client representative" is "(A) a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or (B) any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client." TEX. R. EVID. 503(a)(2).

As long as a person is authorized by the client to obtain legal services or act on legal advice on behalf of the client or to make or receive confidential communications with respect to legal services, "that person is a client's representative even if the person is not an employee of the client." *In re Tex. Health Res.*, 472 S.W.3d 895, 904 (Tex. App.—Dallas

2015, no pet.) (concluding that attorney-client privilege was retained where communications involved representatives who were "involved in the decision-making process regarding the defense of the claim"). Here, the sworn testimony from Messrs. Smith and Tanemori's depositions establish that SBI engaged both individuals for the purpose of participating in the prosecution of SBI's claims. Ex. C., Smith Depo. at 24:3–10, 24:15–21; Ex. D., Tanemori Depo. at 15:6–16, 43:12–14. Further, Messrs. Smith and Tanemori are expected to interface with SBI's attorneys regarding confidential information, including sensitive financial data and legal strategy in this lawsuit. While they are no longer "employees," Messrs. Smith and Tanemori have been retained by SBI and given the authority to obtain and act on legal advice on behalf of SBI. *See In re Segner*, 441 S.W.3d 409, 412 (Tex. App.—Dallas 2013, no pet.). Further, the Post-Complaint Emails at issue relate, in part, to Messrs. Smith and Tanemori's communications regarding their interpretation of documents and information in aid of SBI's lawsuit. SBI always intended those communications to be confidential because they were made for the purpose of developing SBI's legal strategy in conjunction with its attorneys.

    **2.    The Post-Complaint Emails are communications between former SBI employees related to events that occurred at the time of their employment**

Although establishing Messrs. Smith and Tanemori's respective statuses as client representatives is alone sufficient for SBI to meet its burden, the Post-Complaint Emails are also independently privileged as communications between former employees relating to information obtained during the course of employment. As Whinstone acknowledged in its Motion, the attorney-client privilege also protects communications involving former employees "(1) if the communication relates to knowledge obtained or conduct that occurred during the course of the former employee's employment; or (2) if the

communication concerns conversations which were themselves privileged and which occurred during the employment relationship." *Sedtal v. Genuine Parts Co.*, 2009 WL 10676766, at *2 (W.D. Tex. 2009).[6] The Post-Complaint Emails at issue contain, in part, communications related to the damages suffered by SBI as a result of Whinstone's conduct, which occurred during Messrs. Smith and Tanemori's employment with SBI. For that reason, the Post-Complaint Emails are privileged under the former employee exception articulated above in *Sedtal*.

"Determining the applicability of the privilege is a highly fact-specific inquiry." *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017). The party asserting the privilege bears the burden of proof. *Id.* Whinstone argues that the Court "ruled" that "communications between former SBI employees were likely not privileged" based on Whinstone's single-page submission to the Court—for which SBI was not required to respond. However, before the Court can determine whether the Post-Complaint Emails are privileged, SBI must have an opportunity to inform the Court of the relevant facts and meet its burden and, if necessary, conduct an *in camera* review. *See Steward by next friend Minor v. Smith*, No. CV SA-10-CA-1025-OG, 2018 WL

---

[6] At least one court in the Fifth Circuit has also recognized a "functional equivalent" extension of *Upjohn*, under which "a client does not waive attorney-client privilege if privileged communications are disclosed to a third party deemed to be the 'functional equivalent' of the client's employee." *In re Roman Catholic Church of Archdiocese of New Orleans*, No. 20-10846, 2024 WL 87499, at *5 (Bankr. E.D. La. Jan. 5, 2024). "[T]o determine whether the "functional equivalent" extension applies to otherwise privileged communications, courts ask whether the third party (i) exercised independent decision-making on the company's behalf; (ii) possessed information held by no one else at the company; (iii) served as a company representative to third parties; (iv) maintained an office at the company or otherwise spent a substantial amount of time working for it; and (v) sought legal advice from corporate counsel to guide his or her work for the company." *Id.* In the case at bar, the relevant factors are substantially similar to those under the former employee exception under *Sedtal*. *See* 2009 WL 10676766, at *2. Under both sets of factors, Mr. Smith and Mr. Tanemori's communications remain privileged.

11361754, at *3 (W.D. Tex. July 31, 2018) (ordering an in-camera review of disputed documents on motion to compel).

Whinstone also mischaracterizes the law regarding SBI's burden. Whinstone cites to *Navigant Consulting, Inc. v. Wilkinson* for the proposition that "SBI is required to submit a detailed affidavit that these former employees had authority to act on behalf of SBI or received communications while acting within the scope of [their] employment." Def. Mtn at 5 (quotations omitted); *see* 220 F.R.D. 467, 475 (N.D. Tex. 2004). But *Navigant Consulting, Inc.* does not require an affidavit, let alone require a party to have produced an affidavit to an opposing party before the parties present their arguments to the court. Instead, the court in *Navigant* states that "[t]he proponent must provide sufficient facts by way of detailed affidavits **_or other evidence_** to enable **_the court_** to determine whether the privilege exists." *Id.* (emphasis added).

Whinstone's repeated suggestion that SBI "cannot" provide sufficient evidence to meet its burden is also unsupported. Whinstone's few citations do not foreclose the possibility of privileged communications between former employees or the possibility that former employees may have privileged communications as client representatives. For example, Whinstone relies on a 1985 case from the Northern District of Illinois, *Clark Equipment Co. v. Lift Parts Manufacturing Co.*, for the proposition that former employees cannot possibly engage in privileged communications. But *Clark Equipment Co.* has zero precedential value and is contrary to Western District of Texas caselaw. *See Sedtal*, 2009 WL 10676766, at *2 (providing limited exceptions to the general rule that former employee communications are not privileged). To be sure, a Louisiana District Court concluded that *Clark Equipment Co.* is contrary to "every federal court to address the issue" which have "held that the privilege extends to former employees in certain

contexts." *Hanover Ins. Co. v. Plaquemines Par. Gov't*, 304 F.R.D. 494, 498 (E.D. La. 2015).

### 3. The communications at issue are plainly outside the relevant time scope defined in Whinstone's Requests for Production

Finally, Whinstone never served SBI with a valid request for the Post-Complaint Emails.[7] Whinstone issued its First Set of Requests for Production on August 22, 2023. Exhibit G at 2. Under the "Definitions and Instructions," Whinstone states that "[u]nless otherwise indicated herein, the relevant timeframe of each request is January 1, 2019 to the present." Exhibit G at 6. Therefore, by Whinstone's own definition, its Requests for Production are limited to communications made between January 1, 2019 and August 22, 2023 (i.e., the time the Requests were served). The Post Complaint Emails are outside the relevant time scope defined in Whinstone's Requests for Production and are consequently, not responsive to any Request which Whinstone could move to compel.

### REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff SBI Crypto Co., Ltd. requests that the Court deny Whinstone's Motion in its entirety. SBI further requests that it be awarded such other and further relief to which it may justly be entitled to receive.

---

[7] As at least one court in the Fifth Circuit has recognized, requests for production are overbroad if they "contemplate the production of post-litigation privileged communications." *See McCord v. State Farm Fire & Cas. Ins. Co.*, No. CIV.A. 06-4998, 2008 WL 1988850, at *3 (E.D. La. May 2, 2008). Other courts in other circuits have come to similar conclusions. *See, e.g.*, *Rainbow Play Sys., Inc. v. Backyard Ventures Mgmt., LLC*, No. CIV 06-4166, 2008 WL 4372978, at *4 (D.S.D. Sept. 22, 2008) (concluding that party "does not need to disclose documents and electronically stored information prepared in anticipation on litigation or as a part their participation in the lawsuit after litigation began. That is a too broad and vague category which invades work product"); *State ex rel. U.S. Fid. & Guar. Co. v. Canady*, 460 S.E.2d 677, 681, 688-91 (W. Va. 1995); *Branford Sav. Bank v. Aetna Cas. Sur. Co.*, No. CV910320831, 1996 WL 526903, at *1 (Conn. Super. Ct. Sept. 6, 1996).

Respectfully submitted,

By: */s/ Joshua M. Sandler*
Joshua M. Sandler
Texas Bar No. 24053680
jsandler@winstead.com
Cory Johnson
Texas Bar No. 24046162
cjohnson@winstead.com
Matthew Hines
Texas Bar No. 24120892
mhines@winstead.com
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF
SBI CRYPTO CO. LTD**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure via the court's e-filing system on October 2, 2024.

*/s/ Joshua M. Sandler*
Joshua M. Sandler