# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**WHINSTONE US, INC.,**<br><br>*Defendant.* | Civil Action No.: 6:23-cv-252 |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Plaintiff SBI Crypto Co., Ltd. ("Plaintiff" and/or "SBI") files this Response (the "Response") to the Motion for Protective Order filed by Defendant Whinstone US, Inc. ("Defendant" and/or "Whinstone").

## I. SUMMARY

Despite the Court's Order that the parties file motions within seven days of the conference held on September 16, 2024 [Dkt. 43], Whinstone filed its Motion for Protective Order on September 25, 2024, two days after the deadline. For that reason alone, Whinstone's motion should be denied.

Yet, irrespective of Whinstone's failure to follow the orders of this Court, the Court should deny the Motion for Protective Order because, first, Whinstone does not have standing to raise service objections in a motion for protective order. Regardless of Whinstone's lack of standing, however, SBI expects any service objections to be waived by GMO Gamecenter USA, Inc. and GMO Internet Group, Inc. (collectively, "GMO"). Second, Whinstone failed to provide evidence demonstrating the need for protection from SBI's third-party discovery due to irrelevance or overbreadth. Third and finally,

Whinstone has no standing to quash, so it has no legal basis to bar the entirety of SBI's subpoenas to GMO.

## II. BACKGROUND

### A. GMO and SBI both operated miners at the Facility at the same time

GMO is a Japanese internet company that has been mining cryptocurrency since 2017. Both GMO and SBI executed their agreements for Whinstone to host their miners at the Facility in Rockdale in October 2019. *Compare* GMO Colocation Agreement, attached hereto as **Exhibit A**, and SBI Hosting Service [Dkt. 8.1], dated October 16 and 24, 2024, respectively. GMO also sued Whinstone, alleging that, among other things, Whinstone failed to meet its obligations under its contract with GMO regarding the provision of power and the operation of its miners. *See GMO Gamecenter USA, Inc., et al., v. Whinstone US, Inc.*, Case No. 1:22-cv-05974-JPC-KHP. As one of three co-tenants at the Facility during SBI's contract term, GMO possesses relevant information regarding the construction of the facility, provision/supply of power, mining operations, and the environmental conditions at the Facility.

### B. Lancium possesses critical information about power monitoring and conditions at the Facility

Lancium is a software company that provides datacenter operators solutions for managing various aspects of power management, including the ability to throttle down miners to sell electricity back to the Texas grid. Upon information and belief, Lancium has power monitoring data, including data related to power capacity, use, and shutdowns at the Facility, as well as data related to environmental conditions at the Facility during the time SBI was operating at the Facility. Importantly, Whinstone claims not to possess the aforementioned data and Lancium may be the only source for such information.

C.   **SBI issued non-party subpoenas to GMO and Lancium**

On September 6, 2024, SBI issued two subpoenas to GMO Gamecenter USA, Inc. and GMO Internet Group, Inc., respectively (the "GMO Subpoenas"). Def. Mtn. for Protective Order at Exhibits 1–2. In the GMO Subpoenas, SBI seeks documents and communications related to the following general categories: (1) power capacity, supply, and availability at the Facility [Req. Nos. 1–5, 15]; (2) construction of the facility [Req. Nos. 6, 16]; (3) environmental conditions at the Facility [Req. Nos. 13, 14, 22, 23, 24, 26]; (3) testing, operation, and maintenance of miners by Whinstone [Req. Nos. 8, 9, 10, 11, 18, 25]; (4) Whinstone's obligations and representations to GMO [Req. Nos. 7, 12, 17, 19, 20]; and (5) permits and inspections of the Facility [Req. No. 21].

That same day, SBI also issued a subpoena to Lancium (the "Lancium Subpoena"). Def. Mtn. for Protective Order at Exhibit 3. In the Lancium Subpoena, SBI seeks documents and communications related to the following general categories: (1) agreements related to the Facility [Req. Nos. 1–3, 21]; (2) power planning, purchasing, capacity, supply, metering, interruptions, and monitoring at the Facility [Req. Nos. 4–7, 10–12, 18, 19]; (3) the unpacking, configuring, installation, and power up of the miner pool of SBI's equipment [Req. Nos. 8, 9]; (4) the condition and performance of SBI's miners [Req. Nos. 13–16, 20]; (5) the environmental conditions of the Facility [Req. No. 17].

On September 16, 2024, pursuant to the Court's Docket Control Order (Dkt. 30), the parties held a Zoom conference (the "Conference") to discuss ongoing discovery disputes. In its one-page brief, a true and correct copy of which is attached to SBI's Response to Whinstone's Motion to Compel as **Exhibit B**, Whinstone sought (1) to compel production of post-complaint communications between Carson Smith and

Jonathan Tanemori, two former employees currently under contract with SBI and (2) to prevent the issuance of certain third-party subpoenas recently served by SBI. That same day, following the Conference, the Court issued a short text order [Dkt. 43], stating that "Counsel is further ordered to file a motion to compel within seven (7) days."

On September 25, 2024, more than seven (7) days after the Court's Text Order, Whinstone filed its Motion for Protective Order [Dkt. 47], combining its second affirmative request for relief raised at the Conference with its Rresponse to SBI's Motion.[1]

### III.  ARGUMENT AND AUTHORITIES

#### A. <u>Legal Standards</u>

The scope of discovery is broad. *Crosby v. La. Health Serv. and Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Federal Rules of Civil Procedure allow discovery "of any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). This includes third-party subpoenas requesting production of relevant information issued under Federal Rule of Civil Procedure 45. However, "relevance is construed broadly to include any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (quotations omitted) ("A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.").

The burden is on the movant to justify a protective order under Federal Rule of Civil Procedure 26(c), "which contemplates a particular and specific demonstration of fact

---

[1] The Motion and Response at issue here concern only Whinstone's second affirmative request for relief related to third-party subpoenas issued by SBI. SBI will address Whinstone's first motion separately.

as distinguished from stereotyped and conclusory statements." *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017). A party opposing discovery is "required to show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Ferguson v. Tex. Farm Bureau Bus. Corp.*, No. 617CV00111ADAJCM, 2019 WL 12469794, at *2 (W.D. Tex. Apr. 26, 2019) (quotations omitted).

B.   **Whinstone's Motion is untimely**

As a threshold issue, Whinstone failed to file its Motion for Protective Order in accordance with the Court's Text Order. The parties were required to file motions based on the subject-matter of the Conference within seven (7) days of September 16, 2024. Per Rule 6, which provides that the day of the triggering event is not counted, the seven-day period ended on September 23, 2024. Therefore, and for this reason alone, because Whinstone did not file its Motion for Protective Order within seven (7) days in accordance with the Court's Text Order, the Court should deny the Motion for Protective Order.

C.   **SBI expects GMO to accept service and waive any possible service defects**

Non-parties may agree to accept service of subpoenas and waive the service requirements of Federal Rule of Civil Procedure 45. *Tiki Shark Art Inc. v. CafePress, Inc.*, No. CIV. 13-00577 JMS, 2014 WL 3928799, at *5 (D. Haw. Aug. 12, 2014) ("[S]ervice of a Rule 45 subpoena may also be accomplished where counsel accepts service on behalf of a non-party witness."); *Bryson v. W. Coast Life Ins. Co.*, No. 123CV00193JLTSKO, 2024 WL 689541, at n.3 (E.D. Cal. Feb. 20, 2024) (recognizing exception to general rule that third-party subpoena be served on person, not attorney); *see also Saper v. Hague*, 186

F.2d 592, 593 (2d Cir. 1951) (concluding that objection to insufficiency of witness fee and mileage could be waived by recipient of subpoena).

Here, Whinstone objected (1) that SBI failed to serve GMO personally, and instead served its attorney and (2) that the GMO Subpoenas do not comply with the U.S.-Japan Consular Convention. Def. Mtn. for Protective Order at 7. As a threshold issue, Whinstone filed a Motion for Protective Order, not a motion to quash, but cites only cases in which a party had standing to object to service defects under Rule 45. *See Harrison v. Prather*, 404 F.2d 267, 270 (5th Cir. 1968) (on motion to quash); *Ferrara v. 4JLJ, LLC*, No. 2:15-CV-182, 2016 WL 4800891 (S.D. Tex. Sept. 14, 2016) (on motion for substitute service); *Fujikura Ltd. v. Finisar Corp.*, No. 15MC80110HRLJSC, 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) (on motion to quash). Because Whinstone does not have a challenge regarding privileged information, it has no standing to file a motion to quash the GMO Subpoenas under Rule 45. *See Garcia v. Prof'l Contract Services, Inc.*, No. A-15-CV-585-LY, 2017 WL 187577, at *1 (W.D. Tex. Jan. 17, 2017) ("a party has standing to move for a protective order pursuant to Rule 26(c) … even if the party does not have standing pursuant to Rule 45(d)"). Thus, the Court cannot grant any relief regarding alleged service defects based on Whinstone's current Motion for Protective Order. Regardless, SBI has been in contact with counsel for GMO and expects GMO to agree to service of the GMO Subpoenas or otherwise comply with the subpoena while reserving any its objections.

**D.** **Whinstone failed to meet its burden to demonstrate a need for a protective order**

As the party seeking a protective order, Whinstone has the burden to support its motion with a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Equal Emp. Opportunity Comm'n v. BDO USA,*

*L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017). Because Whinstone opposed the issuance of the GMO Subpoenas and the Lancium Subpoena on the grounds that the third-party discovery "regarding other Facility buildings and Whinstone's performance of contracts with other Facility customers is overbroad, seeks irrelevant information, and not proportional to the needs of the case," Whinstone's facts must actually demonstrate overbreadth, irrelevance, and lack of proportion. But Whinstone fails to do that.

Instead, Whinstone relies on declarations by two of its representatives, David Schatz and Ashton Harris. Def. Mtn. for Protective Order, Exhibits 6 (Schatz), 7 (Harris). But neither declaration contains actual facts to support limiting the Lancium Subpoena to Building B or SBI's miners or striking the GMO Subpoenas entirely. For example, Mr. Schatz's Declaration states that certain buildings were constructed around the time or after SBI's miners were removed and that fiber was installed connecting Buildings A and Buildings B where SBI's miners were operated. Mr. Schatz's Declaration includes: a challenge to the accuracy of an email from a Northern Data employee (Whinstone's then parent company); a statement of Mr. Schatz's personal belief that that the Facility required no construction permits or inspections; and a statement that he is "not aware that any 'as-built' drawings were created or exists for Buildings A and B at the Facility." *Id.*, Exhibit 6. Mr. Harris's Declaration only states that SBI equipment was tested in Building A, but not "operated" there. At most, these two declarations establish that SBI's equipment were at some point housed in Building A and that Whinstone does not possess certain construction-related documents.

Moreover, Whinstone's declarations do not demonstrate that SBI's third-party subpoenas are irrelevant to its claims. For example, neither declaration contains facts to demonstrate why SBI's request for Whinstone's communications with GMO regarding

power capacity at the Facility is not relevant to what Whinstone knew about the power capacity of the Facility. Neither declaration contains facts to demonstrate why SBI's requests to Lancium for information about the condition and performance of miners at the Facility are not relevant to SBI's claim that Whinstone misrepresented its ability to provide the proper environmental conditions at the Facility—particularly when Whinstone claims not to have such documents and information. The declarations do not justify a protective order that preemptively limits the scope of SBI's third-party subpoenas.

Further, it is unclear whether the statements contained in the declarations even constitute "facts." In its Motion for Protective Order, Whinstone unequivocally states that "there are no 'as built' drawings or constructions schedules for Building B (or "as built" drawings for Building A as Whinstone's counsel learned)." That assertion, however, is not fully supported by Mr. Schatz's Declaration which merely states that he is "*not aware* that any "as-built" drawings were created or exist for Buildings A and B at the Facility." Def. Mtn. for Protective Order, Exhibit 6 (emphasis added). Similarly, Mr. Schatz prefaces his representation that no permits or inspections were required to construct the Facility by stating that he is "not a lawyer." *Id*. It is unclear how this statement justifies limiting SBI's third-party discovery into the issue.

Likewise, Mr. Harris's Declaration attempts to distinguish SBI's "mining operations" in Building B from the "testing" those miners in Building A. Previously, Whinstone stated it would limit its production to "buildings that housed SBI's equipment," which it erroneously limited to Building B. In the face of contrary evidence, Whinstone now seeks to limit it to SBI's "mining operations," which allegedly occurred

only in Building B. Mr. Harris's declaration, however, does not justify limiting SBI's third-party discovery to Building B.

Beyond the declarations, Whinstone's only other support for its requested protective order is a *legal* theory—that a merger clause contained in the parties' Agreement somehow precludes SBI's fraud and fraudulent inducement claims—which this Court has already rejected. [Dkt. 27 at 9] ("Plaintiff's fraud claims are not barred because of the Agreement's merger clause"). Whinstone also fails to address Whinstone contractual representations that relate to the Facility as a whole (not just Building B)—which SBI contends were false. *See, e.g.*, [Dkt. 11] ¶ 22-25, 36 (alleging that Whinstone falsely represented the Facility had one gigawatt of power, required no construction permits, and that Whinstone would provide areas in two buildings). Whinstone fails to explain why SBI's third-party discovery is overly broad, irrelevant, or not proportional to the needs of the case.

E. **Whinstone does not have standing to strike the GMO Subpoenas in their entirety**

Because no personal right or privilege is at issue in the GMO Subpoenas, Whinstone cannot move to quash them. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (concluding that, to have standing to quash a subpoena served on a third party, one must have a personal right or privilege in the requested documents); *Garcia*, 2017 WL 187577, at *1. However, Whinstone is trying to end-run Rule 45 by using Rule 26 to completely eliminate the GMO Subpoenas. As stated above, Whinstone has not shown an entitlement to completing striking the GMO Subpoenas.

F.     **Whinstone has provided no basis for requesting attorney's fees**

Finally, Whinstone requests the Court award it attorney's fees for filing its Motion for Protective Order, yet Whinstone fails to provide any legal basis for such relief.

## IV.     REQUEST FOR RELIEF

Plaintiff SBI Crypto Co., Ltd. requests that the Court deny Whinstone's Motion for Protective Order in its entirety. SBI further requests that it be awarded such other and further relief to which it may justly be entitled to receive.

Respectfully submitted,

By: */s/ Joshua M. Sandler*
Joshua M. Sandler
Texas Bar No. 24053680
jsandler@winstead.com
Cory Johnson
Texas Bar No. 24046162
cjohnson@winstead.com
Matthew Hines
Texas Bar No. 24120892
mhines@winstead.com
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF
SBI CRYPTO CO. LTD**

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure via the court's e-filing system on October 2, 2024.

*/s/ Joshua M. Sandler*
Joshua M. Sandler