IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**WHINSTONE US, INC.,**<br><br>*Defendant*. | Civil Action No.: 6:23-cv-252 |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO COMPEL DISCOVERY FROM DEFENDANT**

Plaintiff SBI Crypto Co., Ltd. ("Plaintiff" and/or "SBI") files this Reply in Support of its Motion to Compel Discovery [Dkt. 44] from Defendant Whinstone US, Inc.'s ("Whinstone").

I. ARGUMENT

On September 23, 2024, SBI moved for an order overruling Whinstone's objections to certain discovery requests. SBI seeks to compel Whinstone's production of documents related to the Rockdale Facility's: (1) power capacity; (2) permits and certifications for construction and operations; (3) as-built construction schedules, design, blueprints, and construction plans; (4) the installation and maintenance of customers' miners; and (5) Whinstone's monitoring and maintenance of environmental conditions. SBI specifically alleges that Whinstone knowingly misrepresented its securing of power and permits for the Facility and fraudulently concealed other aspects of the Facility's construction, environmental conditions, and operations. *See generally*, Pl. Am. Compl [Dkt. 11]. However, Whinstone demands that SBI's discovery be limited to a <u>single building</u> (Building B) where Whinstone contends SBI's miners exclusively operated and that discovery be limited to documents concerning SBI's equipment only. Whinstone's objections should be rejected, *inter alia*, because (1) in June 2020, Whinstone communicated to SBI that it

would be "add[ing] more miners in building A next week"; (2) the parties' Agreement expressly provides that "Whinstone will provide an installation environment for [SBI] Equipment, including, but not limited to, the Licensed Area in two buildings …," which SBI contends Whinstone breached; and (3) the parties' Agreement contains Whinstone representations regarding power and permits for the Facility as a whole, not just Building B, which SBI contends were false. Whinstone offers no substantive response to these arguments except two declarations that are inconsistent with the emails cited by SBI. Whinstone should not be able to thwart SBI's legitimate discovery by submitting self-serving declarations that actually concede that SBI's miners were "tested" and housed in Building A, but only temporarily. SBI respectfully requests that the Court overrule Whinstone's objections and grant SBI's Motion in its entirety.

**A.     Whinstone concedes its housed SBI equipment in Building A in June 2020**

In its Response, Whinstone offers a confusing rebuttal of two emails that plainly state that Whinstone housed SBI miners in Building A. *See* Pl. Mtn. at Exhibit D. On the one hand, Whinstone claims "[t]he only relevant information concerns Building B." Def. Resp. at 3. But on the other hand, Whinstone now admits, in two sworn declarations (the details of which are discussed in detail below), that SBI's miners were temporarily networked into cable from Building A and that "SBI's miners were *tested* in Building A during June 2020 in preparation for their use in Building B." Def. Resp. at 3 (emphasis added). Whinstone now claims it objected to producing documents related to buildings in which SBI did not "conduct mining operations" or "operate." But Whinstone made no such objection. Instead, Whinstone expressly stated it would limit its production to "buildings that housed SBI's equipment." At a minimum, the Court should hold Whinstone to the concessions articulated in its discovery responses and compel it to produce documents related to Building A and B (*i.e.*, the buildings that housed SBI's equipment—even if

only temporarily). Barring discovery regarding Building A would unfairly preempt SBI from conducting a fair inquiry into the conditions under which its miners were housed and operated—core issues in this case.

The declarations attached to Whinstone's Response, by David Schatz and Ashton Harris, provide further justification for discovery beyond Building B. For example, Mr. Schatz attempts to explain away a June 5, 2020 email, Pl. Mtn. at Exhibit D, regarding SBI miners in Building A:

> 4. SBI's mining operations were only located in Building B. I oversaw the installation of SBI's miners into Building B during July 2020. While SBI attaches an email dated June 5,2020 as Exhibit 4 to its Motion to Compel Discovery From Defendant that references a "temporary network area" in Building A, that reference means, in part, ATT's installation of fiber that ran from Building A to Building B (which I oversaw).

Def. Resp., Exhibit 6. Again, the issue is not whether SBIs "*mining operations* were only located in Building B," it is whether the information sought, is relevant to SBI's claims or Whinstone's defenses. *See* FED. R. CIV. P. 26(b)(1). *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) ("A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party"). Tellingly, Mr. Schatz does not deny that SBI's equipment was ever *housed* in Building A. Neither does Mr. Schatz negate the relevance of Building A to SBI's miners. Even if the Court gave Whinstone the benefit of the doubt that the reference to a "temporary work area" in Building A meant that SBI's equipment was powered by fiber and electricity from Building A, the power supply/capacity, design, construction, and conditions of Building A would still be highly relevant to SBI's claims that Whinstone failed to "provide an installation environment for [SBI] Equipment, including, but not limited to, the Licensed Area in two buildings …" [Dkt. 8.1 § 2.1.1]; *see also*, Pl. Am. Compl., ¶

36 ("Whinstone falsely represented to SBIC in the Hosting Services Agreement that it would provide an installation environment .. in two separate buildings …").

The declaration of Ashton Harris only raises additional questions regarding the connection between SBI's equipment and Building A. Like Mr. Schatz, Mr. Harris says that SBI's *mining operations* were in Building B. Def. Resp. at Exhibit 7. But while Mr. Schatz minimizes the "temporary work area" as an electrical connection between the buildings, Mr. Harris contradicts that description by admitting that "a small number of miners" were actually tested in Building A during June 2020. Not only does Mr. Harris's declaration prove SBI "housed" equipment in Building A in June 2020, it calls into question the veracity of Whinstone's sworn statements about a lack of "mining operations" in Building A. Either way, Whinstone's narrow construction of the term "mining operations" is no basis for barring all discovery concerning Building A.

**B.     Whinstone offers no basis to restrict discovery to Building B or SBI's Equipment**

SBI seeks discovery in support of its allegations that Whinstone misrepresented its securing of power and permits. Whinstone's representations were not limited to Building B, but the Facility as a whole[1] and SBI's discovery should not be limited exclusively to SBI's miners or Building B. In response, Whinstone argues that a merger clause in the parties' Hosting Agreement means that "only relevant evidence regarding fraud is whether Whinstone … had any intention to perform the Hosting Agreement" prior to its execution. Def. Resp. at 7–8. This Court expressly rejected this characterization of SBI's claims when it denied Whinstone's Motion to Dismiss. [Dkt. 27 at 8–9]. ("[SBI] has alleged that Defendant fraudulently concealed or failed to disclose material conditions

---

[1] *See* Dkt. 11, ¶ 22–25; *see also*, Dkt. 8.1 § 8.13 (Whinstone has "secured for commercial access up to one (1) gigawatt of aggregated electricity that can be delivered to the [Rockdale Facility], of which a portion of that may be incrementally offered to [SBIC]."); *id.* at § 2.1.5 (Whinstone represented that additional building permits, city inspections, and certifications were "not required with regard to providing services" under the Agreement.).

that were either explicitly detailed as being included under the scope of the Agreement or flowed naturally from those explicit provisions ***before, during, and after the ratification of the contract*** … Thus, Plaintiff's fraud claims are not barred because of the Agreement's merger clause.") (emphasis added).

C.  **SBI's requested discovery is relevant to SBI's claims; not third-party claims**

Whinstone erroneously contends that "[r]epresentations allegedly made to other parties about separate contracts—either before or after the Hosting Agreement was signed—have nothing to do with this case." Def. Resp. 8.[2] In support of its proposition, Whinstone cites several breach of contract cases where a court found that requested discovery related to a third party's contract was unlikely to be relevant because "the other contracts would have been negotiated separately, contain different terms, and derive from different underlying circumstances." *Id.* SBI alleges fraudulent inducement in addition to breach. Second, SBI seeks discovery from Whinstone concerning the amounts of power made available to Whinstone's other customers. Whinstone's internal and external representations to third parties regarding the availability and delivery of power are plainly relevant to SBI's contention that Whinstone knowingly made false numerous representations to SBI regarding the same. Whinstone only had three other customers at the Rockdale Facility: GMO, Rhodium, and parent company Riot Blockchain. Whinstone offers no other basis to avoid such discovery except that these few customers had separate contracts.

Plaintiff SBI Crypto Co., Ltd. requests that the Court deny Whinstone's Motion in its entirety. SBI further requests that it be awarded such other and further relief to which it may justly be entitled to receive.

---

[2] In response to RFP Nos. 19, 21, 22, 27, 28, 29, and 60, Whinstone asserts that "[d]ocuments related to the amounts of power available to third-parties do not have a tendency to make SBI's allegations more or less probable. Whinstone will limit the Request to concern documents related to the amount of power provided to SBI."

Respectfully submitted,

By: */s/ Joshua M. Sandler*
    Joshua M. Sandler
    Texas Bar No. 24053680
    jsandler@winstead.com
    Cory Johnson
    Texas Bar No. 24046162
    cjohnson@winstead.com
    Matthew Hines
    Texas Bar No. 24120892
    mhines@winstead.com
    **WINSTEAD PC**
    2728 N. Harwood Street, Suite 500
    Dallas, Texas 75201
    Telephone: (214) 745-5103
    Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF**
**SBI CRYPTO CO. LTD**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure via the court's e-filing system on October 2, 2024.

    */s/ Joshua M. Sandler*
    Joshua M. Sandler