IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CASE NO. 6:23-CV-00252-ADA-JCM |
| § | |
| WHINSTONE US, INC., § | |
| § | |
| Defendant. § | |

## ORDER

Before the Court is Defendant Whinstone US, Inc.'s Motion to Compel Discovery (ECF No. 46) and the attendant responses and replies thereto. For the reasons stated below, Defendant's Motion is **GRANTED IN PART and DENIED IN PART**.

### I. INTRODUCTION

Plaintiff SBI is a cryptocurrency mining company that contracted by mutual agreement with Defendant Whinstone, who operates a cryptocurrency mining facility and data center, to conduct operations at Whinstone's facility in Rockdale, Texas (the "Facility"). Pl.'s Am. Compl. (ECF No. 11) at 2. SBI's employees reported unsatisfactory conditions in violation of certain contractual environmental warranties and representations after visiting the Facility. *Id.* at 11.

SBI sued Whinstone for breach of contract, fraud/fraudulent inducement, and fraud by nondisclosure and concealment. *Id.* at 16–17, 19. SBI seeks economic damages for lost profits and damaged equipment, exemplary damages, attorney's fees, and prejudgment and post-judgment interest. *Id.* at 20–21.

This case has a long discovery dispute history, resulting in a hearing and several orders from the Court regarding discovery matters. ECF No. 43. After the hearing, Whinstone filed this

Motion to Compel, focusing on written communications between Jonathan Tanemori and Carson Smith involving this lawsuit. Def.'s Mot. Compel at 3. SBI withheld six emails claiming they contain "[c]lient representative communications for the provision of legal services" and "attorney work product." Pl.'s Resp. (ECF No. 48) at 4. The Court then ordered the emails to be submitted for *in camera* review. ECF No. 56.

## II.  RELEVANT LAW

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…." Discovery requests must be proportional to case needs, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

In resolving discovery motions, a magistrate judge holds "broad discretion." *A.M. Castle & Co. v. Byrne*, 2015 WL 4756928, at *1 (S.D. Tex. Aug. 12, 2015). The party seeking discovery bears the initial burden of showing the information sought is relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) (Counts, J.). Once the party seeking discovery establishes the requested materials are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted. *Id.*

## III.     ANALYSIS

SBI argues that the Court should not compel production of the withheld emails for three reasons. Pl.'s Resp. at 2–3. First, SBI argues that Whinstone's motion to compel is untimely. *Id.* at 5. Second, SBI argues that the emails are privileged. *Id.* at 6. Third, SBI contends that the emails were sent after the relevant timeframe as defined in Whinstone's First Set of Requests for Production and, therefore, are not responsive to Whinstone's requests. *Id.* at 10.

### A. Timeliness

SBI contends that the Court ordered Whinstone to file its Motion to Compel within seven days of the September 16, 2024 discovery hearing, and that Whinstone filed its Motion two days late. Pl.'s Resp. at 5. The Court noted during the discovery hearing that there was no evidence before the Court suggesting that the emails are privileged. ECF No. 43. The Court permitted SBI to submit the emails for *in camera* review if it wished to assert a privilege. *Id.* SBI did not submit the emails for *in camera* review until October 18, 2024, pursuant to the Court's written order. ECF No. 56. Thus, the Court will address the merits of Whinstone's motion and the briefings on this matter.

### B. Attorney-Client Privilege

As an initial matter, the Court notes that SBI does not dispute the relevance of the withheld communications, nor does it argue that the emails fall outside the scope of discovery. *See generally* Pl.'s Resp. Instead, SBI argues that the emails are not discoverable because they are privileged. *Id.* at 4. Thus, SBI bears the burden of demonstrating that a privilege applies to each communication. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

In SBI's privilege log, SBI claims that the emails and their attachments constitute "attorney work product." Pl.'s Resp. at 4. That said, SBI does not argue in its response that the

3

emails are entitled to protection under the work product doctrine. *See generally id*. Instead, SBI's response focuses on its contention that the emails contain "[c]lient representative communications for the provision of legal services" under the attorney-client privilege. *Id.* at 4. Given that SBI has not presented any evidence or argument on the issue of work product privilege, the Court sees no need to analyze whether the communications are protected under the work product doctrine. *See In re Santa Fe Int'l Corp.*, 272 F.3d at 710 ("The party asserting a privilege . . . bears the burden of demonstrating its applicability."). Accordingly, the Court will consider only whether the communications between Tanemori and Smith are protected by the attorney-client privilege.

In the Fifth Circuit, a federal court sitting in diversity applies the choice of law rules of the forum state when determining which state attorney-client privilege rules apply. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir. 1980). Texas attorney-client privilege rules apply to the resolution of this discovery dispute.[1] Texas Rule of Evidence 503 provides that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client . . . between the client's representatives or between the client and the client's representative." Tex. R. Evid. 503(b)(1)(D). Rule 503(a) defines a "client's representative" as "any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client." Tex. R. Evid. 503(a)(2)(B).

---

[1] This is a diversity case. In Texas, attorney-client privilege claims are "governed by the law of the state with the most significant relationship to the communication." *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 646 (Tex. 1995). For written statements, the state with the most significant relationship will typically be the state where the written statement was received. *In re Levien*, No. 03-18-00079-CV, 2018 Tex. App. LEXIS 3329, at *14 (Tex. App.—Austin, May 11, 2018, no pet.). Here, the parties have not indicated where the emails were received, but SBI cites the Texas Rules of Evidence in its Response. Pl.'s Resp. at 6. Further, Whinstone cites Texas case law on the issue, in its Reply. Def.'s Resp. at 3. Thus, the Court will apply Texas Rules of Evidence when analyzing attorney-client privilege here.

The issue before the Court is whether communications between two former employees fall within the scope of Texas attorney-client privilege rules.[2] In other words, the Court must determine whether the two former employees constitute SBI's representatives as defined by Rule 503(a). "Under Rule 503(a)(2), if a person is authorized by the client to obtain legal services or act on legal advice on behalf of the client or to make or receive confidential communications with respect to legal services, that person is a client's representative even if the person is not an employee of the client." *In re Tex. Health Res.*, 472 S.W.3d 895, 902 (Tex. App.—Dallas 2015, no pet.) (citing *In re Stegner*, 441 S.W.3d 409, 412 (Tex. App.—Dallas 2013, no pet.) ("[A]lthough Carter is not an employee of the trustee's accounting firm, he was hired by the trustee and given authority to obtain and act on legal advice on behalf of the trustee.").

Here, SBI argues that Tanemori and Smith are client representatives because "SBI engaged both individuals for the propose of participating in the prosecution of SBI's claims." Pl.'s Resp. at 7 (citing Pl.'s Suppl. Resp., Ex. C (ECF No. 51-3), Smith Dep. at 24:3–10, 24:15–21; Ex. D (ECF No. 51-4), Tanemori Dep. at 15:6–16; 43:12–14). SBI further argues that Tanemori and Smith "are expected to interface with SBI's attorneys regarding confidential information, including sensitive financial data and legal strategy in this lawsuit." Pl.'s Resp. at 7. SBI also contends that it always intended for these emails to "be confidential because they were made for the purpose of developing SBI's legal strategy in conjunction with its attorneys." *Id.*

Tanemori and Smith's depositions add nothing from an evidentiary perspective because both witnesses merely state that they are being compensated for their time testifying and preparing to testify. *See* Smith Dep. at 24:3–10, 24:15–21; Tanemori Dep. at 15:6–16; 43:12–14. Both depositions refer to a potential contract memorializing the terms of compensation, but

---

[2] Jonathan Tanemori is SBI's former General Manager. Pl.'s Resp. at 2. Carson Smith is SBI's former Chief Executive Officer. *Id.*

neither deposition establishes that either Tanemori or Smith is authorized to obtain legal services, act on legal advice, or receive confidential communications with respect to legal services. *Id.* Consequently, neither deposition is probative of the relevant inquiry.

The undersigned has reviewed all six emails and the respective attachments and finds that they are not privileged. The emails do not include any attorneys. While the emails refer to the present litigation, without any evidence that either Tanemori or Smith is authorized to obtain legal services, act on legal advice, or receive confidential communications with respect to legal services, the Court cannot conclude that the emails fall within the attorney-client privilege. *See In re WHC, LLC*, 570 S.W.3d 349, 353 (Tex. App.—El Paso 2018, no pet.) (citations omitted) ("The party resisting discovery bears the burden of pleading and proving an applicable privilege."). Thus, the attorney-client privilege does not protect the communications from disclosure.

To the extent that SBI is concerned that disclosure of the emails will reveal SBI's sensitive financial data, the parties' Agreed Protective Order (ECF No. 22) is sufficient to assure that the information remains confidential and used only in this litigation.

### C. The Relevant Timeframe for Whinstone's Requests for Production

Lastly, SBI contends that "Whinstone never served SBI with a valid request for the Post-Complaint Emails" because Whinstone's discovery requests defined the relevant timeframe as January 1, 2019 to August 22, 2023. Pl.'s Resp. at 10. As Whinstone points out, SBI has a continuing duty to supplement its responses to requests for production. Fed. R. Civ. P. 26(e)(1). The duty to supplement applies when a "party learns that in some material respect the . . . response is incomplete[.]" *Id.* SBI has an obligation, even without a motion to compel, to locate and produce any documents that are responsive to any existing discovery requests. *Six*

*Dimensions v. Perficient, Inc.*, No. H-17-2680, 2019 U.S. Dist. LEXIS 238326, at *3 (S.D. Tex. Apr. 25, 2019).

Here, the emails exchanged after August 22, 2023, are not responsive to Whinstone's First Set of Requests for Production given that they fall outside of the relevant timeframe. Thus, the duty to supplement SBI's response does not apply to those emails. However, one email, bates stamped "SBI_IC_000012," was sent on June 3, 2022—during the relevant timeframe. That email contains three spreadsheets that were created prior to August 22, 2023. Thus, after reviewing the withheld communications and their attachments *in camera*, the Court finds that the following documents are not privileged and are responsive to Whinstone's First Set of Requests for Production: SBI_IC_000012; SBI_IC_000013; SBI_IC_000014; and SBI_IC_000015.

## IV.   CONCLUSION

The Court **GRANTS IN PART** Defendant's Motion to Compel (ECF No. 46). Accordingly, Plaintiff is **ORDERED** to produce the following to Defendant within fourteen (14) days of the date of this order:

1. SBI_IC_000012;
2. SBI_IC_000013;
3. SBI_IC_000014; and
4. SBI_IC_000015.

**It is so ORDERED.**

**SIGNED this 25th day of October 2024.**

_____
JEFFREY C. MANSKE
UNITED STATES MAGISTRATE JUDGE