FILED
November 25, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: cav
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

SBI CRYPTO CO., LTD.,

Plaintiff,

v.

WHINSTONE US, INC.,

Defendant.

Civil Action No. 6:23-cv-252

**DEFENDANT WHINSTONE US, INC.'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Whinstone US, Inc. ("Whinstone") files this Amended Answer and Affirmative Defenses to Plaintiff SBI Crypto Co., LTD.'s ("SBI") Amended Complaint ("Complaint") (ECF No. 11) and Counterclaims against SBI.

## I. ANSWER

### A. Parties

1. The allegations contained in paragraph 1 of the Complaint are legal conclusions to which no response is required.

2. Whinstone admits the allegations contained in paragraph 2 of the Complaint.

### B. Jurisdiction and Venue

3. The allegations contained in paragraph 3 of the Complaint are legal conclusions to which no response is required.

4. The allegations contained in paragraph 4 of the Complaint are legal conclusions to which no response is required.

**C. Factual Allegations**

5. Whinstone admits the allegations contained in paragraph 5 of the Complaint.

6. Whinstone admits the allegations contained in paragraph 6 of the Complaint.

7. Whinstone admits that cryptocurrency mining can result in high electricity and cooling costs and that mining equipment can be affected by power and environmental conditions. Whinstone denies the remaining allegations contained in paragraph 7 of the Complaint.

8. Whinstone denies the allegations contained in paragraph 8 of the Complaint.

9. Whinstone admits the allegations contained in paragraph 9 of the Complaint.

10. Whinstone admits it entered into a hosting agreement with SBI. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 10 of the Complaint.

11. Whinstone admits it entered into a hosting agreement with SBI in July 2019 and that the agreement was replaced by a later hosting agreement between the parties in October 2019. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 11 of the Complaint.

12. Whinstone admits the parties entered into a different hosting agreement in October 2019. Whinstone denies the allegations contained in paragraph 12 of the Complaint.

13. Whinstone denies the allegations contained in paragraph 13 of the Complaint.

14. Whinstone denies the allegations contained in paragraph 14 of the Complaint.

15. Whinstone denies the allegations contained in paragraph 15 of the Complaint.

16. Whinstone admits that it entered into a hosting agreement with SBI in July 2019. Whinstone is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 16 of the Complaint, so the allegations are denied.

17. Whinstone admits that 20,000 Avalon A10 mining machines were sent to Whinstone's datacenter in Rockdale, Texas (the "Facility"). The terms of any purchase order between SBI and Canaan, Inc. ("Canaan") speak for themselves. Whinstone is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 17 of the Complaint, so the allegations are denied.

18. Whinstone admits that it entered into a hosting agreement with SBI in July 2019. The terms of that agreement speak for themselves. The remaining allegations contained in paragraph 18 of the Complaint are legal conclusions to which no response is required.

19. Whinstone denies the allegations contained in paragraph 19 of the Complaint.

20. Whinstone admits that it entered into a later hosting agreement with SBI in October 2019. The terms of that agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 20 of the Complaint.

21. Whinstone admits that SBI paid $9,685,000 to Whinstone. Whinstone denies the remaining allegations contained in paragraph 21 of the Complaint.

22. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 22 of the Complaint.

23. Whinstone denies the allegations contained in paragraph 23 of the Complaint.

24. Whinstone denies the allegations contained in paragraph 24 of the Complaint.

25. Whinstone denies the allegations contained in paragraph 25 of the Complaint.

26. Whinstone denies the allegations contained in paragraph 26 of the Complaint.

27. Whinstone denies the allegations contained in paragraph 27 of the Complaint.

28. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 28 of the Complaint.

29. Whinstone admits that some of SBI's mining machines became operational in or around June 2020 and the amount of such machines increased through August 2020. Whinstone denies the remaining allegations contained in paragraph 29 of the Complaint.

30. Whinstone denies the allegations contained in paragraph 30 of the Complaint.

31. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 31 of the Complaint.

32. Whinstone admits that SBI complained to Whinstone about the inadequate quality and underperformance of the Canaan mining machines and power supply units that SBI used at the facility, as supported by the diagnostic codes, logs, and instances of equipment failure that Ashton Harris relayed to SBI and Canaan. Whinstone denies that Ashton Harris' communications with SBI and Canaan occurred in August or September 2020. Whinstone is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 32 of the Complaint, so the allegations are denied.

33. Whinstone admits that Ashton Harris communicated with SBI and Canaan by providing diagnostic codes, logs, and instances of Canaan's equipment failure between October 2020 and December 2020. Whinstone denies the remaining allegations contained in paragraph 33 of the Complaint.

34. Whinstone denies the allegations contained in paragraph 34 of the Complaint.

35. Whinstone admits that SBI purchased 4,000 power supply units in or around April 2021 for $72,000. Whinstone denies the remaining allegations contained in paragraph 35 of the Complaint.

36. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 36 of the Complaint.

37. The terms of the hosting agreement speak for themselves. The remaining allegations contained in paragraph 37 of the Complaint are legal conclusions to which no response is required.

38. Whinstone denies the allegations contained in paragraph 38 of the Complaint.

39. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 39 of the Complaint.

40. Whinstone admits that Riot Platforms, Inc. (f/k/a Riot Blockchain, Inc.) ("Riot") announced it acquired Whinstone on May 26, 2021 and that Whinstone provided SBI with notice of the hosting agreement's termination on May 28, 2021. The terms of the hosting agreement speak for themselves.

41. Whinstone admits that Carson Smith ("Smith") of SBI visited the Facility on or around June 10, 2021. Whinstone is without knowledge or information sufficient to form a belief as to the allegation that this "was SBIC's first visit to the facility after operations began," so the allegation is denied. Whinstone denies the remaining allegations contained in paragraph 41 of the Complaint.

42. Whinstone denies the allegations contained in paragraph 42 of the Complaint.

43. Whinstone denies the allegations contained in paragraph 43 of the Complaint.

44. Whinstone admits that it hosts other customers at the Facility. Whinstone denies the remaining allegations contained in paragraph 44 of the Complaint.

45. Whinstone is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 45 of the Complaint, so the allegations are denied.

46. Whinstone admits that it provided SBI with notice of termination of the hosting agreement on May 28, 2021, Smith visited the Facility on June 10, 2021, SBI's mining machines

were moved out of the Facility in July and August 2021. Whinstone is without knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 46 of the Complaint, so the allegations are denied.

47. Whinstone is without knowledge or information sufficient to form a belief as to whether and what extent, if any, SBI looked to reuse the equipment, so the allegations are denied. Whinstone denies the remaining allegations contained in paragraph 47 of the Complaint.

48. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 48 of the Complaint.

49. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 49 of the Complaint.

50. The terms of the hosting agreement speak for themselves. To the extent a further response is required, Whinstone denies the remaining allegations contained in paragraph 50 of the Complaint.

51. Whinstone admits that SBI untimely and purportedly tried to provide "notice" on May 27, 2022 and June 3, 2022. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 51 of the Complaint.

52. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 52 of the Complaint.

53. Whinstone denies the allegations contained in paragraph 53 of the Complaint.

54. Whinstone is without knowledge or information sufficient to form a belief as to whether and what extent, if any, SBI looked to store the equipment, so the allegations are denied. Whinstone denies the remaining allegations contained in paragraph 54 of the Complaint.

55. Whinstone denies the allegations contained in paragraph 55 of the Complaint.

56. Whinstone admits that 20,000 A10-model mining machines and certain power supply units were shipped to the Facility. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 56 of the Complaint.

57. The allegations contained in paragraph 57 of the Complaint are legal conclusions to which no response is required.

58. The allegations contained in paragraph 58 of the Complaint are legal conclusions to which no response is required.

59. Whinstone denies the allegations contained in paragraph 59 of the Complaint.

60. Whinstone denies the allegations contained in paragraph 60 of the Complaint.

61. The terms of the hosting agreement speak for themselves. The remaining allegations contained in paragraph 61 of the Complaint are legal conclusions to which no response is required.

**D. Causes of action**

  **i.   Count I – Breach of Contract**

62. In response to the allegations contained in paragraph 62 of the Complaint, Whinstone restates and reincorporates by reference herein the preceding paragraphs of this Answer.

63. Whinstone admits that it entered into a hosting agreement dated October 24, 2019 with SBI. The remaining allegations contained in paragraph 63 are legal conclusions to which no response is required.

64. Whinstone admits that 20,000 A10-model mining machines and certain power supply units were shipped to the Facility. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 64 of the Complaint.

65. Whinstone denies the allegations contained in paragraph 65 of the Complaint.

66. The allegations contained in paragraph 66 of the Complaint are legal conclusions to which no response is required.

67. The allegations contained in paragraph 67 of the Complaint are legal conclusions to which no response is required.

68. The allegations contained in paragraph 68 of the Complaint are legal conclusions to which no response is required.

**ii.    Count II – Fraud/Fraudulent Inducement**

69. In response to the allegations contained in paragraph 69 of the Complaint, Whinstone restates and reincorporates by reference herein the preceding paragraphs of this Answer.

70. Whinstone denies the allegations contained in paragraph 70 of the Complaint.

71. The terms of the hosting agreement speak for themselves. Whinstone denies the remaining allegations contained in paragraph 71 of the Complaint.

72. Whinstone denies the allegations contained in paragraph 72 of the Complaint.

73. Whinstone denies the allegations contained in paragraph 73 of the Complaint.

74. Whinstone denies the allegations contained in paragraph 74 of the Complaint.

75. Whinstone denies that it committed any fraudulent acts or omissions and acted knowingly, intentionally, willfully, maliciously, or with wanton and gross negligence. The allegations contained in paragraph 75 of the Complaint are legal conclusions to which no response is required.

76. The allegations contained in paragraph 76 of the Complaint are legal conclusions to which no response is required.

**iii. Count III – Fraud by Nondisclosure and Concealment**

77. In response to the allegations contained in paragraph 77 of the Complaint, Whinstone restates and reincorporates by reference herein the preceding paragraphs of this Answer.

78. Whinstone denies the allegations contained in paragraph 78 of the Complaint.

79. The allegations contained in paragraph 79 of the Complaint are legal conclusions to which no response is required.

80. Whinstone denies the allegations contained in paragraph 80 of the Complaint.

81. Whinstone denies the allegations contained in paragraph 81 of the Complaint.

82. Whinstone denies the allegations contained in paragraph 82 of the Complaint.

83. Whinstone denies that it committed any fraudulent acts or omissions and acted knowingly, intentionally, willfully, maliciously, or with wanton and gross negligence. The allegations contained in paragraph 83 of the Complaint are legal conclusions to which no response is required.

84. The allegations contained in paragraph 84 of the Complaint are legal conclusions to which no response is required.

**E. Request for Attorneys' Fees**

85. The allegations contained in paragraph 85 of the Complaint are legal conclusions to which no response is required.

## II. AFFIRMATIVE DEFENSES

86. SBI's claims fail, in whole or in part, because SBI fails to state claim for which relief can be granted.

87. SBI's claims fail, in whole or in part, because SBI failed to comply with the required notice provision.

88. SBI's claims fail, in whole or in part, because SBI disclaimed reliance in the hosting agreement.

89. SBI's claims fail, in whole or in part, because of the hosting agreement's integration clause.

90. SBI's claims fail, in whole or in part, because of prior material breach.

91. SBI's claims fail, in whole or in part, because of the economic loss rule.

92. SBI's claims fail, in whole or in part, because of accord and satisfaction, release, and/or settlement.

93. SBI's claims fail, in whole or in part, because of waiver.

94. SBI's claims fail, in whole or in part, because of estoppel, equitable estoppel, and/or quasi-estoppel.

95. SBI's claims fail, in whole or in part, because Whinstone owed SBI no duty of disclosure.

96. SBI's claims fail, in whole or in part, because they are duplicative of each other.

97. SBI's claims fail, in whole or in part, because Whinstone did not make any misrepresentations or omissions of material fact.

98. SBI's claims fail, in whole or in part, because of SBI's own conduct.

99. SBI's claims fail, in whole or in part, because of SBI's fraud and/or fraudulent inducement.

100. SBI's claims fail, in whole or in part, because Whinstone did not proximately cause SBI any harm.

101. SBI may not recover its alleged damages, in whole or in part, because of the hosting agreement's limitations of liability.

102. SBI may not recover its alleged damages, in whole or in part, because of offset.

103. SBI may not recover its alleged damages, in whole or in part, because of the one satisfaction rule.

104. SBI may not recover its alleged damages, in whole or in part, because they are speculative.

105. SBI may not recover its alleged damages, in whole or in part, because SBI failed to mitigate its damages, if any.

106. SBI reserves the right additional defenses as they become known during the course of discovery.

## III. COUNTERCLAIMS

Defendant/Counter-Plaintiff Whinstone asserts the following counterclaims against SBI.

### A. Parties

107. Whinstone is as a Delaware corporation with its principal place of business located in Rockdale, Texas.

108. SBI is a Japanese corporation with its principal place of business located in Tokyo, Japan.

### B. Jurisdiction and Venue

109. This Court has jurisdiction over Whinstone's counterclaim pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists and the amount in controversy exceeds $75,000 exclusive of costs and interest.

110. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Whinstone is a resident of this judicial district and a substantial part of the events or omissions giving rise to Whinstone's counterclaim occurred here.

**C. Factual Background**

111. On October 24, 2019, Whinstone and SBI entered into a hosting agreement ("Hosting Agreement") in which Whinstone agreed to permit SBI to mine cryptocurrency at Whinstone's facility ("Facility") located in Rockdale, Texas. In so doing, Whinstone permitted SBI to locate its cryptocurrency miners at Building B of the Facility, with Whinstone agreeing to provide power and other hosting services in exchange for a fee—which was a minimum amount each month.

112. The Hosting Agreement expressly permits Whinstone to terminate the contract upon a change of control.

113. On May 28, 2021, Whinstone provided SBI with notice of termination pursuant to that change of control provision. SBI does not contest the termination. Accordingly, Whinstone removed SBI's miners from Building B in June 2020, packed them up, and then shipped them to SBI.

114. In winding up affairs on June 23, 2021, Jonathan Tanemori ("Tanemori") SBI's General Manager at the time, emailed Chad Harris ("Harris"), Whinstone's Chief Executive Officer at the time, and stated:

> "In response to Whinstone's termination letter dated May 28, 2021 . . . I write to provide you with the following information:
>
> 1) SBI Crypto's bank details; and
>
> 2) Outstanding amounts regarding repayment from Whinstone to SBI Crypto under the Hosting Services Agreement.
>
> . . .
>
> 2) The outstanding amount . . . under the Hosting Agreement due SBI: $7,800,621.38."

115. Over the next month, Harris and Tanemori proceeded to exchange emails about costs for shipping and logistics, which Harris intended to net out from the $7.8 million payment.

116. On July 25, 2021, Tanemori followed up:

> "As July 28, 2021 approaches, please kindly confirm the timing and amount of repayment to be made regarding settlement of the SBI Crypto hosting contract.
>
> I understand the cost of packing the miners may still be pending, but please be kindly reminded that the funds due SBI (the security deposit, one-time payment, and May/June prepayment adjustment) are due on July 28 in accordance with the hosting contract; i.e., thirty days after the termination of services under the hosting agreement."

117. In response the next day, Harris noted that, while "Whinstone is ready to make the payment," there are still outstanding costs for 200+ shipping containers and a "final cost can not be provided," and reiterated that that the shipping costs will be "deducted from the payment."

118. Tanemori replied by expressing his frustration and demanding that Whinstone immediately pay approximately $7.3 million—or Whinstone would be in breach of the Hosting Agreement:

> "To avoid creating the appearance that Whinstone is not fulfilling its obligations for settlement by July 28, 2021 based on the terms of the hosting contract, **a suggestion would be that Whinstone remit the security deposit + interest portion, balance of one-time prepayment portion, and the May 2021 adjustment amount for an initial remittance of $7,293,888.27.**
>
> Adjustment for the full June prepayment amount ($508,470.52) can then be applied and adjusted once crate/shipping-related costs have been are agreed upon.
>
> . . .
>
> Not remitting a bulk of what Whinstone is obliged to settle under the hosting agreement and stated to do so under your May 28 termination letter will raise concerns by our parent company and its legal/finance divisions.
>
> Certainly you would not intentionally breach contract nor disproportionately hold back $7.8M for crate and material costs, but how am I to explain this appearance internally if a bulk of the settlement amount is not remitted as obligated?

I remain confident in you that we can diffuse any potential issues quickly and professionally."

119. Harris acted "quickly and professionally" by wiring the approximately $7.3 million in reliance that all amounts due each party would be finally settled between the parties in a later true-up.

120. In November and December 2021, SBI continued to express its intent to "settle accounts between Whinstone and SBI Crypto." In so doing, SBI noted the outstanding prepayment issues and crating charges that needed to be netted against each other for final settlement.

121. After Harris provided SBI with "detailed documentation" reflecting the shipping and crating charges, Tanemori reiterated SBI's intent to "settle accounts" in February 2021 by email. In response to Tanemori following up to "settle and close out accounts between us," Harris (who relied upon SBI's representations of settlement) responded on March 3, 2022 that the $236,129.12 netted payment due SBI was wired on March 1, 2021.

122. Unbeknownst to Whinstone, however, SBI planned to sue Whinstone after the settlement payments were received. By way of example, on May 30, 2021 (*i.e.*, prior to settlement negotiations), Smith emailed Tanemori a presentation in which Smith highlighted ***SBI's various Hosting Agreement breaches in red*** and Whinstone's purported breaches in green. In so doing, Smith stated that SBI could pursue various breach of contract claims, including, a claim for "damages for delayed start." But, Smith admitted: "***we may lose this to not claiming within 12 months of becoming aware***."

123. Importantly, one of the contract provisions that Smith identified in that email was that ***SBI breached by <u>not</u> paying the minimum hosting fees***. In further recognition of SBI's breach, Tanemori emailed Smith on June 20, 2021 a calculation showing that SBI believed that at

***least $4,893,327.91 was due Whinstone due to SBI's breach of the Hosting Agreement's minimum payment***.

124. After Whinstone wired SBI the final settlement payment, SBI enacted its plan. Specifically, despite the parties' settlement, on June 3, 2022, SBI demanded approximately $62 million for alleged breaches of the Hosting Agreement. Not only were these claims settled, man are contractually barred.

125. In response on July 11, 2022, Whinstone rejected SBI's demand and reminded SBI that the parties had settled their disputes.

126. Despite the parties' settlement detailed above, SBI breached the agreement by filing this lawsuit on April 5, 2023 seeking damages for settled claims.

**D. Count I: Breach of the Settlement Agreement**

127. Whinstone incorporates the allegations of the above paragraphs are incorporated as if fully stated herein.

128. Between June 2021 and March 2022, Whinstone and SBI negotiated and agreed to finally "settle and close accounts between us."

129. Whinstone was ready, willing, and able to perform the parties' settlement agreement, and, in fact did so, by wiring SBI approximately $7.3 million in July 2021 and the $236 thousand in March 2021. In so doing, Whinstone gave up valuable rights including at least $4.8 million—as calculated by SBI—for SBI's breaches of the Hosting Agreements.

130. By suing Whinstone and initiating this lawsuit, SBI breached and/or repudiated the parties' settlement agreement. As a result, Whinstone has been damaged. Therefore, Whinstone seeks specific performance of the parties' settlement agreement by requesting the Court to dismiss SBI's claims due to their being no other adequate remedy at law, plus an award of reasonable

attorneys' fees and costs. Alternatively, Whinstone seeks its benefit-of-the-bargain damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs.

**E. Count II: Fraudulent Inducement**

131. Whinstone incorporates the allegations of the above paragraphs are incorporated as if fully stated herein.

132. In the alternative, SBI represented that the settlement agreement would "settle and close accounts between us." However, these statements were false at the time they were made—as SBI already developed a plan to sue Whinstone—and intended that Whinstone rely upon them. SBI never disclosed these material facts to Whinstone and engaged in misleading conduct.

133. In reliance on SBI's representations, Whinstone wired approximately $7.3 million and $236 thousand to SBI in July 2021 and March 2022, respectively.

134. Whinstone's reliance has caused it injury given SBI filing this lawsuit. Whinstone therefore seeks recission of the settlement agreement and a return of the more than $7.5 million paid by Whinstone to SBI thereunder, plus costs and punitive damages. Alternatively, Whinstone seeks its benefit-of-the-bargain damages, plus costs and punitive damages.

**F. Attorneys' Fees**

135. Whinstone incorporates the allegations of the above paragraphs are incorporated as if fully stated herein.

136. Due to SBI's breach of the settlement agreement, Whinstone is entitled to its reasonable attorneys' fees pursuant to Texas Civil Practice & Remedies Code Chapter 38.

**G. Punitive Damages**

137. Whinstone incorporates the allegations of the above paragraphs are incorporated as if fully stated herein.

138. Pursuant to Texas Civil Practice & Remedies Code Section 41.003, Whinstone seeks recovery of punitive damages against SBI for its malicious conduct.

## IV. CONDITIONS PRECEDENT

139. Whinstone incorporates the allegations of the above paragraphs are incorporated as if fully stated herein.

140. Whinstone denies that SBI has performed all conditions precedent to support its claims.

141. All conditions precedent concerning Whinstone's claims have been performed, excused, and/or waived.

## V. JURY DEMAND

142. Whinstone demands a trial by jury on all issues of fact.

## VI. REQUESTED RELIEF

Whinstone requests that SBI take nothing on its claims, enter judgment in favor of Whinstone, and award Whinstone all such other relief to which it is entitled.

Respectfully submitted,

FOLEY & LARDNER LLP

By: */s/ Robert T. Slovak*
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2024, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Brandon C. Marx*
Brandon C. Marx