IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> WHINSTONE US, INC., <br><br> Defendant. | Civil Action No. 6:23-cv-00252-ADA-DTG |

**DEFENDANT WHINSTONE US, INC.'S MOTION TO COMPEL PRODUCTION OF WITHHELD DOCUMENTS CONCERNING SAME SUBJECT MATTER**

Pursuant to Federal Rule of Civil Procedure 37 and the Court's Order on May 2, 2025 Discovery Disputes (ECF No. 77), Defendant Whinstone US, Inc. ("Whinstone") files this Motion to Compel Production of Withheld Documents Containing Same Subject Matter and states as follows.

**I. SUMMARY OF ARGUMENT**

The Court denied Plaintiff SBI Crypto Co., Ltd.'s ("SBI")'s attempt to claw-back Whinstone Deposition Exhibits Nos. 5, 18, and 19 (the "Failed Claw-Back Documents") because SBI waived any privilege. Order (May 2, 2025). In so doing, the Court invited Whinstone to file a motion to compel additionally withheld documents concerning the same subject matter. *Id.*; *Glob. Tubing, LLC v. Tenaris Coiled Tubes, LLC*, No. 4:17-CV-3299, 2021 WL 1169322, at *4 (S.D. Tex. Mar. 26, 2021). Whinstone does so now.

The Failed Claw-Back Documents contain material information regarding notice and crypto-miner value that SBI voluntarily injected into this lawsuit. Under such circumstances, Texas Court routinely compel production of other documents that concern the same subject matter

1

that SBI withheld as privileged. *In re Anadarko Petroleum Corp. Sec. Litig.*, No. 4:20-CV-00576, 2023 WL 2733401, at *3-4 (S.D. Tex. Mar. 31, 2023), *reconsideration denied*, No. 4:20-CV-00576, 2023 WL 4308750 (S.D. Tex. June 30, 2023); *Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2015 WL 11120526, at *9 (N.D. Tex. July 15, 2015). Likewise, this Court should compel SBI to produce those withheld documents, too.

Specifically, notice is a contractually imposed condition precedent that SBI must prove. *E.g.*, *Trinity Indus. Leasing Co. v. Hexion Inc.*, No. 3:17-CV-1936-S, 2020 WL 13468885, at *11 (N.D. Tex. Mar. 30, 2020). Contractually, SBI must prove that it sent timely written notice of its claims within twelve months of becoming aware of the factual circumstances giving rise to those claims. Mot. Dismiss (Jun. 15, 2023) Ex. 1 § 8.11 (ECF No. 11). Absent timely notice, SBI cannot recover from Whinstone. *Id.* While citing to two Failed Claw-Back Documents as affirmative "evidence" of it first becoming aware of the circumstances giving rise to claims against Whinstone, SBI seeks to dramatically restrict the discovery of those facts by restricting Whinstone from obtaining contrary proof under the auspice of privilege. SBI cannot use privilege as both a sword and a shield.

Further, SBI claims that its miners are worthless. As a result, SBI argues that Whinstone should pay over $50 million for replacement miners. But one of the Failed Claw-Back Documents shows that SBI *could* use or resell its cryptocurrency mining equipment years ago. In fairness, SBI cannot seek recovery on affirmative claims while at the same time selectively shield other withheld documents that undercut such claims under the guise of "privilege." To the extent that other communications covering the same subject matter exist, the Court should compel SBI to produce that information within seven days of the Court's order.

## II. RELEVANT BACKGROUND

On October 9, 2023, SBI produced the Failed Claw-Back Documents. SBI marked one of the Failed Claw-Back Documents as "Attorneys' Eyes Only" and the other two were marked "Confidential."

The general subject matter of Failed Claw-Back Documents are as follows:

- Exhibit No. 5: An email dated June 20, 2021 from Tanemori to Smith and Akihiko Oda of SBI and an Excel attachment. Email (Jun. 20, 2021), attached as Exhibit 1.[1]

    o Tanemori determined that Whinstone had a multimillion-dollar counterclaim due to SBI's failure to pay for the minimum amount of power as required Section 3.13.1 of the Hosting Service Agreement ("Hosting Agreement") dated October 24, 2019 between Whinstone and SBI. *Id.*

    o Additionally, Tanemori identified strategy and arguments to rebut such a claim, including because of Whinstone's alleged delay in miner installation, faulty operation of the miners, and agreement to only bill for actual power usage, which all purportedly resulted in damages in the form of SBI lost profits and diminution in value of mining equipment. *Id.*

- Exhibit No. 18: An email dated May 30, 2021 from Smith to Tanemori and a color-coded copy of the Hosting Agreement. Email (May 30, 2021), attached as Exhibit 2.[2]

    o Smith analyzed the respective parties' potential claims, including alleged damages and lost revenue for delay (which SBI admitted it might ***lose*** because notice was not timely provided) and damages due to Whinstone's purported breach of the Hosting Agreement arising from Whinstone sharing that contract with Riot Platforms, Inc. ("Riot") during Riot's due diligence process when acquiring Whinstone. *Id*.

    o In the attached Hosting Agreement, Smith highlighted Whinstone's alleged breaches in yellow, SBI's admitted breaches in red, and areas of interest to pursue in discovery in green. *Id.*

---

[1] Filed under seal.

[2] *Id*.

- Exhibit No. 19: An email dated June 3, 2021 from Tanemori to Smith and a PowerPoint presentation. Email (June 3, 2021), attached as Exhibit 3.[3]
    - In the attached PowerPoint presentation, Tanemori mapped out different options for SBI to pursue, including litigation, moving the miners to a new location, selling the miners, and settlement. *Id.*
    - In so doing, Tanemori identified various SBI claims regarding Whinstone's alleged breaches of the Hosting Agreement's representations and warranties, confidentiality provision, service start date, and service level quality (while also noting that SBI's position was weak), analyzed Russia, Iceland, and the United States as potential places to relocate the miners, and ascertained the miners potentially being resold for approximately $15-20 million. *Id.*

On August 15, 2024, Whinstone introduced the Failed Claw-Back Documents during SBI fact witness Jonathan Tanemori's deposition. Whinstone questioned Tanemori about the Failed Claw-Back Documents' creation and content. SBI lodged no privilege objections.

About a week later, on August 21, 2024, Whinstone introduced two of the Failed Claw-Back Documents during SBI fact witness Carson Smith's deposition. Like the Tanemori deposition, Whinstone questioned Smith about the Failed Claw-Back Documents' creation and content. And, again, SBI asserted no privilege objections.

Three months later, on November 24, 2024, Whinstone filed Defendants Whinstone US, Inc.'s Amended Answer, Affirmative Defenses, and Counterclaims ("Counterclaims") (ECF No. 61). In its Counterclaims, Whinstone not only referenced but directly quoted from a Failed Claw-Back Document. Answer (Nov. 24, 2024) ¶ 122.

Over four months later, on April 11, 2025—two business days before SBI's corporate representative's deposition—SBI amended its interrogatory responses to affirmatively cite two Failed Claw-Back Documents as evidence of "date[s SBI] first became aware of the circumstances

---

[3] *Id.*

giving rise to each breach" of contract claim. Am. Interrog. Resp. at No. 2, attached as Exhibit 4.

During the SBI corporate representative deposition on April 15, 2025, Whinstone introduced the Failed Claw-Back Documents and the amended interrogatory responses. When Whinstone began to question SBI's corporate representative about the Failed Claw-Back Documents, SBI instructed the witness not to answer and attempted to claw-back these documents as privileged. Notably, SBI's corporate representative had a binder of documents that he reviewed and relied upon during the deposition. Whinstone requested that SBI produce a copy.

On April 22, 2025, SBI sent a letter attempting to claw-back the Failed Claw-Back Documents, along with other documents, pursuant to the Agreed E-Discovery Order (ECF No. 23) entered in this case.

On April 24, 2025, SBI produced a copy of the binder its representative reviewed and relied upon during the April 15, 2025 deposition. That corporate representative deposition preparation notebook contained copies of two Failed Claw-Back Documents—Deposition Exhibit Nos. 18 and 19—which SBI purportedly try to claw-back.

On April 25, 2025—its claw-back attempts notwithstanding—SBI re-produced one of the Failed Claw-Back Documents and marked it as "Confidential."

On May 2, 2025, the Court conducted a hearing on the claw-back attempt and denied those efforts by holding any existing privilege was waived. The Court also invited Whinstone to file a motion to compel the production of any withheld documents covering the same subject matter. Order (May 2, 2025).

To date, SBI has not amended its interrogatory responses to exclude references to the Failed Claw-Back Documents. In other words, not only did SBI inject the subject matter of the Failed Claw-Back Documents into this litigation, SBI continues to do so.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Smith v. MV Transp., Inc.*, No. 1:21-CV-349-DII-SH, 2023 WL 3467775, at *3 (W.D. Tex. May 15, 2023).

Privilege is waived "by affirmatively relying on attorney-client communications to support an element of a legal claim or defense—thereby putting those communications 'at issue' in the case." *Id*. at *4.[4] Thus, "when a party entitled to claim attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Id.*

"When a party waives privilege as to a particular communication, the waiver applies to all other communications relating to the same subject matter." *Glob. Tubing*, 2021 WL 1169322, at *4; *Crossroads Sys. (Tex.), Inc. v. Dot Hill Sys. Corp.*, No. A-03-CA-754-SS, 2006 WL 1544621, at *3 (W.D. Tex. May 31, 2006). After finding waiver, courts apply Federal Rule of Evidence 502(a) to determine if "in fairness" other "privileged and undisclosed communications or information concern[ing] the same subject matter" "ought in fairness to be considered together." *In re Anadarko*, 2023 WL 2733401, at *5.

### IV. ARGUMENTS AND AUTHORITIES

The Court already held that SBI waived any privilege as to the Failed Claw-Back Documents. Order (May 2, 2025). Therefore, the Court need only determine the *scope* of the

---

[4] Texas state law governs privilege and waiver because this is a diversity case. *Quantlab Group, LP v. Dempster*, No. 4:18-CV-2171, 2019 WL 6913303, at *1 (S.D. Tex. Aug. 17, 2019), *R&R adopted*, No. CV H-18-2171, 2019 WL 7037653 (S.D. Tex. Dec. 20, 2019). However, Texas Rule of Evidence 511(b)(1) and Federal Rule of Civil Procedure 502(a) are identical. Thus, Whinstone primarily relies upon federal cases—which are more developed—in this motion.

subject matter waiver. *See, e.g., Glob. Tubing*, 2021 WL 1169322, at *12 (determining scope of subject matter waiver included all "documents withheld as attorney-client privileged communication that relate to the inventorship of . . . three patents" after a finding of waiver).

Here, the Failed Claw-Back Documents are communications between or amongst SBI client representatives that discuss or reference:

- Awareness of the circumstances giving rise to the claims against Whinstone including:
    - potential or actual claims, counterclaims, and/or defenses that relate to a breach of the Hosting Agreement;
    - damages amounts, including the calculation thereof, for any potential or actual claims, counterclaims, and/or defenses that relate to a breach of the Hosting Agreement;
    - date(s) Whinstone allegedly breached the Hosting Agreement;
    - Whinstone's termination of the Hosting Agreement due to a change of control;
    - Whinstone providing Riot a copy of the Hosting Agreement;
    - The possibility of SBI suing Whinstone;
- Whether SBI's Canaan A-10 miners used at Whinstone's cryptocurrency mining facility ("Facility") in Rockdale, Texas could or should be sold;
- The value of SBI's Canaan A-10 miners used at the Facility; and
- Whether to relocate SBI's Canaan A-10 miners used at the Facility to Russia, Iceland, or another location in the United States.

Two common factual predicates underlie the foregoing subject matter: (1) ***when*** SBI became aware of the circumstances giving rise to its potential claims; and (2) whether, post-Hosting Agreement termination, SBI could reuse or resell the Canaan A-10 miners used at the Facility. This information is key to rebutting SBI's claims—which SBI injected into this litigation "either by making the content of the communications a factual basis of a claim or defense or by disclosing the communication itself." *In re Anadarko*, 2023 WL 2733401, at *4 (internal citation omitted).

First, SBI must prove it satisfied all conditions precedent. *Trinity Indus.*, 2020 WL 13468885, at *11 ("[A] plaintiff cannot sue for a breach of contract if the plaintiff has not satisfied a condition precedent to the defendant's performance."). Under the Hosting Agreement, Whinstone is not liable unless SBI provided Whinstone with "written notice of [SBI's] claim[s] within twelve months of becoming aware of the circumstances giving rise to the claims." Mot. Dismiss (Jun. 15, 2023) Ex. 1 § 8.11 (ECF No. 11).

While the Failed Claw-Back Documents help demonstrate when SBI became aware of circumstances giving rise to its claims, the Failed Claw-Back Documents may not discuss or identify when SBI became aware of circumstances giving rise to all of its claims. The production of other withheld documents concerning the same subject matter of the Failed Claw-Back Documents should resolve that issue. The need for these documents is particularly heightened given the Court's holding that Whinstone may not reopen SBI's corporate representative's deposition to question him on the Failed Claw-Back Documents. Order (May 2, 2025). Moreover, Whinstone believes that the Failed Claw-Back Documents reflect the *latest* dates that SBI could have "become aware of the circumstances giving rise to [its] claims."

More fundamentally, SBI injected the Failed Claw-Back Documents into this case by, among other things, relying on those documents to establish when SBI became aware of circumstances giving rise to its claims. *See* Ex. 2 at Am. Interrog. Resp. No. 2. Indeed, having failed to amend its discovery responses to remove any reference to the Failed Claw-Back Documents, SBI continues to this day to rely on those documents to prove notice. It is patently unfair for SBI to shield evidence (under the guise of privilege) that proves it knew of such circumstances much earlier in time.

Second, SBI claims that the Canaan A-10 miners used at the Facility are worthless. *Id.*

¶¶ 54, 60. Contrary to that claim, one of the Failed Claw-Back Documents—Deposition Exhibit No. 19—demonstrates that SBI could have used those miners at other facilities or resold them for $15-20 million. Fairness does not permit SBI to hide additional evidence of those miners' value in 2021 while claiming today through experts that SBI is owed over $50 million for miner replacement costs.

SBI "wants to dramatically restrict the discovery of facts in this case by restricting discovery" regarding the same subject matter covered by the Failed Claw-Back Documents but SBI "wants to get the benefit of relying on" the Failed Claw-Back Documents. *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 496 (W.D. Tex. 2020). Other courts have rejected similar efforts as should this Court. *E.g.*, *In re Anadarko*, 2023 WL 2733401, at *4; *Bailey v. State*, 469 S.W.3d 762, 776 (Tex. App.—Houston [1st Dist.] 2015) ("But by pursuing a strategy and persistently arguing that she had a reasonable excuse for her failure to appear based on her communications with her lawyer, Bailey did place all her communications with Roberts relevant to that particular subject at issue."), *aff'd*, 507 S.W.3d 740 (Tex. Crim. App. 2016). The Court should thus compel the production of any withheld documents accordingly. *E.g.*, *id.*, *Smith*, 2023 WL 3467775, at *6 (compelling production of all withheld documents concerning settlement); *In re Anadarko*, 2023 WL 2733401, at *5 (compelling production of all withheld documents concerning an investigation); *Glob. Tubing*, 2021 WL 1169322, at *12 (compelling production of all withheld documents concerning inventorship of three patents); *Orchestratehr*, 2015 WL 11120526, at *9 (compelling production of all withheld documents concerning law firm's analysis of contracts with plaintiff).

## V. CONCLUSION

For these reasons, Whinstone requests the Court grant this motion, compel SBI to produce all withheld documents concerning the same subject matter as Deposition Exhibit Nos. 5, 18, and 19, and award Whinstone all other relief to which it is entitled.

Respectfully submitted,

FOLEY & LARDNER LLP

By: /s/ Robert T. Slovak
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US., INC.**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7, the parties met and conferred on May 8, 2025 regarding this Motion to Compel. Based on that conferral, the undersigned hereby certifies that counsel for SBI is opposed to the relief requested herein.

/s/Brandon C. Marx
Brandon C. Marx

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Brandon C. Marx
Brandon C. Marx