IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,** <br><br> *Plaintiff*, <br><br> v. <br><br> **WHINSTONE US, INC.,** <br><br> *Defendant.* | Civil Action No.: 6:23-cv-252-ADA-JCM |

**PLAINTIFF SBI CRYPTO CO., LTD.'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF WITHHELD DOCUMENTS CONCERNING SAME SUBJECT MATTER**

Plaintiff SBI Crypto Co., Ltd. ("SBI") files this Response to Defendant Whinstone US, Inc.'s ("Defendant" or "Whinstone") Motion to Compel Production of Withheld Documents Concerning Same Subject Matter (the "Motion") and respectfully shows the Court as follows:

**I.**
**SUMMARY OF ARGUMENT**

Whinstone's Motion is fundamentally flawed and should be denied. First and foremost, Whinstone fails to apply the first element of the test for subject matter waiver– whether SBI intentionally waived privilege. Similarly, Whinstone misstates the Court's May 2, 2025 Order which only examined the issues of inadvertent disclosure, not on subject matter waiver. Second, Whinstone fails to show any tactical advantage gained by SBI, and instead shows the advantages received by Whinstone. Third, Whinstone misapplies the offensive use doctrine. Whinstone makes no showing that the undisclosed communications would be outcome determinative and disclosure is the only means by

which Whinstone could obtain the information. For any of these three reasons, this Court can and should deny the Motion.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Contrary to Whinstone's Motion, this case is not a simple breach of contract lawsuit that turns on the question of notice. SBI alleges Whinstone fraudulently induced SBI to enter into the Hosting Service Agreement and continued to commit fraud during the performance of that contract. As a result, SBI alleged claims of fraudulent inducement and fraud by nondisclosure and concealment in addition to multiple allegations of breach. *See generally* Pl.'s Am. Compl., ECF No. 11. Related and in addition to SBI's fraud claims, SBI asserted a breach of contract claim against Whinstone. *Id.*

In October 2023, in response to Whinstone's First Requests for Production, SBI produced thousands of pages including but not limited to three emails between SBI's former CEO Carson Smith and its President Jonathon Tanemori. Nearly one year later, on August 15, 2024, Whinstone deposed Mr. Tanemori and entered Exhibits Nos. 5, 18, and 19 (the "Subject Emails") at his deposition. During Mr. Tanemori's deposition, he testified he could not recall what drove the origination of the Subject Emails, and that he may have even created Exhibit No. 19 on his own volition. *See* Deposition Excerpts of Jonathon Tanemori, August 15, 2024, at 278:14-19 (Ex. No. 5); *id.* at 277:6-10, 278:24-279:12, 280:4-10 (Ex. No. 18); *id.* at 279:18-280:3 (Ex. No. 19), attached hereto as **Exhibit A**. On August 21, 2024, Whinstone deposed Mr. Smith but did not ask him any questions regarding the creation of the Subject Emails.

On November 25, 2024, Whinstone filed its Amended Answer, Affirmative Defenses, and Counterclaims. ECF No. 61. Whinstone alleged, for the first time, that SBI

breached a settlement agreement and alleged that SBI fraudulently induced Whinstone to enter into the settlement agreement.[1] *Id*. Whinstone referenced Exhibit Nos. 18 and 19 in its counterclaim, but not Exhibit No. 5. *Id*.

On April 15, 2025, Whinstone deposed SBI's corporate representative, Carson Smith. During this deposition, Whinstone asked Mr. Smith about Exhibit Nos. 5 and 18. *See* Deposition Excerpts of Carson Smith, April 15, 2025, at 65:12-20 (No. 18), and 95:9-96:8 (No. 5), attached hereto as **Exhibit B**. Mr. Smith testified that that he drafted Exhibit No. 18 "under the direction of the legal department at SBI Holdings … " *Id*. at 65:12-20. Similarly, Mr. Smith testified that Exhibit No. 5 was "part of the ongoing risk assessment" involving "SBI Holdings legal department." *Id*. at 95:9-96:8. Immediately following both answers, SBI's counsel went off the record, discussed with Mr. Smith, and then came back on the record and asserted privilege. *Id*. at 66:3-14 (No. 18), 96:9-97:10 (No. 5).

Following the deposition of SBI's corporate representative, SBI promptly notified Whinstone's counsel of its clawback of certain documents, including the Subject Emails, and served a privilege log pursuant to the E-Discovery Order. ECF No. 23. Whinstone objected to the clawback of the Subject Emails, and Exhibit No. 36. The Court heard this discovery dispute on May 2, 2025 and held that SBI waived the privilege it may have had regarding the Subject Emails, but did not waive privilege as to Exhibit No. 36. ECF No. 77. However, this Court declined to rule on the issue of subject matter waiver and instead required Whinstone to file a motion to compel by May 9, 2025. *Id*. Whinstone now comes before this Court erroneously arguing that the Court already determined that SBI waived

---

[1] Note, Whinstone has never produced any alleged settlement agreement containing any releases signed by any of the parties.

privilege to the subject matter of the Subject Emails and that the Court need only determine the scope of the waiver.

## III.
### ARGUMENT AND AUTHORITIES

The Supreme Court has repeatedly reaffirmed the "strong public policy" underlying the attorney-client and work-product privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 397–98 (1981). "[T]he interests of the clients and the cause of justice would be poorly served" by courts readily allowing broad discovery into privileged information. *Id.* at 398. Whinstone has the burden to prove that the subject matter waiver or offensive use doctrine applies. *Smith v. MV Transp., Inc.*, No. 1:21-CV-349-DII-SH, 2023 WL 3467775, at *5 (W.D. Tex. 2023); *In re Horizon Offshore Contractors, Inc.*, No. 09-06-561 CV, 2007 WL 117716, at *2 (Tex. App.—Beaumont 2007, no pet.).

**A.    Legal standard**

Texas state law governs the resolution of privilege issues in diversity cases. *See* FED. R. EVID. 501; *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004). Texas Rule of Evidence 511(b)(1) and Federal Rule of Evidence 502(a) use identical language regarding the test for a subject matter waiver of privilege:

1. the waiver is intentional;
2. the disclosed and undisclosed communications or information concern the same subject matter; and
3. they ought in fairness to be considered together.

*Compare* TEX. R. EVID. 511 *to* FED. R. EVID. 502. "This is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." FED. R. EVID. 502, Advisory Committee Notes. A party may waive privilege as to specific documents by failing to promptly clawback the documents, but

such "advertant" disclosure does not constitute an intentional waiver of privilege necessary to satisfy the first element of the subject matter waiver test. *First Am. CoreLogic, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132-TJW, 2010 WL 4975566, at *5 (E.D. Tex. 2010); *In re Microvast, Inc.*, No. 01-18-00049-CV, 2018 WL 4131068, at *3 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

Whinstone ignores the distinction between inadvertent disclosure and subject matter waiver by erroneously arguing that the Court has already determined SBI waived privilege and "need only determine the scope of the subject matter waiver." Def.'s Mot. to Compel at 6, ECF No. 79. The Court's May 2, 2025 Order only ruled on inadvertent disclosure and not on subject matter waiver. In fact, the court specifically required that Whinstone file a motion to compel regarding subject matter privilege. ECF No. 77.

**B.    Whinstone fails to establish, and the evidence rebuts, that SBI intentionally waived privilege**

Whinstone <u>never</u> argues in the Motion that SBI intentionally waived privilege.[2] Whinstone fails to argue that SBI intentionally waived privilege as to the whole subject matter of the undisclosed documents or communications and therefore cannot meet its burden to establish subject matter waiver. In any event, the evidence demonstrates the lack of any such intent by SBI. The Subject Emails do not appear privileged on their face, and Mr. Tanemori's deposition testimony further suggested that no privilege existed. Once SBI's counsel became aware of the privilege during SBI's corporate representative deposition, SBI promptly objected to privilege and took the necessary steps under the E-Discovery Order to clawback the privileged documents.

---

[2] No reference to "intent" appears in the Motion.

This case more resembles *CoreLogic*. CoreLogic produced thousands of documents, including seven privileged documents it mistakenly filed with the court and served on all parties. 2010 WL 4975566 at *5. CoreLogic then tried to clawback the documents and claimed inadvertent disclosure. *Id*. The court determined CoreLogic waived privilege through this advertent disclosure, but that CoreLogic did not intend to waive privilege. *Id*. Therefore, the court determined that CoreLogic did not waive privilege as to the undisclosed information regarding the same subject matter. *Id*.

Here, the Court determined only that SBI waived any privilege it may have had for the Subject Emails by advertently disclosing them. ECF No. 77. The Court should deny the Motion because SBI did not intend to waive privilege, and Whinstone has not made any argument to the contrary.

**C.  Whinstone cannot establish SBI gained a tactical advantage through its disclosure**

Whinstone does not advance any clear argument that SBI gained a tactical advantage through its disclosure. Whinstone asserted only that SBI identified these documents in a response to an interrogatory. Def.'s Mot. to Compel at 4-5, ECF No. 79. SBI amended its responses on April 11, 2025 to identify Exhibit Nos. 18 and 19, among numerous other documents, to Whinstone's interrogatory asking SBI to identify the dates it became aware of the circumstances giving rise to its breach of contract claim. A failure to identify responsive documents in an interrogatory response would render the response deficient, and surely Whinstone does not argue that parties have no responsibility to supplement or amend their discovery responses.

Moreover, this Court has since ruled that SBI waived the privilege, if any, it had regarding those specific exhibits. Whinstone's argument that SBI's use of the documents

at this point constitutes some sort of waiver is, at best, nonsensical. Whinstone wants to be able to use the Subject Emails in its counterclaim, in depositions, and likely in its motion practice. Prior to identifying the Subject Emails as arguably privileged, SBI's only "use" consisted of its identification of two of the Subject Emails as responsive to an interrogatory response propounded by Whinstone.

If anything, the Motion demonstrates SBI has been ***disadvantaged*** by the disclosure of the Subject Emails. Whinstone used two of the Subject Emails in the factual background of its counterclaim. It now argues that, out of fairness, it ought to receive additional privileged communications. This argument has been rejected by numerous courts. *See, e.g.*, *Myers v. City of Highland Vill., Tex.*, 212 F.R.D. 324, 328 (E.D. Tex. 2003) ("Any reliance by the [receiving party] on the continued availability of the documents would be unjustifiable."). Offensive use by the receiving party establishes that the disclosing party did not gain a tactical advantage. *In re Washington Prime Group Inc.*, No. 21-31948, 2024 WL 4615552, at *8 (Bankr. S.D. Tex. 2024) (plaintiff used the disclosed information to move to strike the testimony of a defense witness). Here, Whinstone—not SBI—has only shown the advantages it has gained from the (inadvertent) disclosure of the Subject Emails.

### D.   Whinstone misapplies the offensive use doctrine

Whinstone seems to invoke the offensive use doctrine through its vague argument that "SBI cannot use privilege as both a sword and a shield." Def.'s Mot. to Compel, ECF No. 79 at 2.[3] The Texas Supreme Court established the following test for the offensive use doctrine:

---

[3] Whinstone fails to actually provide the test for the offensive use doctrine or argue any of the elements in the Motion.

1. The party asserting the privilege is seeking affirmative relief;
2. The privileged information sought is such that, if believed by the fact finder, in all probability it would be outcome determinative of the case of action asserted; and
3. Disclosure of the confidential communication is the only means by which the aggrieved party may obtain the evidence.

*Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993); *TransAmerican Nat. Gas Corp. v. Flores*, 870 S.W.2d 10, 11–12 (Tex. 1994).

Whinstone advances two arguments on how SBI has used the Subject Emails as a "sword and a shield." First, Whinstone argues that the Subject Emails relate to notice. Second, Whinstone argues that the Subject Emails relate to SBI's damages.

Whinstone never makes the argument that the requested information would be dispositive or outcome determinative, but rather argues that such information undermines notice and is relevant to Whinstone's counterclaim. However, "[m]ere relevance" or "a contradiction in position without more is insufficient." *Republic Ins. Co.* at 162. The offensive use doctrine does not grant a "license to litigants to engage in fishing expeditions into privileged matters." *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985). Whinstone has demonstrated nothing more than "hopeful thinking that the [undisclosed] emails will be outcome determinative of [SBI's breach of contract] claim." *Orchestrate HR, Inc. v. Blue Cross Blue Shield Kansas*, No. 5:19-CV-4007-HLT-TJJ, 2021 WL 10399206, at *3 (D. Kan. 2021) (applying Texas law). Simply because the privileged communications sought by Whinstone could potentially contain information relevant to its defenses and counterclaims offers no reason to override privilege. *Republic Ins. Co.*, 856 S.W.2d at 162.

Courts typically find offensive use under two scenarios: (1) disclosing the advice of counsel, while claiming privilege for the remainder and (2) disclosing part of an internal investigation to show a reasonable response while objecting to the remainder of the investigation. *In re Anadarko Petroleum Corp. Sec. Litig.*, No. 4:20-CV-00576, 2023 WL 2733401, at *1 (S.D. Tex. 2023), reconsideration denied, No. 4:20-CV-00576, 2023 WL 4308750 (S.D. Tex. 2023).

In the present case, Whinstone relies on the highly distinguishable cases *In Re Anadarko*, (disclosure of a "significant portion of confidential communications" to the SEC and use of the letter from the SEC based on those communications); *Glob. Tubing, LLC v. Tenaris Coiled Tubes, LLC*, No. 4:17-CV-3299, 2021 WL 1169322, at *11-12 (S.D. Tex. 2021) (defendant disclosed conversations with attorney on inventorship of patent in a dispute over the same); *MV Transp., Inc.*, 2023 WL 3467775, at *4 (plaintiff waived privilege by claiming his attorney lacked authority to settle the case); *compare to Microvast, Inc.*, 2018 WL 4131068, at *4 (no subject matter waiver solely because privileged communications might undermine the damages sought).

Neither scenario is present in this case. SBI mistakenly disclosed a few potentially privileged emails which Whinstone, not SBI, has made relevant and used offensively. *In re Hallwood Energy, L.P.*, No. 09-31253-11, 2010 WL 3211688, at *8 (Bankr. N.D. Tex. 2010) (no offensive use where defendant put the documents at issue).

Whinstone never argues that the disclosure of confidential communications is the only means by which it may obtain the evidence. In fact, the opposite is true. Whinstone previously argued it has already had "thorough and unimpeded" depositions of Mr. Tanemori and Mr. Smith on the Subject Emails. *See* Parties' April 28, 2025 Discovery Dispute Chart at 2, attached hereto as **Exhibit C**. Those depositions, along with the

deposition of SBI's corporate representative, offered ample opportunity for Whinstone to inquire on when SBI became aware of circumstances giving rise to its claims and SBI's ability and efforts to resell its miners. *See Denton v. Tex. Dep't of Pub. Safety Officers Ass'n*, 862 S.W.2d 785, 791 (Tex. App.—Austin 1993), aff'd and remanded, 897 S.W.2d 757 (Tex. 1995) (appellee could find most of the information from non-privileged sources such as other witnesses); *Hallwood Energy,* at *8 (defendant could take depositions of plaintiff's representatives on issues of awareness). Whinstone argues that because the Court denied its request to reopen the deposition of SBI's corporate representative, the Court should grant it discovery into privileged communications. Def.'s Mot. to Compel at 8, ECF No. 79. This is the precise type of fishing expedition that the *Ginsberg* court cautioned against. Whinstone does not get privileged communications because it now regrets its deposition strategy.

Moreover, SBI produced expert reports, along with a significant number of documents, regarding the damage to SBI's miners, the resale value of the miners, and the ability of SBI to sell its miners. Whinstone also already designated Richard Peters as an expert to testify about the resale value of SBI's miners. Whinstone cannot credibly argue that discovery of privileged communications regarding the resale value of SBI's miners is the only means by which it may obtain evidence, while also presenting an expert who has already stated in his report that he had enough facts and data to reach his opinions.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff SBI Crypto Co., Ltd. requests that the Court deny Whinstone's Motion in its entirety. SBI further requests that it be awarded such other and further relief to which it may justly be entitled to receive.

Respectfully submitted,

**WINSTEAD PC**

By: */s/ Joshua M. Sandler*
Joshua M. Sandler
Texas Bar No. 24053680
jsandler@winstead.com
Cory Johnson
Texas Bar No. 24046162
cjohnson@winstead.com
Andrew Patterson
Texas Bar No. 24131573
apatterson@winstead.com
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile:  (214) 745-5390

- AND -

Jeremy A. Oliver, *pro hac vice*
Tennessee Bar No. 029329
joliver@winstead.com
**WINSTEAD PC**
1221 Broadway, Suite 2030
Nashville, Tennessee 37203
Telephone: (615) 949-2352
Facsimile: (615) 949-2349

**ATTORNEYS FOR PLAINTIFF
SBI CRYPTO CO., LTD.**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure via *Electronic Case Filing* on May 16, 2025.

*/s/ Joshua M. Sandler*
Joshua M. Sandler