IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., | |
| Plaintiff, | Civil Action No. 6:23-cv-00252-ADA-DTG |
| v. | |
| WHINSTONE US, INC., | |
| Defendant. | |

## DEFENDANT WHINSTONE US, INC.'S EMERGENCY MOTION TO STRIKE PLAINTIFF SBI CRYPTO CO., LTD.'S UNTIMELY "SUPPLEMENTAL" EXPERT REPORTS AND UNDISCLOSED EXPERT

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US, INC.**

Pursuant to Federal Rule of Civil Procedure 37(c)(1), Defendant Whinstone US, Inc. ("Whinstone") files this Emergency Motion to Strike Plaintiff SBI Crypto Co., Ltd.'s Untimely "Supplemental" Expert Reports and Undisclosed Expert and states as follows.

## I. SUMMARY OF ARGUMENT

SBI improperly served several purported "supplemental" affirmative expert reports and relied upon an undisclosed expert after the affirmative expert disclosure deadline. These "supplements" materially re-write and alter the experts' original analysis by employing new methodologies based on "new" information and assumptions to alter the experts' original conclusions. But, despite SBI's claims, the information is not "new"—it has been within SBI's possession, custody, and control since case inception. No reasonable explanation exists for the delay. The "supplements" and undisclosed expert should be stricken.

It all started with SBI purporting to serve Dr. Randall Valentine's purported "supplemental" affirmative expert report (the "Second Valentine Report")[1] on July 16, 2025— over three-and-a-half months after the March 28, 2025 affirmative expert disclosure deadline[2] and two days prior to Whinstone's July 18, 2025 rebuttal deadline. The Second Valentine Report is not a supplement—it is a complete rewrite of Dr. Valentine's initial report (the "Original Valentine Report").[3] This *22-page* report fundamentally changes Dr. Valentine's methodology and introduces new assumptions, adjustments and opinions outside the scope of the Original Valentine Report. It also relies on never produced information, including: (1) SBI crypto "mining pool" data; (2) "internal audit documents," (3) "external audit documents;" and (4) "example invoicing and communications," among others, to more than double alleged lost profits.

---

[1] Supplemental Expert Report of Dr. Randall Valentine, attached as Exhibit 1 (filed under seal).
[2] Fifth Am. Sched. Order (May 19, 2025) (ECF No. 86).
[3] Attached as Exhibit 2 (filed under seal); Redline of Second Valentine Report compared to Original Valentine Report, attached as Exhibit 3 (filed under seal).

When asked why SBI ignored Court deadlines and waited 110 days to serve the Second Valentine Report,[4] SBI's counsel pointed to its own document productions as justification—which were only made pursuant to a Court order.[5] SBI's focus on its eventual productions on April 25, 2025 and June 24, 2025 is a red herring. Those documents—which SBI previously **told this Court** contained "irrelevant information"[6]—were within SBI's possession, custody, and control from the outset of this case nearly two years ago.[7] That SBI improperly withheld documents and then failed to complete production until nearly two months *after* this Court's April 25, 2025 deadline does not justify the Second Valentine Report's 100+ day tardiness. On the contrary, it shows that this was a problem of SBI's own making from the very beginning.

SBI did not raise its "supplement" during the parties' five discovery conferral, scheduling, and document translation conferences[8] or two depositions.[9] Nor did SBI raise this issue during countless communications post-dating that discovery order. In fact, the parties jointly moved to amend the scheduling order on May 16, 2025[10] and the *rebuttal* expert disclosure deadline was extended—***not*** the affirmative disclosure deadline.

SBI's discovery abuses did not stop with the Second Valentine Report. Without any notice, SBI declared the day before Whinstone's rebuttal reports were due that SBI also intended to supplement Charles C. Byers' initial expert report (the "Original Byers Report").[11] SBI did not serve the so-called supplement (the "Second Byers Report") until mid-day on July 18, 2025[12]— *the day of the rebuttal report deadline*. Like the Second Valentine Report, the Second Byers Report

---

[4] During the parties' July 17, 2025 meet and confer ("Meet and Confer") on this motion to strike.
[5] Order (Apr. 17, 2025) (ECF No. 74).
[6] Discovery Dispute Summary (Apr. 11, 2025) at 2.
[7] Order (Apr. 17, 2025).
[8] On April 22, 2025, April 29, 2025, May 6, 2025, May 13, 2025, and May 15, 2025.
[9] Nicholas Vitalis on July 7, 2025 and Whinstone's corporate representative on July 15, 2025.
[10] Joint Mot. Am. Sched. Order and Cont. (May 16, 2025) (ECF No. 84).
[11] Attached as Exhibit 4.
[12] Attached as Exhibit 5.

**EMERGENCY MOTION TO STRIKE**                                                    3

offers new opinions—this time on the design and performance of SBI's Russian operations.[13]

But the Second Byers Report has a unique issue: it relies upon expert testimony and document translations from Carson Smith—a former SBI employee that is currently being paid to assist SBI with this case and who served as SBI's corporate representative. Not only did SBI **_never_** disclose Mr. Smith as an expert,[14] but such translations also violate the parties' agreed translation protocol submitted to the Court because SBI failed to utilize a neutral interpreter.[15]

Finally, SBI served a rebuttal report by Michael Schuler (the "Schuler Rebuttal") which reflects his intent to "reserve the right to supplement this report" following a "physical inspection [on August 5, 2025] of the [SBI] miners where they are warehoused in Houston, Texas."[16] Those miners have been stored by SBI since the outset of this case and were previously inspected by its other experts. There is no acceptable reason why Mr. Schuler could not have physically inspected the miners before affirmative expert disclosures were due and during the discovery period.[17]

Whinstone has spent over **_$400,000_** preparing expert rebuttal reports for SBI's original expert reports. Responding to SBI's untimely "supplements" would severely prejudice Whinstone by forcing it to spend significant sums under an abbreviated schedule to rebut SBI's materially altered expert reports. Courts often strike reports under these circumstances; this Court should as well. Alternatively, if the Court declines to strike, Whinstone requests that written discovery and depositions be re-opened (limited to matters for supplemental rebuttal reports) and SBI be ordered to pay for costs (including attorneys' fees) arising from the same. Whinstone needs this relief on an emergency basis given the September 12, 2025 expert discovery deadline[18] and need to conduct

---

[13] *Compare* Ex. 4 *with* Ex. 5.
[14] *See* Plaintiff SBI Crypto Co., LTD.'s Expert Disclosures, attached as Exhibit 6.
[15] Joint Mot. Am. Sched. Order (May 16, 2025) at Exhibit B - Translation Protocol Order (ECF No. 84-2).
[16] Tech Remarketers Product Valuation Analysis Supplemental & Rebuttal Report at 21, attached as Exhibit 7.
[17] Which closed on July 11, 2025. Fifth Amended Scheduling Order (May 19, 2025).
[18] Fifth Am. Sched. Order (May 19, 2025).

**EMERGENCY MOTION TO STRIKE**                                                                4

depositions.

## II. RELEVANT BACKGROUND

On January 28, 2025, the Court set the disclosure deadlines as March 21, 2025 for affirmative expert reports and April 18, 2025 for rebuttal expert reports.[19] On March 20, 2025, the parties agreed to extend those deadlines to March 28, 2025 and May 2, 2025, respectively.

On March 28, 2025, SBI served expert disclosures and the Original Valentine and Byers' Reports.[20] Those reports posit that SBI's Russian cryptocurrency mining operations, although materially different than those in Texas, serve as a proxy to prove Whinstone's cryptocurrency services to SBI in Rockdale, Texas breached the parties' hosting agreement.[21] Mr. Smith has never been disclosed as an expert.[22]

Although SBI's experts relied heavily upon its Russian cryptocurrency mining performance to prove alleged lost profits, SBI refused to produce documents related to the same. This forced Whinstone to initiate a discovery dispute to compel production.

On April 17, 2025, the Court ordered SBI to produce the highly relevant information regarding SBI's Kyrgyzstan/Russian operations no later than April 25, 2025.[23] On the day of the deadline, SBI produced 1,005 documents on the Court's deadline (but supplemented with an additional 182 documents on June 24, 2025).

On May 19, 2025, the Court granted the parties' jointly requested continuance scheduling

---

[19] Fourth Am. Sched. Order (Jan. 28, 2025).
[20] Exs. 2, 4, 6.
[21] *Id.*
[22] Ex. 6.
[23] The "performance, maintenance, and operation of SBI's mining equipment at facilities located in Rockdale or Kyrgyzstan/Russia," "construction, design, layout, and operation of the Kyrgyzstan/Russia facilities," "any actual or potential warranty claims for the Canaan A-10 miners used at these facilities, including any analysis, investigation, or discussion of Canaan A-10 miner issues (whether actual or potential)," "any actual or potential purchase, resale, replacement, maintenance, and/or troubleshooting for any Canaan A-10 miner used at these facilities," and "[t]he source data for any spreadsheet relied upon by SBI's expert witnesses. Order (Apr. 17, 2025) at 1-2.

**EMERGENCY MOTION TO STRIKE**                                                                 5

order—*keeping* the March 28, 2025 affirmative expert disclosure deadline but extending the rebuttal expert disclosure deadline to July 18, 2025 (due to document translation issues and SBI's other untimely document productions).[24]

On July 16, 2025, SBI—without any prior notice—unilaterally served the Second Valentine Report.[25] Therein, Valentine changes his methodology, relies upon SBI cryptocurrency mining pool (and other) data that has not been produced, includes new calculations, assumptions, adjustments, and opinions related to accuracy of SBI's alleged Russian-operational data, and attempts to manufacture double the amount of SBI's purported lost profits.

Whinstone immediately requested to meet and confer, which occurred the next day on July 17, 2025. During the conferral, SBI's counsel stated the Second Valentine Report was intended to "complete" the Original Valentine Report (relying on the same documents it withheld until the Court compelled production) and that SBI intended to serve the Second Byers Report as well.

On July 18, 2025—the deadline for Whinstone's rebuttal expert reports—SBI served the Second Byers Report and Schuler Rebuttal. The Second Byers Report contains completely new opinions on the design and performance of SBI's cryptocurrency mining facility in Russia—which hinge on expert analysis and translations performed by Mr. Smith (who has never been disclosed as an expert).[26] In the Schuler Rebuttal, Mr. Schuler states his intent to supplement his report after an August 5, 2025 visit to inspect SBI's miners in Houston.[27]

Also on July 18, 2025, Whinstone timely served three rebuttal expert reports—all prepared to address the initial reports of SBI's experts (*i.e.*, not any supplement).[28] In so doing, Whinstone

---

[24] Fifth Am. Sched. Order (May 19, 2025).
[25] Ex. 1.
[26] *See generally* Ex. 5; Ex. 6.
[27] Ex. 7 at 21. The miners have been in Houston since 2023 under SBI's possession, custody and control.
[28] Whinstone US, Inc.'s Supplemental Designation and Disclosure of Expert Witnesses, attached as Exhibit 8.

**EMERGENCY MOTION TO STRIKE**                                                                 6

incurred more than $400,000 in expert witness fees.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(D) requires the disclosure of expert testimony "at the times and in the sequence that the court orders." When it comes to supplementation of expert disclosures, "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. Proc. 26(a)(2)(E), 26(E).

"[C]ourts routinely reject untimely 'supplemental' expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures and [the] disclosure 'departs from [or] expands upon [the] original report in [any] material respects." *UWorld LLC v. USMLE Galaxy LLC*, No. 3:23-CV-447-K-BN, 2025 WL 1246434, at *3 (N.D. Tex. Apr. 28, 2025), *recons. denied*, No. 3:23-CV-447-K-BN, 2025 WL 1798940 (N.D. Tex. June 26, 2025).[29]

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In addition to or alternatively, the Court may "order payment of the reasonable expenses, including attorney's fees, caused by the failure," or "impose any other sanction listed in Rule 37(b)(2)(A)(k)-(vi)."  In deciding whether a Rule 26 violation may be excused, "the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."

---

[29] Indeed, courts have held: "'The purpose of supplementary disclosures is just that—to supplement. Such disclosures are not intended to provide an extension of the expert designation and expert production deadline.' 'Thus, [w]hen the analysis and opinions in the second report [are] largely new rather than supplementary, they cannot qualify as a supplemental expert report under Rule 26(e).'" *UWorld*, 2025 WL 1246434, at *3 (internal citations omitted); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996).

*UWorld*, 2025 WL 1246434, at *3. The party failing to comply with Rule 26 "bears the burden of proving the failure to timely disclose was substantially justified or harmless." *Id.*

## IV. ARGUMENTS AND AUTHORITIES

### A.  The untimely disclosures are not "supplements" under Rule 26(e).

SBI proclaims that the supplements are merely to "complete" or "correct" its respective experts' original reports due months prior. SBI mischaracterizes the new reports, which introduce materially new analyses, opinions, and calculations and rely on undisclosed information. Texas federal courts routinely reject similar efforts to "re-do" expert reports.

For example, Judge Pitman for the Western District of Texas—Austin Division rejected a party's post-disclosure deadline effort to include "additional detail, data and analyses in support of its original report's conclusions." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. 1:15-CV-134-RP, 2017 WL 9480314, at *2 (W.D. Tex. May 22, 2017).[30] The Fifth Circuit and other Texas federal district courts have found similarly. *E.g.*, *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016); *Edwards v. First Tr. Portfolios L.P.*, No. 3:23-CV-2239-BN, 2025 WL 531787, at *2 (N.D. Tex. Feb. 18, 2025).

Here, Dr. Valentine fundamentally changes his methodology from calculating "Lost Profits in BTC" to using "BTC Expected Revenue," applies new assumptions and adjustments to his calculation (including updated pricing and expanded time periods), converts all other cryptocurrency mined into Bitcoin, and changes his Bitcoin price. Ex. 1 at 2-3, 6-7, 9, 11, 20. Dr.

---

[30] Specifically, Judge Pitman held: "[T]he plain language of Rule 26(e) does not allow a supplemental report for the purpose of providing additional detail. Rather, supplements are allowed only to cure material errors or omissions. . . . . [T]he purportedly supplemental report is replete with wholly new arguments, analyses and opinions [such as] an analysis of the number of chain liquor stores in Texas relative to the total number of liquor stores in the state, as well as a comparison to the growth of large grocery store chains across the country. These analyses were absent from TSPSA's original report. Similarly. . . the new report includes a regression analysis that correlates states' per capita alcohol consumption to the degree of liquor control in the state and whether Wal-Mart has a presence in the state while controlling for confounding variables including religious observation and tourism . . . TSPA's second expert report is additive, not supplemental." *Wal-Mart*, 2017 WL 9480314, at *2.

**EMERGENCY MOTION TO STRIKE**                                                          8

Valentine also now opines that Muroo Inc. ("Muroo")—the operator of SBI's Russian cryptocurrency mining operations—was incentivized to report accurate and complete information regarding those operations—despite SBI largely failing to produce source data or its communications with Muroo regarding Russian operations. *Id.* at 13-14. Further, Dr. Valentine claims to have conducted a new "forensic examination . . . of all blockchain addresses associated with SBI Crypto's mining operations"—an analysis absent from his original report and only vaguely referenced in and not provided with his "supplement." *Id.* at 4. In so doing, Dr. Valentine now balloons SBI's alleged lost profits to between $317-$385 million. *Id.* at 20. Obviously, the Second Valentine Report, which also relies on the undisclosed information in Exhibit 9, is a "new" or "additive" report—not a supplement. It should be excluded under *Wal Mart* and its progeny.

The Second Byers Report is even worse. In his original report, Mr. Byers opined on the alleged environment, design, and operation of Whinstone's cryptocurrency mining facility located in Rockdale, Texas. *See generally* Ex. 4. But in the Second Byers Report, Mr. Byers analyzes the alleged environment, design, and operation of the cryptocurrency mining facility housing SBI's miners ***in Russia*** to conclude that Whinstone's operations in ***Rockdale, Texas*** were faulty. *See generally* Ex. 5. Substantive issues aside, Mr. Byers' new theory relies upon spreadsheets analyzing the Russian and Rockdale crypto mining data compiled by Mr. Smith after the discovery deadline, along with Japanese third-party documents translated by Mr. Smith. *Id.* at 2 n.4 ("Translation – Preliminary Investigation by Muroo, SBIC006472), 11 n.11 ("Carson Smith, Russia – Texas Comparison – Excel Spreadsheet, 7/16/2025"). Thus, not only is his entire supplement "additive" or "brand new," but Mr. Byers relies upon undisclosed expert opinion and translations occurring outside of the parties' agreed translation protocol. *See* Ex. 6.

As for any attempts by Mr. Schuler to "supplement," SBI has not identified any alleged

errors or omissions in Mr. Schuler's reports that should be corrected, nor why any inspection by Mr. Shuler did not timely occur. No supplementation should be allowed.

## B. SBI's improper disclosures are not substantially justified or harmless.

SBI cannot meet its burden that its untimely disclosures are substantially justified or harmless. *UWorld*, 2025 WL 1246434, at *3.

First, SBI has no excuse for its nearly four-month delay. The parties spent months meeting and conferring on various issues, participating in depositions, and exchanging emails. Not ***once*** did SBI's counsel mention "supplementing" SBI's expert reports. Nor did SBI request to modify the expert deadline when the parties' adjusted the latest scheduling order on May 16, 2025. Joint Mot. Am. Sched. Order (May 16, 2025). These so-called "supplements" contain new opinions, analyses, and methodologies based upon undisclosed data and experts. No possible justification can support that conduct.[31] Further still, at the time of the Initial Valentine and Byers Reports, SBI possessed the very information it now contends warranted the "supplementation"—information that this Court found should have been produced long ago. It was only after the Court compelled SBI to produce such information that its experts apparently considered its Russian operations. Supplementation under such circumstances is not permissible.[32]

Second, Whinstone will clearly be prejudiced by having to expend substantial time and money to respond to an improper disclosure.[33] Expert rebuttal reports have been in the works since

---

[31] *Wal-Mart*, 2017 WL 9480314, at *4 ("If TPSA believed that extenuating circumstances warranted producing a second report, it should have first conferred with Wal–Mart and, if unable to reach a mutually agreeable resolution, sought leave from this Court.").

[32] *C.f.*, *Edwards*, 2025 WL 531787, at *2 ("And, so, Mr. Spindler's Supplemental Report contains an untimely expert opinion that is based on information available before the deadline for expert disclosures and that departs from his Original Report in material respects.").

[33] *See, e.g.*, *UWorld*, 2025 WL 1246434, at *3 ("And forcing Defendants to incur substantial time and expense to prepare additional reports in response to the sur-rebuttals will not remedy that prejudice."); *Wal-Mart*, 2017 WL 9480314, at *3 ("Even if Wal-Mart were able to re-depose TPSA's experts and to amend or supplement its rebuttal report, such efforts would be costly.").

**EMERGENCY MOTION TO STRIKE**                                                    10

August 2024. SBI served these supplements on the eve of the rebuttal deadline, and one potential supplement has not yet been served. If the supplements are permitted, then additional discovery is required (which involves substantial time and money) to issue new rebuttals. Rules and deadlines must mean something—lest expert discovery turns into "'an infinitely iterative process' where parties serve expert reports with no defined end." *UWorld*, 2025 WL 1246434, at *7.

Third, a continuance cannot remedy the prejudice for the same reasons articulated in the prior paragraph. A continuance simply encourages SBI to continue its gamesmanship.[34]

Fourth, the testimony is not important to SBI. If it were, SBI would have supplemented long ago; the information regarding its Russian operations would have been willingly provided— not forcibly compelled. Courts routinely reject SBI's tactics of driving up costs to gain litigation advantage through gamesmanship. *UWorld*, 2025 WL 1246434, at *3. This Court should too.

If the Court permits SBI's "supplements," Whinstone needs discovery and fact depositions to be re-opened to obtain the undisclosed information identified in Exhibit 9 relied upon by SBI's experts and to test the veracity of the sources of that information.

## V. CONCLUSION

SBI should not be permitted to ignore deadlines and benefit. Whinstone requests that the Court grant this motion, strike the Second Valentine and Byers Reports (along with Mr. Smith as an undisclosed expert), and order SBI not to supplement Schuler's reports. Alternatively, Whinstone requests that written discovery and depositions be re-opened, as detailed in Exhibit 9, and SBI ordered to pay expenses (including attorneys' fees) arising from the same. Whinstone further requests all such other relief to which it is entitled.

---

[34] *See, e.g.*, *Sierra Club*, 73 F.3d a 573 ("While a continuance would have given Sierra Club more time to review the late disclosures, such a measure 'would neither punish [Cedar Point] for its conduct nor deter similar behavior in the future.'").

**EMERGENCY MOTION TO STRIKE**                                                                11

Respectfully Submitted,

FOLEY & LARDNER LLP

By:  /s/ Robert T. Slovak
      Robert T. Slovak
      Texas Bar No. 24013523
      rslovak@foley.com
      Steven C. Lockhart
      Texas Bar No. 24036981
      slockhart@foley.com
      Brandon C. Marx
      Texas Bar No. 24098046
      bmarx@foley.com
      2021 McKinney Avenue, Suite 1600
      Dallas, Texas 75201
      Telephone: (214) 999-3000
      Facsimile: (214) 999-4667

      **ATTORNEYS FOR DEFENDANT**
      **WHINSTONE US., INC.**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7, the parties met and conferred on July 17, 2025 and July 25, 2025 regarding this motion. Based on that conferral, the undersigned hereby certifies that counsel for SBI is opposed to the relief requested herein.

/s/Brandon C. Marx
Brandon C. Marx

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Brandon C. Marx
Brandon C. Marx

**EMERGENCY MOTION TO STRIKE**                                              12