IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,** *Plaintiff*, v. **WHINSTONE US, INC.,** *Defendant*. | Civil Action No.: 6:23-cv-252-ADA-DTG |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
EMERGENCY MOTION TO STRIKE**

Plaintiff SBI Crypto Co., Ltd. ("Plaintiff" and/or "SBI") files this Response (the "Response") to the *Emergency Motion to Strike Plaintiff SBI Crypto Co., Ltd.'s Untimely "Supplemental" Expert Reports and Undisclosed Expert* ("Whinstone's Motion") (Dkt. 90) filed by Defendant Whinstone US, Inc. ("Defendant" and/or "Whinstone").

**I.
SUMMARY**

The relief requested in Whinstone's Motion is wholly unwarranted. First, SBI produced the challenged supplemental reports more than one month in advance of the depositions of the challenged experts. Courts do not exclude supplemental reports produced more than one month in advance of the expert's first deposition and Whinstone cites no caselaw supporting exclusion under those circumstances.

Second, Whinstone's alternative request to reopen written discovery and to conduct a third deposition of Carson Smith is contrary to Whinstone's agreement to forgo any further written discovery in the Fifth Amended Scheduling Order (Dkt. 70) and the Court's last discovery order denying Whinstone's prior request to re-depose Mr. Smith.

Consistent with Rule 26, SBI's lost profit damages expert, Dr. Randall Valentine, timely corrected errors in his report before the issuance of any rebuttal report, more than one month before his scheduled deposition, and before the close of expert discovery. Similarly, SBI served Charles Byers's supplemental report more than one month before his scheduled deposition. As SBI's causation expert, Byers supplemented his March report with additional information related to miners operated in a Russian facility. SBI produced this information when fact discovery in the case remained open and Byers appropriately relied on that information for purposes of arriving at his expert opinion.

As it pertains to Michael Schuler, SBI's equipment damages/valuation expert, SBI informed Whinstone that Schuler planned on conducting a physical inspection of miners operated at Whinstone's Texas facility prior to his deposition and that moreover, he reserved the right to supplement his report.

None of the aforementioned supplements are inconsistent with Rule 26 or caselaw allowing submission of supplemental expert reports. Therefore, Whinstone's Motion should be denied in its entirety.

Alternatively, in the event the Court does not deny Whinstone's Motion, the Court should merely extend expert rebuttal deadlines to August 18, 2025, which would give the parties sufficient time to complete expert discovery by September and the submission of dispositive motions in October as provided under the current Scheduling Order.

## II.
### BACKGROUND

The July 16 Supplemental Report by SBI's expert, Dr. Randall Valentine ("Dr. Valentine"), identifies two corrections to his lost profit calculations and one update related to the current price of Bitcoin. In his first correction, Dr. Valentine explains that

after "reviewing the initial damages model, it became evident that hosting expenses were over allocated." Def.'s Ex. 1 at ¶ 6. Specifically, the first "model overstated the deduction by both subtracting hosting expenses explicitly and applying a retention ratio [another application of expenses] premised on the same outflows." *Id*. According to Dr. Valentine, this "corrected approach" ensures "a more accurate and reliable calculation of net Bitcoin revenue attributable to SBI Crypto's mining operations." *Id*.

Dr. Valentine's other correction adjusted his calculations for "the month of July 2021, which was previously omitted due to a ramp up period [of SBI's miners] that would not be necessary … " *Id*. at ¶ 3. Contrary to Whinstone's assertions, Dr. Valentine does not rely on "never produced information … to more than double alleged lost profit." Whinstone's Mot. at 2. To the contrary, the increase in alleged lost profits is the result of correcting the (1) over-allocation of hosting expenses, (2) the omission of July 2021 lost profits, (3) and the increase in the market price of Bitcoin since his March 2025 report, which went from $82,605.79 to $119,118.80.[1]

Charles Byers's original report compares the performance of 20,000 A-10 miners operated at Whinstone's facility to 20,000 A-10 miners operated in a Russian facility. In his supplemental report, Byers incorporates documents and data related to the Russian facility that were produced within the discovery period, but *after* his original report. SBI produced this information following Whinstone's demands that SBI produce additional documents concerning the operation of miners at the Russian facility. *See* April 11, 2025 Discovery Dispute Chart, attached as **<u>Response Exhibit "1."</u>** Whinstone cannot

---

[1] The current price of Bitcoin is not the amount SBI intends to use at trial. SBI intends to apply the actual price of Bitcoin at or around the time of trial. *See, e.g.*, *Ahlgren v. Ahlgren*, 703 S.W.3d 378, 392 (Tex. App—Corpus Christi 2023, pet. denied)

credibly complain that SBI is now using information which Whinstone sought in support of its defense.

The Court should also deny Whinstone's alternative request to conduct another deposition of SBI's former CEO, Carson Smith, and its demand for additional written discovery. Whinstone's alternative relief comes after the Court denied Whinstone's request to depose Smith for a third time. (Dkt. 77). Moreover, Whinstone deposed Smith in his individual capacity (Aug. 21, 2024) and as Corporate Representative (Apr. 15, 2025) on SBI's Russian operations and SBI's lost profits calculations. On April 11, 2025, SBI produced additional documents relating to its Russian operations, which include documents relied upon by Byers in his supplemental report. SBI offered to reschedule its corporate representative deposition so that Whinstone would have additional time to review the documents. *See* Email re SBI Corporate Representative Deposition, attached as **Response Exhibit "2."** Whinstone, however, refused this offer and insisted on taking the deposition as scheduled. *Id.* Following that April corporate representative deposition, the parties jointly agreed to forgo any further written discovery in the Fifth Agreed Scheduling Order (May 19).

### III.
### ARGUMENT AND AUTHORITIES

**A.   Legal Standard**

Federal Rule of Civil Procedure 26(e) requires parties to supplement previous disclosures, including expert reports, if the party learns that such disclosures are incorrect or incomplete. FED. R. CIV. P. 26; *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016). Absent an order to the contrary, parties have until the deadline for pretrial disclosures to supplement prior disclosures. *Id.* Mere logical extensions, clarifications of

underlying assumptions, or elaborations on a prior report constitute supplemental testimony. *See Holcombe v. United States*, 516 F. Supp. 3d 660, 671 (W.D. Tex. 2021).

Furthermore, even if untimely, A court cannot strike expert testimony if the untimely disclosure is substantially justified or harmless. FED. R. CIV. P. 37; *Holcombe*, 516 F. Supp. 3d at 670 (W.D. Tex. 2021). Courts consider the following four factors to determine whether the disclosure is substantially justified or harmless: (i) the importance of the witnesses' testimony; (ii) the prejudice to the opposing party of allowing the witnesses to testify; (iii) the possibility of curing such prejudice by granting a continuance; and (iv) the explanation, if any, for the party's failure to comply with the discovery order. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 572 (5th Cir. 1996).

The Fifth Circuit has "repeatedly emphasized" that striking an expert report constitutes the most "extreme sanction" which courts should avoid imposing if it is possible to cure the potential prejudice. *Eagle Railcar Services-Roscoe, Inc. v. NGL Crude Logistics, LLC*, No. 1:16-CV-0153-BL, 2018 WL 2317696, at *11 (N.D. Tex. May 22, 2018) (*citing Betzel v. State Farm Lloyds*, 480 F.3d 704, 708 (5th Cir. 2007)); *Ideus v. Deere & Co.*, No. 2:22-CV-00132, 2023 WL 4154936, at *11-12 (S.D. Tex. Apr. 18, 2023) (even if the expert report "smacks of lying behind the log," courts should not strike the report if it is possible to cure the prejudice).

Furthermore, courts do not exclude supplemental reports produced more than one month in advance of the expert's deposition and the expert discovery deadline, and Defendant cites no authority to the contrary. Indeed, courts in the Western District do not strike "untimely" supplemental reports where any alleged prejudice can be cured. *See, e.g., Hoke v. Anderson*, No. 1:18-CV-00232-RP, 2019 WL 2128631, at *3 (W.D. Tex. May

15, 2019) (no prejudice from untimely disclosure prior to close of expert discovery); *Via Vadis, LLC v. Amazon.com, Inc.*, No. 1:14-CV-00813-LY, 2022 WL 1667560, at *1 (W.D. Tex. May 24, 2022) (allowing supplementation after initial report excluded).

The Northern District of Texas's recent decision in *VeroBlue Farms USA Inc. v. Wulf* is particularly instructive here. No. 3:19-CV-764-X, 2023 WL 348963 (N.D. Tex. Jan. 20, 2023). In *VeroBlue*, the court agreed with the defendant that the supplemental report contained an untimely expert opinion.[2] *Id.* at 16. However, the court held that allowing the opinion would not unfairly prejudice the defendant because the defendant had notice of the opinion well before expert discovery ended and before the expert's deposition. *Id.* Similarly, the court in *Ideus* held that even though the plaintiff offered no explanation for untimely disclosure of a new expert report and the untimely disclosure unfairly prejudiced the defendant, striking the testimony was inappropriate because the prejudice could be cured through allowing either a rebuttal report from a defense expert or through a supplemental deposition of plaintiff's expert. 2023 WL 4154936, at *11-12.

**B.     SBI's Supplemental Reports Comply with Rule 26(e)**

Without changing the underlying methodology or data, Dr. Valentine properly supplemented his expert report to make the two corrections previously discussed. *See* discussion, *supra*, II. Whinstone elects to focus on the increase in Dr. Valentine's lost profit damages calculation to incorrectly assert he changed his methodology or introduced new opinions. However, as explained both in his initial report and his supplemental report, Dr. Valentine calculates lost profits in the amount of bitcoin SBI would have mined but for Whinstone's fraudulent conduct. SBI is entitled to the

---

[2] But unlike in *VeroBlue* and for the reasons set forth herein, SBI continues to fervently maintain that the supplemental reports made the basis of Whinstone's Motion are not untimely.

appreciation of bitcoin at the time of trial, and Dr. Valentine stated in his initial report he would update his valuation based on the price of bitcoin at the time of trial. Bitcoin significantly appreciated between his initial report and his supplemental report, and this appreciation constitutes most of the increase in SBI's damages in the supplemental report.

Whinstone also falsely states Dr. Valentine converted all other cryptocurrency mined into bitcoin when, in fact, he excluded all non-bitcoin cryptocurrency (Bitcoin SV and Bitcoin Cash) from his calculations. *Id.* at ¶ 16(a) (reducing lost Bitcoin amount by 3% "to prevent overstatement of mined Bitcoin").

Whinstone's remaining challenges concern Dr. Valentine's review of newly-produced documents and publicly available information. This review did not change Dr. Valentine's methodology; it validated it. Therefore, Dr. Valentine's supplemental report complies with Rule 26(e)'s supplemental report requirements.

Similarly, Whinstone's Motion falsely represents that Byers introduced opinions on SBI's miners at the Russian facility for the first time in his supplemental report. However, the fact remains that Byers discussed SBI's Russian operations numerous times throughout his initial report. Def.'s Ex. 4 at 8, 19, 26, 27, and 49. For instance, describing his methodology and scope of analysis, Section 5.4.3 of Byers's report indicates he analyzed the observed conditions and performance statistics of the SBI miners in Russia to reach conclusions regarding problems in the Rockdale datacenter's design, maintenance, configuration, installation, operation, and management. *Id.* at 8. He even included a section titled "Comparison with Russia Data Center," which included a statistical analysis of SBI's miners' performance at both facilities. *Id.* at 49.

Byers's supplemental report is a mere logical extension of his initial report and

further elaboration on the design of the Russian datacenter based on newly produced documents depicting that design. Therefore, Byers's report complies with Rule 26(e)'s requirements of a supplemental report.

Finally, Whinstone's broad request for a blanket prohibition on Michael Schuler's ability to supplement his report is premature as he has merely reserved the right to supplement following a physical inspection of the miners in storage. Alternatively, SBI would agree to a deadline of August 8, 2025 to serve any supplemental report related to an inspection of SBI's miners.

## C.  SBI's Supplemental Reports are Substantially Justified and/or Harmless

Here, even though the supplemental reports at issue are not untimely, every *Sierra Club* factor supports allowing the supplemental reports. First, the testimony is undoubtedly important to SBI's case. The Fifth Circuit recognizes the importance of a damages expert to a plaintiff's case-in-chief. *Betzel*, 480 F.3d at 707. Here, SBI designated Dr. Valentine to provide testimony on SBI's lost profit damages. The corrections made in the supplemental report provide a more accurate accounting of SBI's lost profit damages. Those damages are an essential element of SBI's claims.

Similarly, courts consistently recognize a causation expert as an important part of a plaintiff's case, particularly where the expert provides the only opinion on a particular topic. *See Hoke*, 2019 WL 2128631, at *3. In the case at bar, Byers offers the only expert opinion, from either side, as to how Whinstone's design and operation of the Rockdale facility caused the failure and underperformance of SBI's miners. His testimony is an essential element of SBI's case. Therefore, the first factor weighs in favor of allowing the supplemental reports.

Second, under circumstances very similar to the facts of this case, courts find that any prejudice to similarly-situated defendants is minimal. Nevertheless, Whinstone's Motion tells the tale of vast prejudice. The Western District previously rejected similarly hyperbolic arguments. *See Via Vadis*, 2022 WL 1667560, at *1. As the court explained in *Via Vadis*, the cost of responding to a supplemental disclosure is relatively low compared to the initial cost of preparing initial rebuttal opinions. *Id*. That is particularly true here where Whinstone's experts do not offer any substantive opinions as to the performance of SBI's miners or the conditions of the Rockdale facility or the Russian data center. Furthermore, Whinstone refused SBI's offer to extend the deadline for rebuttal reports and does not seek a continuance. Most importantly, Whinstone has not yet deposed any of SBI's experts. Without actual depositions, Whinstone cannot demonstrate its claims regarding these supplemental reports are even credible. At best, Whinstone's Motion is premature and should be given no weight. Whinstone also cannot credibly claim it cannot adequately respond to the supplemental reports of Dr. Valentine and Byers, which SBI served more than one month before their respective depositions.[3]

Similarly, Whinstone's request for the costs of preparing for the depositions of Dr. Valentine and Byers has no basis, as Whinstone would have incurred those expenses regardless of the supplementations at issue. Whinstone also fails to articulate any basis for reopening discovery as SBI has produced all documents and data relied upon by SBI's experts, and Whinstone's experts have admittedly reviewed the same documents. Accordingly, this factor weighs strongly in favor of allowing the supplementation.

---

[3] Byers's and Dr. Valentine's depositions are respectively set for August 20 and 26, 2025. *See* Notices of Deposition, attached as **Response Exhibit "3."** Notably, the first four scheduling orders provided for one month for Whinstone to prepare rebuttal reports. Dkt. 32, 38, 40, 60, and 64. An extension of rebuttal reports to August 18 would be consistent with past scheduling orders.

Third, no continuance is necessary because expert discovery remains open and Whinstone has not yet conducted any expert depositions. The third factor contemplates whether a continuance for a deposition would cure any prejudice. *See Holcomb*, 516 F. Supp. 3d at 671. Whinstone has not and cannot articulate any prejudice that cannot be cured through the depositions it has yet to take. In fact, Whinstone's alternative request for relief demonstrates that a lesser sanction would cure any potential prejudice.

Finally, the fourth factor weighs in favor of allowing the supplemental reports for the same reasons these reports qualify as supplements; not untimely disclosures. *See* discussion, *supra*, III.B.

### D. Whinstone's Attempt to Strike Carson Smith as an Undisclosed Expert is Untimely, Improper, and Unwarranted

Whinstone's request that the Court strike Carson Smith's "testimony" fails to identify the testimony it seeks to strike.[4] Whinstone does not articulate what, of Smith's "opinions," rises to the level of expert testimony. Nevertheless, it is well established that a corporate officer may offer opinion testimony on the lost profits of a business based on the witness's particularized knowledge and experience under Rule 701 of the Federal Rules of Evidence. *See* FED. R. EVID. 701 advisory committee's note to 2000 Amendments; *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 169 (5th Cir. 2010) ("[i]t would defy reason" to exclude the Chief Financial Officer's lost profit testimony).

Moreover, Whinstone's request to reopen the depositions of Smith, individually, and as SBI's corporate representative, lacks any justification. Whinstone does not identify

---

[4] Regarding the translation of documents by Smith, this concerns the translation of a single document already in Whinstone's possession. SBI has not received any translated documents under the proposed translation protocol, which only governs the use of documents in depositions, hearings, or trial; not expert reports.

any topic for which it has not had the opportunity to depose Smith in either capacity. In fact, at the last hearing, the Court denied Whinstone's request for a supplemental deposition of Smith and should do so again here. (Dkt. 77).

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiff SBI Crypto Co., Ltd., respectfully requests that the Court deny Whinstone's Motion. Alternatively, SBI requests that the Court permit Whinstone to provide rebuttal reports to SBI's supplemental reports by August 18, 2025.

Respectfully submitted,

By: */s/ Joshua M. Sandler*
Joshua M. Sandler
  Texas Bar No. 24053680
  jsandler@winstead.com
Cory Johnson
  Texas Bar No. 24046162
  cjohnson@winstead.com
Andrew Patterson
  Texas Bar No. 24131573
  apatterson@winstead.com
Jeremy A. Oliver, *pro hac vice*
  Tennessee Bar No. 029329
  joliver@winstead.com
John D. Janicek
  State Bar No. 24125636
  jjanicek@winstead.com
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF SBI CRYPTO CO. LTD**

## CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure via the court's e-filing system on August 4, 2025.

                                          */s/ Joshua M. Sandler*
                                          Joshua M. Sandler