IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> WHINSTONE US, INC., <br><br> Defendant. | Civil Action No. 6:23-cv-00252-ADA-DTG |

**DEFENDANT WHINSTONE US, INC.'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION TO STRIKE PLAINTIFF SBI CRYPTO CO., LTD.'S UNTIMELY "SUPPLEMENTAL" EXPERT REPORTS AND UNDISCLOSED EXPERT**

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US, INC.**

Defendant Whinstone US, Inc. ("Whinstone") files this Reply in Support of Its Emergency Motion to Strike Plaintiff SBI Crypto Co., Ltd.'s Untimely "Supplemental" Expert Reports and Undisclosed Expert.

## I. INTRODUCTION

The Court is presented with two issues:

1) Should SBI be permitted to introduce new opinions and an undisclosed expert—the latest being Schuler's supplemental report (the "Third Schuler Report") served *August 8, 2025*[1]—months after Court-ordered deadlines based on information clearly within SBI's possession, custody, or control before that deadline?

2) If so, should Whinstone be permitted additional time to conduct discovery and issue its own revised reports and/or recover costs, particularly where SBI's experts performed ***destructive testing without notice and an opportunity to participate***?

The answer to the first question is unequivocally "no." "[C]ourts routinely reject untimely 'supplemental' expert testimony where the opinions ***are based upon information available prior to the deadline for expert disclosures*** …."[2] SBI offers no justification for serving "supplemental" reports based on information it has ***always*** possessed—some of which SBI never produced until supplementation. SBI should not be permitted to flout Court orders and deadlines.[3]

However, should the Court disagree, Whinstone must be permitted time to take additional discovery and issue its own revised expert reports.[4] Indeed, ***after*** Whinstone filed its motion,[5] Schuler haphazardly took apart a miner (and apparently did not reassemble it) to claim it was "contaminated" without Whinstone representatives present or having notice.[6] If allowed to stand,

---

[1] Attached as Exhibit 10.
[2] *UWorld LLC v. USMLE Galaxy LLC*, No. 3:23-CV-447-K-BN, 2025 WL 1246434, at *3 (N.D. Tex. Apr. 28, 2025) (emphasis added), *recons. denied*, No. 3:23-CV-447-K-BN, 2025 WL 1798940 (N.D. Tex. June 26, 2025).
[3] *E.g.*, *Williams v. Am. Honda Motor Co., Inc.*, No. 6:20-CV-00022, 2022 WL 1071463, at *4 (E.D. Tex. Apr. 8, 2022) ("The court considered the option of granting yet another continuance but finds that it would not be just given plaintiff's discovery misconduct and the circumstances of this litigation."), *aff'd*, No. 22-40224, 2023 WL 3739095 (5th Cir. May 31, 2023).
[4] Subject to its motion to strike, Whinstone is also filing a motion to continue, for continuance, and for protection.
[5] See timeline, attached as Exhibit 11, for the history of SBI's "supplements."
[6] *E.g.*, SBIC0011592.

**REPLY IN SUPPORT OF EMERGENCY MOTION TO STRIKE** 2

Whinstone must attempt to put it back together and power on the miner to show it still works. Whinstone estimates an additional 60-90 days are needed for new discovery, incurring hundreds of thousands in additional attorneys' fees and expert costs[7]—which Whinstone should recover.[8]

## II. ARGUMENTS & AUTHORITIES

### A. SBI's new opinions and undisclosed expert are untimely and unjustified.

SBI admits—as it must—that its "supplements" contain new and previously unidentified information.[9] Of course, SBI improperly withheld this information *since October 2023*, claimed the information was "irrelevant," and only produced the information after being compelled by the Court. In fact, some of this information was ***never*** produced prior to supplementation.[10] SBI does not dispute that this information was available to SBI at the time its affirmative expert reports were due on March 28, 2025, and instead blames Whinstone for demanding the responsive documents be produced.[11] SBI should not benefit from its discovery abuse.

In a vain attempt to justify its misconduct, SBI posits it should be excused because: (1) SBI did not produce the new information relied upon by Byers until after his original report; and (2) Dr. Valentine allegedly relies on new information to validate his original report.[12] SBI has yet to offer any justification for the Third Schuler Report—*three weeks after* Whinstone's rebuttal deadline. SBI has possessed the equipment they spoliated since the case started. SBI's position is

---

[7] *See* Estimate, attached as Exhibit 12; J. Matthews Decl., attached as Exhibit 13.
[8] *See, e.g.*, *Salas v. Transwood Logistics, Inc.*, No. 6:19-CV-101, 2021 WL 4483511, at *7 (S.D. Tex. July 7, 2021) (recommending continuance (along with an award of discovery costs and attorneys' fees) when plaintiff sought leave to supplement expert reports), *R&R adopted*, No. 6:19-CV-00101, 2021 WL 4480746 (S.D. Tex. Sept. 30, 2021).
[9] "In his supplemental report, Byers incorporates documents and data related to the Russian facility that were produced … *after* his original report. SBI produced this information following Whinstone's demands that SBI produce additional documents concerning the operation of miners at the Russian facility …. Whinstone's remaining challenges concern Dr. Valentine's review of newly-produced documents and publicly available information … [which] did not change Dr. Valentine's methodology; it validated it." Resp. Mot. Strike (Aug. 4, 2025) at 3-4, 7 (emphasis in original).
[10] *E.g.*, Second Byers Report at 11 n.11 (citing "Carson Smith, Russia – Texas Comparison – Excel Spreadsheet, 7/16/2025).
[11] *Id.*
[12] *Supra* n.9.

**REPLY IN SUPPORT OF EMERGENCY MOTION TO STRIKE** 3

contrary to its own case law, which permits supplementation only when *another* party is responsible for the untimely production.[13] Supplementation is also ***excluded*** when the information was available to the supplementing party at the time the affirmative expert reports were due.[14] Of course, that is exactly what happened here. No substantial justification for SBI's untimely conduct exists—leaving only the issue of whether SBI's conduct is harmless. As detailed in the next section, the answer is clearly "no."[15]

**B.  SBI did not (and cannot) satisfy its burden that its misconduct is harmless.**

In moving to strike, Whinstone cited three cases (*Wal-Mart*, *Edwards*, and *UWorld*) that unanimously hold that requiring a party to expend significant time and expense to respond to untimely expert disclosures is undue prejudice worthy of exclusion.[16] Mot. Strike (Jul. 28, 2025) at 10-11. SBI ignores these cases. Instead, SBI tries to minimize the time and expense Whinstone will incur in rebutting the Second Valentine and Byers Reports.[17] In so doing, SBI admits that Whinstone's experts have not offered rebuttal opinions on the now ***38-pages*** (plus several Excel spreadsheets of new and revised calculations and other cited data sources) contained in the "supplements"—which requires a *substantial* amount of time and expense. Whinstone now also needs to test the "contaminated" miners. A continuance will not remedy the prejudice. Whinstone

---

[13] *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016) ("Bean explains that it could not obtain discovery from SMC until SMC answered the third-party complaint in January 2015, well beyond the deadline for expert disclosures."); *Hoke v. Anderson*, No. 1:18-CV-00232-RP, 2019 WL 2128631, at *3 (W.D. Tex. May 15, 2019) ("Plaintiffs provide a reasonable explanation for failing to disclose Terrell's opinion by the deadline, with their assertion that it was triggered by the late production by Defendants of body-cam video of the incident.").
[14] *Holcombe v. U.S.*, 516 F. Supp. 3d 660, 672 (W.D. Tex. 2021) ("These studies and facts were available … at the time expert disclosures were due and there is no justification for the failure to include these in the initial report.").
[15] Compounding its discovery abuse, SBI failed to raise supplementation in the numerous interactions between counsel from March to July 2025. Mot. Strike (Jul. 28, 2025) at 3 (ECF No. 90). If SBI had, this situation may have been avoided. But SBI did not—opting instead to ambush Whinstone on the eve and deadline of the rebuttal deadline.
[16] Even the court in SBI's case *Holcombe* struck untimely supplements. *Supra* n.14.
[17] Resp. Mot. Strike (Aug. 4, 2025) at 9 ("[T]he cost of responding to a supplemental disclosure is relatively low compared to the initial cost of preparing initial rebuttal opinions. That is particularly true here where Whinstone's experts do not offer any substantive opinions as to the performance of SBI's miners or the conditions of the Rockdale facility or the Russian data center.") (internal citation omitted).

**REPLY IN SUPPORT OF EMERGENCY MOTION TO STRIKE**                        4

should not be obligated to pay simply because SBI failed to follow its disclosure obligations and Court-ordered deadlines. Striking is the most equitable, economic, and efficient solution.

Nor does SBI explain why it simply cannot rely upon the Original Valentine and Byers Reports and Schuler's prior reports. *See generally* Resp. Mot. Strike (Aug. 4, 2025). At present, the opinions in these reports (including as to damages) still stand. There is simply no prejudice to SBI in striking the "supplements" and undisclosed expert witness.

### C. SBI ignores the discovery needed to adequately rebut the "supplements."

Rather than address the new information that Whinstone's experts need, SBI deflects by arguing that additional discovery is "contrary to Whinstone's agreement to forgo any further written discovery in the Fifth Amended Scheduling Order (Dkt. 70) and the Court's last discovery order denying Whinstone's prior request to re-depose Mr. Smith." Resp. Mot. Strike (Aug. 4, 2025) at 1. SBI once again infuses irrelevant issues while failing to address the real issue at hand.

First, the Fifth Amended Scheduling Order (the "Order) clearly established the parties' respective expert disclosure deadlines in order to "discourag[e] wasteful pretrial activities." *See* Fed. R. Civ. Proc. 16(a). Whinstone complied with the Order—SBI did not. Nothing permits SBI to "supplement" by sitting on additional and undisclosed expert opinions until Whinstone's rebuttal expert reports are due (and after with respect to the Third Schuler Report). Fifth Am. Sched. Order (May 19, 2025). In fact, the Order was agreed upon to *avoid* this very gamesmanship.

Second, SBI misrepresents the Court's ruling on Mr. Smith. The Court only denied Whinstone's request to re-open SBI's corporate representative deposition after holding that any existing privilege with respect to three documents used in two prior SBI fact depositions had been waived. *Compare* Disc. Dispute (Apr. 28, 2025) *with* Order (May 2, 2025) (ECF No. 3).

Third, SBI distorts the Court's discovery order. Re-opening discovery due to untimely and undisclosed expert issues was not barred. *Id.* In fact, SBI's own cases suggest that re-opening

**REPLY IN SUPPORT OF EMERGENCY MOTION TO STRIKE** 5

discovery—and ordering SBI to pay for Whinstone's costs and attorneys' fees—is proper.[18]

### D. SBI failed to disclose Mr. Smith under Rule 26.

Finally, SBI complains that "Whinstone's request that the Court strike Carson Smith's 'testimony' fails to identify the testimony it seeks to strike." Resp. Mot. Strike (Aug. 4, 2025) at 10. That is the point—SBI was obligated to disclose, at a ***minimum***, the subject matter of Mr. Smith's opinions and the bases for them under Rule 26(a)(2). SBI disclosed ***nothing***.[19] SBI now admits Mr. Smith plans to testify on SBI's alleged lost profits (*i.e.*, expert testimony) and has not produced his document translations. *Id*. Mr. Smith should not be permitted to testify as an expert.

### III. CONCLUSION

This Court has a choice. It can enforce its Rules and deadlines by granting Whinstone's motion and entering an order striking the Second Valentine and Byers Reports, the Third Schuler Report, and Mr. Smith as an undisclosed witness. No prejudice results. The original expert reports can still be relied upon. Trial in February appears likely. Alternatively, the Court can turn a blind eye to sandbagging by permitting untimely "supplements" and an undisclosed expert—making expert discovery an "infinitively iterative process."[20] If so, Whinstone asks that fees be awarded to re-open discovery identified in Exhibit 9 (plus additional miner testing) to rebut the foregoing. Even then, it is unclear whether the motion to strike can be resolved and the new discovery be conducted before the close of expert discovery. Meaning, the trial setting in February may be in jeopardy. In either event, Whinstone further requests all such other relief to which it is entitled.

---

[18] *In re Complaint of CF Bean*, 841 F.3d at 375 (remanding to district court for consideration of whether to reopen discovery and award costs and attorneys' fees); *Ideus v. Deere & Co.*, No. 2:22-CV-00132, 2023 WL 4154936, at *12 (S.D. Tex. Apr. 18, 2023) ("Alternatively, Deere could depose Dr. Ketchman again [to] question [him] about his opinions as it undoubtedly would have done […] had Plaintiff only provided a timely report. […] Should Deere elect to depose Dr. Ketchman again, the costs of that deposition fairly should be borne by Plaintiff.").
[19] In fact, Mr. Smith—who SBI pay for his testimony in this case—testified that he was not retained to provide expert testimony. *See* August 21, 2024 Transcript of Carson Smith, at 32:1-5, attached as Exhibit 14.
[20] *E.g.*, *UWorld LLC*, 2025 WL 1246434, at *7.

**REPLY IN SUPPORT OF EMERGENCY MOTION TO STRIKE**                                                  6

          Respectfully Submitted,

          FOLEY & LARDNER LLP

By:  */s/ Robert T. Slovak*
      Robert T. Slovak
      Texas Bar No. 24013523
      rslovak@foley.com
      Steven C. Lockhart
      Texas Bar No. 24036981
      slockhart@foley.com
      Brandon C. Marx
      Texas Bar No. 24098046
      bmarx@foley.com
      2021 McKinney Avenue, Suite 1600
      Dallas, Texas 75201
      Telephone: (214) 999-3000
      Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US., INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

          */s/ Brandon C. Marx*
          Brandon C. Marx