IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**WHINSTONE US, INC.,**<br><br>*Defendant.* | Civil Action No.: 6:23-cv-252-ADA-DTG |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S VERIFIED
EMERGENCY MOTIONS TO AMEND SCHEDULING
ORDER, FOR CONTINUANCE, AND FOR PROTECTION**

Plaintiff SBI Crypto Co., Ltd. ("Plaintiff" and/or "SBI") files this Response (the "Response") to the *Verified Emergency Motions to Amend Scheduling Order, for Continuance, and for Protection* (the "Motion for Continuance") (Dkt. 93) filed by Defendant Whinstone US, Inc. ("Defendant" and/or "Whinstone").

**I.
SUMMARY**

The relief requested in Whinstone's Motion for Continuance is wholly unwarranted. In fact, the Motion for Continuance simply re-litigates Whinstone's *Emergency Motion to Strike Plaintiff SBI Crypto Co., Ltd.'s Untimely "Supplemental" Expert Reports and Undisclosed Expert* (the "Motion to Strike") except for one key difference. Whinstone's Motion to Strike maintains that any continuance would not remedy the prejudice it purportedly suffered.[1] Yet, this Motion for Continuance seeks the very relief Whinstone rejected just days ago. It is also an unmistakable indication that

---

[1] To be clear, even though SBI believes its supplemental expert reports do not prejudice Whinstone, it nevertheless offered a continuance of the expert discovery deadline, which Whinstone rejected.

Whinstone's Motion to Strike lacks merit.

Not only is the relief sought in the Motion for Continuance inconsistent with that sought in the Motion to Strike, the Motion for Continuance is also a gross overreach lacking merit. A continuance of the current February trial date is wholly unnecessary. The parties have ample time to complete expert discovery well before dispositive motion deadlines as well as pretrial motions before the February trial setting. Instead of extending expert discovery, which Whinstone refused, it sought to impose its own unilateral "stay" on expert discovery by refusing to depose SBI's experts and by inappropriately interfering with SBI's ability to prosecute its case-in-chief by denying SBI its opportunity to depose Whinstone's experts during the expert discovery period pursuant to the parties' Scheduling Order. The disingenuousness of Whinstone's position is demonstrated by its cancellation of the deposition of SBI's expert (who submitted no supplementation of his original report). Whinstone is unquestionably abusing the discovery process.

Lastly, Whinstone's request for additional written discovery, as provided in its Exhibit 9 to its Motion to Strike, has already occurred. SBI produced all of the requested information relied on by SBI's experts, and many, if not all, of the documents have been identified by Whinstone's experts as documents they reviewed as part of their rebuttal reports. Whinstone already deposed Carson Smith, individually, and as SBI's corporate representative on the identified topics for which Whinstone seeks a third deposition. Additionally, Whinstone also extensively deposed SBI's current general manager, Nick Vitalis, on topics related to SBI's damages model.

Moreover, Whinstone has not identified any information that has not previously been produced by SBI, previously reviewed by Whinstone's experts, or the subject of prior

deposition testimony. For example, Whinstone's expert, Richard Peters, previously inspected SBI's miners in February and Whinstone made the decision to forgo any additional testing, including "powering on the miner, reviewing the output of the boot sequence, and verifying that the miner initializes correctly and demonstrates functionality as expected." Whinstone now demands additional time to conduct testing on miners, which SBI made available to Whinstone six months ago.

Whinstone cannot credibly claim that SBI's supplemental reports justify a continuance so that Whinstone can perform the testing it deliberately chose not to perform. At most, the Court should extend the expert discovery deadline from September 12 to September 26, which is more than sufficient time to complete expert discovery regarding information, data, and reports that have been in the parties' possession for over a month, if not several months. For these reasons, the Court should deny the Motion for Continuance.

## II.
### BACKGROUND

On August 21, 2024, Whinstone deposed Carson Smith ("Smith") extensively on SBI's Russian operations as well as a spreadsheet created by him comparing SBI's operations in Texas to its operations in Russia. *See* SBI's Responses to Defendant's Exhibit 9, attached hereto as **Exhibit A-1**, and incorporated herein by reference. This included almost 20 pages of deposition testimony on Smith's calculation of SBI's lost profits and the underlying data in the spreadsheet. *Id*.

On February 5, 2025, without any objection from SBI, Whinstone inspected SBI's miners stored in a Houston warehouse. In preparation for the inspection, Whinstone circulated a Request for Inspection and Testing (the "Request"), attached hereto as

**Exhibit B** and incorporated herein by reference. In the Request, Whinstone identified three specific requests for the scheduled inspection. *Id.* at 3. First, Whinstone requested to inspect the physical condition of the miners. *Id.* Second, Whinstone requested "[t]o test one or more of SBI's Canaan A-10 miners that were used at Whinstone's Rockdale, Texas cryptocurrency data center facility by powering on the miner, reviewing the output of the boot sequence, and verifying that the miner initializes correctly and demonstrates functionality as expected." *Id.* Finally, Whinstone requested to inspect the miners by conducting the same "destructive testing" alleged in Whinstone's Motion. *Id.*

SBI did not object to any of these requests. Notably, Whinstone's counsel attended the inspection in which Richard Peters disassembled one of SBI's miners. *See* SBI's Photos from Richard Peters Inspection, attached hereto as **Exhibit C** and incorporated herein by reference. Upon inspection of the miners, Peters and Whinstone's counsel made the decision not to proceed with further attempts to power on the miner or any of the other thousands of miners SBI made available to them—as provided in Whinstone's Request for Inspection.

On March 28, 2025, SBI served its initial expert disclosures with the initial reports of Charles Byers, Dr. Randall Valentine, Michael Schuler, and Phil Isaak. Byers' report included opinions based on his inspection and disassembly of SBI's miners removed from the Rockdale facility. Byers also explained that he collected dust samples from the miners, sealed the samples, and sent them to a lab for further analysis. SBI produced the dust analysis report along with Byers' report, as well as photos of disassembled miners.

In Schuler's initial report, he opined that SBI's miners had no resale value due to the miners' contamination from the conditions at the Whinstone facility. Prior to Schuler's March 2025 Report, Whinstone was given the opportunity take some miners to

conduct offsite testing as part of Whinstone formal Request for Inspection. Whinstone unilaterally decided not to conduct such tests.

In each of the first five scheduling orders, the parties had one month to provide rebuttal reports after the disclosure of affirmative reports. (Dkt. 32, 38, 40, 60, and 64). However, following SBI's expert disclosures, Whinstone submitted a discovery dispute chart seeking additional information related to the operation of SBI's miners in Russia. *See* April 11 Discovery Dispute Chart, attached hereto as **Exhibit D** and incorporated herein by reference. SBI produced numerous additional responsive documents on April 11, 2025. *See* **Exhibit A**. In recognition of the ongoing discovery dispute and the April 11 production, SBI offered to reschedule the deposition of its corporate representative, Carson Smith, set for April 15, 2025. *See* April 14, 2025 Emails Regarding Carson Smith Deposition, attached hereto as **Exhibit E** and incorporated herein by reference. Whinstone refused and insisted on proceeding with the deposition of SBI's corporate representative, Carson Smith, knowing that SBI was in the process of producing additional documents. *Id*.

Following SBI's production of additional documents, the parties agreed to the current Fifth Amended Scheduling Order (Dkt. 86) entered on May 19, 2025. In that order, the parties specifically agreed that written discovery would remain closed. *See* May 15 Emails Regarding Fifth Agreed Scheduling Order attached hereto as **Exhibit F** and incorporated herein by reference. The order also provided that rebuttal expert reports were due on July 18, 2025, thereby giving three additional months for Whinstone to review SBI's supplemental productions, SBI's original expert reports, and conduct any further testing or inspections Whinstone deemed necessary. (Dkt. 86). Once again, Whinstone chose not to conduct any further testing or inspection of SBI's miners.

In this Motion for Continuance, Whinstone now seeks to extend the rebuttal report deadline four additional months to respond to limited supplemental reports based on information previously available to it and reviewed by its experts. Whinstone also seeks to conduct testing of SBI's miners.

## III.
### ARGUMENT AND AUTHORITIES

**A.     No good cause exists for Whinstone's continuance.**

Whinstone attempts linguistic gymnastics in its efforts to justify its Motion for Continuance while also asking the Court to strike SBI's supplemental reports. First, SBI offered Whinstone an extension of the deadline for rebuttal reports, but Whinstone rejected the extension. Then Whinstone filed its Motion to Strike and again rejected the offer of an extension. (Dkt. 90).

Whinstone's position in the Motion to Strike and in this Motion for Continuance are wholly incompatible. In its Response to the Motion to Strike, SBI explained how its supplemental reports corrected past errors (Valentine), relied on information and documents obtained after the original reports (Byers), and that Schuler reserved the right to supplement his rebuttal report following a physical inspection of the miners on August 5.[2] SBI has produced all documents relied upon by its experts. (Dkt. 91). Whinstone only identifies one spreadsheet in Byers' report as new information not produced prior to supplementation (Dkt. 92 at 3, n. 10), which was produced along with Byers' supplemental report. Whinstone does not identify any other documents that were not previously produced and for which SBI's experts relied upon or cited. *Id*. Indeed,

---

[2] Schuler had hip replacement surgery on June 10, 2025 but was not cleared for travel until August 1, which delayed the submission of his rebuttal report due on July 18, 2025. SBI notified Whinstone that Schuler would be conducting a physical inspection of the miners, reserving the right to supplement his report. That supplemental report was served on August 8, 2025.

Whinstone asks the Court to strike SBI's reports because they rely on information that "was available" prior to the deadline for affirmative expert reports. *Id*. at 4. While SBI takes issues with Whinstone's contention, it should not be lost on this Court that by that same logic, Whinstone's experts do not need four months and hundreds of hours to offer rebuttal reports to SBI's supplemental reports when Whinstone's experts have had access to the same information for weeks, if not months. SBI already produced responsive documents to Whinstone's Exhibit 9 to the extent responsive documents exist. *See* **Exhibit A** (SBI's Responses to Defendant's Exhibit 9). Whinstone fails to explain why it needs additional written discovery—particularly after forgoing additional written discovery. The Motion for Continuance also fails to identify any category of information for which responsive documents have not been produced.

What is more, Whinstone's argument that it needs a continuance to conduct testing of SBI's miners ignores the fact that Whinstone previously inspected the miners and made the decision not to conduct any testing. *See* **Exhibit B** at 3. Whinstone cannot credibly claim that Schuler's inspection of the miners, as part of his rebuttal/supplemental report, created any new need for testing SBI's miners. Whinstone identified the potential need for testing SBI's miners when it served SBI with the Request in December 2024. *Id*. Whinstone's counsel, along with its expert Richard Peters, made the decision not to conduct any testing after Peters disassembled one of SBI's miners in Houston on February 5, 2025. Whinstone again chose not to conduct any further testing after receiving Byers' report and the dust analysis report on March 28, 2025, as both raised the issue of miner contamination. Schuler also initially opined that the miners have no resale value, in part, because of the contamination. His inspection of the miners simply confirmed that initial opinion and would have been conducted as part of his rebuttal to Peters' report except

that his travel was delayed due to an operation. Whinstone sat on its hands and now asks this Court for a continuance to conduct the exact same testing it previously chose not to do. More offensively, however, now Whinstone wants SBI to pay for it. This request defies logic and has no support in the law. Parties are not entitled to a continuance or additional discovery when they failed to act with due diligence. *See Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 493 (S.D. Tex. 2009) (denying extension where plaintiff had notice of need for additional discovery but did not timely request it).

Moreover, nothing in Schuler's inspection raises the issue of whether the miners could power on or not, and Schuler does not seek to opine on the functionality of the miners. Rather, his opinion pertains to how the contamination affects the miners' resale value.

Finally, Whinstone's requests for not one, but two, supplemental depositions of Carson Smith—one in his individual capacity and one as SBI's corporate representative—similarly do not provide good cause for a continuance and are made in bad faith. Whinstone already deposed Smith twice in this case and on the topics identified in Defendant's Exhibit 9. *See* **Exhibit A-1 & 2**. Whinstone offers no rebuttal to this point in its Reply to the Motion to Dismiss (Dkt. 92) or in this Motion for Continuance (Dkt. 93). Nevertheless, this Motion for Continuance constitutes Whinstone's second attempt to obtain supplemental depositions of Smith even though the Court previously denied such a request. (Dkt. 77). Whinstone clearly knew Smith calculated SBI's lost profits in his capacity as SBI's chief executive officer[3] because it deposed him on all of the details of his calculation—including Luxor data, mining pools, and FPPS (or "Full Pay Per Share"). *See*

---

[3] Whinstone offers no rebuttal in its Reply or in the Motion that a business' officers can testify to lost profits under Rule 701, which does not constitute an expert opinion under Rule 702.

**Exhibit A-1 & 2**. Smith's SBI corporate representative deposition occurred after SBI's expert initial disclosures and Whinstone's discovery dispute regarding alleged deficiencies in SBI's production related to its Russian operations and SBI's finances. *Id*. SBI produced the information before Smith's SBI corporate representative deposition and even offered to reschedule the deposition. But Whinstone insisted on proceeding with the deposition in an attempt to set up a possible supplemental deposition—the exact same argument it now claims as the basis for its motion for protection. *See* **Exhibit E**.

Finally, Whinstone does not articulate why it needs ***four months to respond to supplemental reports*** when every previous scheduling order allowed for one month to rebut initial reports. The Western District has previously recognized that responding to a supplemental report is far less laborious than responding to an initial report. *See Via Vadis, LLC v. Amazon.com, Inc.*, No. 1:14-CV-00813-LY, 2022 WL 1667560, at *1 (W.D. Tex. May 24, 2022). In the case at bar, Whinstone cannot articulate any good cause for the continuance (and therefore, offers none) because it does not seek a continuance for any purpose other than delaying trial.

**B.      No good cause exists to prevent the depositions of Whinstone's experts.**

There is no rule or case requiring the depositions of affirmative experts to occur prior to the depositions of rebuttal experts and so Whinstone directs the Court to none. Moreover, Whinstone designated Richard Peters as an affirmative expert, but still seeks to block his deposition. Whinstone is essentially attempting to force a continuance by enforcing its own improper unilateral "stay" of expert discovery until, Whinstone says, the Court rules on its Motion to Strike. SBI noticed the depositions of Whinstone's experts after Whinstone filed its Motion to Strike and Whinstone unilaterally cancelled the deposition of Phil Isaak, even though Isaak never supplemented his report. Whinstone

does not articulate any reason as to why its experts cannot be available for the depositions on the noticed dates. Because the Court should deny both this Motion for Continuance and the Motion to Strike, there is no risk of any "harassment and undue burden" to Whinstone and no basis for the protective order.

## IV. CONCLUSION

For the foregoing reasons, SBI respectfully requests that the Court deny Whinstone's Motion for Continuance. Alternatively, SBI respectfully requests that the Court extend the rebuttal deadline to August 18, 2025 and the close of expert discovery to September 26, 2025.

Respectfully submitted,

By: */s/ Joshua M. Sandler*
Joshua M. Sandler
  Texas Bar No. 24053680
  jsandler@winstead.com
Cory Johnson
  Texas Bar No. 24046162
  cjohnson@winstead.com
Andrew Patterson
  Texas Bar No. 24131573
  apatterson@winstead.com
Jeremy A. Oliver, *pro hac vice*
  Tennessee Bar No. 029329
  joliver@winstead.com
John D. Janicek
  State Bar No. 24125636
  jjanicek@winstead.com
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF SBI CRYPTO CO. LTD**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on all counsel of record via the court's e-filing system on August 14, 2025.

> */s/ Joshua M. Sandler*
> Joshua M. Sandler