IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., | |
| Plaintiff, | Civil Action No. 6:23-cv-00252-ADA-DTG |
| v. | |
| WHINSTONE US, INC., | |
| Defendant. | |

## DEFENDANT WHINSTONE US, INC.'S REPLY IN SUPPORT OF ITS EMERGENCY MOTIONS TO AMEND SCHEDULING ORDER, FOR CONTINUANCE, AND FOR PROTECTION

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US, INC.**

Defendant Whinstone US, Inc. ("Whinstone") files this Reply in Support of its Emergency Motions to Amend Scheduling Order, for Continuance, and for Protection.

## A. SBI's untimely "supplements" and disclosures warrant relief: if not stricken, that relief is time and money.

Whinstone's position has remained consistent—the Court should strike the Second Valentine and Byers Reports, the Third Schuler Report, and Carson Smith as an undisclosed witness. Authority for this position is clear,[1] as Whinstone explained in its Motion to Strike:

> Whinstone has spent over *$400,000* preparing expert rebuttal reports for SBI's original expert reports. Responding to SBI's untimely "supplements" would severely prejudice Whinstone by forcing it to spend significant sums under an abbreviated schedule to rebut SBI's materially altered expert reports. Courts often strike reports under these circumstances; this Court should as well. Alternatively, if the Court declines to strike, Whinstone requests that written discovery and depositions be re-opened (limited to matters for supplemental rebuttal reports) and SBI be ordered to pay for costs (including attorneys' fees) arising from the same. Whinstone needs this relief on an emergency basis given the September 12, 2025 expert discovery deadline[18] and need to conduct depositions.

Emerg. Mot. Strike (Jul. 28, 2025) at 4-5 (ECF No. 90).

When the Court did not immediately decide the Motion to Strike or set it for hearing, Whinstone also moved for ***alternative*** relief (subject to the Motion to Strike)[2] to amend the

---

[1] *E.g.*, *UWorld LLC v. USMLE Galaxy LLC*, No. 3:23-CV-447-K-BN, 2025 WL 1246434, at *3 (N.D. Tex. Apr. 28, 2025), *recons. denied*, No. 3:23-CV-447-K-BN, 2025 WL 1798940 (N.D. Tex. June 26, 2025); *Daedalus Blue LLC v. SZ DJI Tech. Co., Ltd.*, No. W-20-CV-00073-ADA, 2022 WL 831619, at *6 (W.D. Tex. Feb. 24, 2022); *Intercontinental Terminals Corp., LLC v. Aframax River Marine Co.*, No. 4:18-CV-3113, 2021 WL 1599401, at *5 (S.D. Tex. Apr. 23, 2021), *R&R adopted*, No. CV H-18-3113, 2021 WL 3811029 (S.D. Tex. May 12, 2021); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. 1:15-CV-134-RP, 2017 WL 9480314, at *2 (W.D. Tex. May 22, 2017).

[2] There is nothing improper about asking for alternative relief as Whinstone has here. *E.g.*, *Nat. Polymer Int'l Corp. v. Hartz Mountain Corp.*, No. 4:18-CV-00667, 2019 WL 2549243, at *2 (E.D. Tex. June 20, 2019) (denying motion to strike but granting alternative relief of amending scheduling order).

**REPLY ISO OF EMERGENCY MOTION**                                      2

scheduling order, continue trial, award costs, and protect Whinstone's experts from being deposed until a decision on the Motion to Strike is made and additional discovery conducted. *Id.*; Emerg. Mot. Amend (Aug. 11, 2025) (ECF No. 93). The parties would not be in this situation but for SBI's discovery abuse. However, SBI conveniently ignores the more than a quarter million dollars in expert costs alone that its misconduct will require to redress.

SBI also complains that a continuance is not warranted because Whinstone argued in the Motion to Strike that a continuance would not cure prejudice and Whinstone refused to accept SBI's offer to extend expert deadlines. Resp. Emerg. Mot. Amend (Aug. 14, 2025) at 1-2, 10 (ECF No. 96). SBI misleads the Court. As indicated above, Whinstone has always maintained that a continuance does not cure all prejudice because Whinstone must incur substantially more expert and attorneys' expenses to respond to SBI's untimely "supplements" and undisclosed expert. Emerg. Mot. Strike (Jul. 28, 2025) at 10-11.

## B. SBI has not produced all information relied upon in the "supplements."

SBI claims it "produced all of the requested information relied upon by SBI's experts" and that "Whinstone has not identified any information that has not previously been produced by SBI." Resp. Emerg. Mot. Strike (Aug. 14, 2025) at 2. That is demonstrably false.

First, despite SBI's conclusory claim that Whinstone's requested discovery "has already occurred," Resp. Emerg. Mot. Amend (Aug. 14, 2025) at 2, SBI has failed to provide the location of those files. The complete list of additional information that needs to be obtained in discovery to rebut the new information provided by SBI's experts is identified in Exhibit 9 of SBI's Motion to Strike (along with the need to conduct additional testing of SBI's miners). Exhibit A attached to SBI's Response to the Motion to Strike does not resolve the issue because, for example:

- The spreadsheets identified by SBI in the "Telemetry & market inputs" are Excel models created by either Carson Smith or Jonathan Tanemori from numerous sources after the fact—they are not system generated financial data evidencing profitability;

- The Second Buyers Report concerns SBI's Russian facility, and other than two documents in Japanese, SBI fails to identify any other documents concerning the same;
- The document cited by SBI to identify wallet addresses lists only 9 addresses, and does not identify the "690 unique wallet addresses used by SBI Crypto for its Russian mining operations"[3];
- SBIC0005938—which SBI cites as "Muroo invoices and communications"—is a completely different document (*i.e.*, a co-location agreement);
- SBI cites to the same document Bates-labeled as SBIC0005938 to claim it is an SBI internal audit document—and it is obviously not; and
- SBI cites to SBIC0010456 as an external audit document relied upon—but it is a document in Japanese that appears not to be compiled by any external auditor.

Resp. Emerg. Mot. Amend (Aug. 14, 2025) Ex. A at 1, 4, 6-7 (ECF No. 96-1).

Second, SBI admits—as it must—that it first produced a spreadsheet **created in July 2025** (*i.e.,* months after the report deadline) by Carson Smith along with the Second Byers Report. *Id.* at 6. This spreadsheet was created almost a year after Mr. Smith's testimony in August 2024— when he stated he was ***not*** contracted to testify as an expert witness.[4] Further, it is a Rule 1006 summary, for which SBI has failed and refused to produce the source data.[5] Specifically, the made-for-litigation spreadsheet contains Russian payment, Luxor data, and crypto pricing information that have not been produced from the source. Nor has SBI produced the "account mapping" data or the Japanese translations allegedly performed by Mr. Smith that Whinstone has repeatedly demanded. Mr. Smith's activities and opinions have not been the subject of discovery.

Separately, Dr. Valentine's "supplement" **is comprised of 29-pages (*i.e., one page longer than his original report) of _new_ facts, assumptions, and opinions.** *Compare* Mot. Seal (Jul. 28, 2025) Ex. 1 *with id.* Ex. 3. SBI cannot credibly argue that rebutting supplementation is a minimal endeavor—particularly when the "supplement" is longer than the original report. Resp. Emerg.

---

[3] Mot. Seal (Jul. 28, 2025) Ex. 1 at 14.
[4] *See* Reply Emerg. Mot. Strike (Aug. 11, 2025) Ex. 14 ("Q […] have you been asked by SBI to provide expert opinions of any kind in connection with this lawsuit? **A I have not been contracted to provide expert opinions and expert witness.**") (emphasis added) (ECF No. 92-5).
[5] Order (Apr. 17, 2025) (ECF No. 74).

Mot. Amend (Aug. 14, 2025) at 9.

By way of example, Dr. Valentine now relies upon internal and external audits, a purported "forensic examination," and alleged Muroo invoices, communications, and verifications, as well as SBI pool data, which includes SBI's Rockdale and Russian operations—all that have ***never*** been produced. *E.g.*, Mot. Seal (Jul. 28, 2025) Ex. 1 at 2, 4, 6-7, 9, 13, 21. Dr. Valentine either fails to cite any documents supporting those conclusions or erroneously cites to documents that are completely ***different*** than what he claims the document to be (as detailed above). *Id.* Because Dr. Valentine never conducted a "forensic analysis" or opined on this information previously, Whinstone was unaware of these issues before the "supplements." Either way, Whinstone has not conducted discovery on these previously undisclosed issues. SBI's other expert "supplements" contain similar undisclosed data.[6]

Mr. Schuler haphazardly engaged in destructive testing (without Whinstone representatives being present) to claim the miners are worthless because of "contamination" ***three weeks after the rebuttal deadline.*** Reply Emerg. Mot. Strike (Aug. 11, 2025) at 2-3 (ECF No. 92). Because Whinstone was not permitted to observe this testing, it should be permitted to inspect that miner and conduct its own testing to counter Mr. Shuler's new opinions. Additionally, despite now claiming that Mr. Schuler's testing was delayed due to a medical procedure, SBI never made Whinstone aware of the issue nor sought an extension for Mr. Schuler. As is the current theme with SBI, doing so now is untimely.

## C. SBI's attempt to back door Carson Smith's expert testimony is improper.

SBI's experts rely upon Mr. Smith's opinion to form their "opinions." By way of example, Chuck Byers' admits "[s]ome of the content of this report resulted from ***collaborations with others***

---

[6] *E.g.*, Emerg. Mot. Strike (Jul. 28, 2025) Ex. 3 (detailing SBI's Russian facility and operations).

***familiar with the facility and the miners at issue, including . . . Carson Smith (former CEO of SBI Crypto.)***" Emerg. Mot. Strike (Jul. 28, 2025) Ex. 3 at 8 (emphasis added) (ECF No. 90-4). Mr. Byers' "supplement" entirely concerns SBI's Russian facility and operations. Because Mr. Byers has never been there and he is unfamiliar with the facility, he relies heavily upon Mr. Smith—who translated documents and performed lost-profits analysis—to form his opinions. While experts can rely on hearsay, they cannot rely on the untested opinion of an undisclosed expert who affirmatively testified he was ***not*** an expert. Emerg. Mot. Strike (Aug. 11, 2025) Ex. 14.

### D.  Whinstone has not asked for four more months to draft supplemental rebuttal reports.

SBI wrongly claims that Whinstone is asking for "***four months to respond to supplemental reports***." Resp. Emerg. Mot. Strike (Aug. 14, 2025) at 9 (emphasis in original). As seen in the timeline attached as Exhibit 3, SBI has had ***years*** to formulate its affirmative expert reports. Yet, SBI sandbagged and served "supplements" on the eve of, on, and even after Whinstone's rebuttal deadline. If, and only if, SBI's untimely "supplements" and undisclosed expert are not stricken, Whinstone proposes a schedule to allow the time necessary for the Court to render a decision resolving the "supplementation" dispute and for Whinstone to conduct discovery and supplement its rebuttal reports (*i.e.*, approximately 60 days). Emerg. Mot. Amend (Aug. 11, 2025) Ex. 2 (ECF No. 93-2). And, as detailed above, SBI's "offer" to extend the rebuttal deadline only does not cure the prejudice caused to Whinstone by incurring substantially more attorneys' fees and expert report costs.

Again, this Court has a choice—enforce its orders and deadlines or reward sandbagging and discovery abuse. The Court should grant the Motion to Strike. However, if the Court declines, then amending the scheduling order, continuing trial, awarding Whinstone attorneys' fees and expert witness costs, and protecting Whinstone's experts from discovery is wholly warranted.

**REPLY ISO OF EMERGENCY MOTION**                                                               6
4901-9509-8719.6

Respectfully submitted,

FOLEY & LARDNER LLP

By:  */s/ Robert T. Slovak*
        Robert T. Slovak
        Texas Bar No. 24013523
        rslovak@foley.com
        Steven C. Lockhart
        Texas Bar No. 24036981
        slockhart@foley.com
        Brandon C. Marx
        Texas Bar No. 24098046
        bmarx@foley.com
        2021 McKinney Avenue, Suite 1600
        Dallas, Texas 75201
        Telephone: (214) 999-3000
        Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Brandon C. Marx*
Brandon C. Marx