IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 6:23-cv-252 |
| WHINSTONE US, INC., | |
| Defendant. | |

### DEFENDANT WHINSTONE US, INC.'S RESPONSE TO PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF KAREN RAYMENT UNDER FEDERAL RULE OF EVIDENCE 702

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US, INC.**

# I. INTRODUCTION

Plaintiff SBI Crypto Co., Ltd. ("**SBI**") *Daubert Motion to Exclude the Testimony of Karen Rayment under Federal Rule of Evidence* 702 (the "**Motion**") misstates both the governing law and the scope of Ms. Rayment's role as a rebuttal expert. The Motion ignores her extensive qualifications, misconstrues what Rule 702 requires, and seeks exclusion based on disagreements that go to weight—not admissibility.

Karen Rayment is an electrical engineer and forensic investigator with over two decades of experience designing, evaluating, and testifying about complex electrical systems, including cryptocurrency mining facilities, commercial data centers, and ASIC-based computing hardware. She was retained as a rebuttal witness to analyze, critique, and test the opinions of Plaintiff's affirmative experts, Phil Isaak and Charles Byers—namely that these experts could not and did utilize any sound methodology to form their conclusions. She did precisely that, using her specialized knowledge and experience, and cited to accepted forensic methodology, which Isaak and Byers did not follow.

Plaintiff's objections to the scope of the materials Ms. Rayment reviewed, her conclusions about industry standards, and the substance of her critiques of Isaak and Byers are disputes irrelevant to *Daubert* and Rule 702 because they bear on the weight the jury may choose to give her opinions, not on their admissibility, which is for the Court to determine in its gatekeeping role. SBI does not establish that Ms. Rayment's opinions are unreliable under Rule 702 and *Daubert* and its progeny and, therefore, SBI's Motion should be denied.

## II. STANDARD OF REVIEW

An expert may only testify in the form of opinion if they meet the requirements of qualifications, reliability and fit. Fed. R. Civ. P. 702. Under Federal Rule of Evidence 702, "[a]

**DEFENDANT WHINSTONE US, INC.'S RESPONSE TO PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF KAREN RAYMENT UNDER FEDERAL RULE OF EVIDENCE 702**
4910-4138-8407.5

2

witness who is qualified as an expert by knowledge, skill, experience, training, or education may

testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it

is more likely than not that:

> (a)    the expert's scientific, technical, or other specialized knowledge will help
>
>         the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of
>
>         the case."

Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see also Kumho Tire*

*Co. v. Carmichael*, 526 U.S. 137 (1999). "The party offering the expert must prove by a

preponderance of the evidence that the proffered testimony satisfies the [R]ule 702 test." *Mathis*

*v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). The Supreme Court assigned to trial courts

the responsibility of determining whether expert testimony under Rule 702 is "not only relevant,

but reliable." *Daubert*, 509 U.S. at 589. In this gate-keeping role, trial courts make "a preliminary

assessment of whether the reasoning or methodology underlying the testimony is scientifically

valid and of whether that reasoning or methodology properly can be applied to the facts in issue."

*Id.* at 592–93.

The *Daubert* opinion lists a number of factors that a trial court may use in determining an

expert's reliability. Trial courts are to consider the extent to which a given technique can be

tested, whether the technique is subject to peer review and publication, any known potential rate

of error, the existence and maintenance of standards governing operation of the technique, and

whether the method has been generally accepted in the relevant scientific community. *See id.* at

593–94. These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered. *See Black v. Food Lion*, 171 F.3d 308, 311–12 (5th Cir.1999).

### III. ARGUMENTS & AUTHORITIES

**A.      Ms. Rayment is a qualified expert under Rule 702.**

As a threshold matter, Ms. Rayment was specifically engaged to "review ⌐Byers and Isaak's⌐ assertions, their methodology, their process and their opinions in this matter." Ex. 1, K. Rayment Dep. Tr. (Oct. 21, 2025) at 37:21-25. She was **not** asked to "offer any opinion as to whether Whinstone provided services in accordance with industry standards." *Id.* at 37:16-19.

As a result, Ms. Rayment offers expert testimony that: (1) it is not possible to determine from a physical inspection what did or did not occur at the Whinstone facility during SBI's operating period, due to the lack of contemporaneous audits, formal failure analysis records, and changes to the facility over time (Ex. 2, K. Rayment Expert Report at ¶¶ 19–21); (2) early-model Canaan Avalon A10 series miners had inherent design and manufacturing issues, including power supply failures, firmware bugs, and hash board defects, that were unrelated to environmental conditions (*Id.* at p. 4, ¶ 22; pp. 10-11, ¶ b); (3) the chain of custody for SBI's miners was not documented, preventing ASTM-compliant testing or lab evaluation (*Id.* at pp. 4–5, ¶ 23); (4) there are no definitive records of firmware patches or release notes for the A10 series miners, making performance comparisons between units operated in Russia and those at Whinstone impossible to assess to a scientific certainty (*Id.* at p. 5, ¶ 24); (5) Mr. Isaak improperly applied commercial data center standards to an industrial bitcoin mining facility, failed to use ASTM-compliant methods, and offered opinions unsupported by relevant data (*Id.* at pp. 5–6, ¶¶ 23–25); (6) Mr. Byers likewise relied on speculative assumptions, misapplied commercial data

center concepts to bitcoin mining, and failed to follow ASTM standards or maintain proper chain of custody (*Id.* at pp. 6–9, ¶¶ 26–28); and (7) it is not possible to reliably establish that environmental conditions at the Whinstone campus were the root cause of any miner failures, and any attempts to do so now are speculative given the absence of contemporaneous data and documented failure analysis (*Id.* at pp. 30–32, ¶¶ 64(d), 64(g)–(h)). Ms. Rayment's opinions are classic rebuttal opinions, focused on testing the validity of opposing experts' methodologies, the manner in which those methodologies were applied, and whether they were applied properly to the facts of this case. This is exactly the type of rebuttal testimony contemplated by Rule 26 that is proper for presentation at trial.

### 1. *Ms. Rayment is qualified.*

Rule 702 requires that the expert be qualified by "knowledge, skill, experience, training, or education" and that the testimony be based on reliable principles and methods applied to sufficient facts or data. Ms. Rayment easily meets and exceeds these requirements.

Ms. Rayment holds a B.S. in Electrical Engineering and Computer Sciences from UC Berkeley, an M.S.E.E. focusing on wired and wireless data systems, and an M.B.A. in International Strategic Management. Ex. 3, Aff. of K. Rayment at ¶2. She is a licensed Professional Engineer (P.E.) in eight states, including Texas, and a Certified Fire and Explosion Investigator. She also holds a Project Management Professional (PMP) certification. Ex. 3, Aff. of K. Rayment at ¶3. Put simply, Ms. Rayment possesses the credentials and knowledge to proffer the rebuttal opinions that she offers in this case.

But Ms. Rayment's qualifications do not end with her education. Ms. Rayment has designed, built, maintained, and analyzed electrical power systems, ASIC-based computing equipment, cryptocurrency mining infrastructure, and commercial data centers. Ex. 3, Aff. of K.

Rayment at ¶4. Her career spans over twenty years, including senior engineering roles at major industrial manufacturers, global regulatory compliance leadership, and litigation support in forensic engineering matters. Ex. 3, Aff. of K. Rayment at ¶4. Ms. Rayment also has specialty experience that is directly relevant to this dispute. Specifically, Ms. Rayment has worked extensively with high-density computing systems, cryptocurrency mining hardware (including ASIC miners), power distribution networks, cooling systems, and environmental controls critical to the operation of such facilities. Ex. 3, Aff. of K. Rayment at ¶4.

Ms. Rayment's background directly connects to her opinions in this matter. Ms. Rayment's rebuttal report applies forensic engineering principles and ASTM International standards to evaluate whether Isaak and Byers' methodologies comport with accepted engineering practice and investigation (Ex. 2, K. Rayment Report at ¶10), whether the data center standards Isaak and Byers' invoke are applicable to cryptocurrency mining facilities (Ex. 2, K. Rayment Report at ¶ 5, 10), whether their analyses properly consider and account for variables unique to the Canaan Avalon A10 series miners (Ex. 2, K. Rayment Report at ¶ 5, 7, 10), and whether there is sufficient data to form any reliable conclusions. *See e.g.*, Ex. 1 K. Rayment Dep. Tr. (Oct. 21, 2025) at 133:3-134:9.

SBI offers no direct challenge to her credentials under Rule 702—nor could they as Ms. Rayment has more hands-on experience with cryptocurrency mining facilities and operations than Byers (who has none).[1] In fact, Ms. Rayment has served as an expert in numerous matters without being excluded under Daubert. There is no reason to treat her differently here.

---

[1] Isaak is expected to have little to no experience with cryptocurrency mining facilities as well, but Whinstone cannot confirm until his deposition.

### 2. *Rayment is qualified to offer rebuttal expert testimony.*

Federal Rule of Civil Procedure and case law establish that rebuttal experts are not obligated to provide affirmative opinions, but may focus on critiquing the methodology or conclusions of opposing experts. Rule 26(a)(2)(D)(ii) explicitly allows for the designation of a rebuttal expert witness "solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." "The scope of rebuttal testimony is ordinarily a matter to be left to the sound discretion of the trial judge." *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (5th Cir. 1991). "A 'rebuttal' report explains, repels, counteracts, or disproves evidence of the adverse party's initial report." *CEATS, Inc. v. TicketNetwork, Inc.*, 2018 WL 453732, at *3 (E.D. Tex. 2018) (Payne, Mag. J.). Courts have consistently held that rebuttal experts may critique the methodology employed by opposing experts. In *Orthoflex, Inc. v. ThermoTek, Inc.*, for example, the court recognized that rebuttal testimony qualifies as proper when it impeaches the methodology or reliability of an opposing expert's conclusions. 986 F.Supp.2d 776, 811-10 (N.D. Tex. 2013). Thus, rebuttal experts can focus on identifying flaws or inconsistencies in the methodology of opposing experts without being required to offer affirmative opinions, provided their testimony adheres to procedural rules and evidentiary standards.

The thrust of Ms. Rayment's rebuttal testimony is to identify the multitude of shortcomings in Messrs. Isaac's and Byers's analyses. For example, Ms. Rayment offers rebuttal testimony that Mr. Isaak improperly applied legacy commercial data center standards—such as hot aisle/cold aisle containment and CFD modeling—to an industrial bitcoin mining environment, and failed to comply with ASTM standards for investigation and reporting (Ex. 2, K. Rayment Expert Report at pp. 5–6, ¶¶ 23–25). SBI's proffered "expert" opines that airflow,

temperature, dust, and corrosion conditions at Whinstone caused decreased miner performance without citing ASIC-specific data. Ms. Rayment disagrees and, for example, highlights that Mr. Isaak did not evaluate temperature at the ASIC level, offered no hash rate reduction analysis tied to his environmental concerns, and relied on incomplete and unverified photographs from a reseller inspection (*Id.* at p. 6, ¶ 25(e)–(h) and p. 24, ¶¶ 51–52). Simply put, it is "impossible" to "rule[] in or rule[] out to a specific certainty, whether the environment was indeed an issue for the miners" due to the lack of historical data. Ex. 1, K. Rayment Dep. Tr. (Oct. 21, 2025) at 133:3-134:9.

As another example, Ms. Rayment rebuts Mr. Byers's speculation that environmental conditions materially impacted SBI's miners by noting his failure to differentiate between models in the Canaan A10 product line, his reliance on non-existent chain-of-custody documentation for inspected units, and the absence of any ASTM-compliant sampling or testing to support his root cause theories (Ex. 2, K. Rayment Expert Report at p. 27, ¶ 60; pp. 27–29, ¶ 63).

As a further example, Ms. Rayment responds to Mr. Isaak's reliance on generic contamination observations by explaining that minor exhaust-to-intake recirculation is normal for industrial bitcoin mining facilities and helps maintain acceptable relative humidity levels, and that Mr. Isaak presented no measurements or contemporaneous data from the Whinstone facility during the relevant period to substantiate his conclusions (Ex. 2, K. Rayment Expert Report at pp. 6, ¶ 25(a)–(c), (h); p. 24, ¶ 53).

Finally, Ms. Rayment rebuts Mr. Byers's comparison of Whinstone to alleged improved performance in Russian facilities, pointing out there is no documentation of decommissioning and recommissioning procedures, no maintenance or repair records, no firmware version history,

and no way to scientifically correlate performance data across the two environments six months apart (Ex. 2, Rayment Expert Report at pp. 26-27, ¶ 58).

Each of these opinions is grounded in Ms. Rayment's extensive engineering expertise, informed by her application of industry-recognized forensic and investigative standards, and directly helpful in assisting the jury with matters it will be required to resolve. Her testimony applies accepted methodologies to evaluate whether the opposing experts' analyses were technically sound (they were not) and appropriately tailored to the facts of this case, and her conclusions are relevant to the core disputes over causation, methodology, and the reliability of Plaintiffs' expert evidence. Ms. Rayment's opinions are therefore both reliable and relevant under Rule 702 and Daubert, and they constitute proper rebuttal testimony aimed at critiquing the methods, application of those methods, and the propriety of the opposing experts' approach. The Court should deny Plaintiffs' motion and permit the jury to hear and weigh Ms. Rayment's testimony.

**B.      SBI's "Document Review" Argument Misstates a Rebuttal Expert's Role.**

Under *Daubert* and Fed. R. Evid. 702, a district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion. Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may "go to the weight, not the admissibility" of the expert's testimony. *See Fed. Deposit Ins. Corp. v. Suna Assocs., Inc.*, 80 F.3d 681, 687 (2d Cir.1996) (discussing *Daubert* factors). The Federal Rules of Evidence reflect a "liberal thrust," and the Daubert inquiry is designed to be "flexible in nature," recognizing the distinct roles of the judge as gatekeeper and the jury as ultimate arbiter of an expert's credibility. An expert's opinions are not required to be grounded in a particular published study, so long as they are based on reliable principles and methodologies

and applied appropriately to the facts of the case. *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). A contrary requirement "would effectively resurrect a *Frye*-like bright-line standard, not by requiring that a methodology be 'generally accepted,' but by excluding expert testimony not backed by published (and presumably peer-reviewed) studies." *Heller*, 167 F.3d at 155. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996).

As established above, Ms. Rayment's opinions and conclusions are the product of a reliable methodology, grounded in her extensive engineering expertise, and are directly relevant to issues the jury must decide. That should satisfy the Court's inquiry under its gatekeeping role under Rule 702 and Daubert. Plaintiff's contention that Ms. Rayment should be excluded because she did not review certain documents—such as the Hosting Service Agreement or select deposition testimony—misconceives the governing standard. Their attack focuses on what Ms. Rayment *should* have reviewed, rather than whether her actual critique of Messrs. Byers and Isaak's opinions was developed and applied using reliable methods. This approach mirrors the kind of *Frye*-like bright-line rule cautioned against in *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). Rule 702 does not mandate that an expert review every conceivable piece of evidence; it requires only that the facts and data considered are sufficient to support the opinions rendered. *See Holcombe v. U.S.*, 516 F.Supp.3d 660, 687-88 (W.D. Tex. 2021) (Rodriguez, J.) (finding that an expert's alleged failure to consider "key documents" evidenced different theories rather than unreliable methodology); *Coleman v. U.S.*, 2017 WL 9360840, at *3-4 (W.D. Tex. Aug. 16, 2017) (Primomo, Mag. J.) (finding that while the government was concerned about the

expert's review of pertinent records, "[c]oncerns about the factual basis of his opinions go to the weight of those opinions, not their admissibility."). Because Ms. Rayment's conclusions result from reliably applying accepted forensic engineering standards and methodologies to the data she did review, any dispute over whether additional documents should have been considered goes to the weight of her testimony, not its admissibility. Plaintiffs are free to cross-examine Ms. Rayment on the scope of her review, but that is not a basis for exclusion.

Moreover, Byers's testimony buttresses Ms. Rayment's opinions. Byers admitted that the cryptocurrency mining facility at-issue here is a "relatively recent phenomenon" that began "probably 2018, give or take a year." Ex. 4, C. Byers Dep. Tr. (Oct. 30, 2025) at 69:4–5, 69:7–16. Meaning, there were *no* standards when this facility was designed and construction began in 2019. SBI's citation to the "Altair Article" does not alter that fact. Mot. Strike (Nov. 4, 2025) at 14, Ex. D (ECF Nos. 131, 131-4)). That article was written on December 4, 2022 by a company founded in 2021—both dates years after the Rockdale facility was designed and constructed. *Id.* at Ex. D at 1, 15. In arguing the article is an example of Ms. Rayment's lack of qualifications, SBI swings and misses.

## C.    SBI's Industry Standards Argument Also Goes to Weight

Plaintiff next attacks Ms. Rayment's opinion that there were no established industry standards applicable to a cryptocurrency mining facility like the Rockdale site during the relevant period. Again, Plaintiff conflates disagreement with admissibility and with Byers' own deposition testimony (as detailed in the preceding paragraph). Ms. Rayment has decades of experience designing and evaluating both commercial data centers and cryptocurrency mining operations. That experience enables her to distinguish between recognized data center standards and the realities of an emerging industry that, during 2020–2021, had no governing body, codified

technical standards, or universally accepted best practices (Ex. 2, K. Rayment Expert Report at pp. 20–21, ¶¶ 39–42 and pp. 30–32, ¶ 64). Drawing on that background, she explained in detail the many ways in which industrial bitcoin mining facilities differ from commercial data centers in physical form factor, power density, cooling methodology, maintenance practices, and hardware lifecycle, and why forcing a commercial data center standard onto a bitcoin mining facility is technically unsound and inconsistent with ASTM-recognized investigative methods (Ex. 2, K. Rayment Expert Report at pp. 14–22, ¶¶ 39–45).

SBI argues that the Hosting Service Agreement's reference to "industry standards" somehow mandates the use of commercial data center standards for the Rockdale mining facility. As Ms. Rayment explained, the mere inclusion of the phrase "industry standards" in a contract does not make inapplicable standards controlling; and if unambiguous, is a legal matter for the Court to decide, and if unambiguous, requires parol evidence in light of the actual state of the industry at the time (Ex. 2, Rayment Expert Report at pp. 5–6, ¶¶ 23–25; p. 30, ¶ 64(b)). That is precisely what Ms. Rayment did here—she applied her decades of engineering experience across both traditional data centers and bitcoin mining to determine that there were no established cryptocurrency mining facility standards in 2020–2021, and therefore the commercial data center standards invoked by Isaak and Byers are not relevant or reliable in this context.

SBI suggests Ms. Rayment should produce a published source that affirmatively "proves" no cryptocurrency mining standards exist. That demand is both impossible and legally irrelevant. Experts are routinely permitted to testify from their professional experience about the absence of recognized standards or practices in a given field when that absence is itself relevant to the jury's determination. The absence of a published, codified bitcoin mining facility standard—confirmed by Ms. Rayment's professional knowledge of both sectors—forms part of

**DEFENDANT WHINSTONE US, INC.'S RESPONSE TO PLAINTIFF'S**
**DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF KAREN**
**RAYMENT UNDER FEDERAL RULE OF EVIDENCE 702**                    12
4910-4138-8407.5

her expert rebuttal and is itself relevant testimony for the trier of fact. Most tellingly, if such a standard has ever existed, Isaak and Byers would have cited it instead of trying to put a square peg into a round hole with inapposite standards.

Any disagreement with her conclusion may be fertile ground for cross-examination, but it is not grounds for exclusion under Rule 702. Plaintiffs have not demonstrated that Ms. Rayment's methodology—rooted in applied engineering principles, ASTM standards, and decades of cross-industry experience—is unreliable or speculative.

### D.    SBI's Motion Fails Under Rule 702 and *Daubert.*

The Fifth Circuit has made clear that exclusion under Rule 702 is appropriate only when an opinion is "fundamentally unsupported" such that it offers no assistance to the trier of fact. *See Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005). Plaintiffs have not come close to making that showing.

Ms. Rayment's report plainly sets out:

- The facts and data she considered;

- The ASTM forensic standards and engineering principles she applied;

- Her qualifications to render the opinions;

- The specific bases for each conclusion.

That satisfies Rule 702's reliability requirement. Plaintiffs' criticisms that she should have considered additional documents, or that they disagree with her view of applicable industry standards are classic cross-examination topics. Plaintiffs' criticisms, however, are not grounds for wholesale exclusion.

## IV. CONCLUSION

For over twenty years, Karen Rayment has investigated, designed, evaluated, and testified about the kind of specialized electrical and computing systems at issue here. She applied accepted forensic engineering methods to critique the work of Plaintiff's affirmative experts. Plaintiffs' disagreements go to the weight of her testimony, not its admissibility. Rule 702, Daubert, and Fifth Circuit precedent do not permit exclusion on this record. Ms. Rayment's qualifications and expert testimony will aid the jury "to understand the evidence or determine a fact in issue." *See* Fed. R. Evid. 702(a). Therefore, the Court should deny SBI's motion to exclude Ms. Rayment's testimony.

Respectfully submitted,

FOLEY & LARDNER LLP

By:  */s/ Robert T. Slovak*
\
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Brandon C. Marx*
\
Brandon C. Marx