IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**WHINSTONE US, INC.,**<br><br>*Defendant.* | Civil Action No.: 6:23-cv-252-ADA-DTG |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO
EXCLUDE THE TESTIMONY OF RICHARD PETERS**

Plaintiff SBI Crypto Co., Ltd. ("Plaintiff" or "SBI") files this Reply in support of its *Daubert* Motion to Exclude the Testimony of Richard Peters under Federal Rule of Evidence 702 (Dkt. 120) (the "Motion to Exclude") and respectfully shows this Court the following.

**I.**
**ARGUMENT**

Whinstone's Response is fatally flawed for at least three reasons. First, Whinstone cannot escape Peters' admitted lack of relevant expertise and the fact that he testified to relying on common sense and personal experience, rather than any specialized knowledge. Whinstone relies on clearly distinguishable case law, ignoring the clear requirements of the Fifth Circuit for experts to opine on engineering or product defects and causation. Whinstone's Response and Peters' Declaration contradict and misrepresent his deposition testimony and proffered opinions. Second, Peters does not rely on any specialized knowledge in forming his rebuttal opinions to Byers. Third, Whinstone's Response only addresses Peters' lack of qualifications and wholly ignores

that SBI also moved to exclude his rebuttal opinions as unreliable because Peters merely parrots speculative, hearsay statements, and did not perform any independent research, calculations, testing, or analysis.

A. **Whinstone's Response Ignores Peters' Deposition Testimony and Fails to Establish the Expertise Necessary to Offer Rebuttal Opinions on Causation and the Existence of Design Defects.**

First, Peters does not hold himself out as an expert on the design or manufacturing of computing equipment or the design of data centers. The analysis ends here. If he is not an expert on the design of computing equipment or of data centers, he cannot opine on the design of computing equipment or data centers.

Second, the Fifth Circuit has made clear that a witness's expertise must match the subject matter of the opinions offered. *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007); *Childs v. Entergy Mississippi, Inc.*, 411 Fed. Appx. 699, 701 (5th Cir. 2011). Generalized expertise in a related field does not suffice. *Wilson v. Woods*, 163 F.3d 935, 938 (5th Cir.1999). Whinstone's string citations of cases only address the source of a witness's expertise–such as training, education, or industry experience–but do not address the requirement that the expertise match the subject area of the testimony. For example, in *United States v. Crater*, the First Circuit upheld a district court's finding that the expert had sufficient qualifications because, in part, she conducted trainings for Interpol, Europol, and for the Departments of Treasury, Justice, and Homeland Security on the very topic on which she opined. *See United States v. Crater*, 93 F.4th 581, 590-591 (1st Cir. 2024), cert. denied, 145 S. Ct. 218 (2024).

Whinstone also relies heavily on *Whitehouse Hotel Ltd., P'ship v. C.I.R.* to distinguish this case from *Smith*. In *Whitehouse*, the Fifth Circuit held it was not abuse of discretion to find a real estate appraiser qualified to opine on the impact of an easement

on real property. 615 F.3d 321, 331 (5th Cir. 2010). Assessing the qualifications of a damages expert to appraise real property involves different considerations than assessing the qualifications necessary to opine on the defectiveness of a product and whether a particular condition caused the damages. *See id*. *Smith* and its progeny should guide the Court here because Peters opines that (1) the miners and/or power supply units were defective and (2) those defects caused SBI's miners to underperform, not any environmental conditions. *See* **Motion to Exclude Exhibit "D"** at ¶ 1, 32-85. Peters, a cybersecurity expert, does not have the necessary engineering expertise to offer these engineering opinions.

Peters' declaration does not set forth that expertise. Moreover, it dramatically misrepresents his qualifications and experience as provided in his deposition testimony and curriculum vitae. In his declaration, Peters states he has a substantial amount of experience operating crypto miners and mining cryptocurrencies, including participating in mining pools. *See* **Response Exhibit "F"** at ¶ 4.

First, operating a piece of equipment and designing the equipment (or similar equipment) are fundamentally different disciplines. Most, if not all jurors, have operated a computer, but that does not make them an expert on how to design a computer or how the design of a data center may contribute to the performance and useful life of computing equipment.

Second, Peters' "substantial experience" amounts to him running a total of four or five miners between 2017 and 2022 and participating in one mining pool–Antpool–in either 2021 or 2022. *See* **Motion to Exclude Exhibit "C"** at 71:7-72:7, 73:5-19. His experience with crypto miners is akin to assembling a personal desktop. *Id*. at 207:11-19. Much of the experience identified by Peters in his declaration does not appear in either of

his reports, his curriculum vitae, or his deposition testimony. His expertise is limited to crypto tracing—examining blockchain transactions—not designing or analyzing the design of the hardware. *Id.* at 62:20-63:3

Similarly, Peters claims to have experience examining environmental conditions at data centers and the impact those environmental conditions had on computing equipment. *See* **Response Exhibit "F"** at ¶ 5. What Peters actually testified was that his only experience examining the environmental conditions involved examining cybersecurity related conditions and physical security like fire suppression, locked doors, etc. *See* **Motion to Exclude Exhibit "C"** at 22:18-23:2, 36:5-37:22, 80:10-18. His audits of data centers simply involved auditing physical security controls. *Id.* at 22:18-23:2. His experience with failure mode analysis is limited to the security triad—confidentiality, integrity, and availability. *Id.* at 34:8-18. His cybersecurity experience is wholly irrelevant to the environmental conditions of airflow, heat and dust abatement at issue here.

Furthermore, his experience with hardware is limited to assessing if a data center or other business had backups and redundancies in place if the equipment went offline. *Id.* at 36:5-37:22, 80:10-18. His experience with penetration testing and vulnerability scanning deals with cybersecurity vulnerabilities, something also irrelevant to this case. *Id.* at 25:17-28:23.

Moreover, the lack of experience manifests itself in all of the other indicators of expertise courts look consider—publications in the field, professional associations, certifications or licenses, prior expert experience, teaching experience, or education. Peters does not have any of that. *See* Motion to Exclude at 7-10. Whinstone asked "who is better to opine on such an issue than someone who professionally looks for flaws?" [Dkt.

130 at 11]. Answer: most anyone with an engineering degree with experience designing high-power computing equipment.

### B. Peters Admitted He Relied on Common Sense Only, and Not Any Specialized Knowledge for Certain Rebuttal Opinions.

It does not even matter whether Peters has *any* relevant specialized knowledge, because he *did not* rely on any specialized knowledge when making rebuttal opinions to Byers. *See* **Motion to Exclude Exhibit "C"** at 173:21-175:7, 236:20-237:1. Specifically, Peters admitted to relying on common sense and not any specialized knowledge to opine on whether hot air could recirculate into the cold aisle, *id*. at 173:21-175:7, and to opine on the "thermal mass" of Building B of the Rockdale Facility and the impact the building design had on the air intake temperature. *Id*. at 236:20-237:1. Whinstone and Peters have conceded on this point by failing to address it in the Response and Declaration.

### C. Whinstone Provides No Response to the Unreliability of Peters' Methodology and the Unhelpfulness of his Opinions to the Jury.

Whinstone similarly ignored the objections to Peters' rebuttal opinions to Byers as unreliable and unhelpful. *See* Motion to Exclude at 18-20. Peters failed to conduct any testing, perform any calculations, take any measurements, or analyze any data. *Id*. Instead, he simply parrots the contents of various emails or gives his "common sense" opinions. Rebuttal experts must meet the same strict requirements as other experts under Rule 702. *See Nairne v. Landry*, 151 F.4th 666, 698 (5th Cir. 2025) ("[r]egardless, his report had to comply with the strictures of Rule 702...") Peters offers no independent analysis to the communications he reviewed, and it is neither helpful nor reliable for Peters to act as a mere conduit for otherwise inadmissible hearsay and speculation. Whinstone's refusal to even offer any response to this objection simply highlights the lack of any real expert analysis provided by Peters.

Respectfully submitted,

By: */s/ Joshua M. Sandler*
Joshua M. Sandler
  Texas Bar No. 24053680
  jsandler@winstead.com
Cory Johnson
  Texas Bar No. 24046162
  cjohnson@winstead.com
Andrew Patterson
  Texas Bar No. 24131573
  apatterson@winstead.com
John D. Janicek
  State Bar No. 24125636
  jjanicek@winstead.com
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF
SBI CRYPTO CO. LTD**

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure via the court's e-filing system on November 11, 2025.

*/s/ Andrew Patterson*
Andrew Patterson