IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD.,<br><br>  Plaintiff,<br><br>v.<br><br>WHINSTONE US, INC.,<br><br>  Defendant. | Civil Action No. 6:23-cv-252 |

**DEFENDANT WHINSTONE US, INC.'S MOTION TO STRIKE THE EXPERT
OPINIONS OF CHARLES BYERS AND RANDY BOLTIN**

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar. No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US, INC.**

Pursuant to Federal Rule of Civil Procedure 37(c) and Federal Rule of Evidence 702, Defendant Whinstone US, Inc. ("Defendant" or "Whinstone") moves to exclude the opinions and testimony of Charles Byers ("Byers") and Randy Boltin ("Boltin"). Byers, is a "computer engineer" and the "causation expert" that Plaintiff SBI Crypto Co, Ltd. ("Plaintiff" or "SBI") designated to testify as to "how the facility and the environmental conditions therein resulted in the under-performance damage and failure of SBI's machines."[1] Boltin, by contrast, was never designated by SBI,[2] but nonetheless performed an expert dust analysis relied upon by Byers in forming his opinion.[3]

## I. SUMMARY OF ARGUMENT

SBI has again disregarded this Court's orders and its obligations under Federal Rules of Civil Procedure. On March 28, 2025, SBI served expert reports, triggering the Scheduling Order's and Rule 26(a)(2)(B)'s mandate to disclose a complete statement of all opinions, the basis and reasons for those opinions, the facts or data considered, all exhibits that will support them, the witness's qualifications and publications, prior testimony, and compensation information.[4] On April 17, 2025, this Court compelled SBI to produce the "source data for any spreadsheet relied upon by SBI's expert witnesses" no later than April 25, 2025 (the "Discovery Order").[5] Like with SBI's expert Randall Valentine (*see* ECF No. 136), SBI did not comply and produce the source data underpinning Byers's and Boltin's opinions.

First, SBI did not disclose Boltin—the author of the "MVA Dust Analysis" on which Byers's causation opinions rely—as an expert witness.[6] SBI retained Boltin through IMS Expert

---

[1] Hr'g Tr. (Sept. 11, 2025) at 11:4, 11:20-23, attached as Exhibit 1.
[2] SBI Expert Discl. (Mar. 28, 2025), attached as Exhibit 2.
[3] Byers Rpt. at 52, attached as Exhibit 3; MVA Rpt., attached as Exhibit 4.
[4] Fifth Am. Sched. Order (May 19, 2025) (ECF No. 86); Fed. R. Civ. Proc. 26(a)(2).
[5] Disc. Order (Apr. 17, 2025) (ECF No. 74).
[6] *See generally* Ex. 2.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**                                    2

Services (the same search firm that hired Byers), to perform dust characterization work.[7] SBI only provided Boltin's written report, omitting every other item Rule 26 requires: curriculum vitae, qualifications, prior testimony, compensation, data considered, and exhibits.[8] This omission is a direct violation of Rule 26(a)(2) and the Discovery Order. Rule 37(c)(1) makes exclusion automatic unless the failure was substantially justified or harmless; SBI cannot make either showing.

Second, like with Valentine, Byers's October 30, 2025 deposition revealed that SBI did not disclose, identify, or produce the following:

- Information supporting his "belief" as to how SBI allocated cryptocurrency amongst its mining pool participants of which SBI's Rockdale and Russian operations, other mining operations, and external customers were a part;[9]

- The allocation data from an unknown "mining pool database" (*i.e.*, the source data) that SBI selectively and ***manually input*** into an after-the-fact, made for litigation spreadsheet used by Byers to opine that SBI's Russian operations outperformed its Rockdale operations;[10]

- The internet searches that Byers performed as part of his cryptocurrency mining "education" in this case, which forms the bases of his opinion that "most" "large-scale cryptocurrency mining facilities adhere to [at least some of] the best practices for data centers" (notwithstanding Byers' statement that the "information to do an exhaustive analysis . . . is not available because the inner workings of many of the data centers are proprietary to their owners");[11] and

- His opinion that "the most appropriate time scale for [temperature] averaging is represented by the thermal time constraints of the systems involved."[12]

SBI's failure to properly disclose Boltin, completely identify all of Byers's opinions, and produce the underlying information that Boltin and Byers rely upon in reaching their conclusions

---

[7] Ex. 4 at 1; C. Byers Dep. Tr. (Oct. 30, 2025) at 10:23-11:6, attached as Exhibit 5.
[8] Exs. 2, 4.
[9] Ex. 5 at 132:4-135:25, 136:2-17, 136:19-22 .
[10] *Id.* at 204:17-20, 204:22-205:20, 205:22-206:6, 206:8-11, 206:22-24, 207:1-6, 207:8-15.
[11] *E.g., id*. at 139:25-140:2, 140:4-5, 143:1-144:18, 144:20-25, 145:2-6, 145:8-13, 145:15-146:12, 146:14-147:8, 147:10-14, 147:16-148:2, 148:4-148:19, 148:21-149:1, 149:3-19, 149:21-150:7, 150:23-151:21, 151:23-24, 154:19-24, 155:1-18, 155:20-21
[12] *Id.* at 164:13-16, 164:18-165:19, 166:2-4.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**  3

are neither justified nor harmless.[13] SBI's failures impair Whinstone's ability to test and rebut the assumptions embedded in Byers's and Boltin's work, precisely the prejudice Rule 26 and Rule 37 are designed to prevent. The Court should exclude Boltin's dust analysis in its entirety and preclude Byers from offering evidence or testimony based on Boltin's dust analysis or any other matter Byers failed to disclose.[14]

Third, Byers is not qualified under Rule 702 to analyze meteorological data or use statistical analysis or evidence.[15] Byers admitted under oath that he is not a statistician,[16] meteorologist,[17] or environmental scientist and cannot opine on statistical significance or standard deviation.[18] Yet he purports to opine on the statistical meaning and significance of the following subsets of data:

- SBI mining pool allocation data to opine that SBI's Russian operations outperformed its Rockdale, Texas operations by approximately twice as much, as well as that SBI's Rockdale operations did not perform in accordance with "expected" mining forecast figures;[19]

- Temperature data from College Station, Texas to opine that the miner intake temperature in Rockdale, Texas was too hot approximately 33.8% of the time even though Rockdale is approximately 40 miles away;[20]

- Three months of Lancium data to opine that SBI's miners in Rockdale were not operating properly and accompanied by "unacceptably large failure rate[s]";[21]

- Select photos and videos of an unspecified amount of miners (out of 20,000+) taken by KaboomRacks (*i.e.*, a third-party) in June 2021 to opine that 60% of

---

[13] Fed. R. Civ. Proc. 37(c)(1).
[14] Fed. R. Civ. Proc. 37(b)(2)(A).
[15] "'Statistics' is defined as '[t]he science that deals with the connection, classification, analysis, and interpretation of numerical facts or data, and that, by use of mathematical theories of probability, imposes order and regularity on aggregates of more less disparate elements.'" *Gonzalez v. Conoco, Inc.*, No. CIV. A. H-98-3109, 2000 WL 251744, at *11 (S.D. Tex. Feb. 1, 2000). "Statistical analysis" is defined as "[d]ata-based evidence summarized in mathematical calculations, percentages, ratios, etc." EVIDENCE, Black's Law Dictionary (12th ed. 2024).
[16] Ex. 5 at 178:18-19, 178:21-22
[17] *Id.* at 62:7-9
[18] *E.g.*, Ex. 5 at 178:18-19, 178: 21-22, 257:19-21, 257: 23-25.
[19] *E.g.*, Ex. 3 at 38, 49.
[20] *E.g.*, *id.* at 40-41.
[21] *E.g.*, *id.* at 42-47; Peters Rebuttal Rpt. at 18, attached as Exhibit 6.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**                                                  4

- miners were not operating properly;[22]

- A one-time ping (*i.e.*, a snapshot) of SBI's 20,000+ miners performed by KaboomRacks at a specific time during one day in June 2021 to opine that 35% of SBI's miners in Rockdale had failed;[23] and

- An alleged disassembly and analysis of the physical components of only five out of 20,000+ SBI Rockdale miners to opine that there were no design or manufacturing defects in any of SBI's Rockdale miners or power supply units ("PSUs").[24]

Byers does not possess the requisite scientific, technical, or other specialized knowledge to perform any statistical or quantitative analysis on these data sets and opine on the same. The Court should exclude him from doing so.

Fourth, Byers's opinions fall short of the reliability standards for admissibility under Rule 702 and *Daubert* because they are impermissible legal conclusions or opinions not grounded in reliable methodology, suffer from an analytical gap, or lack foundation:

- Byers did not adhere to any scientifically valid methodology—even going so far as to admit unreliability because he cannot comment on "statistical significance;"[25]

- There were no cryptocurrency mining facility standards existing in 2019 and the traditional information technology ("IT") data center standards that Byers relies upon are inapposite;[26]

- Byers engages in pure speculation as he lacks the following critical data necessary to form any opinion:

  o Whether any cryptocurrency mining facility in the world complied with his "data center standards" in 2019;[27]

  o The actual mining results for SBI's Rockdale and Russian operations and how SBI allocated its cryptocurrency amongst the

---

[22] *E.g.*, *id.* at 49, 54-62.
[23] *E.g.*, *id.* at 35.
[24] *E.g.*, Ex. 3 at 40-47, 49-54, 58, 71.
[25] *Supra* nn.16-24; *e.g.*, Ex. 5 at 228:8-9, 228:11-12
[26] Ex. 5 at 68:8-19, 68:21-69:5, 69:7-20, 269:2-17; K. Rayment Dep. Tr. (Oct. 21, 2025) at 144:14-145:11, attached as Exhibit 7.
[27] *Supra* n.11.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**                                                              5

pool participants;[28]

- o The number of each miner models used in SBI's Rockdale and Russian operations, including how each miner model differed, how many of each model failed, and why a particular miner failed;[29]

- o The actual physical and environmental conditions (*i.e.*, presence and amount of alleged dust, rust, corrosion, and insects and miner intake temperature) during the time SBI's miners operated at Rockdale and Russia;[30]

- o The identification of any alleged environmental condition and length of time required to cause minor damage or performance reduction—as "more complex analysis is necessary" to draw any such conclusions;[31] and

- o Any correlations and the rates of change for any variables that Byers considers (*e.g.*, the difference between ambient air, intake air, and chip temperatures and how a temperature change amongst one of these variables impacts the others);[32] and

- Byers inappropriately attempts to interpret the unambiguous terms of the Hosting Agreement and opine that Whinstone "willfully violated" certain provisions in the Hosting Agreement.[33]

As such, Byers's proffered opinions offer nothing that would assist the trier of fact in resolving key technical questions about how many miners were operating in Rockdale and Russia, what type of miners were operating in Rockdale and Russia, what differences existed between each miner model, how each miner performed, how many miners in Rockdale and Russia failed, which miners failed, why a miner failed, whether a particular miner model failed more than others, the actual environmental and physical environment in Rockdale and Russia that existed during any given day of SBI's mining operations, etc. His opinions are simply subjective belief "dressed up

---

[28] *Supra* nn.9-10.
[29] *E.g.*, Ex. 5 at 92:12-13, 92:15-20, 92:22-93:5, 93:22-25, 94:2, 94:23-25, 95:2-7, 96:19-20, 96:22-23, 98:13-14, 98:16-20, 104:14-15, 104:17-20, 123:20-124:6, 211:24-25, 212:2-9, 212:11-18, 221:21-222:4.
[30] Ex. 5 at 30:13-17, 31:6-8, 162:18-20, 162:22-25.
[31] *See generally* Ex. 3.
[32] Ex. 5 at 264:20-23, 264:25-265:1, 265:25-266:1, 266:3-4, 267:2-5, 267:7-8.
[33] *E.g.*, Ex. 4 at 1, 39-40, 47-48, 75; Ex. 5 at 130:21-131:11, 159:12-25, 267:17-19, 267:21-268:1.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**                                           6

and sanctified as the opinion of an expert."[34] This is precisely the type of litigation-driven opinion *Daubert* and Rule 702 were designed to exclude.

The Court should strike Boltin's and Byers's opinions in their entirety.

## II. LEGAL STANDARD

An expert may only offer opinion testimony if that opinion meets the requirements of reliability and fit.[35] Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."[36]

"The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the [R]ule 702 test."[37] The Supreme Court assigned to trial courts the responsibility of determining whether expert testimony under Rule 702 is "not only relevant, but reliable."[38] In this gate-keeping role, trial courts make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[39]

The *Daubert* opinion lists a number of factors that a trial court may use in determining an

---

[34] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).
[35] Fed. R. Civ. P. 702.
[36] Fed. R. Evid. 702; *Daubert*, 509 U.S. 579; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).
[37] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[38] *Daubert*, 509 U.S. at 589.
[39] *Id.* at 592–93.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**  7

expert's reliability. Trial courts are to consider the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community.[40] These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered.[41]

"[C]onclusions and methodology are not entirely distinct from one another."[42] "[A] reasonable or scientifically valid methodology is nonetheless unreliable where the data used is not sufficiently tied to the facts of the case."[43] "Likewise, 'ideal input data cannot save a methodology that is plagued by logical deficiencies or is otherwise unreasonable.'"[44] Where there is "simply too great an analytical gap between the data and the opinion proffered" it should be excluded.[45]

### III. ARGUMENTS & AUTHORITIES

#### A. SBI's Repeated Rule 26 Violations Justify Exclusion.

The pretrial expert disclosures provided by Rule 26 require a party to disclose the identity of any expert witness it may use at trial.[46] The disclosure must be accompanied by a written report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."[47] The report must contain the elements enumerated in Rule 26(a)(2)(B)(i). The failure to comply with Rule 26(a) is

---

[40] *See id.* at 593–94.
[41] *See Black v. Food Lion,* 171 F.3d 308, 311–12 (5th Cir.1999).
[42] *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).
[43] *Exafer Ltd. v. Microsoft Corp.*, 719 F. Supp. 3d 749, 752 (W.D. Tex. 2024), *aff'd*, No. 1:20-CV-131-RP, 2024 WL 4526045 (W.D. Tex. Apr. 11, 2024).
[44] *Id.*
[45] *Joiner*, 522 U.S. at 146.
[46] *See* Fed. R. Civ. P. 26(a)(2)(A).
[47] Fed. R. Civ. P. 26(a)(2)(B).

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**            8

the disallowance of that information or witness to supply evidence for the case "unless the failure was substantially justified or is harmless."[48] In determining whether the failure was justified or harmless, the Fifth Circuit has considered four factors: (1) the explanation for noncompliance; (2) the prejudice to the other party of allowing the witness; (3) the possibility of curing the prejudice with a continuance; and (4) the importance of the witness's testimony.[49] SBI cannot meet its burden of showing that its failure to properly disclose Boltin and the scope of Byers's substantial and numerous non-disclosed opinions and sources are substantially justified or harmless.

First, SBI has no legitimate excuse for its non-disclosures. The deadline to disclose Boltin as an expert and provide all information required by Rule 26 passed ***nearly eight months ago***. Fifth Am. Sched. Order (May 19, 2025); *E.g.*, *Emerson v. Johnson & Johnson*, No. CV H-17-2708, 2019 WL 764660, at *2 (S.D. Tex. Jan. 22, 2019) (striking expert witnesses when expert designation filed eight months too late was incomplete). Indeed, when SBI served its expert reports on March 28, 2025, it was readily apparent that SBI's experts (including Byers) were relying on unproduced and undisclosed information. This prompted Whinstone to initiate a discovery dispute on April 11, 2025 to compel the production of all undisclosed information relied upon by SBI's experts.[50] The Court compelled SBI to produce, in part, information concerning the "performance . . . and operation of SBI's mining equipment at facilities located in Rockdale or Kyrgyzstan/Russia" and "[t]he source data for any spreadsheet relied upon by SBI's expert witnesses."[51] SBI did not comply.

During Byers's October 30th deposition, Whinstone confirmed that SBI still has not

---

[48] Fed. R. Civ. P. 37(c).
[49] *See Paz. v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 390 (5th Cir. 2009); *Estevis*, 2023 WL 9312081, at *9.
[50] Disc. Dispute (April 11, 2025).
[51] Am. Hr'g Notice (Apr. 15, 2015) (ECF No. 72); Order (Apr. 17, 2025) (ECF No. 74).

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**                                              9

produced the information Byers relies upon.[52] There is no justification for SBI's repeated refusal to comply with this Court's orders and failure to provide information that is "entirely under [SBI's] own control" and the Court should strike the opinions that rely upon this undisclosed data.[53] *See Honey-Love v. U. S.*, 664 Fed. Appx. 358, 361 (5th Cir. 2016) (affirming exclusion of expert witness when he did not specify which medical records he relied upon to form his opinions); *Headwater Research LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-00103-JRG-RSP, 2025 WL 1071353, at *3 (E.D. Tex. Apr. 9, 2025) (striking expert witness for relying on "an undisclosed reference" in support of opinion); *Estevis*, 2023 WL 9312081, at *9 (striking expert witness that "did not detail any literature used to support his testimony in his expert report" and "disclosed the testimony for the first time in his deposition" "but was still unable to provide sources or studies which he relied upon to make his findings."); *In re Pearl Res. LLC*, No. 20-31585, 2023 WL 8642303, at *4 (Bankr. S.D. Tex. Dec. 13, 2023) (finding a Rule 26 violation occurred when expert did not disclose alleged publicly available data used to calculate damages).

Second, SBI's misconduct severely prejudices Whinstone. Without mining or pool allocation data that demonstrates how SBI allocates cryptocurrency amongst the pool participants, Whinstone cannot fully evaluate, test, or rebut Byers's opinions that SBI's Russian miners "outperformed" the Rockdale miners.[54] Similarly, Whinstone is unable to adequately rebut Byers's opinion that most large-scale cryptocurrency miners adhere to his advocated industry standards and his undisclosed "thermal time constraint" opinion because no such information and opinions have been produced or disclosed.[55] SBI essentially demands that the Court and Whinstone accept

---

[52] *Supra* nn.9-11.
[53] *E.g., Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 Fed. Appx. 31, 37 (5th Cir. 2012); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996); *H & A Land Corp. v. City of Kennedale, Tex.*, No. 4:02-CV-458-Y, 2005 WL 8159199, at *4 (N.D. Tex. Mar. 18, 2005).
[54] *Supra* nn.9-10.
[55] *Supra* nn.10-11.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**    10

its assertions without scrutiny. SBI's "trust me" approach to expert methodology and conclusions disregards the standards of reliability and testing required by Rule 702 and *Daubert*.

Moreover, Whinstone did not disclose Boltin as an expert and SBI never produced the "dust" Boltin analyzed, never provided the five miners that Byers disassembled in his lab during December 2024 (where the miners remain today) to Whinstone, nor even permitted or invited Whinstone to observe the disassembly or testing process.[56] Overlooking SBI's blatant disregard for its disclosure obligations would deprive Whinstone of a "reasonable opportunity to prepare for trial." *See, e.g., Aguirre v. S&B Engineers & Constructors, Ltd.*, No. 1:13-CV-384-MAC-KFG, 2014 WL 12906441, at *5 (E.D. Tex. July 28, 2014); *see also e.g.*, *Witt v. Chesapeake Expl., L.L.C.*, No. 2:10-CV-22-TJW, 2011 WL 2790174, at *2 (E.D. Tex. July 14, 2011) ("Allowing Professor Silver to provide testimony at the class certification hearing based on data and analysis that was not disclosed in this expert report would unfairly prejudice Chesapeake, violate the dictates of Rule 26(a)(2)(B), and defeat one of the primary purposes that the expert report serves."); *McGuire v. Cirrus Design*, No. CIV. A. 1:07-CV-683, 2009 WL 383541, at *2 (E.D. Tex. Feb. 13, 2009) (striking expert who failed to disclose source data relied upon to form opinion because defendants' experts "could not verify his calculations or determine whether or not his opinion was based on reliable information").

Third, a continuance will not cure the prejudice caused by SBI's Rule 26 violations. Trial has already been continued multiple times. An additional continuance would only result in "in additional delay and would have unnecessarily increased the expense of defending the lawsuit."[57] Moreover, SBI is guilty of repeated discovery abuse—including by issuing two new, untimely

---

[56] *Id.* at 99:6-10, 102:14-17; Ex. 3 at 5054.
[57] *Barrett*, 95 F.3d at 381.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**     11

expert reports that this Court ultimately struck.[58] Without monetary sanctions to cover Whinstone's additional work, including analyzing any eventually produced data and conducting new depositions, a continuance would fail to deter similar misconduct.[59]

Finally, striking Byers and Boltin's noncompliant opinions will not prevent SBI from presenting its causation theory. There are numerous SBI, Whinstone, and third-party fact witnesses for SBI to try to prove its case. Any impact on SBI's causation case results from its "repeated dilatory behavior . . . render[ing] hollow any claims of unfair prejudice."[60] The Court should strike Boltin's and Byers's opinions that violate Rule 26.

## B. Byers Is Not Qualified to Opine on Meteorological Data or Statistical Analysis or Evidence.

Experience alone can provide a sufficient foundation for expert testimony.[61] "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[62] Nevertheless, a district court does not abuse its discretion by limiting the testimony of an expert to the scope of his expertise—particularly when the expert admits lack of qualifications.[63]

Here, it is undisputed that Byers is not a meteorologist or statistician.[64] Byers himself concedes that he cannot opine on "statistical significance" or "standard deviation."[65] *See e.g.*, *Van*

---

[58] Min. Entry (Sept. 11, 2025).
[59] *Harmon*, 476 Fed. Appx. at 37, 39 (holding district court did not abuse discretion by refusing to grant continuance "to review the late disclosures" because "such a measure 'would neither punish [Appellants] for [their] conduct nor deter similar behavior in the future'").
[60] *Barrett*, 95 F.3d at 381-82.
[61] Fed. R. Evid. 702, Advisory Committee Notes on 2000 Amendments.
[62] *Van Winkle v. Rogers*, 82 F.4th 370, 379 (5th Cir. 2023) (*quoting Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)).
[63] *Id.*
[64] *Supra* nn.16-17.
[65] *Supra* n.18.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**                                        12

*Winkle*, 82 F.4th at 380 ("Allen himself admitted his lack of qualification and expertise. Accordingly, Van Winkle has not shown the district court abused its discretion in limiting Allen's expert testimony."); *Hearts with Haiti, Inc. v. Kendrick*, No. 2:13-CV-00039-JAW, 2015 WL 3936224, at *6 (D. Me. June 26, 2015) (excluding expert witness from testifying on standard deviation analysis when proffered expert only had "basic education in statistics"), *dismissed*, 856 F.3d 1 (1st Cir. 2017); *Arista Records LLC v. Lime Group LLC*, No. 06 CV5936KMW, 2011 WL 1674796, at *5 (S.D.N.Y. May 2, 2011) (holding "expert in technology and computer science" was not qualified to opine on statistical matters); *Reid v. Albemarle Corp.*, 207 F. Supp. 2d 499, 501 (M.D. La. 2001) ("Dr. Daymont does not have sufficient academic credentials to qualify him to express expert opinions on a statistical analysis of whether age was a factor in a reduction in force."). Further underscoring his lack of qualifications, Byers erroneously claimed that the very same meteorological source he used to obtain his weather data from College Station, Texas ***did not include Rockdale, Texas***, a demonstrably false statement.[66]

For these reasons, Byers's opinions should be restricted, and he should be prohibited from offering any opinions that rely on, or pertain to, meteorology or statistical analysis. A witness is properly excluded as an expert for subject matter outside of his expertise.[67] Byers is not qualified to opine on: (1) any statistical or quantitative comparison between SBI's Rockdale and Russian mining operations; (2) any statistical or quantitative comparison of SBI's Rockdale and expected mining operations; (3) historical temperature data (regardless of location) and its impact on miner intake temperature in Rockdale; (4) the statistical meaning and significance of the three months'

---

[66] Ex. 5 at 173:23-176:3; *compare* Ex. 3 at n.47 (https://www.wunderground.com/history/monthly/us/tx/college-station/KCLL/date/2020-8) *with* Rockdale, TX Weather History, Weather Underground, https://www.wunderground.com/history/monthly/us/tx/rockdale/KRCK/date/2020-8 (last visited Nov. 10, 2025).

[67] *E.g.*, *Van Winkle*, 82 F. at 380; *Marimuthu v. Signal Int'l L.L.C.*, No. 1:13-CV-499, 2015 WL 13839250, at *3 (E.D. Tex. June 26, 2015).

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**                                                                 13

worth of Lancium data; (5) the statistical meaning and significance of KaboomRack's photos and videos occurring during one day in June 2021; (6) the statistical meaning and significance of KaboomRack's ping of miners at a specific point in time during one day in June 2021; and (7) the statistical meaning and significance of his years-after-the-fact disassembly of five out of 20,000+ SBI miners from Rockdale.

### C. Byers's Opinions Should Be Excluded Because They Are Unreliable and Irrelevant as Well.

Even if the Court were to forgive SBI's repeated discovery abuses (and the Court should not), Byers's made-for-litigation[68] opinions are ripe for exclusion because they are irrelevant and unreliable.

*1. Byers's opinions are not governed by any valid scientific methodology.*

Byers—who has no prior personal or professional experience in cryptocurrency mining or cryptocurrency mining facility operations or design[69]—did not adhere to a single scientifically valid methodology to form his opinions. As noted above, the Supreme Court in *Daubert* identified four factors to aid the Court in making such a determination, whether a theory or technique: (1) "can be (and has been) tested;" (2) "has been subjected to peer review and publication;" (3) has a "known or potential rate of error;" (4) has "standards" controlling the theory or technique's operation; and (5) has "general acceptance."[70] None of these factors weigh in favor of finding that Byers's opinion is based on a valid scientific methodology.

As for the first factor, Byers has not tested his opinions. And how could he given that he lacks the requisite data to even form those opinions?[71] If Byers cannot test his own theories, it is

---

[68] *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 435 (6th Cir. 2007) ("If the proffered expert testimony is not based on independent research [from litigation], the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'").
[69] Ex. 5 at 55:14-19.
[70] *Daubert*, 509 U.S. at 593-94.
[71] *See, e.g.*, Ex. 5 at 95:13-15, 95:17-21, 95:23-24, 99:6-13, 154:19-24, 155:1-18, 155:20-21.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**  14

impossible for Whinstone to adequately replicate those same theories. As for the remining factors, none of Byers's analyses have been subjected to peer review or publication. There are no known rates of errors or established standards for his method. His work has not been generally accepted by others in his field as evidenced by the fact that Byers did not cite a single treatise, academic publication, peer-reviewed journal, or any other type of authority that supports his opinions. Byers does not offer any analytical framework for his opinions on weather data, SBI mining performance and expected revenue, mining pools, uptime performance, miner composition and differentiation between models, the number of miner failures and cause of such failures, and the application of traditional data center standards to cryptocurrency mining facilities.[72] Byers's "methodology" was simply to cherry-pick and misrepresent incomplete data in an *ad hoc* fashion while cloaking it as "expert opinion."[73] *E.g.*, *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (affirming trial court's exclusion of expert when "he admitted to failing to consider other variables such as education and experience as explanations for any observed discrepancy between promotion rates and to not performing a multiple regression analysis"); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988) (affirming an expert witness's exclusion because he failed to control for known variables, thereby rendering the expert's table "essentially worthless"); *Univ. Computing Co. v. Mgmt. Sci. Am., Inc.*, 810 F.2d 1395, 1399-1400 (5th Cir. 1987) ("[A]s a matter of statistical inference, Newton's conclusion that 'something out of the ordinary' had to have happened cannot be considered credible evidence. . . . Common sense notions of causation do not easily permit us to infer a single cause when many factors appear as possible causes.").

---

[72] *See generally* Ex. 3.
[73] *E.g.*, Ex. 5 at 178:18-22 (admitting that he could not opine on the "statistical significance" of his utilization of a KaboomRacks photo of 100 out of 20,000+ miners from one day in June 2021), 184:13-21 (admitting he did not examine SBI's miners in Houston, Texas to determine the number of each miner models); Ex. 3 at 43 (admitting that the Lancium data set only contained SBI miner data from March 23, 2021 through June 30, 2021 (*i.e.*, only approximately three out of twelve months of SBI's operations) and that data contained 61 million records); Ex. 6 at 18 (noting that Byers only examined 34,157 out of 61 million records (*i.e.*, 0.0056%)).

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**  15

Without Byers identifying a verifiable or recognized methodology to reach his conclusions, SBI cannot demonstrate that his opinions are reliable. Accordingly, the Court should exclude him as an expert due to unreliability issues. *E.g.*, *Hebbler v. Turner*, No. CIV.A. 03-388, 2004 WL 414821, at *4 (E.D. La. Mar. 3, 2004) (Huseman's proffered testimony is not unacceptable because the proposed expert neglected to employ the scientific method; rather, her expert opinion is inadmiss[i]ble because she failed to illustrate a reliable adherence to real estate valuation methodology.")

2. *Byers opines on irrelevant standards.*

As Karen Rayment, one of Whinstone's experts, testified in her deposition: "Bitcoin mining is industrial mining . . . which is very, very different than a data center" [74] and no industry standards for cryptocurrency mining facilities existed at the time Whinstone's Rockdale facility was being designed and constructed in 2019 (and still don't exist to this day).[75] These statements are corroborated by Byers's admissions that there were no large-scale cryptocurrency mining facilities in operation until "probably 2018, give a year or take" and that the cryptocurrency mining facilities at-issue here are a "relatively recent phenomenon."[76]

Despite having no specific experience with cryptocurrency mining facilities or operations[77] or the unique technical and economic considerations inherent to the industry, Byers nevertheless attempts to impose traditional data center standards on Whinstone.[78] These standards are designed for conventional computing environments, such as enterprise IT or cloud service facilities, and do not account for the markedly different operational priorities, environmental tolerances, economic

---

[74] Ex. 7 at 145:9-11.
[75] *Id.* at 144:22-145:11.
[76] Ex. 5 at 69:4-5, 69:7-20.
[77] *Id.* at 68:8-14.
[78] *Id.* 269:2-17.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**   16

models, and hardware lifecycles characteristic of cryptocurrency mining. Byers's reliance on these irrelevant criteria renders his opinions fundamentally unreliable, as they are based on a standard of care that does not exist within, and is not recognized by, the cryptocurrency mining industry. Just as a court would exclude testimony from any expert who applies an incorrect and inapplicable benchmark, Byers's opinions should likewise be excluded because they are irrelevant. *See, e.g., Minton v. Intercontinental Terminals Co., LLC*, 697 F. Supp. 3d 690, 702 (S.D. Tex. 2023) (excluding expert witness from testifying on compliance with a particular OSHA statute because it was irrelevant to the at-issue industry standard of care).

3. *Byers's opinions are rote speculation due to a lack of foundation and an analytical gap.*

"A district court may properly exclude the testimony of an expert if that testimony lacks an adequate foundation."[79] "A court may [also] conclude that there is simply too great an analytical gap between the data and the opinion offered."[80] Both circumstances are present here.

As detailed above, scores of categories of data, which are necessary to for Byers' to form **any** opinion on causation, have not been produced by SBI or are otherwise unavailable: miner performance data, pool allocation methodology and participation, miner model composition and differentiation information, the number of miner failures (including as to by model), various temperature data and rates of change, and contemporaneous data evidence evidencing environmental conditions.[81] Thus, it is impossible for Byers—who admits that he lacks certain data[82]—to perform the analysis necessary to determine causation, thereby rendering any conclusion concerning the same as speculation. The Court should strike him accordingly. *See, e.g., Atl. Specialty Ins. Co. v. Porter, Inc.*, 742 Fed. Appx. 850, 854 (5th Cir. 2018) (affirming exclusion

---

[79] *Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990).
[80] *Joiner*, 522 U.S. at 146.
[81] *Supra* nn.28-33.
[82] *E.g.*, Ex. 5 at 92:12-13, 92:15-16, 94:23-25, 95:2-5.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN**      17

of expert witness when he "did not provide critical data" needed to determine cause of fire); *Burst v. Shell Oil Co.*, 650 Fed. Appx. 170, 173 (5th Cir. 2016) (affirming exclusion of expert witness opining that gasoline (which contains benzene) can cause acute myeloid leukemia ("AML") when expert made "no attempt" to demonstrate how gasoline can cause AML); *Jesus Church of Victoria Tex., Inc. v. Church Mut. Ins. Co.*, 627 F. Supp. 3d 715, 720 (S.D. Tex. 2022) ("Spotts's remaining opinions are unreliable because they are based on insufficient information.").

4. *Byers attempts to offer inadmissible legal opinions.*

It is axiomatic that "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues."[83] Such impermissible opinions include "contract interpretation" on an "unambiguous contract."[84] Yet, despite such prohibitions, Byers inappropriately attempts to opine on what the parties' Hosting Agreement allegedly requires and how Whinstone breached that contract.[85] The Court should preclude him from doing so. *U.S. All. Group, Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 562 (E.D. La. 2022) (excluding expert that tried to opine on alleged material breaches of contract).

## IV. CONCLUSION

Whinstone respectfully requests the Court to strike Boltin's and Byers's reports and preclude them from offering testimony on causation (including matters such as miner performance and presence of alleged environmental conditions) and legal matters (such as contract interpretation and breach) at trial. Whinstone further requests all such other relief to which it is entitled.

---

[83] *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020).
[84] *E.g.*, *Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 6:19-CV-00034-ADA, 2019 WL 7761432, at *2 (W.D. Tex. Aug. 20, 2019) (Albright, J.); *Technip Offshore Contractors v. Williams Field Services*, No. CIV.A.H 04 0096, 2006 WL 581273, at *6 (S.D. Tex. Mar. 7, 2006).
[85] *E.g.*, Ex. 4 at 1, 39-40, 47-48, 75; Ex. 5 at 130:21-131:11, 159:12-25, 267:17-19, 267:21-268:1.

**MOTION TO STRIKE CHARLES BYERS AND RANDY BOLTIN** 18

Respectfully submitted,

FOLEY & LARDNER LLP

By:   */s/ Brandon C. Marx*
      Robert T. Slovak
      Texas Bar No. 24013523
      rslovak@foley.com
      Steven C. Lockhart
      Texas Bar No. 24036981
      slockhart@foley.com
      J. Michael Thomas
      Texas Bar. No. 24066812
      jmthomas@foley.com
      Brandon C. Marx
      Texas Bar No. 24098046
      bmarx@foley.com
      2021 McKinney Avenue, Suite 1600
      Dallas, Texas 75201
      Telephone: (214) 999-3000
      Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

                                            */s/ Brandon C. Marx*
                                            Brandon C. Marx