IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> WHINSTONE US, INC., <br><br> Defendant. | Civil Action No. 6:23-cv-252 |

**DEFENDANT WHINSTONE US, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE THE EXPERT OPINIONS OF MICHAEL SCHULER**

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar. No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US, INC.**

Defendant Whinstone US, Inc. ("Whinstone") files this Reply in Support of Its Motion to Strike the Expert Opinions of Michael Schuler.

## I. INTRODUCTION

This Court is presented with two issues in deciding whether to strike Schuler as an expert witness:

1) Is Schuler's information technology asset dispositioning ("ITAD") work experience—an industry in which Schuler admits that "nobody" is "very familiar with cryptomining equipment" (Ex. 1 at 48:16-20)—sufficient to qualify him to offer opinions as to the resale value of SBI's cryptocurrency miners?

2) Is that ITAD work experience—Schuler's sole basis for his opinion—sufficient to render his opinions relevant and reliable such that they will be helpful to a jury and not consist of speculation due to the lack of any methodology?

The Court need look no further than Schuler's admissions that his opinion that "no reasonable buyer would purchase these miners" (Ex. 2 at 3) is "subjective" (Ex. 1 at 167:5-7, 168:9-24), is incapable of being tested (Ex. 1 at 168:25-169:17), and derives from nothing specific at all—admitting that he did not speak to a single industry participant about the miners (Ex. 1 at 168:15-169:17). Summarized, Schuler's opinion is that he believes that his contacts in the ITAD industry, who may or may not have ever purchased crypto miners, would not likely purchase crypto miners—although he never even bothered to ask. SBI has not, and cannot, explain how this untested and speculative conjecture will assist the trier of fact. Courts routinely strike such experts that "br[ing] to court little more than his credentials and a subjective opinion." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421 (5th Cir. 1987). This Court should do so as well.

A.  **Schuler's ITAD Expertise Does Not Qualify Him to Opine in this Case.** [1]

SBI doubles-down on Schuler's ITAD experience. *E.g.*, Resp. Mot. Strike (Nov. 14, 2025) at 4-7, 10-12 (ECF No. 150). That experience is irrelevant to the issues and subject matter of this case. As Schuler admits, few (if anyone) in the ITAD industry has any experience or knowledge of cryptocurrency mining equipment—Schuler does not. *E.g.*, Ex. 1 at 48:16-20. Instead, Schuler simply knows traditional information technology equipment—not cryptocurrency mining equipment. Ex. 1 at 28:18. Schuler does not have the appropriate expertise to opine on the value of SBI's A10 miners (or any cryptocurrency miners).[2]

In fact, Schuler admitted—during the **one** time he encountered cryptocurrency prior to this case—that "less than 1 percent" of the industry is involved with that type of equipment. Ex.1 31:8-19. During that "odd situation" nearly ten years ago, Schuler was unsurprisingly unable to resell approximately 400 GPU miners (which were over five years old and a "niche product") in a week. Ex. 1 at 31:8-32:20, 35:17-23, 40:8-11, 40:23. If that were not enough, Schuler testified:

> "Q. Okay. Was that the only transaction—or was that the only time at HiTech that you encountered cryptomining equipment?
>
> A.   ***That is the only time in my entire career*** I've come across crypto being offered in the secondary market with all the different companies I've worked for.

---

[1] SBI's complains that "Whinstone relies on inapplicable cases applying the strict requirements in the medical community for providing a diagnosis or causation opinion." Resp. Mot. Strike (Nov. 14, 2025) at 12-13. In so doing, SBI meets itself coming and going by arguing Whinstone's expert Richard Peters should be disqualified because the "Fifth Circuit has consistently applied a stricter requirement for technical opinions, requiring a closer match between the subject matter of the testimony and the expert's qualifications." *Id*. at 8 n.1. Yet, Richard Peters has an exponential amount of more specific experience with cryptocurrency mining equipment than any of SBI's experts.

[2] SBI cannot credibly complain that "Whinstone urges this Court to impose an unduly restrictive definition of expertise." Resp. Mot. Strike (Nov. 14, 2025) at 1. Whinstone does not, as SBI claims, take the position that only "ASIC crypto-mining equipment appraisers" are qualified to be an expert. *Id*. Whinstone has clearly stated that SBI's experts need **some** sort of general cryptocurrency mining equipment experience within the past ten years or with the specific mining equipment at-issue to qualify as an expert—which they do not. *See generally* Mot. Strike (Oct. 31, 2025) at 1 ("His deposition testimony reveals that he possesses no meaningful familiarity—let alone expertise—with cryptocurrency mining hardware ***in general*** or the specific Avalon Miner A10 series ('A10') and Bitmain Antminer S-9 ('S9') cryptocurrency miners at-issue in this case.") (emphasis added).

**REPLY IN SUPPORT OF MOTION TO STRIKE MICHAEL SCHULER**                           3

> Q. Okay. You said offered in the secondary market. Was there other times that you encountered cryptocurrency equipment?
>
> A. **No, I have not come across any situations**. I'm part of about five major trading networks, the—all the industry associations, all the major organizations that deal in ITAD, and **we have never come across much in the way of available miner equipment during the time that I was operating**."

Ex. 1 at 46:20-47:11 (emphasis added). And further, as SBI itself notes, Schuler has no idea if the "less than 1 percent" are among the universe of people he opines would hypothetically not have purchased this equipment. Resp. Mot. Strike (Nov. 14, 2025) at 11 ("[T]he brokers he did business with likely did some transactions involving crypto miners."). Shuler's rote speculation that people might not purchase crypto miners is precisely the kind of opinions courts routinely exclude. Therefore, the Court "should refuse" to allow Schuler to testify on matters concerning cryptocurrency mining equipment. *E.g., Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (holding recognized expert in fire reconstruction was not qualified to opine on accident reconstruction when he had "never taught accident reconstruction courses, never experimented or conducted studies in the field, and never published anything on the subject" and testimony revealed he had "no greater [expertise] than that of any other individual with a general scientific background").

**B.     Schuler's Opinions Are Pure Speculation.**

SBI vainly argues that Whinstone's motion to strike goes to weight and not admissibility. Resp. Mot. Strike (Nov. 14, 2025) at 1, 12-17. Here, Schuler does not "fail[] to strictly follow" a particular set of uniform standards—he fails to utilize any standard at all. *Id.* at 15. While SBI claims Schuler performed an "appraisal" (which is governed by widely known uniform standards), Schuler fails to reference any appraisal standards in his report, and SBI identifies none in its response. *See generally* Ex. 2; Resp. Mot. Strike (Nov. 14, 2025). Instead, SBI suggests that Schuler's experience the ITAD industry establishes a standard, contradicting itself at the same

**REPLY IN SUPPORT OF MOTION TO STRIKE MICHAEL SCHULER**                                              4

time. Resp. Mot. Strike (Nov. 14, 2025) at 11 ("Resellers in the secondary market **rarely** see fleets of mining equipment because most equipment remains deployed beyond its useful life.") (emphasis added). Worse, Schuler admits that he failed to speak to any person or entity about the miners—not even those dealers that SBI speculated "likely do some transactions involving crypto miners." Resp. Mot. Strike (Nov. 14, 2025) at 11. Equally problematic, he made no attempt to power the miners on to see if they worked and could make a profit. Mot. Strike (Oct. 31, 2025) at 7, 11, 15 (ECF No. 125). Schuler—who is simply a participant in the ITAD industry and involved with certain industry associations—is speculating about what he **thinks** might happen based on his non-existent relevant work experience with individuals and entities that are unfamiliar with cryptocurrency mining equipment. Ex. 1 at 47:11. In short, Schuler admits he employed no methodology:

> "Q. What did you do to test the veracity of your opinions in this case?
>
> . . .
>
> A. Yeah, I don't know how to answer that honestly. My opinion is based on four decades of experience and selling in the secondary market. I don't need to consult others to understand the dynamics of our secondary market.
>
> Q. So is the answer nothing? . . . Just because you said so, is that my understanding?
>
> . . .
>
> A. Yeah, I was not, one, allowed to talk about this to others and two, I didn't need to based on my decades of experience in selling into the secondary market IT equipment."

Ex. 1 at 158:9-10 158:12-17, 158:19-20, 158:23-159:1. Schuler's statements reveal that his opinions are nothing more than his "subjective" belief. Ex. 1 at 167:5-7, 168:9-24. Put differently, Schuler's opinions are based on nothing more than "because I said so." That is pure *ipse dixit*. The Court should exclude Schuler accordingly. *E.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)

**REPLY IN SUPPORT OF MOTION TO STRIKE MICHAEL SCHULER** 5

(affirming district court's exclusion of expert witness when there was "simply too great an analytical gap between the data and the opinion proffered").

## II. CONCLUSION

Schuler is not qualified to opine on the matters offered herein and his opinions are nothing more than speculation. His opinions will not assist the trier of fact and instead risk misleading the jury with unfounded conclusions cloaked in the guise of "expertise." For these reasons, the Court should strike his testimony in its entirety.

Respectfully Submitted,

FOLEY & LARDNER LLP

By: */s/Robert T. Slovak*
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Brandon C. Marx*
Brandon C. Marx

**REPLY IN SUPPORT OF MOTION TO STRIKE MICHAEL SCHULER** 6