IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD.,<br><br>       Plaintiff,<br><br>  v.<br><br>WHINSTONE US, INC.,<br><br>       Defendant. | Civil Action No. 6:23-cv-252 |

## DEFENDANT WHINSTONE US, INC.'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US, INC.**

4910-0789-4139.3

# TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT ................................................................................1

II.    UNDISPUTED MATERIAL FACTS ...................................................................2

   **A.**  SBI's claims are limited by the Hosting Agreement's notice provision, damages cap, and integration clauses................................................................................................ 2

   **B.**  SBI failed to provide timely, written notice of its claims ...................................... 3

III.   ARGUMENTS & AUTHORITIES ......................................................................6

   **A.**  SBI's failure to comply with the Hosting Agreement's express notice requirement bars its claims in counts I-III as a matter of law ............................................................ 6

   **B.**  The economic loss rule bars SBI's fraud claims and no genuine dispute exists as to SBI's lack of justifiable reliance or resulting damages........................................................... 10

      1.   The economic loss rule precludes SBI's fraud claims as a matter of law.................10

      2.   SBI's fraud claims fail for lack of reliance....................................................13

   **C.**  SBI's cannot recover its claimed damages, a material element of every claim................. 14

      1.   SBI's alleged lost profits are unrecoverable as a matter of law.................................15

      2.   SBI equipment damages theory ignores the contractual limitations on damages.......17

      3.   SBI offers no damages theory for its "out-of-pocket" damages ...............................18

      4.   Alternatively, SBI cannot recover in excess of the Hosting Agreement's damages cap ..................................................................................................................18

      5.   Exemplary damages are improper .................................................................19

CONCLUSION..................................................................................................................19

CERTIFICATE OF SERVICE ........................................................................................20

## TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Advanced Seismic Tech., Inc. v. M/V Fortitude*,
  326 F. Supp. 3d 330 (S.D. Tex 2018) .......................................................... 8

*Allgood v. R.J. Reynolds Tobacco Co.*,
  80 F.3d 168 (5th Cir. 1996) .................................................................... 13

*Am. Akaushi Ass'n, Inc. v. Twinwood Cattle Co., Inc.*,
  No. 14-21-00701-CV, 2025 WL 450750 .................................................... 14

*AME & FE Investments, Ltd. v. NEC Networks, LLC*,
  No. 04-17-00332-CV, 2019 WL 286121 (Tex. App.—San Antonio Jan. 23, 2019, no pet.)... 16

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
  945 S.W.2d 812 (Tex. 1997)................................................................ 2, 18

*Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*,
  997 S.W.2d 803 (Tex. App.—Dallas 1999)............................................... 17

*Assoc. Indem. Corp. v. CAT Contracting, Inc.*,
  964 S.W.2d 276 (Tex.1998)................................................................. 6, 7

*Baylor Univ. v. Sonnichsen*,
  221 S.W.3d 632 (Tex. 2007)................................................................. 15

*Cajun Constructors, Inc. v. Velasco Drainage Dist.*,
  380 S.W.3d 819 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) .................... 6

*CBE Group , Inc. v. Lexington Law Firm*,
  993 F.3d 346 (5th Cir. 2021) ................................................................ 13

*Chaparral Tex., L.P. v. W. Dale Morris, Inc.*,
  No. CIV.A. H-06-2468, 2007 WL 2455295 (S.D. Tex. Aug. 24, 2007) ................... 10

*Chapman Custom Homes, Inc. v. Dallas Plumbing co.*,
  445 S.W.3d 716 (Tex. 2014)................................................................. 13

*Crawford v. Ace Sign, Inc.*,
  917 S.W.2d 12 (Tex. 1996)............................................................. 11, 12

*Eagle Railcar Services, L.P. v. Matheson Tri-Gas, Inc.*,
  No. 12-22-00103-CV, 2023 WL 4681162 (Tex. App. Tyler, July 21, 2023) ........................... 7

*Edgar v. Gen. Elec. Co.*,
  No. CIV.A. 3:00-CV-2729D, 2002 WL 318331 (N.D. Tex. Feb. 27, 2002) ........................... 19

*FaulknerUSA, LP v. Alaron Supply Co., Inc.*,
  322 S.W.3d 357 (Tex. App.—El Paso 2010) ........................................................................... 6

*Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*,
  960 S.W.2d 41 (Tex. 1998) ..................................................................................................... 15

*Garcia v. Universal Mortg. Corp.*,
  No. 3:12–CV–2460, 2013 WL 1858195 (N.D. Tex. May 3, 2012) ......................................... 11

*Glob. Octanes Texas, L.P., v. BP Expl. & Oil Inc.*,
  154 F.3d 518 (5th Cir. 1998) .................................................................................................. 17

*Ibe v. Jones*,
  836 F.3d 516 (5th Cir. 2016) ............................................................................................... 1, 11

*James Constr. Grp., LLC v. Westlake Chem. Corp.*,
  650 S.W.3d 392 (Tex. 2022) ..................................................................................................... 6

*Kinsel v. Lindsey*,
  526 S.W.3d 411 (Tex. 2017) ................................................................................................... 15

*Lamar Homes, Inc. v. Mid–Continent Cas. Co.*,
  242 S.W.3d 1 (Tex.2007) ....................................................................................................... 10

*Lewis v. Bank of Am. NA*,
  343 F.3d 540 (5th Cir. 2003) .................................................................................................. 13

*Metador Petroleum Corp. v. St. Paul Surplus Lines*,
  174 F.3d 653 (5th Cir. 1999) .................................................................................................... 6

*Miga v. Jensen*,
  96 S.W.3d 207 (Tex. 2002) ....................................................................................................... 2

*Patel v. Warwick Constr., Inc.*,
  No. 01-20-00208-CV, 2022 WL 175359 (Tex. App.—Houston [1st Dist.] Jan. 20, 2022, no
  pet.) ......................................................................................................................................... 13

*Payne v. Wells Fargo Bank Nat. Ass'n*,
  637 F. App'x 833 (5th Cir. 2016) ...................................................................................... 10, 11

*RD Mgmt., Inc. v. Third Coast Ins. Co.*,
    No. SA-24-CV-00711-XR, 2025 WL 1699951 (W.D. Tex. June 11, 2025) ............................ 8

*Roehrs v. Conesys, Inc.*,
    332 Fed. Appx. 184 (5th Cir. 2009) ........................................................................... 15

*Sinclair Oil Corp. v. Heights Energy Corp.*,
    No. 4:05-CV-825-Y, 2007 WL 9718223 (N.D. Tex. Nov. 13, 2007) ...................................... 16

*Starr Indem. & Liability Co. v. SGS Petroleum Serv. Corp.*,
    719 F.3d 700 (5th Cir. 2013) ................................................................................. 6, 8

*Switzer v. State Farm Lloyds*,
    642 F. Supp. 3d 568 (W.D. Tex. 2022) ........................................................................ 19

*Vallance & Co. v. Anda,*
    595 S.W.2d 587 (Tex. Civ. App.—San Antonio 1980, no writ) .............................................. 17

*Woodyard v. Hunt*,
    695 S.W.2d 730 (Tex. App.—Houston [1st Dist.] 1985, no writ) ........................................... 15

*YNM Corp. v. Mgmt. Sols., Inc.*,
    No. 05-10-01279-CV, 2022 WL 1222712 (Tex. App.—Dallas Apr. 26, 2022, no pet.) .......... 13

**Statutes**

Tex. Bus. & Comm. Code § 2.719(a)(1) (West 1994) ..................................................... 17

V.T.C.A., Bus. & C. § 2.719(c) ............................................................................... 17

**Rules**

Fed. R. Evid. 201 ............................................................................................. 2

Federal Rule of Civil Procedure 56 ........................................................................... 1

Pursuant to Federal Rule of Civil Procedure 56, Defendant Whinstone US, Inc. ("Whinstone") files this Motion for Partial Summary Judgment and Brief in Support on Counts I-III asserted by Plaintiff SBI Crypto Co., LTD. ("SBI") in its Amended Complaint (the "Amended Complaint", ECF No. 11) and states as follows.

# I. SUMMARY OF ARGUMENT

Texas law and the October 24, 2019 hosting services agreement (the "Hosting Agreement," ECF No. 10) preclude SBI's claims because SBI ignored a core condition precedent to any recovery: the Hosting Agreement required SBI to "give[] Whinstone written notice of the claim within twelve months of becoming aware of the circumstances giving rise to the claim."[1] Absent such notice, "Whinstone shall not be liable for ___any claim arising under___ this [Hosting] Agreement."[2] SBI has forfeited the right to pursue Counts I-III, and this Court should grant summary judgment.

Nor can SBI's fraud claims survive. First, every misrepresentation and omission SBI alleges arises directly from duties contained in the Hosting Agreement.[3] In fact, the damages SBI seeks for fraud are identical to those sought for breach of contract;[4] but the economic loss rule precludes SBI from repackaging its claims as torts.[5] Second, SBI has not established (and cannot) justifiable reliance.[6] SBI's only reliance "evidence" is that it entered into and performed under the

---

[1] Ex. 1, Hosting Agmt. at § 8.11.
[2] *Id.* (emphasis added).
[3] *Infra* Part III.B.1.
[4] *E.g.*, Ex. 2, Resp. SBI Corp. Rep. Dep. Topic No. 9 ("SBI[] has designated Dr. Randall Valentine and Matthew Schuler as experts that will offer opinions and testimony as to SBI[]'s damages."); Ex. 3, Am. Resp. Interrog. at No. 6 (identifying same categories of damages for each claim and stating "SBIC incorporates by reference herein the expert reports of Dr. Randall Valentine and Michael Schuler for their calculations on SBIC's damages."); Ex. 4, Valentine Rpt. (failing to allocate damages based upon cause of action); Ex. 5, Schuler Rpt. (Aug. 8, 2025) (same); Ex. 6, R. Valentine Dep. Tr. (Oct. 24, 2025) at 157:25-158:3, 158:5-9, 158:16-24, 159:1-2.
[5] *See, e.g.*, *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016).
[6] *E.g.*, Ex. 7, J. Tanemori Dep. Tr. (Aug. 15, 2024) at 114:11-19, 133:6-18, 134:20-22, 134:24-135:9, 135:11.

**MOTION FOR SUMMARY JUDGMENT**
4910-0789-4139.3

Hosting Agreement and chose not to file a warranty claim.[7] Such conduct does not meet the legal standard for reliance, particularly where warranty damages are absent from SBI's damages model.[8]

Flawed damages theories further undermine SBI's claims. Its lost-profits theory rests on speculative valuations tied to Bitcoin's price at trial rather than the legally required breach date.[9] Under Texas law, "the rule has long been that [breach of] contract damages are measured ***at the time of breach***, and not by the bargained-for goods' market gain as of the time of trial."[10] The same is true for fraud.[11] Additionally, SBI's equipment damage claim disregards the Hosting Agreement's unambiguous damages cap. It offers no legally sufficient evidence or expert analysis for its alleged out-of-pocket costs. And its claim for exemplary damages collapses with its barred fraud theory and fails to meet the heightened evidentiary standard. At this stage, SBI cannot cure these fatal defects, and summary judgment should be entered on all of its damages claims—or, at minimum, any recovery must be strictly limited to the contractually defined formula and cap.[12]

## II. UNDISPUTED MATERIAL FACTS

### A.    SBI's claims are limited by the Hosting Agreement's notice provision, damages cap, and integration clauses.

Whinstone and SBI agreed to co-locate SBI's cryptocurrency mining servers ("Miners") to mine cryptocurrency at Whinstone's Rockdale, Texas facility ("Facility")[13] subject to express conditions and limitations. SBI agreed that Whinstone would not be liable for any claim unless

---

[7] Ex. 3, Am. Resp. Interrog. at No. 13 (identifying its alleged acts of reliance in response to Whinstone's alleged misrepresentations and omissions regarding the Rockdale, Texas facility).

[8] *Supra* n.4.

[9] *See, e.g.*, Resp. Emerg. Mot. Strike (Aug. 4, 2025) at 6-7 ("SBI is entitled to the appreciation of bitcoin at the time of trial, and Dr. Valentine stated in his initial report he would update his valuation based on the price of bitcoin at the time of trial.") (ECF No. 91); Ex. 4 at 1 n.2 ("The value of one Bitcoin as of March 24, 2025 was $82,605.79. Should this matter go to trial, I intend to use the price of Bitcoin at the date of trial to calculate the lost profit damages SBI suffered."). Whinstone requests that the Court take judicial notice of SBI's filings with the Court. Fed. R. Evid. 201.

[10] *E.g.*, *Miga v. Jensen*, 96 S.W.3d 207, 214 (Tex. 2002).

[11] *See, e.g.*, *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997) (holding fraud damages are "determined at the time of sale").

[12] Ex. 1 at §§ 8.6-.7.

[13] Ex. 1 at 1.

SBI provided written notice within twelve months of learning of the circumstances giving rise to the claim.[14]

Additionally, SBI—absent "fraud or fraudulent misrepresentation"[15]—agreed that Whinstone's liability would be limited to: "(1) the aggregate Charges[[16]] payable by the [SBI] to Whinstone in the twelve-month period immediately prior to the date on which the cause of action first arose or, if the Agreement had been in force for less than twelve (12) months at that date, the annualized amount of the Charges payable by that date; and (ii) United States dollars two hundred fifty thousand only ($250,000)."[17] And, eliminating any ambiguity, SBI agreed that the Hosting Agreement "constitutes the entire understanding between the parties concerning the subject matter of the Agreement and supersedes any previous agreement…."[18]

## B.    SBI failed to provide timely, written notice of its claims.

On April 5, 2023, SBI sued Whinstone[19] and claimed that it timely provided Whinstone with "written notice of breaches (and misrepresentations) on May 27, 2022 and June 3, 2022, respectively."[20] This is demonstrably false. The May 27, 2022 email (the "May 27 Email") merely states that "details of [SBI's] claim" would be forthcoming.[21] It was not until June 3, 2022 (the "Notice") that SBI provided Whinstone with actual written notice that details SBI's alleged claims and the bases for them.[22] For the first time, SBI complained of six alleged misrepresentations and twenty-nine purported breaches of contract, and SBI demanded over $44 million in equipment

---

[14] *Id.* at § 8.11.
[15] *Id.* at § 8.5.
[16] The Hosting Agreement does not define the term "Charges." *See generally* Ex. 1.
[17] *Id.* at §§ 8.6-.7.
[18] *Id.* at §§ 17.1-.3.
[19] *See generally* Compl. (Apr. 5, 2023) (ECF No. 1).
[20] Am. Compl. (Jul. 7, 2023) at ¶ 51.
[21] Ex. 8, Email (May 27, 2022).
[22] Ex. 9, Email (Jun. 3, 2022).

replacement costs and $17 million in lost profits.[23]

When Whinstone asked SBI to identify the date it "first became aware of the circumstances giving rise to each" of its claims,[24] SBI stated, in part, it "became of aware of Whinstone's failure to meet the December 15, 2019 RFU date on the passing of December 15, 2019."[25] Accordingly, SBI sent the Notice more than twelve months after it learned of its claims.[26]

While SBI then claims it became aware of the circumstances giving rise to the breaches described in the Notice on June 10, 2021, SBI's internal correspondence tell as different story. No later than May 30, 2021, Carson Smith, SBI's former Chief Executive Officer, circulated a color-coded mark-up of the Hosting Agreement that identified each of Whinstone's (and SBI's) alleged breaches.[27] Meaning, SBI knew of its claims (at the very latest) on May 30, 2021, more than twelve months before the Notice. Given that backdrop, Smith unsurprisingly conceded that SBI could "lose" some of its claims "due to not claiming within 12 months of becoming aware" and Jonathan Tanemori, SBI's former Chief Financial Officer, admitted that SBI's litigation position was "weak."[28]

As for the date SBI "first became aware of the circumstances giving rise" to each alleged fraudulent act in the Notice, SBI again claims that it "became aware of the misrepresentations related to the environmental conditions in the Rockdale Facility on June 10, 2021."[29] But, as

---

[23] *Id.* The complaints in the Notice largely mirror the allegations in SBI's Amended Complaint concerning the sufficiency of Whinstone's services and the operating environment at the Facility (*e.g.*, dust, overheating). *Compare id. with* Am. Compl. (Jul. 7, 2023) at ¶¶ 32-49. Notably, SBI no longer claims that these damages numbers are accurate—another notice flaw.

[24] Ex. 3, Am. Interrog. Resp. at Nos. 2-5.

[25] *Id.* at No. 2.

[26] In an effort to salvage their claims, SBI points to a number of emails that it purports provide notice. Each of these emails, however, do not constitute notice for the reasons argued, *infra*, in Part III.A.

[27] Ex. 10, Email (May 30, 2021); Ex. 7 at 275:19-276:1 ("Do you understand that the highlighted sections in yellow purport to be breaches by Whinstone? A. My understanding would be that this is what Carson—not necessarily a lawyer per se, was looking at considering, and marking up where he thought there were inconsistencies between what was delivered and what was in contract.").

[28] Ex. 10 at 1; Ex. 11, Email (Jun. 3, 2021) at 2.

[29] Ex. 3, Am. Resp. Interrog. at Nos. 3 and 5.

detailed in Smith's May 30, 2021 email, SBI knew of those alleged conditions more than twelve months before sending the Notice.[30] SBI further states that it "became aware of misrepresentations related to the Rockdale Hosting Service Agreement shortly after Riot Blockchain, Inc. filed its Form 8-K with the United States Securities and Exchange Commission on May 26, 2021."[31] By its own judicial admissions, SBI was aware of the alleged misrepresentations and breaches at issue more than twelve months before sending the Notice.[32] SBI knew as early as June 2020 of alleged delays and operational problems at Whinstone's facility, including purported the failure to secure adequate power contracts (Misrep. Nos. 5-6; Breach Nos. 2 and 14),[33] the alleged absence of required certifications and inspections (Misrep. No. 4),[34] the alleged recurring unreported power outages (Breach Nos. 12 and 13)[35] the alleged failure to regularly provide monthly invoices and power meter data (Breach Nos. 7 and 8),[36] and the alleged inadequacy of the "Licensed Areas," such as failing to place SBI's mining equipment in two separate buildings, provide adequate rack systems, and supply an evaporative cooling system to prevent overheating (Misrep. Nos. 1-2, 4; Breach Nos. 1, 3-6, 9-10).[37] SBI also knew by late summer 2020 about other alleged operational deficiencies, such as equipment not running at full capacity (Misrep. Nos. 1-2, 4 and Breach Nos. 3-6, 9-11, 13),[38] overheating and poor data center conditions, and disputed issues with power supply units (PSUs) (Misrep. Nos. 1-2, 4 and Breach Nos. 3-6, 9-10).[39] Taken together, these

---

[30] *E.g.*, Ex. 10 at SBIC0000073-74 (Smith highlighting contractual obligations related to air temperature, filter utilization, and prevention of mixture of hot and cold exhaust air, dust, insects, corrosion, precipitation, and condensation), SBIC0000084 (highlighting contractual provision requiring Whinstone to provide "Services in a professional manner consistent with industry standards").

[31] Ex. 3 Am. Resp. Interrog. at Nos. 3 and 5.

[32] *See* Ex. 24, Admission Chart.

[33] Am. Compl. (Jul. 7, 2023) at ¶¶ 23, 27, 48-49.

[34] *Id.* at ¶¶ 28-29, 48.

[35] *Id.* at ¶¶ 31, 49.

[36] *Id.* at ¶ 31 n.1, 49.

[37] *Id.* at ¶¶ 33, 36-39, 48-49.

[38] *Id.* at ¶ 32, 48-49.

[39] *Id.* at ¶ 32, 48-49.

admissions show that SBI was aware of the alleged issues over twelve months prior to serving the Notice.

### III. ARGUMENTS & AUTHORITIES

**A.    SBI's failure to comply with the Hosting Agreement's express notice requirement bars its claims in counts I-III as a matter of law.[40]**

To survive summary judgment, the plaintiff must present evidence showing that all conditions precedent have been satisfied or excused. *FaulknerUSA, LP v. Alaron Supply Co., Inc.*, 322 S.W.3d 357, 360-61 (Tex. App.—El Paso 2010). "A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied." *Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 826 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Assoc. Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 283 (Tex.1998)).

A contractual provision that bars a claim unless there is prior notice is a condition precedent to bringing suit. *Id.* at 825–26. "To construe [such] clause[s] as anything other than a condition precedent would be to ignore its plain language." *Id.* "[S]ubstantial compliance is the appropriate standard when evaluating whether a party complied with a contractual notice provision." *James Constr. Grp., LLC v. Westlake Chem. Corp.,* 650 S.W.3d 392, 405 (Tex. 2022). "[S]ubstantial compliance with a condition precedent requiring written notice may not be achieved without a writing in some form." *Id.* at 405. An express notice provision that prescribes a specific deadline—rather than merely stating that time is of the essence—embodies a bargained-for exchange between sophisticated parties. *See Starr Indem. & Liability Co. v. SGS Petroleum Serv. Corp.*, 719 F.3d 700, 704-05 (5th Cir. 2013); *see also, Metador Petroleum Corp. v. St. Paul Surplus Lines*, 174 F.3d 653, 658-59 (5th Cir. 1999). Courts enforce such provisions according to their terms. *Id.*

---

[40] Since the Hosting Agreement's notice provision is for "any claim arising under this Agreement," SBI must give notice for each and every one of its specific breach of contract and fraud claims.

Here, SBI cannot establish that it provided notice of its claim within a year of discovering each one of its claims. SBI agreed that Whinstone would not be liable for ***any*** claims arising under the contract unless SBI provided Whinstone "written notice of the claim within twelve months of becoming aware of the circumstances giving rise to the claim."[41] SBI reliance on the May 27 Email and the Notice[42] is misplaced—neither satisfies the contractual notice requirement.

First, the May 27 Email[43] cannot, as a matter of law, satisfy the Hosting Agreement's notice requirement because it contained no substantive claim information—it merely states that SBI would send formal notice at a later date.[44] *Eagle Railcar Services, L.P. v. Matheson Tri-Gas, Inc.*, No. 12-22-00103-CV, 2023 WL 4681162 (Tex. App. Tyler, July 21, 2023) is instructive. There, the court held that several purported notices failed to "substantially comply" with the contract's notice provisions because they did not actually identify the applicable products, charges, amounts, or accounts to which they applied. *Id.* at *8-9. Notices that referenced fees or surcharges not contained in the contracts, or that omitted essential information such as the amount of the charge, were deemed legally insufficient to constitute contractual notice. *Id.* The court drew a clear distinction between substantial performance in construction contracts and the strict compliance required when a contract contains an express written notice condition. *Id.* Like the defective notices in *Eagle Railcar*, SBI's May 27 Email failed to provide the essential information the Hosting Agreement requires—it identified no specific claim, breach, or facts forming the basis for liability, and merely stated that a formal notice would be forthcoming.[45] The only fact provided: SBI intends

---

[41] Ex. 1 at § 8.11; *Associated Indem.*, 964 S.W.2d at 283.
[42] Am. Compl. (Jul. 7, 2023) at ¶ 51; Exs. 8-9.
[43] Ex. 8.
[44] NOTICE, Black's Law Dictionary (12th ed. 2024) (Legal notification required by law or agreement, or imparted by operation of law as a result of some fact . . . A person has notice of a fact or condition if that person (1) has actual knowledge of it; (2) has received information about it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording).
[45] Ex. 8.

**MOTION FOR SUMMARY JUDGMENT**                                    P a g e | **7**
4910-0789-4139.3

to submit a claim for which "details [will be sent] shortly."[46] As a matter of law, this notice fails.

Second, the evidence conclusively demonstrates that the Notice was served more than a year after SBI became aware of the circumstances giving rise to its claims.[47] Courts rigorously uphold notice provisions with specified time limits for informing the opposing party of a claim where—as here—such provisions are deemed "an essential part of the parties' negotiated agreement." *RD Mgmt., Inc. v. Third Coast Ins. Co.*, No. SA-24-CV-00711-XR, 2025 WL 1699951, at *5 (W.D. Tex. June 11, 2025) (granting summary judgment when claimant did not provide notice of claim within one year). The Fifth Circuit explained that a notice provision is an essential part of the bargained-for exchange if it is "a specific provision negotiated by two sophisticated commercial parties…." *Starr Indem.*, 719 F.3d at 703; *see also Advanced Seismic Tech., Inc. v. M/V Fortitude*, 326 F. Supp. 3d 330, 336 n.7 (S.D. Tex 2018).

Moreover, a cursory review of the other purported "notices" that SBI identified in response to interrogatories does not constitute notice:[48]

- An August 10, 2020, email chain (SBIC0001897) discussing hosting agreement amendments, not alleged claims under the agreements (Ex. 12);

- An August 11, 2020, email chain (WHIN_SBI_0005097) discussing issues with SBI's PSUs, but again does not provide notice of claims (Ex. 13);

- An October 29, 2020, email chain (SBIC0000258) detailing the parties' resolution on invoicing and power consumption (Ex. 14);

- An October 21, 2020, email chain (WHIN_SBI_0004979) discussing a miner power outage ***caused by SBI*** (Ex. 15);

- The May 30, 2021, ***SBI internal email*** (SBIC0000068) discussing the parties' various Hosting Agreement breaches as detailed by Smith's color-coding, which was never sent to Whinstone (Ex. 10);

- A June 22, 2022, summary (SBIC0003777) prepared by KaboomRacks and

---

[46] *Id.*
[47] *Compare* Ex. 9 with Ex. 10.
[48] Ex. 3, Am. Interrog. Resp. at No. 2.

**MOTION FOR SUMMARY JUDGMENT**                                    **P a g e | 8**
4910-0789-4139.3

provided to SBI concerning KaboomRacks' June 2021 visit, which was never
sent to Whinstone (Ex. 16);

- The June 3, 2021, **SBI internal email** (SBIC0003254) discussing SBI's
  various litigation, settlement, relocation, and miner sale options which was
  never sent to Whinstone (Ex. 11); and

- A May 27, 2022, email (WHIN_SBI_0006999) to the May 27 Email, which is
  discussed above (Ex. 17).

Here, the Hosting Agreement was negotiated, between two sophisticated parties, drafted
with the assistance of legal counsel,[49] and expressly includes a one-year notice requirement.[50]
Despite the Hosting Agreement's unambiguous language, SBI waited more than a year to notify
Whinstone of its purported claims.[51] SBI's internal communications—dated May 30, 2021, more
than a year earlier—document and analyze the numerous alleged breaches, suspected breaches,
and alleged fraudulent conduct that form the basis of SBI's lawsuit.[52] SBI further admits that, in
some instances, it became "aware of the circumstances giving rise to [its] claim[s]" long before
the May 30, 2021 email.[53] For example, SBI admits that as early as December 15, 2019, it knew
the Hosting Agreement's RFU date had not been met.[54] Similarly, SBI concedes that by May 26,
2021, it was aware of its alleged power misrepresentations claims.[55] Given SBI's knowledge of
the alleged breaches and fraudulent conduct, SBI unsurprisingly admitted in internal
communications that its litigation position was "weak" and without merit due to "not claiming
within 12 months of becoming aware."[56] SBI also admits that the purported misrepresentations,

---

[49] *See, e.g.*, Ex. 7 at 137:13-25; Ex. 18, C. Smith Dep. Tr. (Aug. 21, 2024) at 136:25-137:21, 188:5-189:16.
[50] Ex. 1 at § 8.11.
[51] *Compare* Ex. 9 *with* Ex. 10.
[52] Ex. 10.
[53] Ex. 1 at § 8.11; *e.g.*, Ex. 3, Am. Interrog. Resp. at No. 2-5.
[54] Ex. 3, Am. Interrog. Resp. at No. 2 ("SBIC became aware of Whinstone's failure to meet the December 15, 2019 RFU date on the passing of December 15, 2019.").
[55] *E.g.*, *id.* at No. 5 ("SBIC also became aware of misrepresentations related to the Rockdale Hosting Service Agreement shortly after Riot Blockchain, Inc. filed its Form 8-K with the United States Securities and Exchange Commission on May 26, 2021.").
[56] Exs. 10-11.

omissions, and/or breaches at issue had all occurred more than twelve months before the Notice was issued. *Supra* nn.32-39.

SBI's failure prejudiced Whinstone in numerous respects, including, but not limited to, Whinstone losing the benefit of its contractual bargain of requiring notice within a specified time period and being unable to investigate SBI's claims until years after-the-fact.[57] For these reasons, Whinstone is entitled to summary judgment on Counts I-III because SBI failed to timely provide the contractually required notice.

**B.      The economic loss rule bars SBI's fraud claims and no genuine dispute exists as to SBI's lack of justifiable reliance or resulting damages.**

Whinstone's fraud claims concern warranties, obligations, and other duties arising under the Hosting Agreement.[58] Damages SBI seeks for its fraud claims are identical to the damages it seeks for its breach-of-contract claims. Accordingly, the economic loss rule bars any tort claim based on the Hosting Agreement's terms. Separately, SBI has no evidence of actual, justifiable reliance to support its fraud theories. Thus, even setting aside the economic loss rule, SBI's inability to establish justifiable reliance is, by itself, dispositive of its fraud claims. Further still, SBI's alleged warranty claim is not supported by evidence.

*1.      The economic loss rule precludes SBI's fraud claims as a matter of law.*

Texas applies the economic loss rule, which "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Payne v. Wells Fargo Bank Nat. Ass'n*, 637 F. App'x 833, 837 (5th Cir. 2016) (quoting *Lamar Homes, Inc. v. Mid–Continent Cas. Co.,* 242 S.W.3d 1, 12 (Tex.2007)). "In determining whether a claim can be

---

[57] Ex. 19, R. Peters Dep. Tr. (Oct. 14, 2025) at 11:25-12:16, 12:18-21, 12:23-13:5. "A requirement that notice be given within a certain period after a defined event serves the purposes of enabling the notice recipient to conduct a prompt investigation 'while the matter is fresh in the minds of the witnesses,' to form an 'intelligent estimate of its rights and liabilities,' and to 'adequately prepare to defend any claim that may arise.'" *Chaparral Tex., L.P. v. W. Dale Morris, Inc.*, No. CIV.A. H-06-2468, 2007 WL 2455295, at *6 (S.D. Tex. Aug. 24, 2007).
[58] Am. Compl. (Jul. 7, 2023) at ¶¶ 70, 78.

brought as a tort, consideration must be given to 'the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff.'" *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016) (citing *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996)).

The Fifth Circuit's reasoning in *Payne* is persuasive and applies to this case. There, the court found that the various misrepresentations that plaintiff alleged caused her injury directly related to the deed of trust and arose solely from her contractual relationship with Wells Fargo. 637 F. App'x at 837. The Fifth Circuit affirmed the district court's granting summary judgment "[b]ecause [Plaintiff's] fraud claim [was] premised on Wells Fargo's performance under the note, [and therefore] her claim [was] barred by the economic loss rule." *Id.*; *see also Garcia v. Universal Mortg. Corp.,* No. 3:12–CV–2460, 2013 WL 1858195, at *9 (N.D. Tex. May 3, 2012) (applying the economic loss rule to bar mortgagor's fraud claim because the loss directly related to the loan).

Similarly, here the various misrepresentations that SBI alleges caused it injury directly relate to the Hosting Agreement and arise solely from its contractual relationship with Whinstone:[59]

- Whinstone allegedly misrepresented that "[t]he datacenter was well designed, and conformed to industry standards after operations began . . .", (Am. Compl. (Jul. 7, 2023) at ¶ 48(1), ¶ 70(1)), which concerns Section of the 8.2 Hosting Agreement;

- Whinstone allegedly concealed that "the datacenter was not properly designed and did not conform to industry standards," (*id.* at ¶ 78(1).), which also concerns Section of the 8.2 Hosting Agreement;

- Whinstone allegedly misrepresented that "the datacenter and racks were built and configured to contractual requirements . . ." and "the datacenter could be built to contractual requirements", (*id.* at ¶¶ 48(2), ¶ 78(2)) as well as concealed that "the datacenter was not built to contractual requirements," (*id.* at ¶ 78(2).), which concerns Section of the 2.2.11 Hosting Agreement;

---

[59] *See* Ex. 3, Am. Interrog. Resp. at No. 20. The remainder of SBI's interrogatory responses are self-serving and unpled. *Compare id. with* Am. Compl. (Jul. 7, 2023).

- Whinstone allegedly misrepresented "in [Hosting Agreement § 2.1.5] that building or other permits, city inspections, or certifications were not required with regard to providing services pursuant to the parties' contract", (*id.* at ¶ 48(3), *see also* ¶ 70(3)), and concealed that fact, (*id.* at ¶ 78(3).);

- Whinstone allegedly misrepresented that "the facility was not experiencing problems related to overheating or excessive dust, (*id.* at ¶¶ 48(4), 78(4)), and concealed the same, (*id.*at ¶ 78(4).), which concerns Section of the 2.2.13 Hosting Agreement;

- Whinstone allegedly misrepresented that "one (1) gigawatt of power was available at its Rockdale site [on or before October 24, 2019] and that 50 megawatts of power had been secured on October 24, 2019," (*id.* at ¶¶ 48(5), 70(5-6)), and concealed that those power amounts had not been "secured" "as of October 24, 2019," (*id.* ¶ at 78(5-6).) , which concerns Sections of the 8.13, 3.13.1 Hosting Agreement; and

- Whinstone allegedly misrepresented that "construction of the Rockdale facility was fully complete or near full completion," (*id.* at ¶ 70(7)), and concealing the same, (*id.* at ¶ 78(7).), which concerns Section of the 1.1 Hosting Agreement.

Critically, SBI cannot identify any independent legal duty owed by Whinstone apart from the obligations set forth in the Hosting Agreements. And as detailed above, SBI only seeks the ***exact same*** economic damages directly connected to the Hosting Agreement's subject matter.[60] This includes SBI's asserted "Period 1" damages theory[61]—its contention that it was harmed because the facility was not completed until June 30, 2020 instead of the promised December 15, 2019.[62] The Hosting Agreement expressly provides a damages framework for any alleged harm arising from delays in completion of the Facility, meaning the contract directly addresses and governs the alleged injury.[63] Because the alleged harms—including those tied to delayed completion—are comprehensively covered by the contractual remedies, the economic loss rule precludes SBI from recasting those claims as fraud. If the fraud claims were genuinely independent of the contract claims, they would rest on distinct damages theories, which they do not.

---

[60] *See* Ex. 3, Am. Resp. Interrog. at No. 6.
[61] Ex. 4 at 15.
[62] *Id*. at 15-16.
[63] Ex. 1 at § 3.10.3.

2.    *SBI's fraud claims fail for lack of reliance.*

Reliance is a material element of SBI's fraud claims.[64]  Reliance means SBI must have taken—or refrained from taking—some action it otherwise would not have, in reasonable reliance on the alleged misrepresentation. *See, e.g., Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir. 1996) (affirming grant of summary judgment on fraud claims when plaintiff failed to offer evidence that "he actually relied upon" alleged misrepresentations).

SBI claims it relied on Whinstone's alleged misrepresentations by (1) entering into the Hosting Agreement and complying with its contractual obligations, and (2) not filing a warranty claim before the miners' warranties expired.[65] Neither is legally sufficient to establish reliance.

First, merely entering into a contract and performing it does not constitute reliance on a specific false representation—those acts were induced because of the contract, not some representation. Reliance must be based to some degree on the representation made, not solely on the existence of a contractual obligation. *See*, *Chapman Custom Homes, Inc. v. Dallas Plumbing co.*, 445 S.W.3d 716, 718 (Tex. 2014) ("Thus, a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit.").

Second, reliance supporting its decision to refrain from filing a warranty claim also fails.[66]

---

[64] To prevail on a fraud claim under Texas law, a plaintiff must prove it justifiably relied upon a misrepresentation made by the defendant, which caused the plaintiff injury. *E.g., YNM Corp. v. Mgmt. Sols., Inc.*, No. 05-10-01279-CV, 2022 WL 1222712, at *5 (Tex. App.—Dallas Apr. 26, 2022, no pet.). Fraudulent inducement is a particular species of fraud that "arises only in the context of a contract." *E.g., Patel v. Warwick Constr., Inc.*, No. 01-20-00208-CV, 2022 WL 175359, at *10 (Tex. App.—Houston [1st Dist.] Jan. 20, 2022, no pet.). Fraud by non-disclosure occurs when a defendant—in the face of a duty to disclose—deliberately failed to disclose material facts that the plaintiff was ignorant of and did not have an equal opportunity to discover them. *CBE Group , Inc. v. Lexington Law Firm*, 993 F.3d 346, 353 (5th Cir. 2021).

[65] Ex. 3, Am. Interrog. Resp. at No. 13.

[66] To the extent the Court considers alleged misrepresentations about the RFU date, it is not justifiable reliance for SBI to ignore "red flags" and "blindly" rely upon alleged misrepresentations. *Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003). Here, SBI visited the Rockdale site in mid-September 2019—which consisted of nothing more than a "barren" plot of land. *E.g.*, Whinstone Trip Report, attached as Exhibit 20; Ex. 7 at 20:3-16, 36:8-37:5. SBI cannot credibly claim it justifiably relied upon alleged representations of a ramp-up date in October 2025 and a RFU

Namely, SBI affirmatively states that it learned about its warranty claim too late to file a claim,[67] but that is not true. The PSUs (which were defective) had a one-year warranty from the date the PSUs were received.[68] It is undisputed that Whinstone received the PSUs in early 2020 and SBI was made aware of the PSU issues—and even discussed making a warranty claim—but never did.[69]

Further, SBI's damages model does not calculate damages tied to the loss of any warranty rights.[70] To the contrary, its damages projections begin accruing after the miners' four-year useful life and do not include warranty-related losses, even in the alternative.[71] Moreover, SBI's damages experts do not even attempt to determine the percentage of miners that failed and would be subject to a warranty claim. The forgoing of a right that a party does not value, pursue, or quantify in its damages model cannot be evidence of justifiable reliance causing compensable injury. *See, e.g.,* *Am. Akaushi Ass'n, Inc. v. Twinwood Cattle Co., Inc.*, No. 14-21-00701-CV, 2025 WL 450750, at *36 (Tex. App.—Houston [14th Dist.] Feb. 11, 2025, pet. filed) (analyzing out-of-pocket costs to see if they were causally linked to misrepresentations).

Because SBI offers no competent evidence of any action or forbearance that meets the legal standard for reliance, its fraud claims fail as a matter of law.

## C.     SBI's cannot recover its claimed damages, a material element of every claim.

SBI claims four categories of damages: (1) benefit-of-the-bargain (i.e., lost profits), (2) equipment damage, (3) out-of-pocket reliance costs, and (4) exemplary damages.[72] All of SBI's

---

date of December 15, 2025 as it was not possible to construct an entire facility capable of providing 150 megawatts of power by that time. *Id.* at 152:22-153:13, 153:15-154:1.
[67] Ex. 3, Am. Interrog. Resp. at No. 13.
[68] Ex. 21, Miner Purchase Contract.
[69] Ex. 22, Email (Dec. 16, 2020); Ex. 23, Smith text chain; Ex. 18, C. Smith Dep. Tr. (Aug. 21, 2024) at 142:7-9, 143:14-15, 143:17-144:8.
[70] *See* Exs. 4-5.
[71] *Id.*
[72] Ex. 3 Am. Resp. Interrog. at No. 6; *see also* Exs. 4-5.

alleged damages fail as a matter of law: its lost-profits theory is unrecoverable under Texas law; its equipment-damages theory ignores the damages cap provided by the terms of the Hosting Agreement; it has offered no out-of-pocket reliance damages analysis; and its claim for exemplary damages cannot stand because the underlying fraud claim is barred by the economic loss rule. SBI cannot remedy the errors in its damages calculations at this stage, and any claims dependent on these damages models fail. In the alternative, any damages theory the Court permits must adhere to the calculation methods and liability limitations expressly provided in the Hosting Agreement. SBI's experts have not offered opinions that satisfy these contractual requirements, and it is too late for them to rework their analyses now.

    *1.*    *SBI's alleged lost profits are unrecoverable as a matter of law.*

Under Texas law, lost profits cannot be "speculative" and must be "established with 'reasonable certainty.'" *Roehrs v. Conesys, Inc.*, 332 Fed. Appx. 184, 186 (5th Cir. 2009). The failure to satisfy these requirements "acts as a bar to recovery." *Id.* Such certainty requires competent proof of the amount of lost profits as of the legally relevant valuation date.

For both contract claims, Texas law fixes damages at the time of the alleged breach.[73] *See, e.g.,*; *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) ("[B]enefit-of-the-bargain damages, which derive from an expectancy theory, evaluate the difference between the value that was represented and the value actually received."); *Woodyard v. Hunt*, 695 S.W.2d 730, 733 (Tex. App.—Houston [1st Dist.] 1985, no writ) ("[The jury] could not have made a proper award because damages are measured by comparing values represented and received at the time of sale, not at

---

[73] Although SBI's fraud claims fail under the economic loss rule, the same is true for fraud: damages are fixed at the time of the alleged fraudulent act. *Kinsel v. Lindsey*, 526 S.W.3d 411, 421 (Tex. 2017) (affirming that out-of-pocket losses arising from fraud are "determined at the time of the sale or transaction induced by the fraud"); *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) (holding the two measures of direct damages for fraud are out-of-pocket losses and benefit-of-the-bargain damages)

some future time."). Courts applying Texas law reject damages models based on values on later dates—such as at trial—as impermissible and speculative because they do not measure the injury at the time it was sustained. *E.g., AME & FE Investments, Ltd. v. NEC Networks, LLC*, No. 04-17-00332-CV, 2019 WL 286121, at *14 (Tex. App.—San Antonio Jan. 23, 2019, no pet.) ("The trial court did not err by granting summary judgment rejecting AME's damage measure based on NEC's value at the time of trial. . . . The trial court did not err by granting summary judgment against AME on its counterclaim for any breach occurring on or before October 1, 2011, because AME did not produce any evidence of the proper measure of damages").

Here, SBI's lost-profits theory is legally defective for precisely that reason. SBI's damages expert does not calculate alleged lost profits as of the date of any claimed breach of the Hosting Agreement or any alleged fraudulent act.[74] Instead, he uses the current value of Bitcoin at the time of trial to value profits SBI allegedly "would have earned" had Whinstone performed differently.[75] This methodology is incompatible with Texas law because it ignores the only relevant valuation dates. By substituting current Bitcoin prices as of the date of trial for value as of the date of breach, SBI's damage model injects speculation driven by post-event market movements, which Texas law does not permit. *E.g., Sinclair Oil Corp. v. Heights Energy Corp.*, No. 4:05-CV-825-Y, 2007 WL 9718223, at *6 (N.D. Tex. Nov. 13, 2007) (granting summary judgment on lost profits claim when calculation was not permitted under Texas law); *AME*, 2019 WL 286121, at *14 (granting summary judgment on damages claim when there was no evidence of damages on date of breach).

Even SBI's expert implicitly conceded the defect, attempting to unveil for the first time at his deposition an alternative damages calculation based on the date of the alleged breach.[76] But

---

[74] *See* Ex. 4 at 1.n.2; compounding this problem, SBI's expert ignores Section 3.10.3 in his "Period 1" damages model, which caps damages for missing the RFU date. Ex. 1 §§ 3.10.3, 8.6-.7.

[75] *Id.*; *see also, e.g.*, Resp. Emerg. Mot. Strike (Aug. 4, 2025) at 6-7.

[76] *E.g.*, Ex. 6 at 162:3-4, 162:6-17, 164:1-6, 164:10-14, 165:1-3, 165:5-7.

the deadline for SBI's damages expert to articulate his opinions has long passed, this Court already struck Valentine's supplemental report as untimely,[77] and SBI correct cannot correct his failure now.[78] SBI had the burden during discovery to produce competent lost-profits evidence calculated in accordance with Texas law. It did not. Its expert's model—based on the wrong valuation date and speculative future prices—cannot support a recovery. Without admissible, properly calculated lost-profits evidence, summary judgment must be granted on SBI's lost-profits claim as a matter of law.

2.    *SBI equipment damages theory ignores the contractual limitations on damages.*

"Under Texas law, 'contracting parties can limit their liability in damages to a specified amount,' *see Vallance & Co. v. Anda,* 595 S.W.2d 587, 590 (Tex. Civ. App.—San Antonio 1980, no writ) (non-U.C.C. case regarding services contract) and Tex. Bus. & Comm. Code § 2.719(a)(1) (West 1994), and 'it is immaterial whether a limitation of liability is a reasonable estimate of probable damages resulting from a breach.'" *Glob. Octanes Texas, L.P., v. BP Expl. & Oil Inc.,* 154 F.3d 518, 521 (5th Cir. 1998) (quoting *Vallance,* 595 S.W.2d at 590). "Generally, an agreement to limit liability will not violate public policy if there is no disparity of bargaining power between the parties." *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 810 (Tex. App.—Dallas 1999). "Limitation of liability provisions are not subject to a penalty analysis because, by their nature, they cannot be used to penalize a party for a breach of contract." *Id*. Limitations on consequential damages for commercial losses are not unconscionable. V.T.C.A., Bus. & C. § 2.719(c).

Section 8.7.1 of the Hosting Agreement provides that in the event of property damage, any damages would be "limited to the sum equal to the aggregate Charges payable by [SBI] to

---

[77] Min. Entry (Sept. 11, 2025) (ECF No. 104.)
[78] *E.g.*, Fifth Am. Sched. Order (May 19, 2025) ECF No. 86.

Whinstone in the twelve-month period immediately prior to the date on which the cause of action first arose or, if the Agreement has been in force for less than twelve months on such date, the annualized amount of the Charges payable by that date."[79] SBI ignores this damages limitation, yet Section 8.7.1 unambiguously caps any damages related to alleged harm to its miners. The Court should therefore rule, on summary judgment, that any such damages are governed and restricted by the contract's limitations.

Moreover, even if SBI could proceed on its fraud claim—it cannot under the economic loss rule—SBI's damage theory is fatally flawed. SBI seeks recovery of approximately $41-54 million for costs to purchase new miners.[80] But, in Texas, recovery for fraud is limited to "the difference between the value the buyer has paid and what the value of what he has received ... at the time of sale." *Arthur Andersen*, 945 S.W.2d at 817. SBI never purchased new replacement miners.[81] Thus, SBI cannot recover these alleged damages as a matter of law.

    *3.    SBI offers no damages theory for its "out-of-pocket" damages.*

SBI vaguely asserts a claim for "out-of-pocket" damages and defer to its experts for the calculation.[82] Yet none of SBI's experts advance any such damages theory. With no legally sufficient "out-of-pocket" damages claim, and with its experts barred from revising their opinions, SBI cannot recover on this theory. The Court should dispose of the claim on summary judgment.

    *4.    Alternatively, SBI cannot recover in excess of the Hosting Agreement's damages cap.*

Alternatively, even if SBI could advance a cognizable damages theory, any such recovery would be confined to the remedies and limitations expressly set forth in Sections 8.6 and 8.7.1–

---

[79] Ex. 1 at §§ 8.6-.7.
[80] Ex. 5 at 3.
[81] *See generally id.*
[82] Ex. 3, Am. Interrog. Resp. at No. 6.

**MOTION FOR SUMMARY JUDGMENT**                                   P a g e | **18**
4910-0789-4139.3

8.7.2 of the Hosting Agreement.[83] These provisions establish the formula for calculating recoverable damages and a cap on liability for claims arising under the agreement. SBI has not applied these contractual limitations in its damages evidence, and its experts have offered no analysis consistent with them. The Court should enter summary judgment holding that damages are, as a matter of law, capped pursuant to Sections 8.6 and 8.7.1–8.7.2 of the Hosting Agreement.

     5.    *Exemplary damages are improper.*

Should the Court grant summary judgment on SBI's fraud claims, then summary judgment should also be granted on SBI's exemplary damages claim. *E.g.*, *Switzer v. State Farm Lloyds*, 642 F. Supp. 3d 568, 577 (W.D. Tex. 2022). Putting aside whether summary judgment is granted on those claims, summary judgment should be granted on SBI's exemplary damages claims because SBI cannot meet its heightened burden proof that Whinstone acted with the requisite intent. *Edgar v. Gen. Elec. Co.*, No. CIV.A. 3:00-CV-2729D, 2002 WL 318331, at *6-7 (N.D. Tex. Feb. 27, 2002) (granting summary judgment when plaintiff "neither cited nor introduced proof that would permit a reasonable trier of fact to find by clear and convincing evidence the objective and subjective elements required to recover exemplary damages).[84]

## CONCLUSION

SBI's claims fail due to its breach of a condition precedent, the economic loss rule, lack of reliance evidence, and legally deficient damages models. Whinstone therefore seeks summary judgment on all claims—breach of contract beyond the Hosting Agreement's limits (Count I), fraud and fraudulent inducement (Count II), fraud by nondisclosure (Count III).

---

[83] Ex. 1.
[84] *See also* Ex. 25, D. Schatz Decl.; Ex. 26, B. Marx Decl.

Respectfully Submitted,

FOLEY & LARDNER LLP

By:   /s/ Robert T. Slovak
       Robert T. Slovak
       Texas Bar No. 24013523
       rslovak@foley.com
       Steven C. Lockhart
       Texas Bar No. 24036981
       slockhart@foley.com
       J. Michael Thomas
       Texas Bar No. 24066812
       jmthomas@foley.com
       Brandon C. Marx
       Texas Bar No. 24098046
       bmarx@foley.com
       2021 McKinney Avenue, Suite 1600
       Dallas, Texas 75201
       Telephone: (214) 999-3000
       Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ J. Michael Thomas
J. Michael Thomas