# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**WHINSTONE US, INC.,**<br><br>*Defendant.* | Civil Action No.: 6:23-cv-252-ADA-JCM |

**PLAINTIFF SBI CRYPTO CO., LTD.'S FIRST AMENDED OBJECTIONS AND ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

To:   Defendant Whinstone US, Inc., by and through its attorneys, Robert T. Slovak and Brandon C. Marx, GIBSON, FOLEY & LARDNER LLP, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201.

Plaintiff SBI Crypto Co., Ltd. ("SBIC") serves these Amended Objections and Answers to Defendant's First Set of Interrogatories on Defendant Whinstone US, Inc. ("Whinstone") pursuant to Federal Rule of Civil Procedure 33.

**I.
GENERAL OBJECTIONS**

The following objections shall apply to all of the interrogatories:

1.   SBIC objects to the definitions portion of Defendant's First Set of Interrogatories to the extent that it purports to impose obligations on SBIC that are not required by the Federal Rules of Civil Procedure.

2.   SBIC objects to the Interrogatories insofar as they seek to impose upon SBIC any duty of supplementation beyond that imposed by Federal Rule of Civil Procedure 26(e).

3.   SBIC objects to the Interrogatories insofar as they may be construed as calling for information subject to a claim of privilege, including, without limitation, the attorney work-product doctrine set forth in Federal Rule of Civil Procedure 26(b)(3).

4. SBIC objects to the Interrogatories insofar as they might be construed as calling for information relating to experts beyond the scope of discovery provided for in Federal Rule of Civil Procedure 26(b)(4).

5. SBIC objects to the Interrogatories insofar as they may be construed as calling for documents or information subject to the attorney-client privilege.

6. SBIC objects to the Interrogatories insofar as they require SBIC to marshal all its evidence.

7. SBIC objects to the Interrogatories to the extent they are overbroad, vague, ambiguous, unduly burdensome, or fail to clearly specify the information sought.

8. SBIC objects to the Interrogatories to the extent they seek documents or information relating to documents that are not relevant to the subject matter of the pending action or are not reasonably calculated to lead to the discovery of admissible evidence in this case.

9. SBIC objects to the Interrogatories to the extent that they can be interpreted to seek information regarding SBIC's representatives, agents, or employees on the ground that such information is not relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence in this case.

10. SBIC has made reasonable efforts to answer the following Interrogatories as SBIC understands and interprets them. If SBIC subsequently assert an interpretation which differs from that of SBIC, SBIC reserves the right to supplement these answers and objections accordingly.

11. SBIC objects to the Interrogatories to the extent they might be interpreted as requiring SBIC to concede the relevance, materiality, or admissibility of the information sought by the Interrogatories. The answers set forth below are subject to, without waiving and they are not intended to waive:

    a. All questions or objections as to competency, relevancy, materiality, privilege, or admissibility as evidence, or for any other purpose, of any of the documents referred to or answers given herein, or the subject matter thereof, in any subsequent proceeding or trial in this or any other action;

    b. The right to object to other discovery proceedings involving or related to the subject matter of the interrogatory to which these answers are directed; and

    c. The right at any time to revise, correct, add to or clarify any of the answers, or any of them, all of which are given subject to correction of any such omissions or errors.

12. These objections applicable to all interrogatories are incorporated by reference in each of the answers made below, as though fully set forth therein, which answers

are made without waiver of any of the foregoing objections applicable to all interrogatories.

## II.
## OBJECTIONS AND ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify each PERSON that was involved in the negotiation of the HOSTING AGREEMENTS.

**ANSWER:** SBIC objects to Interrogatory No. 1 because the term "involved in" is vague and ambiguous.

Subject to the foregoing objection, SBIC responds to this Interrogatory as follows: Carson Smith (SBIC), Jonathan Tanemori (SBIC), Aroosh Thillainathan (Whinstone), Chad Harris (Whinstone), Lyle Theriot (Whinstone).

**INTERROGATORY NO. 2:** For each breach of contract that YOU allege in the DEMAND LETTER, identify the date YOU first became aware of the circumstances giving rise to each breach.

**ANSWER:** SBIC objects to Interrogatory No. 2 because the terms "first became aware of the circumstances giving rise to each breach" are vague and ambiguous and because, to the extent that the Interrogatory requires SBIC to interpret a term of the Rockdale Hosting Services Agreement, the Interrogatory calls for one or more legal conclusions. To the extent that "first became aware of the circumstances giving rise to each breach" refers to when SBIC became aware of each circumstance that gave rise to each breach, SBIC objects because the Interrogatory is overbroad and unduly burdensome and because it seeks information which is not relevant nor calculated to lead to the discovery of admissible evidence.

Subject to the foregoing objections, and to the extent that "first became aware of the circumstances giving rise to each breach" means when SBIC had sufficient knowledge of all circumstances necessary to give rise to a breach of the Rockdale Hosting Services Agreement, SBIC responds to this Interrogatory as follows: SBIC became aware of Whinstone's failure to meet the December 15, 2019 RFU date on the passing of December 15, 2019. Following several months delay, SBIC notified Whinstone of its claim no later than August 11, 2020. See SBIC 0001897. SBIC notified Whinstone on a number of occasions thereafter. See WHIN_SBI_5097; SBIC0000258-237; WHIN_SBI_0004979; SBIC0000068-92; SBIC00037777-79; SBIC00003254-55; WHIN_SBI_0006303; WHIN_SBI_0006999. SBIC became aware of the circumstances giving rise to the breaches described in the Demand Letter on June 10, 2021. SBIC also became aware of Whinstone's breach of the Confidentiality provision of the Rockdale Hosting Service Agreement through discovery in this case with the production of certain documents and communication by Riot Platforms, Inc. ("Riot") on March

26, 2025.

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 3:** For each act of fraud that YOU allege in the DEMAND LETTER, identify the date YOU first became aware of the circumstances giving rise to each act.

**ANSWER:** SBIC objects to Interrogatory No. 3 because it seeks information which is not relevant nor calculated to lead to the discovery of admissible evidence, because it requires SBIC to marshal all of its evidence, and because the terms "first became aware of the circumstances giving rise to each act" are vague and ambiguous.

Subject to the foregoing objections, SBIC responds to this Interrogatory as follows: SBIC became aware of the misrepresentations related to the environmental conditions in the Rockdale Facility on June 10, 2021. SBIC also became aware of misrepresentations related to the Rockdale Hosting Service Agreement shortly after Riot Blockchain, Inc. filed its Form 8-K with the United States Securities and Exchange Commission on May 26, 2021. SBIC also became aware of Whinstone's fraud related to its unlawful concealment that it had disclosed the terms of the Rockdale Hosting Service Agreement to Riot through discovery in this case with the production of certain documents and communications produced by Riot on March 26, 2025. Through discovery, SBI also learned that the original hosting service agreement regarding the anticipated facility in Pyote, Texas was procured through fraud following the testimony of Chad Harris on March 7, 2025. *See also*, SBIC's Demand Letter to Whinstone, dated June 3, 2022. [SBIC0000393-416].

Discovery is ongoing and SBI reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 4:** For each breach of contract that YOU allege in the COMPLAINT, identify the date YOU first became aware of the circumstances giving rise to each breach.

**ANSWER:** SBIC objects to Interrogatory No. 4 because the terms "first became aware of the circumstances giving rise to each breach" are vague and ambiguous and because, to the extent that the Interrogatory requires SBIC to interpret a term of the Rockdale Hosting Services Agreement, the Interrogatory calls for one or more legal conclusions. To the extent that "first became aware of the circumstances giving rise to each breach" refers to when SBIC became aware of each circumstance that gave rise to each breach, SBIC objects because the Interrogatory is overbroad and unduly burdensome and because it seeks information which is not relevant nor calculated to lead to the discovery of admissible evidence.

Subject to the foregoing objections, and to the extent that "first became aware of the circumstances giving rise to each breach" means when SBIC had sufficient knowledge of all circumstances necessary to give rise to a breach of the Rockdale Hosting Services Agreement, SBIC responds to this Interrogatory as follows: SBIC became aware of the circumstances giving rise to the breaches alleged in the Complaint on June 10, 2021. SBIC also became aware of Whinstone's breach of the Confidentiality provision of the Rockdale Hosting Service Agreement through discovery in this case with the production of certain documents and communication by Riot on March 26, 2025. *See also*, SBIC's Demand Letter to Whinstone, dated June 3, 2022. [SBIC0000393-416].

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 5:** For each act of fraud that YOU allege in the COMPLAINT, identify the date YOU first became aware of the circumstances giving rise to each act.

**ANSWER**: SBIC objects to Interrogatory No. 5 because it seeks information which is not relevant nor calculated to lead to the discovery of admissible evidence, because it requires SBIC to marshal all of its evidence, and because the terms "first became aware of the circumstances giving rise to each act" are vague and ambiguous.

Subject to the foregoing objections, SBIC responds to this Interrogatory as follows: SBIC became aware of the misrepresentations related to the environmental conditions in the Rockdale Facility on June 10, 2021. SBIC also became aware of misrepresentations related to the Rockdale Hosting Service Agreement shortly after Riot Blockchain, Inc. filed its Form 8-K with the United States Securities and Exchange Commission on May 26, 2021. SBIC also became aware of Whinstone's fraud related to its unlawful concealment that it had disclosed the terms of the Rockdale Hosting Service Agreement to Riot through discovery in this case with the production of certain documents and communications produced by Riot on March 26, 2025. Through discovery, SBI

also learned that the original hosting service agreement regarding the anticipated facility in Pyote, Texas was procured through fraud following the testimony of Chad Harris on March 7, 2025. *See also*, SBIC's Demand Letter to Whinstone, dated June 3, 2022. [SBIC0000393-416].

Discovery is ongoing and SBIV reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 6:** For each claim YOU assert in the COMPLAINT, identify the amount of damages that YOU seek to recover and include the calculation thereof.

**ANSWER:** SBIC objects to Interrogatory No. 6 because it is duplicative in that it seeks information that SBIC has already provided in its Initial Disclosures and because the request is premature. SBIC will provide timely provide calculations of its damages consistent with the discovery deadlines in this case, including expert reports.

Subject to the foregoing objection, SBIC responds to this Interrogatory as follows: First, SBIC contends that, as a proximate result of Whinstone's breaches of the Hosting Services Agreement, SBIC suffered benefit-of-the-bargain damages, including lost profits, damages related to the cost of damaged equipment, and/or as out-of-pocket costs in reliance on the Parties' Hosting Services Agreement. SBIC is entitled to recover its reasonable attorneys' fees for prevailing in its breach of contract claim against Whinstone pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code and the indemnity provision found in ¶ 8.3 of the Hosting Service Agreement. Second, SBIC contends that, as a proximate result of Whinstone's intentional misrepresentations upon which SBIC relied, SBIC suffered benefit-of-the-bargain damages, damages related to the cost of damaged equipment in excess of, as well as out-of-pocket costs in reliance on Whinstone's fraudulent misrepresentations. Additionally, Whinstone's fraudulent acts and omissions were committed knowingly, intentionally, willfully, maliciously, or with wanton and gross negligence for which SBIC should be awarded exemplary damages. Third, SBIC contends that, as a proximate result of Whinstone's failure to disclose certain material facts to SBIC, SBIC suffered benefit-of-the-bargain damages, including lost profits, damages related to the cost of damaged equipment, as well as other out-of-pocket costs in reliance on Whinstone's fraudulent misrepresentations. Whinstone's fraudulent acts and omissions were committed knowingly, intentionally, willfully, maliciously, or with wanton and gross negligence for which SBIC should be awarded exemplary damages. SBIC is entitled to recover its reasonable attorneys' fees against Whinstone pursuant to the indemnity provision provided in ¶ 8.3 of the Hosting Service Agreement. Fourth, SBI's reliance on Whinstone's misrepresentations and/or breach of the RFU date resulted in the expiration of the warranties on the miners. Consequently, even if

SBI's A10 miners had a manufacturing defect, which SBI disputes, Whinstone's breach and fraudulent conduct directly caused SBI to suffer damages from being unable to timely exercise its rights and protections available under the warranties accompanying SBI's miners and/or timely resell, replace, or redeploy its equipment. SBIC's damages will be supported by calculations provided by its designated experts as well as SBIC's representatives and personnel. SBIC reserves the right to supplement these Disclosures in accordance with the Parties' Scheduling Order and the Federal Rules of Civil Procedure.

SBIC incorporates by reference herein the expert reports of Dr. Randall Valentine and Michael Schuler for their calculations on SBIC's damages.

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 7:** Identify each PERSON at WHINSTONE with whom YOU communicated regarding YOUR mining equipment at the facility.

**ANSWER:** SBIC objects to Interrogatory No. 7 because the terms "at Whinstone" and "communicated" is vague and ambiguous.

Subject to the foregoing objections, SBIC responds to this Interrogatory as follows: Chad Harris, Ashton Harris, Lyle Theriot, Sara Draper, David Schatz, Luis Diaz, Lauren Matherne, Heath Davidson, and Anthony Brown.

**INTERROGATORY NO. 8:** Identify the amount of power that YOU contend WHINSTONE was obligated to provide to YOU under the OCTOBER HOSTING AGREEMENT.

**ANSWER:** SBIC objects to Interrogatory No. 8 because it seeks information that may be more easily obtained from other sources, specifically the Rockdale Hosting Services Agreement and SBIC's Amended Complaint.

Subject to the foregoing objection, SBIC responds as follows: Per the Rockdale Hosting Services Agreement, Whinstone promised to provide at least 5 megawatts by October 31, 2019, 50 megawatts by December 15, 2019, and further represented, as an inducement for entering into the Rockdale Hosting Services Agreement, that it had "secured for commercial access up to one (1) gigawatt of aggregated electricity that can be delivered to the Data Center, of which a portion of that may be incrementally offered to [SBIC]." *See also*, SBIC's Demand Letter to Whinstone, dated June 3, 2022. [SBIC0000393-416].

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 9:** Identify the certifications and inspections that YOU allege in the COMPLAINT that WHINSTONE was required to obtain.

**ANSWER:** SBIC objects to Interrogatory No. 9 because the Interrogatory requires SBIC to marshal all of its evidence, because the Interrogatory is premature as discovery is ongoing, and because Whinstone has equal, if not better, access to the information requested.

Subject to the foregoing objection, Section 2.1.5 of the Rockdale Hosting Services Agreement provides that "Whinstone represents and warrants that building or other permits, city inspection, or certification is not required with regard to providing services under this Agreement." In its Amended Complaint, SBIC alleges that "certain certifications and inspections were, in fact, required to turn on power." Whinstone was required to secure a stormwater permit from the Texas Commission on Environmental Quality. Whinstone was also required to secure permission from the Rockdale Facility's landlord securing sufficient access to non-potable water for industrial purposes. *See also*, SBIC's Demand Letter to Whinstone, dated June 3, 2022. [SBIC0000393-416].

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 10:** Identify each attempt YOU made to resell YOUR mining equipment used at the FACILITY, including by listing the party to who resale was offered, the manner of each communication offering to the resale, the price for each offer of resale, and the response to each offer of resale.

**ANSWER:** SBIC objects to Interrogatory No. 10 because the terms "resell," "resale," and "offered" are vague and ambiguous.

Subject to the foregoing objection, SBIC responds to the Interrogatory as follows: SBIC discussed the sale of its Avalon A10 miners with Ray Redding of Smith & Associates in late July 2021, however nothing came of the discussions. SBIC had other informal discussions regarding the sale of its mining equipment, including with Kaboomracks, but those discussions also did not result in a sale. SBIC ultimately sold 2,400 A10 miners along with unused PSU's to Computing Limited. *See* SBIC0006421 & SBIC0006425.

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 11:** Describe the factual bases for why YOU contend that WHINSTONE's payments to YOU of approximately $7 million in July 2021 and $237 thousand in February 2022 did not settle all claims concerning the HOSTING AGREEMENTS.

**ANSWER:** SBIC objects to Interrogatory No. 11 because the term "settle" is vague and ambiguous and because the Interrogatory requires SBIC to marshal all of its evidence.

Subject to the foregoing objection, SBIC responds to the Interrogatory as follows: Payments Whinstone made to SBIC following the termination of the Rockdale Hosting Services Agreement constituted the return of un-applied portions SBIC's one-time prepayment and security deposit. The parties did not have a legitimate dispute that SBIC regarding the repayment under the express terms of the Rockdale Hosting Services Agreement. The parties did not enter into a settlement agreement and did not otherwise specifically, implicitly, or intentionally agree with plain, definite, or certain language, to discharge "all claims" concerning the Rockdale Hosting Services Agreement. Furthermore, the amounts described in this Interrogatory do not constitute a full satisfaction of SBIC's claims against Whinstone.

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 12:** As alleged in paragraph 12 of the COMPLAINT, identify each alleged misrepresentation YOU contend Whinstone made, including by listing the date the misrepresentation was made, the method of communication, where the misrepresentation occurred, and the identity of the person making the misrepresentation.

**ANSWER:** SBIC objects to Interrogatory No. 12 because the terms "paragraph 12" and "each alleged misrepresentation" are vague and ambiguous and because the Interrogatory requires SBIC to marshal all of its evidence. Paragraph 12 of SBIC's Amended Complaint does not independently identify alleged misrepresentations. To the extent that "paragraph 12" and "each alleged misrepresentation" means the misrepresentations alleged in both paragraphs 12

and 13, SBIC objects to the Interrogatory because it seeks, in part, information that may be more easily obtained from other sources, specifically paragraphs 12 and 13 of SBIC's Amended Complaint.

Subject to the foregoing objections, SBIC responds to the Interrogatory as follows: SBIC alleges in paragraphs 12 and 13 of the Amended Complaint that Whinstone's representations and warranties concerning (1) power capacity, (2) permits, and (3) operating conditions were false because Whinstone misled SBIC into believing it held the requisite building permits and power contracts to perform as promised and then concealed the substandard conditions at its facility. Whinstone's power capacity misrepresentations were made during conversations between representatives of SBIC and Aroosh Thillainathan near the Rockdale Facility during September 2019 while representatives of SBIC visited the Rockdale Facility and in the Rockdale Hosting Services Agreement itself. Whinstone's permits misrepresentations were made in the Rockdale Hosting Services Agreement itself and in verbal conversations with Aroosh Thillainathan and Chad Harris in the first half of 2020. In August 2020, Chad Harris tried to deflect blame away from the conditions of the Rockdale Facility by accusing Canaan of providing poorly manufactured equipment. Whinstone's other operating conditions misrepresentations were made during calls between representatives of SBIC and Ashton Harris.

Additionally, SBIC alleges that Whinstone fraudulently induced it to enter into the Rockdale Hosting Service Agreement by executing the original hosting services agreement with SBI failing to disclose that the owner of the HODL Ranch in Pyote, Texas had rescinded its agreement for Whinstone to construct its facility there. Instead of informing SBIC that the deal was dead, Whinstone strung-along SBIC for another two months with the belief that Whinstone was still going forward with construction of the Pyote facility and that SBIC's miners would be fully up and running by October 2019. Whinstone then executed a bait-and-switch by falsely representing that it could build a facility in Rockdale that would only delay ramp-up of SBI miners two months—with a new "Ready For Use" date of December 15, 2019 ("RFU Date"). Had Whinstone simply disclosed certain objective facts, Whinstone falsely represented that it had secured 1GW of power despite having not secured a power purchase agreement ("PPA"), falsely represented it did not have to secure any permits despite having to secure a storm water permit as well as water rights from the landlord, and falsely represented that it would use the same design as the proposed Pyote facility. Whinstone also falsely represented that the Rockdale facility would utilize filters and exhaust fans and would maintain an intake temperature below 29.5 Celsius. Whinstone had no intent to perform these obligations under the Rockdale Hosting Service Agreement. *See also*, SBIC's Demand Letter to Whinstone, dated June 3, 2022. [SBIC0000393-416].

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of

---

Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 13:** For each alleged misrepresentation identified in response to Interrogatory No. 13, identify each act that YOU contend constitutes reliance upon the same.

**ANSWER:** SBIC objects to this Interrogatory because it contains a misleading description of the law as it applies to SBIC's claims, because the term "act" is vague and ambiguous, and because the Interrogatory requires SBIC to marshal all of its evidence.

Subject to the foregoing objections, SBIC responds to the Interrogatory as follows: To the extent that "act" includes decisions not to act in reliance upon Whinstone's misrepresentations, SBIC's decisions to enter into the Rockdale Hosting Services Agreement and not to remove its equipment from the Rockdale Facility constitute reliance on the misrepresentations alleged in paragraph 12 of SBIC's Amended Complaint. SBIC also provided prepayment for Whinstone's hosting services in excess of $8 million to facilitate the rapid construction of the Rockdale Facility and the deployment of SBIC's miners by December 15, 2019. SBI's reliance on Whinstone's misrepresentations and/or breach of the RFU date resulted in the expiration of the warranties on the miners. Consequently, even if SBI's A10 miners had a manufacturing defect, which SBI disputes, Whinstone's breach and fraudulent conduct directly caused SBI to suffer damages from being unable to timely exercise its rights and protections available under the warranties accompanying SBI's miners and/or timely resell, replace, or redeploy its equipment. *See also*, SBIC's Demand Letter to Whinstone, dated June 3, 2022. [SBIC0000393-416].

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 14:** As alleged in paragraph 22 of the COMPLAINT, identify each alleged misrepresentation YOU contend Whinstone made, including by listing the date the misrepresentation was made, the method of communication, where the misrepresentation occurred, and the identity of the person making the misrepresentation.

**ANSWER:** SBIC objects to Interrogatory No. 14 because the terms "paragraph 12" and "each alleged misrepresentation" are vague and ambiguous and because the Interrogatory requires SBIC to marshal all of its evidence. Paragraph 22 of SBIC's Amended Complaint does not independently identify alleged misrepresentations. To the extent that "paragraph 22" and "each alleged misrepresentation" means the one misrepresentation alleged in both paragraphs 22 and 23, SBIC objects to the

Interrogatory because it seeks, in part, information that may be more easily obtained from other sources, specifically paragraphs 22 and 23 of SBIC's Amended Complaint.

Subject to the foregoing objections, SBIC responds to the Interrogatory as follows: SBIC alleges in paragraphs 22 and 23 of the Amended Complaint that Whinstone's representation that it had secured for commercial access up to one gigawatt of aggregated electricity that can be delivered to the Data Center was false at the time it was made because Whinstone had not, in fact, secured commercial access to that amount of electricity. This misrepresentation was made during conversations between representatives of SBIC and Aroosh Thillainathan near the Rockdale Facility during the fall of 2019 while representatives of SBIC visited the Rockdale Facility and in the Rockdale Hosting Services Agreement itself. *See also*, SBIC's Demand Letter to Whinstone, dated June 3, 2022. [SBIC0000393-416].

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 15:** As alleged in paragraph 28 of the COMPLAINT, identify each alleged misrepresentation YOU contend Whinstone made, including by listing the date the misrepresentation was made, the method of communication, where the misrepresentation occurred, and the identity of the person making the misrepresentation.

**ANSWER:** SBIC objects to Interrogatory No. 15 because it is unreasonably cumulative and duplicative of Interrogatory No. 12 and because it seeks, in part, information that may be more easily obtained from other sources, specifically paragraph 28 of SBIC's Amended Complaint.

Subject to the foregoing objection, SBIC responds to the Interrogatory as follows: SBIC alleges in paragraph 28 of the Amended Complaint that Whinstone representations that additional building permits, city inspections, and certifications were not required with regard to providing services under the Hosting Service Agreement were false. This misrepresentation was made in the Rockdale Hosting Services Agreement itself.

SBIC alleges that Whinstone fraudulently induced it to enter into the Rockdale Hosting Service Agreement by executing the original hosting services agreement with SBI failing to disclose that the owner of the HODL Ranch in Pyote, Texas had rescinded its agreement for Whinstone to construct its facility there. Instead of informing SBIC that the deal was dead, Whinstone strung-along SBIC for another two months with the belief that Whinstone was still going forward with construction of the Pyote facility and that SBIC's miners would be fully up and running by October 2019. Whinstone then executed a bait-and-switch by falsely

representing that it could build a facility in Rockdale that would only delay ramp-up of SBI miners two months—with a new "Ready For Use" date of December 15, 2019 ("RFU Date"). Had Whinstone simply disclosed certain objective facts, Whinstone falsely represented that it had secured 1GW of power despite having not secured a power purchase agreement ("PPA"), falsely represented it did not have to secure any permits despite having to secure a storm water permit as well as water rights from the landlord, and falsely represented that it would use the same design as the proposed Pyote facility. Whinstone also falsely represented that the Rockdale facility would utilize filters and exhaust fans and would maintain an intake temperature below 29.5 Celsius. Whinstone had no intent to perform these obligations under the Rockdale Hosting Service Agreement. *See also*, SBIC's Demand Letter to Whinstone, dated June 3, 2022. [SBIC0000393-416].

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 16:** As alleged in paragraph 33 of the COMPLAINT, identify all YOUR attempts "to open communication channels" between WHINSTONE and CANAAN.

**ANSWER**: SBIC objects to Interrogatory No. 16 because it requires SBIC to marshal all of its evidence. Subject to the foregoing objection, SBIC responds to the Interrogatory as follows: Carson Smith of SBIC added Ashton Harris of Whinstone to a WeChat group with representatives of Canaan in October 2020. The parties discussed issues with SBIC's mining equipment and the Rockdale Facility between October and December. Screen captures of that WeChat exchange will be produced as a mutually agreeable time and place.

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 17:** As alleged in paragraph 33 of the COMPLAINT, identify all YOUR attempts "to open communication channels" between WHINSTONE and CANAAN.

**ANSWER:** SBIC objects to this Interrogatory because it is duplicative of Interrogatory No. 16.

**INTERROGATORY NO. 18:** As alleged in paragraph 34 of the COMPLAINT, identify

all facts to support YOUR contention that WHINSTONE refused CANAAN's request for physical access to the FACILITY.

**ANSWER:** SBIC objects to Interrogatory No. 16 because it requires SBIC to marshal all of its evidence. Subject to the foregoing objection, SBIC responds to the Interrogatory as follows: Despite Canaan's desire to physically access the Rockdale Facility, and after Representatives of Canaan and Ashton Harris had verbal discussions, Whinstone did not grant Canaan access to inspect SBIC's mining machines and the environmental conditions of the Rockdale Facility.

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 19:** As alleged in paragraph 47 of the COMPLAINT, identify all facts to support YOUR contention that YOU spend months looking to reuse YOUR equipment at another facility.

**ANSWER:** SBIC objects to Interrogatory No. 19 because the term "spend" is a vague and ambiguous.

Subject to the foregoing objection, SBIC responds to the Interrogatory as follows: Once Whinstone terminated its agreement with SBIC, SBIC placed its mining machines in storage, initially hoping to reuse the machines in a Russian facility where SBIC was then operating identical mining machines. However, the war in Ukraine forced SBIC to change its plans regarding the Russian mining facility. SBIC ultimately sold 2,400 A10 miners along with unused PSU's to Computing Limited. *See* SBIC0006421 & SBIC0006425.

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 20:** As alleged in paragraph 48 of the COMPLAINT, identify each alleged misrepresentation and/or omission YOU contend Whinstone made, including by listing the date the misrepresentation and/or omission was made, the method of communication, where the misrepresentation and/or omission occurred, and the identity of the person making the misrepresentation and/or omission.

**ANSWER:** SBIC objects to Interrogatory No. 20 because it is unreasonably cumulative and duplicative of Interrogatory Nos. 12, 14, and 15, because the Interrogatory requires SBIC to marshal all of its evidence, and because it seeks, in

part, information that may be more easily obtained from other sources, specifically paragraph 48 of SBIC's Amended Complaint.

Subject to the foregoing objections, SBIC responds to the Interrogatory as follows: SBIC alleges in paragraph 48 of the Amended Complaint that Whinstone made the following misrepresentations:

(1) misrepresenting that the datacenter was well designed, and conformed to industry standards after operations began (while actively concealing the truth of the same); these misrepresentations were made during conversations between representatives of SBIC and Aroosh Thillainathan near the Rockdale Facility during September 2019 while representatives of SBIC visited the Rockdale Facility and in the Rockdale Hosting Services Agreement itself;

(2) misrepresentations that the datacenter and racks were built and configured to contractual requirements (actively concealing the truth of the same); these misrepresentations were made in the Rockdale Hosting Services Agreement itself;

(3) misrepresenting in the Hosting Service Agreement that building or other permits, city inspections, or certifications were not required with regard to providing services pursuant to the parties' contract; these misrepresentations were made in the Rockdale Hosting Services Agreement itself and in verbal conversations with Aroosh Thillainathan and Chad Harris in the first half of 2020;

(4) misrepresenting that the facility was not experiencing problems related to overheating or excessive dust (deliberately concealing harmful environmental conditions at the facility which inevitably caused suboptimal performance SBIC equipment and physical damage to the same); these misrepresentations were made in verbal conversations with Chad Harris during 2020 and during SBIC's site visit in June 2021;

(5) misrepresenting in the Hosting Service Agreement that one (1) gigawatt of power was available at its Rockdale site and that 50 megawatts of power had been secured on October 24, 2019; these misrepresentations were made during conversations between representatives of SBIC and Aroosh Thillainathan near the Rockdale Facility during September 2019 while representatives of SBIC visited the Rockdale Facility and in the Rockdale Hosting Services Agreement itself; and

(6) misrepresenting in 2019 and 2020 the availability of power after delays despite not securing power until May 2020; these misrepresentations were made during conversations between representatives of SBIC and Aroosh Thillainathan near the Rockdale Facility during September 2019 while representatives of SBIC visited the Rockdale Facility and in the Rockdale Hosting Services Agreement itself.

Additionally, SBIC alleges that Whinstone fraudulently induced it to enter

into the Rockdale Hosting Service Agreement by executing the original hosting services agreement with SBI failing to disclose that the owner of the HODL Ranch in Pyote, Texas had rescinded its agreement for Whinstone to construct its facility there. Instead of informing SBIC that the deal was dead, Whinstone strung-along SBIC for another two months with the belief that Whinstone was still going forward with construction of the Pyote facility and that SBIC's miners would be fully up and running by October 2019. Whinstone then executed a bait-and-switch by falsely representing that it could build a facility in Rockdale that would only delay ramp-up of SBI miners two months—with a new "Ready For Use" date of December 15, 2019 ("RFU Date"). Had Whinstone simply disclosed certain objective facts, Whinstone falsely represented that it had secured 1GW of power despite having not secured a power purchase agreement ("PPA"), falsely represented it did not have to secure any permits despite having to secure a storm water permit as well as water rights from the landlord, and falsely represented that it would use the same design as the proposed Pyote facility. Whinstone also falsely represented that the Rockdale facility would utilize filters and exhaust fans and would maintain an intake temperature below 29.5 Celsius. Whinstone had no intent to perform these obligations under the Rockdale Hosting Service Agreement.

Following the execution of the Rockdale Hosting Service Agreement, Whinstone continued its pattern of stringing SBIC along by not disclosing that the December 15, 2015 was "impossible" and suggesting that construction was moving at a record pace despite not having secured a storm water permit necessary for construction or a PPA to actually deliver power for SBI's miners.  Contrary to its contractual representations, Whinstone constructed the Rockdale Facility without dust filters or fans for proper air flow, and without secure sufficient water rights from the landlord to operate the evaporative curtains as intended.  When ramp-up of SBI's miners began in July and August of 2020, Whinstone failed to disclose that the facility was suffering from numerous design issues which detrimentally impacted and damages SBI's Equipment, including the lack of a completed heat wall, over pressurization of the heat aisle due to the lack of fans, recirculation of heat through the miners, and excessive dust accumulation due to the lack of dust filters. Instead of acknowledging the "heat issues" to which it had been notified, Chad Harris and Ashton Harris instead claimed that the issues with SBIC's Equipment was due to faulty or undersized power supply units.  Having provided some information related to the performance of SBI's equipment, Whinstone owed SBI a duty to disclose information related to inadequate airflow, dust accumulation and other environmental conditions at the Rockdale Facility. Chad Harris and Aston Harris also falsely represented to Carson Smith that there were no heat issues at the facility.

When Whinstone notified SBI that it was being acquired by Riot in April 2021, Whinstone secured a consent from SBI that SBI would not invoke the "Change of Control" provision and terminate the contract due to the acquisition. Chad Harris also communicated that Whinstone would remain "loyal" and not

---

terminate the parties' agreement. Having made these representations to SBI, Whinstone had a duty to had inform SBI that it had breached the Rockdale Hosting Service Agreement, by disclosing the confidential terms of its agreement to Riot in early 2021 as part of the due diligence process, including the "Change of Control" provision. Whinstone also had a duty to disclosed that it had also explicitly pitched the idea of terminating SBI's contract directly to Riot as incentive to acquire Whinstone and take over the space and power allocated for SBI's miners. Following the termination of the Rockdale Hosting Services Agreement on May 28, 2021, Chad Harris of Whinstone and Jason Les of Riot also falsely represented to Carson Smith that Riot had not reviewed the terms of the Rockdale Hosting Services Agreement prior to the closing of Riot's acquisition on May 26, 2021, when it fact, Chad Harris and Jason Les had expressly discussed the Change of Control provision and termination of SBI's contract weeks prior because Riot was seeking to allocate SBI's space in Building B with its own miners. *See also*, SBIC's Demand Letter to Whinstone, dated June 3, 2022. [SBIC0000393-416].

Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 21:** As alleged in paragraph 49(10) of the COMPLAINT, identify each "industry expert[] [that] observed Whinstone's datacenter" that will "attest that Whinstone has a poor datacenter design and poor management of the dirt and airflow inside the datacenter," including by listing the identity of the expert, the date the expert observed the Facility, and the nature of the expert's opinion.

> **ANSWER:** SBIC objects to this Interrogatory to the extent that it seeks to require SBIC to designate Expert Witnesses prior to the deadline established by the parties' Proposed Scheduling Order.
>
> Subject to the foregoing objection, SBIC responds to the Interrogatory as follows: Nick Foster of Kaboomracks. Additionally, SBIC refers Whinstone to SBIC's Expert Designations and incorporates by reference herein the expert reports of Phil Isaak and Charles Byers.
>
> Discovery is ongoing and SBIC reserves its right to amend this answer pursuant to the Federal Rules of Civil Procedure following the deposition of Whinstone's corporate representative on April 17, 2025 and a review of documents produced by Whinstone on April 11, 2025.

**INTERROGATORY NO. 22:** As alleged in paragraph 35 of the COMPLAINT, identify each "Covid travel restriction[]" between "approximately February 2020 to the first half of 2021" that prevented "SBIC's employees" from "freely travel[ing] to and from Japan."

**ANSWER:** The relevant COVID-19 policies include the following: COVID-01-Basic Policy on Countermeasures against COVID-19-20200422; COVID-02-New measures to strengthen border control (10)-20210318; COVID-03-New measures to strengthen border control (12)-20210512. SBIC will produce documents responsive to this Interrogatory at a mutually agreeable time and place.

Respectfully submitted,

**WINSTEAD PC**

By: */s/ Joshua M. Sandler*
Joshua M. Sandler
Texas Bar No. 24053680
jsandler@winstead.com
Cory Johnson
Texas Bar No. 24046162
cjohnson@winstead.com
Andrew Patterson
Texas Bar No. 24131573
apatterson@winstead.com
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

-AND-

Jeremy A. Oliver, *pro hac vice*
Tennessee Bar No. 029329
joliver@winstead.com
1221 Broadway, Suite 2030
Nashville, Tennessee 37203
Telephone: (615) 949-2352
Facsimile: (615) 949-2349

**ATTORNEYS FOR PLAINTIFF
SBI CRYPTO CO. LTD**

## CERTIFICATE OF SERVICE

  I certify that, on April 11, 2025, a true and correct copy of the foregoing was served via electronic mail to all counsel of record.

                */s/ Andrew Patterson*
                Andrew Patterson