IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD.,<br><br>    Plaintiff,<br><br>v.<br><br>WHINSTONE US, INC.,<br><br>    Defendant. | Civil Action No. 6:23-cv-252 |

**DEFENDANT WHINSTONE US, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO STRIKE THE EXPERT OPINIONS OF RANDALL VALENTINE**

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar. No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US, INC.**

Defendant Whinstone US, Inc. ("Whinstone") files this Reply in Support of Its Motion to Strike the Expert Opinions of Randall Valentine.

### I.   INTRODUCTION

This motion presents the Court with two principal issues:

1) Can SBI ignore the exclusion of Valentine's prior untimely opinions (the "Second Valentine Report"),[1] and improperly attempt to introduce—yet again—new untimely Valentine opinions based upon undisclosed information?[2]

2) Did SBI identify any opinions contained in, or previously produced information relied upon and disclosed by, Valentine in his original report that calculates alleged lost profits consistent with Texas law?

The answer to both is a resounding "no." SBI's expert disclosures were due March 28, 2025.[3] SBI failed to identify its alleged lost profits calculation in a manner that complied with Texas law. SBI failed to seek leave to amend its expert reports. Instead, SBI tried to ambush Whinstone with the Second Valentine Report.[4] The Court rightly rejected that effort.[5] SBI's attempt at yet another bite at the apple, with a newly minted declaration (the "Untimely Declaration"), is *prima facie* proof that Valentine's opinions in his original report violate Rule 26 and are irrelevant and unreliable.

**A.   SBI Cannot Re-litigate This Court's Ruling.**

SBI's attempt to offer more untimely expert opinion hinges on its argument that "[n]o formal order has been entered by the Court" on Whinstone's emergency motion to strike. Resp.

---

[1] Min. Entry (Sept. 11, 2025) (ECF No. 104); Hr'g Tr. (Sept. 11, 2025) at 51:22-24 ("With regard to the Valentine's second report and Byers' second report, I'm going to sustain the motion to—or grant the motion to strike those reports."), 52:18-20 ("[T]he information [Carson Smith] provided that was relied on by Valentine is in Valentine's second supplemental report which is being struck."), attached as Exhibit 4.
[2] Contemporaneous with this reply, Whinstone is filing an objection and motion to strike Valentine's latest declaration (ECF No. 165-1).
[3] Fifth Am. Sched. Order (May 19, 2025) (ECF No. 86).
[4] Emerg. Mot. Strike (Jul. 28, 2025) (ECF No. 90).
[5] *Supra* n.1.

**REPLY IN SUPPORT OF MOTION TO STRIKE RANDALL VALENTINE**                                      2

Mot. Strike (Nov. 21, 2025) at 5-6 (ECF No. 165). The Fifth Circuit has expressly held that "federal courts . . . have not lost their power to rule from the bench" and "[t]he form of the ruling is immaterial." *Ueckert v. Guerra*, 38 F.4th 446, 450 (5th Cir. 2022). Well within its authority, the Court ruled from the bench on the record and documented the ruling with a minute entry.[6]

SBI again seeks to offer new expert opinion and re-litigate the Court's prior exclusion, urging: (1) the Second Valentine Report was proper; (2) the untimely disclosed and still unproduced information from the Second Valentine Report (*e.g.*, SBI pool data and Luxor data) is somehow incorporated in Valentine's original report; and (3) SBI is entitled to include additional information and new Valentine opinions now.[7] The Court's ruling was clear: the Second Valentine Report was improper and the information Valentine attempted to rely upon was not included in his original report.[8] The Court should decline to relitigate its prior decisions. *Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-CV-2970-L, 2019 WL 6467248, at *4 (N.D. Tex. Dec. 2, 2019) ("The court declines Defendants' invitation to reconsider the same arguments it previously rejected" concerning untimely expert supplementation) (Lindsay, J.).

B.  **SBI Effectively Admits that Valentine's Lost Profits Calculation Is Improper.**

SBI spends pages arguing that contracts, invoices, and summary spreadsheets not timely considered by Valentine before the disclosure deadline can now be considered to establish lost profits. Resp. Mot. Strike (Nov. 21, 2025) at 14-20. This Court should reject this transparent effort to distract and deflect from the following fact: Valentine did not comply with the Federal Rules of Civil Procedure and failed to calculate lost profits in accordance with Texas law.

---

[6] *Supra* n.1. Whinstone again respectfully asks the Court to enter the written order submitted by Whinstone, which is intended to prevent SBI from trying to re-introduce stricken information and opinions. Ltr. (Sept. 15, 2025) (ECF No. 106).
[7] *E.g.,* Resp. Mot. Strike (Nov. 21, 2025) at 2, 4-13.
[8] *Supra* n.1.

First, Valentine impermissibly relied upon undisclosed/unproduced data and selectively hardcoded data from SBI. *E.g.*, Mot. Strike (Nov. 7, 2025) at 2-3, 7-10. The case *Texas Grain Storage, Inc. v. Monsanto Co.*, No. CV SA-07-CA-673-OG, 2009 WL 10700909 (W.D. Tex. May 26, 2009), which SBI heavily relies upon does not prove SBI's point. In *Texas Grain*, the challenge to the summary spreadsheet was primarily one of ***reliability***—not Rule 26 violations. *Id.* at *6. Moreover, the Court expressly reasoned that "Texas Grain never moved to compel any such information." *Id.* at *7. But, Whinstone has such an order here—and SBI repeatedly ignored it. *E.g.*, Resp. Mot. Strike (Nov. 21, 2025) at 6, 12-13.

Second, the Texas Supreme Court requires lost profits to be calculated at the time of each alleged breach or fraudulent act. *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997). Recognizing that Valentine had no such calculation in his report, SBI now tries to reverse-engineer Valentine's opinions using incomplete data contained in his original lost profits calculation. *E.g.*, Resp. Mot. Strike (Nov. 21, 2025) at 6, 12-13. Nowhere in Valentine's original report is there an opinion identifying SBI's alleged lost profits without Bitcoin appreciation or otherwise calculated at the time of each alleged breach or fraudulent act. *See generally* Ex. 2.

The sole case SBI relies upon to claim lost profits can be valued at the time of trial is a Corpus Christi case involving a breach of fiduciary duty and the fiduciary's refusal to turn over the cryptocurrency that he possessed and controlled (*i.e.*, a suit akin to conversion). *See generally Ahlgren v. Ahglren*, 703 S.W.3d 378 (Tex. App.—Corpus Christi-Edinburg 2023, pet. denied). No such claim is at-issue here—the case is irrelevant.

Third, Texas law also requires lost profits to be calculated on a "net profits" basis, which includes ***all*** expenses incurred with "carrying on" SBI's business as an enterprise—not just

**REPLY IN SUPPORT OF MOTION TO STRIKE RANDALL VALENTINE**                    4

expenses incurred from a specific contract. *E.g.*, Resp. Mot. Strike (Nov. 21, 2025) at 11-12. The only expenses Valentine included in his original model were those called for in the hosting agreement. Ex. 1 at 123:13-22, 124:25-125:3, 125:5-7. Indeed, Valentine admits he didn't include other expenses such as depreciation—which consists of millions of dollars. *Id*. at 199:3-4, 199:6-9. Valentine's retention ratio that he "came up with" doesn't account for SBI's missing expenses and Valentine doesn't have access to any Bitcoin sales records—*i.e.*, the ***only*** way to calculate an actual percentage of Bitcoin that SBI retained. *E.g.,* Mot. Strike (Nov. 7, 2025) at 4 n.11. Valentine repeatedly testified his two five percent adjustments were for "uptime loss" and "hashrate loss" (*i.e.*, operational adjustments)—not that they were "costs," as he falsely states in the Untimely Declaration. *E.g.*, *id.* Ex. 1 at 75:10-11, 75:13-16, 102:3-4, 102:6-11. The Court should reject his untimely new opinions to the contrary and such opinions are akin to a sham declaration. *See* Resp. Mot. Strike (Nov. 21, 2025) Ex. A ¶ 10; *Hacienda Records, LP v. Ramos*, No. 2:14-CV-19, 2019 WL 93306, at *2 (S.D. Tex. Jan. 3, 2019) (noting the striking of declaration when it directly contradicted prior deposition testimony).

Fourth, SBI misleads the Court by misrepresenting Jeff Matthews' deposition testimony. Resp. Mot. Strike (Nov. 21, 2025) at 18-19. Mr. Matthews testified repeatedly that he could not identify how much in additional expenses Valentine should have included in his analysis ***because SBI didn't produce the information necessary to do so (i.e., SBI's general ledger).*** *Id.* at Ex. E at 172:14-174:4. Matthews instead opined that approximately ***one-third*** of SBI's selling, general, and administrative expenses ***should have been included by Valentine***. *Id.* at 159:19-160:14. Further still, SBI has never been profitable as an enterprise. *E.g.*, Mot. Strike (Nov. 20, 2025) Ex. B at 12 ("It should also be noted that in the last three years, the average cost of sales exceeds 101%, which means there would be no lost profits at all if this trend continued into the future.") (ECF

**REPLY IN SUPPORT OF MOTION TO STRIKE RANDALL VALENTINE**    5

No. 161-2). Thus, as the Fifth Circuit held in *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*:

> "Texas law is clear that the plaintiff, not the defendant, must prove net profits—a figure correctly measured by 'deducting from [the plaintiff's] total receipts all the expenses incurred in carrying on the business.'"

875 F.3d 765, 780 (5th Cir. 2017); *see also e.g.*, *Tyler Title Co. v. Cowley*, No. 12-18-00043-CV, 2019 WL 1760105, at *6 (Tex. App.—Tyler Apr. 10, 2019, no pet.). Without such evidence offered by SBI, there can be no award for lost profits. *Id.*

## II. CONCLUSION

The Court should strike Valentine's reports, including the Untimely Declaration, and preclude him from offering testimony on SBI's alleged lost profits at trial. Whinstone further requests all such other relief to which it is entitled.

Respectfully Submitted,

FOLEY & LARDNER LLP

By: */s/Brandon C. Marx*
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar. No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Brandon C. Marx*
Brandon C. Marx
