IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD.,<br><br>    Plaintiff,<br><br>v.<br><br>WHINSTONE US, INC.,<br><br>    Defendant. | Civil Action No. 6:23-cv-00252-ADA-DTG |

**DEFENDANT WHINSTONE US, INC.'S MOTION TO STRIKE PLAINTIFF SBI CRYPTO CO., LTD.'S DECLARATION OF DR. RANDALL VALENTINE IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE DR. RANDALL VALENTINE AND RANDALL VALENTINE DEPOSITION EXHIBIT NO. 52**

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar. No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US, INC.**

Pursuant to Federal Rule of Civil Procedure 37(c)(1), Defendant Whinstone US, Inc. ("Whinstone") files this Motion to Strike Plaintiff SBI Crypto Co., Ltd.'s Declaration of Dr. Randall Valentine in Support of Plaintiff's Response to Defendant's Motion to Strike Dr. Randall Valentine and Randall Valentine Deposition Exhibit No. 52 (ECF No. 165-1).

## I. SUMMARY OF ARGUMENT

This Court should reject SBI's third attempt to introduce new and untimely substantive opinions from its damages expert Randall Valentine, as it has on a prior attempt. The first time occurred this summer when SBI issued a new Valentine expert report three months late (the "Second Valentine Report")—which contained additional calculations based on previously undisclosed information.[1] The Court properly struck the Second Valentine Report.[2]

The second time was during Valentine's deposition on October 24, 2025. There, Valentine tried to testify concerning a demonstrative exhibit he specifically made for that deposition ("Deposition Exhibit No. 52"), which contained new opinions and undisclosed calculations concerning SBI's alleged lost profits without "appreciated" Bitcoin.[3]

In this latest attempt, SBI filed a declaration (the "Untimely Declaration") from Valentine that SBI argues are merely a "logical extension" of the opinions in the Original Valentine Report served approximately eight months ago.[4] Not so.

Through the Untimely Declaration, Valentine tries to reverse-engineer a new "pre-

---

[1] Emerg. Mot. Strike (Jul. 28, 2025) (ECF No. 90).
[2] Min. Entry (Sept. 11, 2025) (ECF No. 104); Hr'g Tr. (Sept. 11, 2025) at 51:22-24 ("With regard to the Valentine's second report and Byers' second report, I'm going to sustain the motion to—or grant the motion to strike those reports."), 52:18-20 ("[T]he information [Carson Smith] provided that was relied on by Valentine is in Valentine's second supplemental report which is being struck."), attached as Exhibit 1.
[3] R. Valentine Dep. Tr. (Oct. 24, 2025) at 162:3-4, 162:6-17, 163:4-17, 163:19-22. 163:24-164:11, 165:1-3, 165:5-9, attached as Exhibit 2; R. Valentine Dep. Ex. 52, attached as Exhibit 3. Nowhere in Valentine's original report (the "Original Valentine Report") is there any disclosure of "pre-appreciation" lost profits—only what SBI's alleged lost profits were using the value of Bitcoin at the time of the report. *Compare* Ex. 3 *with* Original Valentine Report, attached as Exhibit 4.
[4] Resp. Mot. Strike (Nov. 21, 2025) at 2 (ECF No. 165).

**MOTION TO STRIKE VALENTINE'S DECLARATION**  2

appreciated" lost profits calculation using incomplete data from *several of ten different tabs* in his lost profits spreadsheet.[5] In so doing, *Valentine also tries to introduce the same Luxor and mining pool opinions in the Second Valentine Report that this Court already struck*.[6] If that were not enough, he further tries to use the Untimely Declaration to change his opinions and deposition testimony about the purported purpose for his two 5% adjustments—by now falsely claiming those adjustments "capture any operational costs that might not have been itemized directly in the agreement."[7]

SBI cannot credibly argue Deposition Exhibit No. 52 and the Untimely Declaration are supplements. Indeed, SBI admits it is trying to introduce new calculations, which cannot be a "supplement" under Federal Rule of Civil Procedure 26(e).[8] And while SBI briefs the *Sierra Club* factors, like with the Second Valentine Report, SBI cannot satisfy its burden that Deposition Exhibit No. 52 and the Untimely Declaration should avoid automatic exclusion.[9] This is particularly now when there is no justification for SBI's delay, as Whinstone would have to re-depose Valentine and issue supplemental rebuttal reports on an abbreviated schedule.

Therefore, the Court should strike Deposition Exhibit No. 52 and the Untimely Declaration. Alternatively, if the Court declines to strike, Whinstone requests that depositions be re-opened (limited to matters for supplemental rebuttal reports) and SBI be ordered to pay for costs (including attorneys' fees) arising from the same.

## II. RELEVANT BACKGROUND

On January 28, 2025, the Court set the disclosure deadlines as March 21, 2025 for

---

[5] *Id.* at 12.
[6] *Id*. Ex. A ¶¶ 4, 8-9.
[7] *Id*. Ex. A ¶ 10.
[8] *Id*. at 12.
[9] *Id*. at 2, 12-13.

**MOTION TO STRIKE VALENTINE'S DECLARATION**                                       3

affirmative expert reports and April 18, 2025 for rebuttal expert reports.[10] On March 20, 2025, the parties agreed to extend those deadlines to March 28, 2025 and May 2, 2025, respectively.[11]

On March 28, 2025, SBI served expert disclosures and the Original Valentine Report.[12]

Despite its experts' reliance upon undisclosed and unproduced information to prove alleged lost profits, SBI refused to produce documents and source data related to the same. This forced Whinstone to initiate a discovery dispute to compel production.

On April 17, 2025, the Court ordered SBI to produce the highly relevant information, including regarding SBI's Rockdale operations and the "source data for any spreadsheet relied upon by SBI's expert witnesses" no later than April 25, 2025.[13] SBI produced 1,005 documents on the Court-ordered deadline (but supplemented with an additional 182 documents on June 24, 2025).

On May 19, 2025, the Court granted the parties' jointly requested scheduling order—*keeping* the March 28, 2025 affirmative expert disclosure deadline but extending the rebuttal expert disclosure deadline to July 18, 2025 (due to document translation issues and SBI's untimely document productions).[14]

On July 16, 2025, SBI—without any prior notice—unilaterally served the Second Valentine Report.[15] Therein, Valentine changed his methodology, relied upon SBI cryptocurrency mining pool (and other) data that has not been produced, and includes new calculations, assumptions, adjustments, and opinions related to the accuracy of SBI's alleged Russian-operational data.[16]

---

[10] Fourth Am. Sched. Order (Jan. 28, 2025).
[11] Fifth Am. Sched. Order (May 19, 2025).
[12] Ex. 4; SBI Expert Discl., attached as Exhibit 5.
[13] Order (Apr. 17, 2025) at 1-2.
[14] Fifth Am. Sched. Order (May 19, 2025).
[15] *Supra* n.1.
[16] Second Valentine Report, attached as Exhibit 6.

**MOTION TO STRIKE VALENTINE'S DECLARATION**                                                                                       4

Whinstone immediately requested to meet and confer, which occurred the next day on July 17, 2025. During the conferral, SBI's counsel stated the Second Valentine Report (relying on the same documents SBI withheld until the Court-compelled production) was intended to "complete" the Original Valentine Report.

On July 18, 2025, Whinstone timely served three rebuttal expert reports—all prepared to address the original reports of SBI's experts (*i.e.*, not any supplement).[17] In so doing, Whinstone incurred more than $400,000 in expert witness fees.

Whinstone filed an emergency motion to strike the Second Valentine Report on July 28, 2025, which the Court granted on September 11, 2025.[18]

Despite this Court's order striking the Second Valentine Report, SBI tried to introduce new Valentine opinions for a second and third time, through Deposition Exhibit No. 52 and the Untimely Declaration.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(D) requires the disclosure of expert testimony "at the times and in the sequence that the court orders." When it comes to supplementation of expert disclosures, "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. Proc. 26(a)(2)(E), 26(E).

"[C]ourts routinely reject untimely 'supplemental' expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures and [the] disclosure 'departs from [or] expands upon [the] original report in [any] material respects.'" *UWorld LLC v.*

---

[17] Whinstone US, Inc.'s Supplemental Designation and Disclosure of Expert Witnesses, attached as Exhibit 7.
[18] *Supra* n.2.

*USMLE Galaxy LLC*, No. 3:23-CV-447-K-BN, 2025 WL 1246434, at *3 (N.D. Tex. Apr. 28, 2025), *recons. denied*, No. 3:23-CV-447-K-BN, 2025 WL 1798940 (N.D. Tex. June 26, 2025).[19]

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1). In addition to or alternatively, the Court may "order payment of the reasonable expenses, including attorney's fees, caused by the failure," or "impose any other sanction listed in Rule 37(b)(2)(A)(k)-(vi)." *Id.* In deciding whether a Rule 26 violation may be excused, "the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *UWorld*, 2025 WL 1246434, at *3. The party failing to comply with Rule 26 "bears the burden of proving the failure to timely disclose was substantially justified or harmless." *Id.*

## IV. ARGUMENTS AND AUTHORITIES

**A. Deposition Exhibit No. 52 and the Untimely Declaration are not "supplements" under Rule 26(e).**

SBI, on the one hand, asks the Court to "confirm the admission of calculations found in [the Original Valentine Report]," but on the other hand, claims the Untimely Declaration (and by implication Deposition Exhibit No. 52) is a "'logical extension' of certain lost profit calculations in [the Original Valentine Report]." Resp. Mot. Strike (Nov. 21, 2025) at 2. Both cannot be true.

---

[19] Indeed, courts have held: "'The purpose of supplementary disclosures is just that—to supplement. Such disclosures are not intended to provide an extension of the expert designation and expert production deadline.' 'Thus, [w]hen the analysis and opinions in the second report [are] largely new rather than supplementary, they cannot qualify as a supplemental expert report under Rule 26(e).'" *UWorld*, 2025 WL 1246434, at *3 (internal citations omitted); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996).

Either Deposition Exhibit No. 52 and the Untimely Declaration simply regurgitate calculations in the Original Valentine Report—and is therefore not needed—or Deposition Exhibit No. 52 and the Untimely Declaration contain new damages calculations absent from the Original Valentine Report. Of course, the latter is true, which is why SBI tries to introduce new calculations and opinions already stricken by this Court from the Second Valentine Report. This Court should reject SBI's latest attempt to "re-do" expert reports.

For example, as detailed in Whinstone's prior motion to strike, Judge Pitman for the Western District of Texas—Austin Division rejected a party's post-disclosure deadline effort to include "additional detail, data and analyses in support of its original report's conclusions." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. 1:15-CV-134-RP, 2017 WL 9480314, at *2 (W.D. Tex. May 22, 2017).[20] The Fifth Circuit and other Texas federal district courts have found similarly. *E.g.*, *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016); *Edwards v. First Tr. Portfolios L.P.*, No. 3:23-CV-2239-BN, 2025 WL 531787, at *2 (N.D. Tex. Feb. 18, 2025).

Deposition Exhibit No. 52 and the Untimely Declaration are additive—not supplementary. Critically, through the Untimely Declaration, Valentine tries to re-introduce some of the ***very same opinions*** this Court struck in the Second Valentine Report:

- Valentine attempts to change his "Time Period 2" lost profits calculation from being a comparison of SBI's Rockdale, Texas operations at the facility (the "Facility") and Russian operations (as contained in the Original Valentine Report) to now be a comparison of SBI's operations of the

---

[20] Specifically, Judge Pitman held: "[T]he plain language of Rule 26(e) does not allow a supplemental report for the purpose of providing additional detail. Rather, supplements are allowed only to cure material errors or omissions. . . . . [T]he purportedly supplemental report is replete with wholly new arguments, analyses and opinions [such as] an analysis of the number of chain liquor stores in Texas relative to the total number of liquor stores in the state, as well as a comparison to the growth of large grocery store chains across the country. These analyses were absent from TSPSA's original report. Similarly. . . the new report includes a regression analysis that correlates states' per capita alcohol consumption to the degree of liquor control in the state and whether Wal-Mart has a presence in the state while controlling for confounding variables including religious observation and tourism . . . TSPA's second expert report is additive, not supplemental." *Wal-Mart*, 2017 WL 9480314, at *2.

**MOTION TO STRIKE VALENTINE'S DECLARATION**                                                                7

> Facility and "Luxor" expected mining revenue (which is what Valentine tried to do in the Second Valentine Report);[21] and

- Valentine attempts to explain and justify his use of Luxor data and discuss "FPPS" mining pools—all which was absent from the Original Valentine Report but Valentine tried to introduce in the Second Valentine Report.[22]

The Court should not condone this sort of improper behavior. *E.g.*, *Mobileye, Inc. v. Picitup Corp.*, 928 F. Supp. 2d 759, 766 (S.D.N.Y. 2013) (striking expert declaration that attempted to "reintroduce[] portions of the already excluded supplemental report). This is particularly true where the Court has already rejected similar efforts.[23]

Moreover, Valentine admits that the Original Valentine Report does not contain the calculations he tries to admit now in the Untimely Declaration by stating "[t]his declaration identifies and further elaborates on Time Period 2 damages results calculated in the *Scenario_Valentine_Alpha spreadsheet disclosed*." Resp. Mot. Strike (Nov. 21, 2025) Ex. A ¶ 4 (emphasis added). Notably, his declaration now repeatedly uses the phrase "Pre-Appreciated Total," which are words and a concept absent from the Original Valentine Report.[24] Additionally, instead of using the value of Bitcoin at the time of the Original Valentine Report, Valentine now tries to calculate alleged lost profits for each time period using a calculated price of Bitcoin each

---

[21] *Compare* Resp. Mot. Strike (Nov. 21, 2025) Ex. A ¶ 4 ("The analysis applies the same methodology and assumptions used in [the Original Valentine Report], ***utilizing the same Luxor data as Time Periods 1 and 3 to model and quantify SBI's lost profits for Time Period 2***.") (emphasis added) and Ex. 6 at 3 ("The graph below represents a direct comparison between the expected hashrates generated using exclusively Luxor data and the actual hashrates mined at Whinstone, highlighting performance discrepancies over the observed period using the same methodology as in Time Periods 1 and 3") *with* Ex. 4 at 16 ("[For Time Period 2] . . . [t]his period directly compares Whinstone mining output to the output of the same model number machines mining in Russia.").
[22] *Compare* Resp. Mot. Strike (Nov. 21, 2025) Ex. A ¶¶ 8-9 (discussing Luxor data and its reliability, as well as discussing FPPS mining pools) and Ex. 6 at 4, 7, 9-12,15, 17-19, 21 (same) *with see generally* Ex. 4 (failing to use the word "FPPS" or otherwise discuss types of mining pools and only using the word "Luxor" twice to state that unspecified information had been obtained from the source).
[23] If the Court does not, then it should award costs as discussed in the next section.
[24] *Compare* Resp. Mot. Strike (Nov. 21, 2025) Ex. A at Figures 1-4 *with see generally* Ex. 4 (determining lost profits only by using the value of Bitcoin at the time of the report).

**MOTION TO STRIKE VALENTINE'S DECLARATION** 8

day (as opposed to pulling the historical data).[25] The same is true with Deposition Exhibit No. 52 with respect to "pre-appreciation" and new lost profits calculations.[26]

Further still, Valentine improperly tries to use the Untimely Declaration to now claim his two five percent adjustments for "[h]ashrate buffer and uptime loss" and "[p]ower loss" now "capture any operational costs that might not have been itemized directly in the agreement." Resp. Mot. Strike (Nov. 21, 2025) Ex. A ¶ 10. That is false: those are *operational* adjustments—not *financial* by their very meaning, for example:

> "Q. Okay. And so what would the 10 percent allowance—how would that impact your analysis in Time Period 1?
>
> . . .
>
> A. Well, it's very simple. Hashrate would go down, and there would be less mined if there's machines that are not *operational*. So that's included in that 5 percent data.

Ex. 2 at 173:24-174:1, 174:3-6 (emphasis added). Indeed, Valentine himself affirmatively stated in the Second Valentine Report the purpose of these adjustments:

> "Specifically, a 5% adjustment was applied to account for known downtime and power interruptions, particularly relevant during Period 2. Additionally, a separate 5% reduction was incorporated to capture hashrate efficiency losses stemming from environmental stress and machine degradation. These dual adjustments were made to avoid overstating expected output . . ."

Ex. 6 at 3-4. The Court should not permit Valentine to substantively change his deposition testimony and prior opinions through the Untimely Declaration. *Mobileye*, 928 F. Supp. 2d at 766 (striking expert declaration that "contradict[ed] [expert's] prior expert reports and deposition testimony").

---

[25] *Compare* Resp. Mot. Strike (Nov. 21, 2025) Ex. A ¶¶ 5-8 *with* Ex. 6 at 1 ("I have estimated SBI's economic losses as of March 24, 205) based upon the market price of cryptocurrency Bitcoin as of that date . . .").
[26] *Compare* Ex. 3 *with* Ex. 4.

**MOTION TO STRIKE VALENTINE'S DECLARATION** 9

### B. Deposition Exhibit No. 52 and the Untimely Declaration are not substantially justified or harmless.

SBI cannot meet its burden that its untimely disclosures are substantially justified or harmless. *UWorld*, 2025 WL 1246434, at *3.

First, SBI has no excuse for Deposition Exhibit No. 52 and the Untimely Declaration. The Court previously struck the Second Valentine Report—so SBI is well-aware that it should not try to introduce new Valentine opinions (let alone try to introduce some of the same opinions previously struck by this Court).[27] Additionally, SBI's disclosure deadline was approximately **eight months ago**.[28] If SBI wanted to include alternative damages calculations, the time to do so was **then**, not now. Moreover, the opinions that SBI seeks to introduce are all based on information within its possession, custody, or control. No possible justification can support that conduct. *C.f.*, *Edwards*, 2025 WL 531787, at *2 ("And, so, Mr. Spindler's Supplemental Report contains an untimely expert opinion that is based on information available before the deadline for expert disclosures and that departs from his Original Report in material respects.").

Second, Whinstone—as the Court previously found with the prior motion to strike—will be prejudiced by having to expend substantial time and money to respond to an improper disclosure. *See, e.g.*, *UWorld*, 2025 WL 1246434, at *3 ("And forcing Defendants to incur substantial time and expense to prepare additional reports in response to the sur-rebuttals will not remedy that prejudice."); *Wal-Mart*, 2017 WL 9480314, at *3 ("Even if Wal-Mart were able to re-depose TPSA's experts and to amend or supplement its rebuttal report, such efforts would be costly."). Whinstone already deposed Valentine—so it is unable to ask him questions about the

---

[27] SBI's attempt to argue that "[n]o formal order has been entered by the Court" on Whinstone's motion to strike is contradicted by Fifth Circuit case law. *Compare* Resp. Mot. Strike (Nov. 21, 2025) at 5-6 (ECF No. 165) *with Ueckert v. Guerra*, 38 F.4th 446, 450 (5th Cir. 2022) ("[F]ederal courts . . . have not lost their power to rule from the bench" and "[t]he form of the ruling is immaterial.").
[28] Fifth Am. Sched. Order (May 19, 2025).

**MOTION TO STRIKE VALENTINE'S DECLARATION**                                                         10

Untimely Declaration and found out about Deposition Exhibit No. 52 (which has no clear calculations or methodology) half-way through the deposition. That is prejudice, even under SBI's previously proffered standard that "courts do not exclude supplemental reports produced more than one month in advance of the expert's deposition and the expert discovery deadline." Resp. Emerg. Mot. Strike (Aug. 4, 2025) at 5. If Deposition Exhibit No. 52 and the Untimely Declaration are permitted to stand, then additional discovery is required (which involves substantial time and money) on the facts and opinions contained therein in order to issue a supplemental rebuttal report. Rules and deadlines must mean something—lest expert discovery turns into "'an infinitely iterative process' where parties serve expert reports with no defined end." *UWorld*, 2025 WL 1246434, at *7.

Third, a continuance cannot remedy the prejudice for the same reasons articulated in the prior paragraph. A continuance simply encourages SBI to continue its never-ending gamesmanship. *See, e.g.*, *Sierra Club*, 73 F.3d a 573 ("While a continuance would have given Sierra Club more time to review the late disclosures, such a measure 'would neither punish [Cedar Point] for its conduct nor deter similar behavior in the future.'").

Fourth, the testimony is not important to SBI. If what SBI says is true—*i.e.*, that lost profits can be recovered based on Bitcoin value at the time of trial—then Deposition Exhibit No. 52 and the Untimely Declaration are wholly unnecessary. *E.g.,* Resp. Mot. Strike (Nov. 21, 2025) at 19-20. If not, SBI has no one else to blame but itself: "repeated dilatory behavior . . . renders hollow any claims of unfair prejudice." *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996).

## V. CONCLUSION

Deposition Exhibit No. 52 and the Untimely Declaration should not be permitted to stand. Whinstone requests that the Court grant this motion and strike Deposition Exhibit No. 52 and the Untimely Declaration. Alternatively, Whinstone requests that it be permitted to take another

Valentine deposition concerning Deposition Exhibit No. 52 and the Untimely Declaration and issue supplemental expert reports, and that the Court order SBI to pay expenses (including attorneys' fees) arising from the same (including as a result of this motion). Whinstone further requests all such other relief to which it is entitled.

Respectfully Submitted,

FOLEY & LARDNER LLP

By: /s/ Robert T. Slovak
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Brandon C. Marx
Brandon C. Marx