IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> WHINSTONE US, INC., <br><br> Defendant. | Civil Action No. 6:23-cv-252 |

## DEFENDANT WHINSTONE US, INC.'S MOTION TO STRIKE THE EXPERT OPINIONS OF PHILIP ISAAK

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar. No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US, INC.**

Pursuant to Federal Rules of Evidence 37(c) and 702, Defendant Whinstone US, Inc. ("Defendant" or "Whinstone") moves to exclude certain opinions and testimony of Philip Isaak ("Isaak"). Isaak is the "licensed engineer" whose "expertise is in the construction and operation of data centers" that Plaintiff SBI Crypto Co, Ltd. ("SBI") designated to testify "as to the industry standards for these data centers and whether they were met and whether [Whinstone's Rockdale, Texas facility ('Facility')] met the contractual terms as expected."[1]

## I. SUMMARY OF ARGUMENT

Like SBI's other expert witnesses, Isaak seeks to opine on matters for which he is not qualified and improperly tries to offer legal and unreliable opinions. The Court should limit his testimony accordingly.

First, Issak is not qualified under Rule 702 to analyze or opine on meteorological or statistical data.[2] Isaak is neither a meteorologist nor does he possess any related scientific, technical, or specialized knowledge on the topic.[3] Nor is Isaak a statistician. In fact, he could not even define the word "statistician"—going so far as to affirmatively state "I'm not sure what you mean by statistician" and "I don't know what qualifies as a statistician."[4] Despite his admitted lack of qualifications, Isaak seeks to opine upon the statistical meaning and significance of:

- Temperature data from Taylor, Texas to speculate that the miner intake temperature and humidity in Rockdale, Texas was too hot and humid approximately 32.6% and 80.6% of the time, respectively;[5]

- Select photos and videos of an unspecified amount of miners (out of 20,000+) taken by KaboomRacks (*i.e.*, a third-party) on a single day in June 2021 and

---

[1] Hr'g Tr. (Sept. 11, 2025) at 10:24-25, 11:16-19, attached as Exhibit 1.
[2] "'Statistics' is defined as '[t]he science that deals with the connection, classification, analysis, and interpretation of numerical facts or data, and that, by use of mathematical theories of probability, imposes order and regularity on aggregates of more less disparate elements.'" *Gonzalez v. Conoco, Inc.*, No. CIV. A. H-98-3109, 2000 WL 251744, at *11 (S.D. Tex. Feb. 1, 2000). "Statistical analysis" is defined as "[d]ata-based evidence summarized in mathematical calculations, percentages, ratios, etc." EVIDENCE, Black's Law Dictionary (12th ed. 2024).
[3] P. Isaak Rpt. at Ex. 1, attached as Exhibit 2.
[4] P. Isaak Dep. Tr. (Nov. 14, 2025) at 178:7-17, attached as Exhibit 3.
[5] Ex. 2 at 43-45, 59-60.

**MOTION TO STRIKE PHILIP ISAAK**                                                                                2

> Isaak's one-time November 7, 2024 visit (*i.e.*, more than three years after SBI's miners stopped operations) to speculate about the alleged existence, prevalence, and impact of environmental conditions over a year-long period between July 2020 and June 2021;[6] and

- Monthly reports identifying the number of SBI's miners operating at Rockdale to speculate that the amount of operational miners in these reports equal the amorphous "equilibrium" number of SBI's miners that could operate in the Facility with an alleged "reduced airflow."[7]

Isaak lacks the requisite scientific, technical, or other specialized knowledge to perform, much less opine on, any statistical or quantitative analysis on these data sets. The Court should exclude his effort to do so.

Second, Isaak expressly admits that he intends to offer legal opinions at trial:

"Q. Do you plan to opine on the contractual requirements and whether they were complied with?

A. Yes."[8]

It is axiomatic that such opinions are inadmissible—contract interpretation is reserved for the Court.[9] Any attempt by Isaak to offer legal opinions should be barred.

Third, Isaak offers opinions that fall short of the reliability standards for admissibility under Rule 702 and *Daubert* because they are not grounded in reliable methodology, suffer from an analytical gap, or lack foundation:

- No cryptocurrency mining facility standards existed in 2019 and Isaak's reliance on traditional information technology ("IT") data center standards is inapposite;[10]

- The cubic feet per minute ("CFM") calculation is fatally compromised and

---

[6] *E.g.*, *id.* at 32-36, 38-42, 46-61 76-79, 82-83.
[7] Ex. 2 at 18, 72; Ex. 3 at 107:19-110:10, 110:12-17, 110:19-23, 110:25-111:4. Isaak also did not disclose these calculations in violation of Federal Rule of Civil Procedure 26(a)(2).
[8] Ex. 3 at 121:21-24.
[9] *E.g., Hess Corp. v. Schlumberger Tech. Corp.*, No. CV H-16-3415, 2019 WL 5846675, at *2 (S.D. Tex. Nov. 7, 2019) ("Because the applicability of the releases and indemnities in the parties' contract presents questions of law for the court to decide, because the Moomjian Report offers only legal opinions, and because the legal questions at issue have been fully briefed by the parties, Hess's Motion to Exclude the Moomjian Report will be granted.").
[10] *E.g.*, Ex. 2 at 8, 22-29, 37, 43; Ex. 3 at 29:1-11, 29:13-16, 38:2-12; K. Rayment Dep. Tr. (Oct. 21, 2025) at 144:14-145:11, attached as Exhibit 4.

**MOTION TO STRIKE PHILIP ISAAK**                                                                                     3

rendered meaningless because he failed to consider key variables, such as the presence of other miners (including SBI's S9s), and uses incorrect measurements for Building B at the Rockdale, Texas facility ("Facility");[11]

- Isaak never tested his hypothesis that the Facility's design caused SBI's miners to fail (*i.e.*, he neither considers nor analyzes any known alternative causes of miner failure, much less whether those other variables contributed to miner failures);[12]

- Isaak speculates as he lacks critical data necessary to form any opinion, including:

  o Whether any of SBI's other cryptocurrency mining facilities—or any other facility in the world for that matter—comply with his "data center standards";[13]

  o The number of each of the miner models SBI operated at the Facility, including how each miner model differed, how many of each model failed, and why a particular miner failed;[14]

  o The actual physical and environmental conditions (*i.e.*, presence and amount of alleged dust, rust, corrosion, and insects and miner intake temperature and humidity) during the time SBI's miners operated at the Facility;[15]

  o Information regarding the existence and prevalence of any other ***known*** causes of miner failures, such as manufacturing or design defects or firmware issues, and how wind impacts his analysis;[16] and

  o Any correlations and the rates of change for any variables that Isaak considers (*e.g.*, the difference between ambient air, intake air, and chip temperatures and how a temperature change amongst one of these variables impacts the others).[17]

These proffered opinions consist solely of Isaak advocating an ***untested hypothesis*** that the Facility's design could not handle 20,000 A10 miners operating—notwithstanding him ignoring the presence of thousands of other operating miners (including SBI's) and using incorrect building

---

[11] *E.g.*, Ex. 3 at 119:24-25, 120:10-13, 141:8-15, 141:19-142:11, 144:18-21, 145:3-4, 145:20-146:1, 146:4-6.
[12] *E.g.*, *id.* at 266:19-267:5, 267:7-12, 267:14-17, 268:6-18, 268:20-21, 268:23-24, 280:22-281:9.
[13] *E.g., id.* at 29:1-11, 29:13-16, 38:2-12.
[14] *E.g., id.* at 123:12-21, 123:23-124:1, 124:3-4, 124:6-10, 129:3-5, 135:1-9, 136:18-137:5, 194:10-21, 204:6-8, 204:10-11, 207:22-208:16, 209:2-4, 209:6-210:2, 210:4-7, 266:19-24.
[15] *E.g., id.* at 191:9-11, 191:13-18, 191:20-192:7, 192:9-19, 192:21-193:3, 201:18-203:1, 225:1-14.
[16] *E.g., id.* at 91:18-25, 92:15-93:7, 93:9-10, 101:23-102:1, 208:22-23, 208:25-209:1,
[17] *E.g., id.* at 150:22-24, 151:1-12 152:7-10, 152:12, 229:5-7, 229:9, 231:22-25, 232:2-4.

**MOTION TO STRIKE PHILIP ISAAK**                                                                 4

measurements, rendering his calculations meaningless. These opinions offer nothing that would assist the trier of fact in resolving key technical questions about whether the Facility's design caused any miner to fail, how many miners operated and failed, why those miners failed, which miners failed, whether a particular miner model failed more than others, the actual environmental and physical environment in Rockdale that existed at the Facility prior to June 22, 2021, etc. His opinions are simply subjective belief "dressed up and sanctified as the opinion of an expert."[18] The Court should strike Isaak's opinions accordingly.

## II. LEGAL STANDARD

An expert may only offer opinion testimony if that opinion meets the requirements of reliability and fit.[19] Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."[20]

"The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the [R]ule 702 test."[21] The Supreme Court assigned to trial courts the responsibility of determining whether expert testimony under Rule 702 is "not only relevant, but

---

[18] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).
[19] Fed. R. Civ. P. 702.
[20] Fed. R. Evid. 702; *Daubert*, 509 U.S. 579; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).
[21] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

**MOTION TO STRIKE PHILIP ISAAK**　　　　　　　　　　　　　　　　　　　　　　　　　　　　5

reliable."[22] In this gate-keeping role, trial courts make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[23]

The *Daubert* opinion lists a number of factors that a trial court may use in determining an expert's reliability. Trial courts are to consider the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community.[24] These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered.[25]

"[C]onclusions and methodology are not entirely distinct from one another."[26] "[A] reasonable or scientifically valid methodology is nonetheless unreliable where the data used is not sufficiently tied to the facts of the case."[27] "Likewise, 'ideal input data cannot save a methodology that is plagued by logical deficiencies or is otherwise unreasonable.'"[28] Where there is "simply too great an analytical gap between the data and the opinion proffered" it should be excluded.[29]

---

[22] *Daubert*, 509 U.S. at 589.
[23] *Id.* at 592–93.
[24] *See id.* at 593–94.
[25] *See Black v. Food Lion,* 171 F.3d 308, 311–12 (5th Cir.1999).
[26] *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).
[27] *Exafer Ltd. v. Microsoft Corp.*, 719 F. Supp. 3d 749, 752 (W.D. Tex. 2024), *aff'd*, No. 1:20-CV-131-RP, 2024 WL 4526045 (W.D. Tex. Apr. 11, 2024).
[28] *Id.*
[29] *Joiner*, 522 U.S. at 146.

**MOTION TO STRIKE PHILIP ISAAK**                                                                 6

## III. ARGUMENTS & AUTHORITIES

**A. Issak Is Not Qualified to Opine on Meteorological Data or Statistical Analysis or Evidence.**

Experience alone can provide a sufficient foundation for expert testimony.[30] "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Van Winkle v. Rogers*, 82 F.4th 370, 379 (5th Cir. 2023) (*quoting Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)). Nevertheless, a district court does not abuse its discretion by limiting the testimony of an expert to the scope of his expertise—particularly when the expert admits lack of qualifications. *Id.*

Here, it is undisputed that Isaak is neither a meteorologist nor statistician.[31] Isaak, himself, concedes that he does not even know what a "statistician" is or "what qualifies someone to be one."[32] *See e.g.*, *Van Winkle*, 82 F.4th at 380 ("Allen himself admitted his lack of qualification and expertise. Accordingly, Van Winkle has not shown the district court abused its discretion in limiting Allen's expert testimony."); *Hearts with Haiti, Inc. v. Kendrick*, No. 2:13-CV-00039-JAW, 2015 WL 3936224, at *6 (D. Me. June 26, 2015) (excluding expert witness from testifying on standard deviation analysis when proffered expert only had "basic education in statistics"), *dismissed*, 856 F.3d 1 (1st Cir. 2017); *Arista Records LLC v. Lime Group LLC*, No. 06 CV5936KMW, 2011 WL 1674796, at *5 (S.D.N.Y. May 2, 2011) (holding "expert in technology and computer science" was not qualified to opine on statistical matters); *Reid v. Albemarle Corp.*, 207 F. Supp. 2d 499, 501 (M.D. La. 2001) ("Dr. Daymont does not have sufficient academic credentials to qualify him to express expert opinions on a statistical analysis of whether age was a

---

[30] Fed. R. Evid. 702, Advisory Committee Notes on 2000 Amendments.
[31] *Supra* nn.2-4.
[32] *Supra* n.4.

factor in a reduction in force."). Further underscoring his lack of qualifications, Isaak admits he has never performed an analysis on the purported existence of environmental conditions (such as humidity) and their impact on cryptocurrency mining equipment.[33]

A witness is properly excluded as an expert for subject matter outside of his expertise. *E.g.*, *Van Winkle*, 82 F. at 380; *Marimuthu v. Signal Int'l L.L.C.*, No. 1:13-CV-499, 2015 WL 13839250, at *3 (E.D. Tex. June 26, 2015). Isaak is not qualified to opine on: (1) historical temperature and humidity data (regardless of location) and its purported impact on SBI's miners in Rockdale; (2) the statistical meaning and significance of KaboomRack's photos and videos of conditions at the Facility during one day in June 2021; (3) the statistical meaning and significance of his observations of conditions at the Facility during his one-time visit on November 7, 2024—more than three years after SBI departed the Facility; and (4) the statistical meaning and significance of monthly reports identifying the amount of SBI's miners operating in Rockdale.[34] For these reasons, Isaaks' opinions should be restricted, and he should be prohibited from offering any opinions that rely on, or pertain to, meteorology or statistical analysis.

## B. Isaak's Legal Opinions Are Inadmissible.

"The Fifth Circuit has consistently held that legal opinions are not a proper subject of expert testimony because they do not assist the trier of fact in understanding the evidence, but instead merely tell the trier of fact what result to reach." *Hess*, 2019 WL 5846675, at *2 (citing *Estate of Sowell v. U.S.*, 198 F.3d 169, 1717-72 (5th Cir. 1999)). Despite this repeated admonition, Isaak

---

[33] *E.g.*, Ex. 3 at 96:17-23, 225:1-14.
[34] This specific opinion should also be excluded under Federal Rule of Evidence 37(c) because of SBI's failure to comply with Federal Rule of Civil Procedure 26(a)(2) and this Court's scheduling order. Isaak was obligated to disclose his calculations used to derive his "equilibrium" figures—but he did not. *See, e.g., Honey-Love v. U. S.*, 664 Fed. Appx. 358, 361 (5th Cir. 2016) (affirming exclusion of expert witness when he did not specify which medical records he relied upon to form his opinions); *Headwater Research LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-00103-JRG-RSP, 2025 WL 1071353, at *3 (E.D. Tex. Apr. 9, 2025) (striking expert witness for relying on "an undisclosed reference" in support of opinion).

**MOTION TO STRIKE PHILIP ISAAK**                                                                                          8

intends to opine on the Hosting Agreement's meaning and whether Whinstone complied with that agreement's terms.

Indeed, in his report, Isaak states that he intends to opine whether "the design and operations of the data center meets Whinstone's contractual requirements . . . ."[35] The balance of his report is filled with a litany of legal opinions, including, but not limited to:

- "Whinstone did not meet the contractual requirements with SBI ensuring the air inside the Data Center is free of dust, insects, corrosion, precipitation and condensation;"[36]

- "Whinstone did not meet the contractual requirements with SBI in providing filtration of the air used in the air intake system;"[37]

- "Whinstone did not meet the contractual requirements with SBI in maintaining the data center intake temperatures below 29.5ºC (85.1ºF);"[38]

- "Whinstone could not operate the evaporative cooling wall for the majority of time while staying within the constraints of the Ground Lease Agreement with Alcoa;"[39]

- "Whinstone did not meet the contractual requirements with SBI in their failure to provide intake and/or exhaust fans;"[40]

- "Whinstone did not meet the contractual requirements with SBI in their failure to provide SBI with the required metrics, data center condition or miner condition reports;"[41] and

- "[B]ased on my analysis and opinions documented within this report, the quality and manner in which Whinstone provided colocation or hosting services to SBI . . . deviate from the terms of the contract Whinstone had with SBI."[42]

Those are just a few. Not to be outdone by his report, Isaak repeatedly testified about the Hosting

---

[35] Ex. 2 at 5.
[36] *Id.* at 7.
[37] *Id.* at 8.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.* at 10.
[42] *Id.* at 13.

**MOTION TO STRIKE PHILIP ISAAK**                                                                                         9

Agreement's "contractual requirements."[43]

But, here, no party has pleaded that the Hosting Agreement is ambiguous.[44] As a result, "[i]nterpreting an unambiguous contract is a question of law for the Court to resolve." *Hillwood Enterprises, L.P. v. Intel Corp.*, No. 4:08CV112, 2009 WL 3008082, at *2 (E.D. Tex. Sept. 21, 2009). "Absent the need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible." *Id.* at *4.

As reflected in the list of Isaak's proffered legal opinions above, Isaak does not reference, much less seek to clarify or define, any terms of art, science, or trade. Instead, Issak improperly presents attorney argument under the guise of expert opinion and invades the province of this Court by engaging in contract interpretation. *See, e.g.*, *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."); *Hess*, 2019 WL 5846675, at *2 ("Because the applicability of the releases and indemnities in the parties' contract presents questions of law for the court to decide . . .").

*Morris v. Equifax Info. Services, LLC*, No. CIV.A. H-04-423, 2005 WL 5976334, at *7 (S.D. Tex. Jan. 19, 2005) is instructive. There, the plaintiff hired a lawyer as an expert witness to opine on the obligations required by an agreement. *Id.* at *8. In rejecting such testimony and considering the "rich body of case law preventing experts from offering legal opinions," the court held:

> "If Morris is allowed to offer testimony regarding contractual obligations under the Target Account, then he will intrude on this Court's role as the legal expert and instructor for the jury. His proposed testimony will confuse jurors by causing them to compare Morris's interpretation of contract law with this Court's-interpretation of contract law. The Court cannot allow the jurors to make such a comparison. As the [Fifth Circuit] noted: 'there is one, but only one, legal answer for every

---

[43] *E.g.*, Ex. 3 at 216:6-217:6.
[44] *See* Am. Compl. (Jul. 7, 2023) (ECF No. 11); Answer (Nov. 25, 2024) (ECF No. 61).

**MOTION TO STRIKE PHILIP ISAAK**                                                                 10

> cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.' Morris's personal designation as an expert on contractual liability is an improper attempt to provide the jury with a legal conclusion, and the Court should exclude Morris's proposed expert testimony on this topic."

*Morris*, 2005 WL 5976334, at *8 (cleaned up). This Court should likewise exclude Isaak.

**C. Isaak's Irrelevant and Unreliable Opinions Should Also Be Excluded.**

Isaak's opinions specifically manufactured for this litigation are also irrelevant and unreliable. *See, e.g., Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 435 (6th Cir. 2007) ("If the proffered expert testimony is not based on independent research [from litigation], the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'").

   1. *Isaak's opinions rest exclusively on irrelevant standards.*

For context, Karen Rayment, one of Whinstone's experts, testified in her deposition: "Bitcoin mining is industrial mining . . . which is very, very different than a data center" [45] and no industry standards for cryptocurrency mining facilities existed at the time Whinstone's Rockdale facility was being designed and constructed in 2019 (and still don't exist to this day).[46] These statements are corroborated by SBI's expert witness, Charles Byers, who admitted that there were no large-scale cryptocurrency mining facilities in operation until "probably 2018, give a year or take" and that the cryptocurrency mining facilities at-issue here are a "relatively recent phenomenon."[47]

Yet, despite never having inspected a cryptocurrency mining facility prior to this case, never investigating other cryptocurrency mining facilities for his work in this case, not knowing

---

[45] Ex. 4 at 145:9-11.
[46] *Id.* at 144:22-145:11.
[47] C. Byers Dep. Tr. (Oct. 30, 2025) at 69:4-5, 69:7-20, attached as Exhibit 5.

**MOTION TO STRIKE PHILIP ISAAK**                                                                 11

whether any cryptocurrency mining facility that utilized his "pre-design" services ever implemented his concepts, and never mining cryptocurrency,[48] Isaak still tries to hold Whinstone to traditional data center standards.[49] These standards—which are admittedly not specifically for cryptocurrency mining facilities[50]—are designed for conventional computing environments, such as enterprise IT or cloud service facilities. They do not account for the markedly different operational priorities, environmental tolerances, economic models, and hardware lifecycles characteristic of cryptocurrency mining. Isaak's reliance on these irrelevant criteria renders his opinions fundamentally unreliable, as they are based on a standard of care that does not exist within, and is not recognized by, any standard promulgating authority within the cryptocurrency mining industry. ***Worse***, ***Issak fails to identify a single cryptocurrency miner industry participant that actually adheres to such standards***.[51] Just as a court would exclude testimony from any expert who applies an incorrect and inapplicable benchmark, Isaak's opinions should likewise be excluded because they are irrelevant. *See, e.g.*, *Minton v. Intercontinental Terminals Co., LLC*, 697 F. Supp. 3d 690, 702 (S.D. Tex. 2023) (excluding expert witness from testifying on compliance with a particular OSHA statute because it was irrelevant to the at-issue industry standard of care).

2. *Isaak's CFM calculation is fatally compromised.*

The centerpiece of Isaak's report is a CFM calculation by which Isaak attempts to calculate the amount of airflow.[52] But his calculation is fundamentally flawed—it accounts for 20,000 SBI A-10 miners (ignoring the presence of thousands of other miners) and utilizes incorrect

---

[48] Ex. 3 at 49:23-50:25, 59:18-60:10, 60:19-61:4, 61:10-16, 62:3-21, 64:12-21.
[49] *E.g.*, *supra* n.10; Ex. 3 at 29:1-11, 29:13-16, 38:2-12, 45:8-46:22. 47:2-8.
[50] *Id*.
[51] *Supra* n.10.
[52] Ex. 2 at 91-115.

**MOTION TO STRIKE PHILIP ISAAK**  12

measurements. For example, Isaak completely ignored the 1,600+ SBI S9 miners that operated alongside SBI's A-10 miners.[53] He also failed to account for the Whinstone client's miners that shared the same space and which Isaak incorrectly assumed that those miners were partitioned off from SBI's miners.[54] Given that Isaak utilized incorrect measurements and failed to include other variables (*e.g.*, additional miners, the wind)[55] that directly impact his conclusion, his CFM analysis is rendered meaningless, depicting a scenario that does not (and never did) exist. His opinion should be excluded. *E.g.*, *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed. Appx. 395, 398–99 (5th Cir. 2007) (affirming magistrate judge's exclusion of expert "[b]ecause of the flaws in the underlying calculations, any calculation of damages would also be unreliable").

3.  *Isaaks' opinions are not governed by any valid scientific methodology.*

Isaak also did not adhere to a single scientifically valid methodology to form his opinions. As noted above, the Supreme Court in *Daubert* identified factors to aid the Court in making such a determination, whether a theory or technique: (1) "can be (and has been) tested;" (2) "has been subjected to peer review and publication;" (3) has a "known or potential rate of error;" (4) has "standards" controlling the theory or technique's operation; and (5) has "general acceptance." *Daubert*, 509 U.S. at 593-94. None of these factors weigh in favor of finding that Isaak's opinion is based on a valid scientific methodology.

As for the first factor, Isaak failed to test his opinions—going so far as to admit that he only considered one specific variable but did not "quantify or weigh" any "remaining factors."[56] Nor could Isaak as he lacks critical data necessary to form his opinions.[57] If Isaak cannot test his

---

[53] *E.g.*, Ex. 3 at 119:3-5; Email (Aug. 1, 2021), attached as Exhibit 6.
[54] Ex. 3 at 139:5-24, 141:12-15, 141:19-142:11.
[55] *E.g.*, *id.* at 91:18-25.
[56] *E.g.*, *id.* at 267:11-12, 267:14-17.
[57] *See, e.g., supra* nn.13-17.

**MOTION TO STRIKE PHILIP ISAAK**  13

own theories, then how is it possible for Whinstone to replicate them? As for the remining factors, none of Isaak's analyses have been subjected to peer review or publication. There are no known rates of errors or established standards for his method.[58] His work has not been generally accepted by others in the cryptocurrency mining field as evidenced by Isaak's repeated admissions that none of his work specifically concerns cryptocurrency mining.[59] Isaak does not offer any analytical framework for his opinions on weather data, SBI miner composition and differentiation between models, the number of miner failures and cause of such failures, and the application of traditional data center standards to cryptocurrency mining facilities.[60] Isaak's "methodology" was simply to fixate on a single variable and willfully ignore every other possible known explanation.[61] *E.g.*, *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (affirming trial court's exclusion of expert when "he admitted to failing to consider other variables such as education and experience as explanations for any observed discrepancy between promotion rates and to not performing a multiple regression analysis"); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988) (affirming an expert witness's exclusion because he failed to control for known variables, thereby rendering the expert's table "essentially worthless"); *Univ. Computing Co. v. Mgmt. Sci. Am., Inc.*, 810 F.2d 1395, 1399-1400 (5th Cir. 1987) ("[A]s a matter of statistical inference, Newton's conclusion that 'something out of the ordinary' had to have happened cannot be considered credible evidence. . . . Common sense notions of causation do not easily permit us to infer a single cause when many factors appear as possible causes.").

---

[58] *E.g.*, Ex. 3 at 158:10-15.
[59] *E.g.*, *id.* at 72:22-73:6, 73:8-74:21, 74:23-75:15.
[60] *See generally* Ex. 2.
[61] *E.g.*, Ex. 3 at 103:13-23 (admitting he did not consider potential firmware issues in forming his opinions), 208:22-209:1 (admitting he did not consider potential manufacturing defects in his analysis), 209:2-14 (admitting he did not know how many actual miners failed because he looked "solely" at the fans), 267:11-17 (admitting that he chose not to consider any other variables because he thought his opinion was sufficient), 268:20-24 (admitting that there is a lot of variables that determine how many miners operate),  .

**MOTION TO STRIKE PHILIP ISAAK**                                                                                      14

Because Isaak failed to utilize any verifiable or recognized methodology to reach his conclusions, the Court should exclude him as an expert due to unreliability issues. *E.g.*, *Hebbler v. Turner*, No. CIV.A. 03-388, 2004 WL 414821, at *4 (E.D. La. Mar. 3, 2004) (Huseman's proffered testimony is not unacceptable because the proposed expert neglected to employ the scientific method; rather, her expert opinion is inadmiss[i]ble because she failed to illustrate a reliable adherence to real estate valuation methodology.")

4. *Isaak's opinions are rote speculation due to a lack of foundation and an analytical gap.*

"A district court may properly exclude the testimony of an expert if that testimony lacks an adequate foundation." *Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990). "A court may [also] conclude that there is simply too great an analytical gap between the data and the opinion offered." *Joiner*, 522 U.S. at 146. Both circumstances are present here.

For example, Isaak failed to perform any testing and did not identify how many miners actually failed.[62] And he readily admits that other factors "contributed" to miner failures, but he did not analyze them or "quantify or weigh the impact of any of those deficiencies against each other."[63] Without understanding the landscape, how can Isaak opine with any certainty as to what actually occurred? He is simply speculating due to the lack of foundation.

Further, as detailed above, scores of categories of data, which are necessary to for Isaak to form ***any*** opinion on causation, were ignored by Isaak or have not been produced by SBI or are otherwise unavailable: miner model composition and differentiation information, the number of miner failures (including as to by model), the reason why a particular model failed, firmware issues and manufacturing defects, various temperature data and rates of change, and contemporaneous

---

[62] *E.g.*, Ex. 3 at 267:11-12, 267:14-17.
[63] *Id.* at 280:22-281:9.

**MOTION TO STRIKE PHILIP ISAAK**                                                       15

data evidence evidencing environmental conditions.[64] Thus, it is impossible for Isaak to perform the analysis necessary to determine causation, thereby rendering any conclusion concerning the same as speculation. The Court should strike him accordingly. *See, e.g.*, *Atl. Specialty Ins. Co. v. Porter, Inc.*, 742 Fed. Appx. 850, 854 (5th Cir. 2018) (affirming exclusion of expert witness when he "did not provide critical data" needed to determine cause of fire); *Burst v. Shell Oil Co.*, 650 Fed. Appx. 170, 173 (5th Cir. 2016) (affirming exclusion of expert witness opining that gasoline (which contains benzene) can cause acute myeloid leukemia ("AML") when expert made "no attempt" to demonstrate how gasoline can cause AML); *Jesus Church of Victoria Tex., Inc. v. Church Mut. Ins. Co.*, 627 F. Supp. 3d 715, 720 (S.D. Tex. 2022) ("Spotts's remaining opinions are unreliable because they are based on insufficient information.").

## IV. CONCLUSION

Whinstone respectfully requests the Court to strike Isaak's report and preclude him from offering testimony on IT standards, causation (including matters such as weather, statistical analysis, miner performance, and presence of alleged environmental conditions), legal matters (such as contract interpretation and breach), and his CFM analysis at trial. Whinstone further requests all such other relief to which it is entitled.

---

[64] *Supra* nn.13-17.

**MOTION TO STRIKE PHILIP ISAAK**                                                                 16

                           Respectfully submitted,

                           FOLEY & LARDNER LLP

               By:   */s/ Brandon C. Marx*
                           Robert T. Slovak
                           Texas Bar No. 24013523
                           rslovak@foley.com
                           Steven C. Lockhart
                           Texas Bar No. 24036981
                           slockhart@foley.com
                           J. Michael Thomas
                           Texas Bar. No. 24066812
                           jmthomas@foley.com
                           Brandon C. Marx
                           Texas Bar No. 24098046
                           bmarx@foley.com
                           2021 McKinney Avenue, Suite 1600
                           Dallas, Texas 75201
                           Telephone: (214) 999-3000
                           Facsimile: (214) 999-4667

                           **ATTORNEYS FOR DEFENDANT**
                           **WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

                                                  */s/ Brandon C. Marx*
                                                  Brandon C. Marx