IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> WHINSTONE US, INC., <br><br> Defendant. | Civil Action No. 6:23-cv-252 |

**DEFENDANT WHINSTONE US, INC.'S RESPONSE TO PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF JEFFREY G. MATTHEWS UNDER FEDERAL RULE OF EVIDENCE 702**

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US, INC.**

## I. INTRODUCTION

In moving to strike Jeffrey Matthews, Plaintiff SBI Crypto Co., Ltd. ("SBI") advances a series arguments that have no bases in fact or law. The Court should readily reject them.

First, SBI posits that Matthews—who is a *rebuttal* witness—should be stricken because he did not consider information that was not disclosed by SBI's expert Randall Valentine in Valentine's *original* report (the "Original Valentine Report").[1] Specifically, SBI argues that Matthews should have considered information disclosed in Valentine's *supplemental* report (the "Second Valentine Report"), which this Court *struck*, simply because that information has been produced at some point in this litigation.[2] Unsurprisingly, SBI cites to no cases supporting such a position—because no such cases exist. SBI cannot require Matthews to consider information not disclosed, much less relied or opined upon, in the Original Valentine Report.[3]

Second, SBI misrepresents Matthews' testimony.[4] Matthews did not "admit[] during his deposition that Valentine did deduct costs as part of his lost profits analysis."[5] To the contrary, Matthews testified that Valentine did not deduct SBI's actual costs and did not account for all such expenses that should have been included in Valentine's lost profits analysis.[6] Matthews then criticized Valentine for instead using select "estimated" costs—which differ from actual costs.[7] Any disputes as to those facts go to weight, not reliability.

---

[1] Mot. Strike (Nov. 20, 2025) at 1-2 (ECF No. 161).
[2] *Id.*; Min. Entry (Sept. 11, 2025) (ECF No. 104); Hr'g Tr. (Sept. 11, 2025) at 51:22-24 ("With regard to the Valentine's second report and Byers' second report, I'm going to sustain the motion to—or grant the motion to strike those reports."), 52:18-20 ("[T]he information [Carson Smith] provided that was relied on by Valentine is in Valentine's second supplemental report which is being struck."), attached as Exhibit 1.
[3] *E.g.*, Fifth Am. Sched. Order (May 19, 2025) at 1 ("Parties with *burden of proof* to designate Expert Witnesses and provide their expert reports, to include all information required by Rule 26(a)(2)(B).") (emphasis added) (ECF No. 86).
[4] Mot. Strike (Nov. 20, 2025) at 2, 5-6.
[5] *Id.*
[6] J. Matthews Dep. Tr. (Nov. 6, 2025) at 90:7-93:17, attached as Exhibit 2.
[7] *Id.* at 141:5-144:11.

Third, Matthews offers no legal conclusions.[8] He opines that Valentine's damages calculations do not take into consideration certain contractual provisions and, should those provisions apply, how they might impact Valentine's calculation.[9] Case law supporting this analysis is legion.

Fourth, Matthews is not simply "repeat[ing]" other Whinstone expert opinions in this case.[10] Again, Matthews simply opines on how certain variables, such as miners not running in "turbo" mode or suffering from "design issues, heat problems with their power supplies, early failures in the product lifecycle, and issues with their ASIC hash boards," should have been considered by Valentine and adjusted for in his lost profits calculation (which would reduce the amount of any alleged lost profits)—but Valentine did not.[11] The Court should deny SBI's request to strike Matthews' opinions—particularly as the experts Matthews relied upon appeared for a deposition in this case and were subject to cross-examination (unlike Randy Boltin upon whom Charles Byers relies).[12]

## II. LEGAL STANDARD

An expert may only testify in the form of opinion if they meet the requirements of qualifications, reliability and fit. Fed. R. Civ. P. 702. Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

---

[8] Mot. Strike (Nov. 20, 2025) at 8-9, 17-19.
[9] Ex. 2 at 117:9-119:14, 133:6-12, 283:16-22.
[10] Resp. Mot. Strike (Nov. 20, 2025) at 2, 19-20.
[11] *E.g.*, J. Matthews Rpt. at 20-22, attached as Exhibit 3.
[12] *See* Mot. Strike (Nov. 13, 2025) at 2-3, 8-12.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION TO EXCLUDE JEFFREY MATTHEWS**     3

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the [R]ule 702 test." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). The Supreme Court assigned to trial courts the responsibility of determining whether expert testimony under Rule 702 is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. In this gate-keeping role, trial courts make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93.

The *Daubert* opinion lists a number of factors that a trial court may use in determining an expert's reliability. Trial courts are to consider the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and whether the method has been generally accepted in the relevant scientific community. *See id.* at 593–94. These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered. *See Black v. Food Lion,* 171 F.3d 308, 311–12 (5th Cir.1999).

## III. ARGUMENTS & AUTHORITIES

**A. Matthews is a rebuttal expert, not an affirmative expert like Valentine.**

Rule 26(a)(2)(D)(ii) explicitly allows for the designation of a rebuttal expert witness "solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." "An 'initial,' 'affirmative', or 'opening' report is one that contradicts an expected portion of the opposing party's case." *CEATS, Inc. v. TicketNetwork, Inc.*, 2018 WL 453732, at *3 (E.D. Tex. 2018) (citing *Morgan v. Commercial Union Assurance Cos.*, 606 F.2d 554, 556 (5th Cir. 1979)) (emphasis added) (Payne, Mag. J.). On the other hand, "[a] 'rebuttal' report explains, repels, counteracts, or disproves evidence of the adverse party's initial report." *Id.*; *see also, e.g., Bro-Tech Corp. v. Purity Water Co. of San Antonio, Inc.*, No. CIV SA-08-CV-0594-XR, 2009 WL 1748539, at *7 (W.D. Tex. June 19, 2009) ("The requirement that the party provide a complete report of the opinions that the expert will offer at trial is to allow the opposing party to effectively cross-examine the expert, designate a rebuttal expert, and prepare for trial."). Courts consistently hold that rebuttal experts may critique the methodology employed by opposing experts.

For example, in *Orthoflex, Inc. v. ThermoTek, Inc.*, the court recognized that rebuttal testimony is proper when it rebuts the methodology, principles, or foundation of an opposing expert's conclusions. 986 F.Supp.2d 776, 810-11 (N.D. Tex. 2013) (Fitzwater, J.). Thus, rebuttal experts can focus on identifying flaws or inconsistencies in opposing experts' opinions without being required to offer affirmative opinions or provide alternative testing or conclusions, provided their testimony adheres to procedural rules and evidentiary standards. *Id.*

As SBI admits: "[Matthews] limits his opinions to a critique of Valentine's methodology." Resp. Mot. Strike (Nov. 20, 2025) at 1. Despite that admission, SBI improperly tries to expand the

scope of a rebuttal witness by arguing that Matthews allegedly "ignored admissible evidence," which is purportedly "referred to by Valentine in his supplemental report" (*i.e.*, the Second Valentine Report). *Id.* at 1-2. In so doing, SBI makes Whinstone's point: the information that Matthews did not consider (*e.g.*, alleged additional SBI "wallet addresses" and purported "comprehensive wallet data")[13] was not disclosed or otherwise identified in the Original Valentine Report. Matthews is under no obligation to go beyond that. *See, e.g., Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. 1:15-CV-134-RP, 2017 WL 9480314, at *2 (W.D. Tex. May 22, 2017) ("Striking TPSA's second expert report would not prevent TPSA's experts from testifying on any specific issue, it would simply limit their testimony on all issues to the opinions articulated in their original report.") (Pitman, J.). The real issue for the Court to consider is that Valentine's failure to evaluate and consider that evidence and other evidence (whole categories of expenses, power curtailments, downtime for repairs) renders his opinions unreliable.[14] SBI tacitly admits these omissions through its efforts to offer multiple new opinions through the stricken Second Valentine Report and Valentine's new undisclosed declarations.[15]

**B. SBI's arguments on Matthews' testimony on factual matters concerning cost deductions goes to weight, not admissibility.**

Rather than attack Matthews' methodology (which SBI has not and cannot successfully

---

[13] Mot. Strike (Nov. 20, 2020) at 2, 14-16. In so arguing, SBI is either careless with its wording or misleads the Court. Matthews testified that he analyzed the publicly available blockchain data for two wallet addresses that SBI claimed through discovery reflected the amount of actual Bitcoin mined in Rockdale, Texas and Russia (which Matthews had to locate since Valentine did not identify them in the Original Valentine Report). Ex. 2 at 88:19-89:5, 89:10-16. No other wallet addresses are at-issue. Contrary to that position, those wallet addresses simply reflect transactions—not actual mined cryptocurrency originated from the coinbase or any sales data. *E.g.*, Ex. 3 at 16-20. Matthews then proceeded to provide a system-generated summary (using the TRM Labs database) that totaled the amount of incoming and outgoing Bitcoin from those wallet addresses (*i.e.*, payment and receipt data) using a disclosed specified date range, which demonstrates no Bitcoin was retained at those wallet addresses. Ex. 2 at 77:8-78:5, Ex. 3 at 16-20. SBI has that system-generated summary. *Id.* Whinstone has no issue with providing each of the 500+ transaction reports if SBI so desires and wants to add them up itself.
[14] *E.g.*, Ex. 2 at 83:18-84:3, 85:5-22, 90:16-92:2, 93:3-17.
[15] *See, e.g.*, Emerg. Mot. Strike (Jul. 28, 2025) (ECF No. 90); Mot. Strike (Dec. 1, 2025) (ECF No. 183).

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION TO EXCLUDE JEFFREY MATTHEWS                                                      6

do), SBI resorts to attacking the accuracy of Matthews' conclusions. *E.g.*, Mot. Strike (Nov. 20, 2025) at 2, 16-17. In so doing, SBI veers into realm of challenging the "weight rather than the admissibility" of Matthews' opinions. *Equal Employment Opportunity Comm'n v. Modern Group, Ltd.*, 725 F. Supp. 3d 644, 670 (E.D. Tex. 2024).

For example, SBI complains that Matthews opined that "Valentine did not deduct a single cost." *Id.* at 16. But that statement is true: Valentine did not deduct a single actual cost, at most he accounted for select "estimated" costs (and certainly not all actual costs as required by Texas law), which necessarily differ.[16] Quibbling about factual matters underscores issues that should be addressed at trial. *E.g.*, *Matter of Kirby Inland Marine, LP*, No. 1:23-CV-00168-MJT-ZJH, 2024 WL 5256494, at *4 (E.D. Tex. Dec. 11, 2024) ("Whether an expert's testimony is factually accurate is a matter for trial and does not affect the reliability of the expert's opinion.").

## C. Matthews is not interpreting the contract, rather he is observing the impact of Valentine's failure to consider contractual limitations.

SBI next argues that Matthews' "opinions regarding alleged limitations imposed by the Hosting Service Agreement . . . are impermissible legal conclusions." Mot. Strike (Nov. 20, 2025) at 19. SBI is wrong. With respect to SBI's breach of contract claim, Matthews testified:

> "Q. What is the significance of the—[installation fee] section of the Hosting Agreement such that you included it in the report?
>
> A. Well, this is a breach of contract case. In calculating damages, as it relates to a breach of contract matter, an expert looks at the elements that are alleged to have been breached. . . . So in reviewing the contract, I see where it provides certain computations, certain formulas that an expert would consider in arriving at damages.
>
> . . .

---

[16] Ex. 2 at 90:7-93:17, 141:5-144:11.

>Q. Now, in your—in your experience, have you previously opined on similar termination clauses in contracts?
>
>A. Yes, we have. Not necessarily opining on the legal nature, but how that contract clause would impact damages.
>
>. . .
>
>Q. Do you intend to offer an opinion as to whether or not SBI can—is barred from recovering any particular damages because of the notice provision?
>
>A. I'm not offering a legal opinion, but that's certainly a provision I would consider relevant in my computation of damages."

Ex. 2 at 116:20-117:8, 118:18-23, 283:16-22. Matthews simply opines that Valentine's damages calculations—which are complex and not clearly explained (*i.e.*, there is a need of an expert witness to unpack them)—do not mathematically tie with the formulas contained in the contract and what impact those formulas may have on Valentine's calculations have if those provisions do apply. *See also, e.g.,* Ex. 3 at 33 ("Thus, and alternatively, should trier of fact determine Whinstone is liable for damages, there is a formula contained in the Hosting Agreement, Section 8.6, to compensate for allowable losses, which Dr. Valentine has not followed."). Such testimony is proper and not a legal conclusion. *C.f., e.g., Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 122967, at *4 (E.D. Tex. Jan. 9, 2016) ("[I]t is proper for Mr. Lynde, as an economist, to assume for purposes of his analysis that a FRAND obligation exists and to opine about what effect this obligation would have on damages. This analysis necessarily requires him to analyze the scope and nature of the alleged FRAND commitment and to give his opinions about its economic effect. An analysis of this type does not constitute improper legal opinion.").

**D. Matthews is applying his expertise to Whinstone's other expert opinions, not simply repeating them.**

    SBI's final complaint is that Matthews "simply repeats opinions provided by other experts

in this case" that concern "technical and engineering subjects outside of his area of expertise." Mot. Strike (Nov. 20, 2025) at 2, 19-20. Specifically, SBI cites to several pages in Matthews' report to claim that Matthews is "parroting the opinions of other experts" regarding "the reliability of SBI's miners, certain technical defects, as well as the useful life of the miners." *Id.* at 19-20. Like SBI's other arguments, this one is without merit.

SBI acknowledges—as it must—Matthews can opine on Whinstone's other expert testimony if he utilizes his own expertise. *Id*. at 19-20 (citing *Ramirez v. Escajeda*, No. EP-17-CV-00193-DCG, 2021 WL 1131721 (W.D. Tex. Mar. 24, 2021) and *Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc.*, No. CV H-15-100, 2016 WL 7374225, at *7 (S.D. Tex. Dec. 20, 2016)). And that is exactly what Matthews does:

> "Q. Would you agree that it is outside of your expertise to specifically diagnose reliability issues of the A10 miner?
>
> A. I don't know that I am offering an opinion for the reliability, and I'm certainly not intending on that. But these are the types of information that I would need to consider as a damages expert when determining an appropriate damages period that's based on a useful life. I—I have to conduct an investigation to see if there's a reasonable basis to assume equipment will operate for four years. And in this case, that's contradicted by testimony and SBI's own practices."

Ex. 2 at 287:15-288:3. Such considerations matter because the known existence of A-10 miner issues, technological obsolesce, and the importance of energy efficiency substantially shorten the useful life of the miners from an economic standpoint as they substantially impact SBI's depreciation expense and invoke Valentine's failure to consider millions of dollars in capital expenditures for new miners—thereby rendering Valentine's four-year useful life assumption unreasonable. Ex. 3 at 27-30. And this is not a case where Matthews relies on experts that have not appeared for a deposition—as with SBI's expert Randy Boltin.[17] SBI's efforts to exclude

---

[17] *See* Mot. Strike (Nov. 13, 2025) at 2-3, 8-12.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION TO EXCLUDE JEFFREY MATTHEWS**                                              9

Matthews' opinions on this ground should be denied. *E.g., Chrimar Sys., Inc. v. ADTRAN, Inc.*, No. 6:15-CV-00618-JRG, 2016 WL 11746545, at *2 (E.D. Tex. Nov. 7, 2016) ("It is not uncommon, and indeed permissible, for experts to rely on other experts in rendering their opinions, as Dr. Madisetti does here in relying on Mr. Mills's opinions regarding [matters outside of their field].").

## IV. CONCLUSION

The Court should deny SBI's motion to exclude Matthews and award Whinstone all such other relief to which it is entitled.

Respectfully submitted,

F<small>OLEY</small> & L<small>ARDNER</small> LLP

By: */s/Robert T. Slovak*

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/Brandon C. Marx*
Brandon C. Marx