IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

SBI CRYPTO CO., LTD.,

        Plaintiff,

    v.

WHINSTONE US, INC.,

        Defendant.

Civil Action No. 6:23-cv-252

## DEFENDANT WHINSTONE US, INC.'S RESPONSE
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar. No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT
WHINSTONE US, INC.**

**Table of Contents**

I.      SUMMARY OF ARGUMENT.................................................................................1

II.     FACTUAL BACKGROUND ............................................................................3

III.    LEGAL STANDARD ........................................................................................6

IV.     LEGAL ARGUMENT ........................................................................................8

   A.   Texas law recognizes and enforces oral contracts, including pre-suit oral settlement
        agreements............................................................................................................8

   B.   SBI and Whinstone entered into a valid and enforceable oral agreement.....................10

   i.    The Parties agreed to the essential terms of the agreement. ......................................11

   ii.   There was a meeting of the minds on the settlement agreement. ...............................12

   iii.  The settlement agreement was supported by substantial consideration. ...................15

   C.   Whinstone's fraudulent inducement claim is based on the Parties' settlement
        agreement. ...........................................................................................................15

   D.   SBI has not met its threshold burden to obtain summary judgment on Whinstone's
        affirmative defenses. ...........................................................................................17

V.      CONCLUSION....................................................................................................20

## Table of Authorities

**Cases**                                                                **Page(s)**

*Adams v. Petrade Intern., Inc.*,
  754 S.W.2d 696 (Tex. App.—Houston [1st Dist.] 1988) ........................................ 8

*Allstate Fire and Cas. Ins. Co. v. Engelhardt*,
  Civil Action No. SA-23-CV-213-FB, 2024 WL 4839167 (W.D. Tex. Mar. 10, 2024) .............. 9

*Anderson v. Durant*,
  550 S.W.3d 605 (Tex. 2018)................................................................. 16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................... 7, 8

*Arthur J. Gallagher & Co. v. Dieterich*,
  270 S.W.3d 695 (Tex. App.—Dallas 2008, no pet.)........................................... 15

*Baylor Health Care Sys. v. Emps. Reinsurance Corp.*,
  492 F.3d 318 (5th Cir. 2007) ............................................................ 18

*Beaumont Lamar Apartments, LLC v. Wallis Bank*,
  No. 4:23-CV-00341-O, 2024 WL 455343 (N.D. Tex. Feb. 6, 2024) ............................ 18

*Carter v. Allstate Ins. Co.*,
  962 S.W.2d 268 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)......................... 8

*Copeland v. Alsobrook*,
  3 S.W.3d 598 (Tex. App.—San Antonio 1999, pet. denied) .................... 13, 14, 15, 16

*Estate of Pollack v. McMurrey*,
  858 S.W.2d 388 (Tex. 1993).............................................................. 8

*G.H. Bass & Co. v. Dalsan Properties-Abilene*,
  885 S.W.2d 572 (Tex. App.—Dallas 1994, no writ) ....................................... 18

*Harris v. Balderas*,
  27 S.W.3d 71 (Tex. App.—San Antonio 2000, pet. denied) ............................... 10, 11

*Impact Finishing, Inc. v. Wild Card, Inc.*,
  713 F. Supp. 3d 322 (N.D. Tex. 2024) ............................................ 17, 18, 19

*Ishin Speed Sport, Inc. v. Rutherford*,
  933 S.W.2d 343 (Tex. App.—Ft. Worth 1996, no writ) .................................... 12

*Kelley v. Price–Macemon, Inc.,*
  992 F.2d 1408 (5th Cir.1993) ............................................................................ 7

*Mangum v. Turner,*
  255 S.W.3d 223 (Tex. App.—Waco 2008, pet. denied) ........................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ........................................................................................ 7

*Morris v. Covan World Wide Moving, Inc.,*
  144 F.3d 377 (5th Cir.1998) .............................................................................. 7

*Myers v. Thomas,*
  502 S.W.2d 941 (Tex. App.—Beaumont 1973, no writ) .......................................... 9

*Palestine Water Well Servs., Inc. v. Vance Sand & Rock, Inc.,*
  188 S.W.3d 321 (Tex. App.—Tyler 2006, no pet.)......................................10, 11, 13

*Patel v. Warwick Constr., Inc.,*
  No. 01-20-00208-CV, 2022 WL 175359 (Tex. App.—Houston [1st Dist.] Jan. 20, 2022, no
  pet.)............................................................................................................. 19

*Payne v. BNSF Ry. Co.,*
  650 S.W.3d 891 (Tex. App.—Fort Worth 2022, no pet.)......................................... 18

*Recio v. Recio,*
  666 S.W.2d 645 (Tex. App.—Corpus Christi, 1984, no writ) .................................... 8

*Roark v. Stallworth Oil & Gas, Inc.,*
  813 S.W.2d 492 (Tex.1991)............................................................................... 15

*Schoen v. Underwood,*
  No. W-11-CA-00016, 2012 WL 13034044 (W.D. Tex. May 15, 2012) ....................... 17

*Turner v. NJN Cotton Co.,*
  485 S.W.3d 513 (Tex. App.—Eastland 2015, pet. denied).....................................10, 11, 13, 14

*Wiley v. Bertelsen,*
  770 S.W.2d 878 (Tex. App.—Texarkana 1989, no writ)..........................................11

*Williford Energy Co. v. Submergible Cable Servs.,*
  895 S.W.2d 379 (Tex. App.—Amarillo 1994, no writ) ........................................... 13

*YNM Corp. v. Mgmt. Sols., Inc.,*
  No. 05-10-01279-CV, 2022 WL 1222712 (Tex. App.—Dallas Apr. 26, 2022, no pet.)............ 19

**Rules**

FED. R. CIV. P. 56 ................................................................................................................ 1, 7, 8

iv

Pursuant to Federal Rule of Civil Procedure 56, Defendant Whinstone US, Inc. ("Whinstone") files this Response to Plaintiff SBI Crypto Co., LTD.'s ("SBI") Motion for Summary Judgment and Brief in Support and states as follows.

## I.    SUMMARY OF ARGUMENT

After taking more than $7.5 million in settlement payments without objection, reservation, or complaint, SBI is now trying to walk away from its bargain and re-litigate claims it agreed to resolve. The law does not allow that, and the record flatly undermines the foundation of SBI's summary judgment motion.

The evidence is direct and objective: In July 2021, SBI's general manager, Jonathan Tanemori, expressly proposed to "settle and close out" all accounts under the Hosting Agreement for a specific sum, with the stated aim of avoiding escalation of issues to SBI's parent company's legal division. Whinstone performed exactly as agreed, wiring an initial payment of roughly $7.3 million followed by another true-up payment of approximately $237,000. SBI acknowledged receipt of payment in exchange "for termination of the hosting service agreement," gave thanks, and made no mention of any remaining claims. But now SBI seeks to press new claims—despite its objective written communications to the contrary—it never had a meeting of the minds to settle its disputes with Whinstone.

Under settled Texas law, there was a valid offer, acceptance, mutual assent, and millions of dollars in consideration between the parties that formed a valid and enforceable oral settlement agreement. SBI's claim that its undisclosed "true intent" to sue later means there was no agreement ignores that mutual assent is determined objectively by words and actions, not hidden thoughts. The objective record here demonstrates an explicit settlement, supported by concrete payment terms, fully performed by Whinstone, and unconditionally accepted by SBI.

The Parties' communications clearly demonstrate that SBI demanded approximately $7.5 million from Whinstone to avoid escalated legal action on SBI's part in connection with the termination of the Hosting Agreement. The Parties' communications also show that Whinstone paid the amount demanded, minus shipping and crating costs, to settle SBI's claims against Whinstone. While SBI may now dispute the contours of its settlement agreement with Whinstone, it does not—and cannot—dispute that the Parties entered into an oral agreement to settle at least some of SBI's claims against Whinstone for breach of the Hosting Agreement. Thus, SBI's argument that Whinstone's fraudulent inducement claim fails as a matter of law because "no settlement agreement exists" rings hollow. Moreover, Carson Smith, SBI's then Chief Executive Officer, admitted under oath that SBI withheld its plan to sue Whinstone in order to "get money out of Whinstone" through settlement payments, while Tanemori made specific assurances calculated to induce Whinstone to pay SBI approximately $7.5 million. Those assurances were false when made, intended to secure payment, and relied upon by Whinstone to its detriment.

Finally, SBI's motion also fails outright as to Whinstone's affirmative defenses. It does not even identify the elements of accord and satisfaction, release, settlement, waiver, estoppel, fraud, or fraudulent inducement, let alone produce evidence disproving them. Because SBI never shifts the burden, summary judgment cannot be granted. And even if the Court reached the merits, the same settlement evidence, along with other disputes over issues such as separately resolved construction delays and power-billing adjustments, creates genuine issues of material fact as to each defense.

SBI cut its deal. It took the money. It accepted the benefits. Now it wants to keep the money but escape its obligations. The law protects against exactly this kind of bad-faith repudiation, and summary judgment should be denied in its entirety.

## II.    **FACTUAL BACKGROUND**

On October 24, 2019, SBI and Whinstone entered into the Hosting Agreement permitting SBI to operate its cryptocurrency mining equipment at Whinstone's Rockdale, Texas facility. *See generally,* Ex. 1, Hosting Agreement. The Hosting Agreement expressly allowed termination upon a change of control. Ex. 1, Hosting Agreement at § 13.3. On May 28, 2021, after Riot Platforms, Inc. acquired Whinstone, Whinstone exercised its contractual termination right. Ex. 2, May 28, 2021 email from Chad Harris forwarding termination notice, SBIC0002050-52.

Following termination, the Parties began negotiating to wind up accounts and resolve all outstanding items arising under the Hosting Agreement. On June 23, 2021, SBI's general manager, Jonathan Tanemori, identified the "outstanding amount" owed under the Hosting Agreement as $7,800,621.38, provided bank details, and referenced repayment. Ex. 3, email chain between Harris and Tanemori, at SBIC0001860-61. Over the next month, Tanemori and Whinstone's CEO, Chad Harris, exchanged emails attempting to resolve all amounts Whinstone owed SBI, after reasonable offsets such as shipping and crating costs. *See generally* Ex. 3.

On July 25, 2021, Tanemori requested confirmation of the timing and amount "regarding settlement of the SBI Crypto hosting contract," and itemized several payment obligations (the security deposit, one-time payment balance, and prepayment adjustments) allegedly due July 28 "in accordance with the hosting contract." Ex. 3 at SBIC0001859. On July 26 and July 28, the Parties agreed on an initial payment of $7,293,888.27, with an adjustment to be handled after shipping costs were finalized. Ex. 3 at SBIC0001858-59. Specifically, Tanemori stated:

> To avoid creating the appearance that Whinstone is not fulfilling its obligations for settlement by July 28, 2021 based on the terms of the hosting contract, a suggestion would be that Whinstone remit the security deposit + interest portion, balance of one-time prepayment portion, and the May 2021 adjustment amount for an initial remittance of $7,293,888.27.

Adjustment for the full June prepayment amount ($508,470.52) can then be applied and adjusted once crate/shipping-related costs have been are agreed upon.

. . .

**Not remitting a bulk of what Whinstone is obliged to settle under the hosting agreement and stated to do so under your May 28 termination letter will raise concerns by our parent company and its legal/finance divisions**.

Certainly you would not intentionally breach contract nor disproportionately hold back $7.8M for crate and material costs, but how am I to explain this appearance internally if a bulk of the settlement amount is not remitted as obligated?

I remain confident in you that we can diffuse any potential issues quickly and professionally.

*Id.* (emphasis added).

In reliance on SBI's repeated assurances that the Parties were "settling and closing out" all accounts and disputes, Harris authorized and wired approximately $7.3 million with the clear understanding that it (along with the forthcoming true-up payment) resolved any issues between SBI and Whinstone. *See e.g.,* Ex. 4, Harris Dep. at 281:3-21. SBI's communications left no doubt: this payment (along with the forthcoming true-up payment) was intended to resolve all outstanding issues and, in SBI's own words, would "avoid involving" its parent company's legal division—an express representation that the transfer would eliminate the need for legal action. Ex. 3 at SBIC0001858-59. Tanemori's own acknowledgment underscored that understanding.

Upon receipt of the $7,293,888.27 wire, Tanemori emailed Harris, stating, "SBI has received notification of incoming wire transfer in the amount of $7,293,888.27 from Riot Blockchain *for the termination of the hosting service agreement*. Thank you." Ex. 3 at SBIC0001857 (emphasis added). There was no mention of reserved rights, no suggestion of additional claims to be pursued, and no assertion that further amounts remained due. *See* Ex. 8, Tanemori Dep. at 257:16-258:1; 290:8-12. The message was unequivocal: the payment satisfied the amounts owed in connection with Whinstone's termination of the Hosting Agreement. This

was consistent with Harris's understanding: "I was under the impression that with whatever number they told us to pay, our relationship ended and everybody went on their way. And there were no claims, like, everybody said, hey, fair is fair." Ex. 4, Harris Dep. at 282:6-14. Jeff McGonegal, the CFO of Riot, the company that purchased Whinstone, also understood that by making the payment, Whinstone was settling "everything associated with the contract." Ex. 5, McGonegal Dep. at 191:12-19.

Between November 2021 and March 2022, SBI continued to use the term "settle accounts" and pressured Whinstone to finalize the "true-up." *See, e.g.* Ex. 6, December 16, 2021 email chain between Jonathan Tanemori regarding the Adjustment for June 2021 Prepayment, SBIC0002113; Ex. 7, email chain between Tanemori and Harris at SBIC0002717-8. Again, at no point in these communications did SBI reserve any rights to bring additional claims under the Hosting Agreement, state that there were additional claims that needed to be resolved, or assert that further amounts remained due. *See* Ex. 8, Tanemori Dep. at 257:16-258:1; 290:8-12. Instead, Tanemori reaffirmed that the forthcoming true-up payment was to settle and close out SBI's account with Whinstone, "Please advise when payment will be made to settle and close out accounts between us." Ex. 7, email chain between Tanemori and Harris at SBIC0002717. On March 1, 2022, Whinstone wired SBI $237,129.12, reflecting agreed offsets. *Id.*

Unbeknownst to Whinstone, SBI had already developed a plan to sue Whinstone and engaged outside counsel to pursue litigation against Whinstone. Ex. 8, Tanemori Dep. at 277:11-15; Ex. 9, Smith Dep. at 358:10-360:3; Ex. 10, SBI Corporate Rep Dep. (Smith) at 230:19-231:1. On May 30, 2021, prior to any settlement discussions, Carson Smith emailed Tanemori a presentation cataloguing alleged breaches under the Hosting Agreement. Ex. 11, Email between Smith and Tanemori; Ex. 8, Tanemori Dep. at 275:19-276:8. SBI's own breaches were marked in

red; Whinstone's alleged breaches in green. *See generally* Ex. 11. Among the green-highlighted items, Smith proposed potential claims such as "damages for delayed start," but conceded internally, "we may lose this [claim] to not claiming within 12 months of becoming aware." *Id.* at SBIC0000068. Ultimately, both Smith and Tanemori acknowledged that SBI deliberately held back on advancing these claims as part of a calculated effort to entice Harris into wiring millions of dollars under the guise of a global settlement. Ex. 9, Smith Dep. at 360:21-361:13; 363:19-364:25; Ex. 8, Tanemori Dep. at 286:8-24; 287:10-24; 289:4-11.

Despite these admissions, once Whinstone wired SBI the agreed settlement payments ($7,293,888.27 in July 2021 and $237,129.12 in March 2022), SBI set its plan in motion. On June 3, 2022, notwithstanding the settlement and resolution of disputes, SBI sent a demand for approximately $62 million in purported Hosting Agreement damages. Ex. 8, Email forwarding demand letter at SBIC0000400. These claims were not only covered by the Parties' agreement to pay approximately $7.5 million in exchange for "clos[ing] out accounts between [the Parties]," Ex. 7, at SBIC0002717, but were also expressly barred by the Hosting Agreement's contractual limitations provision. Ex. 1 at §§ 8.6-8.7, 8.11.

Whinstone immediately rejected SBI's demand on July 11, 2022, reiterating that the Parties had settled all issues between them. Ex. 13, Letter responding to SBI demand at SBIC0003805. Nevertheless, SBI ignored both its prior agreement and its own internal acknowledgments, and on April 5, 2023 filed this lawsuit asserting claims squarely encompassed within the earlier settlement. Compl. (Apr. 5, 2023) (ECF No. 1). Those actions constitute a direct breach of the settlement agreement and confirm that SBI never intended to abide by the resolution it accepted.

## III.    LEGAL STANDARD

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir.1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Id.* "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record ...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." *Id.* 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-588 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the

standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson,* 477 U.S. at 255.

## IV.    LEGAL ARGUMENT

**A.    Texas law recognizes and enforces oral contracts, including pre-suit oral settlement agreements.**

SBI confidently asserts—without citing a single case—that a pre-suit settlement agreement must be reduced to writing to be enforceable. Mot. Summ. J. (Nov. 21, 2025) at1, 12. The absence of any authority is telling, and not because the issue has never been addressed. Rather, it is because Texas law squarely rejects SBI's position. For decades, Texas courts have consistently held that oral pre-suit settlement agreements[1] are valid and enforceable so long as the essential terms are agreed upon, absent a statute-of-frauds concern. *See, e.g.*, *Carter v. Allstate Ins. Co.*, 962 S.W.2d 268, 271 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding that Rule 11 does not preclude the enforcement of a pre-suit oral settlement agreement); *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 393 (Tex. 1993); (same); *Recio v. Recio*, 666 S.W.2d 645, 648 (Tex. App.— Corpus Christi, 1984, no writ) (same); *Adams v. Petrade Intern., Inc.*, 754 S.W.2d 696, 715 (Tex. App.—Houston [1st Dist.] 1988), writ granted (Tex. July 12, 1989), writ denied (Tex. Mar. 28, 1990), writ withdrawn (Tex. Mar. 28, 1990) (concluding that pre-trial oral settlement agreement was enforceable as it was not subject to Rule 11 or statute of frauds); *Mangum v. Turner*, 255 S.W.3d 223, 227 (Tex. App.—Waco 2008, pet. denied) (ruling that oral settlement agreement did not have to be in writing since the real estate transaction was only incidental to the agreement);

---

[1] To avoid ambiguity, several courts have held that, in compliance with Rule 11, any settlement resolving a dispute in a pending lawsuit must be documented in writing. But as the Texas Supreme Court recognized in *Estate of Pollack v. McMurrey*, Rule 11 "applies only to agreements concerning a pending suit; it does not apply to a pre-existing agreement asserted as a defense to a suit." *Estate of Pollack*, 858 S.W.2d at 393. Thus, oral pre-suit settlement agreements are enforceable in Texas.

*Myers v. Thomas,* 502 S.W.2d 941, 943 (Tex. App.—Beaumont 1973, no writ) (release need not be in writing); *Allstate Fire and Cas. Ins. Co. v. Engelhardt*, Civil Action No. SA-23-CV-213-FB, 2024 WL 4839167, at *2 (W.D. Tex. Mar. 10, 2024) (denying a motion to dismiss claims to enforce an oral, pre-suit settlement agreement). In short, Texas law recognizes that essential terms can be agreed to orally and evidenced through the Parties' communications and conduct—exactly what occurred here.

The evidentiary record leaves no doubt that a settlement occurred. First, contrary to SBI's assertion that oral settlement agreements cannot exist, the Parties had a history of resolving their disputes through oral settlement agreements. Ex. 8, Tanemori Dep. at 277:16-278:4. For example, Tanemori testified that when SBI failed to timely make a payment due to Whinstone on October 31, 2019, the Parties settled that dispute, but there is no written settlement agreement reflecting that resolution. *Id.*

Second, SBI and Whinstone expressly agreed that Whinstone would pay approximately $7.5 million in exchange for settling all accounts and avoiding escalating further issues to legal. Ex. 3 at SBIC0001858-59. In other words, SBI demanded that Whinstone pay over $7.5 million "for the termination of the hosting service agreement," Ex. 3 at SBIC0001857, and in exchange for that payment, SBI would not escalate the issue further and pursue legal remedies. At no point in time did SBI reserve rights, suggest that it intended to pursue additional claims, or assert that other amounts remained due. *See* Ex. 8, Tanemori Dep. at 257:16-258:1; 290:8-12. Whinstone performed in full, wiring approximately $7.293 million in July 2021 and an additional $237,000 in March 2022 after providing detailed documentation of crating costs. Ex. 3 at SBIC0001857; Ex. 7 at SBIC0002717.

After accepting those millions of dollars—funds that, by any measure, were tendered to resolve the Parties' disputes under the Hosting Agreement—SBI now attempts to walk back the bargain and disavow any settlement, denying Whinstone the benefit of the resolution it secured through performance. The question almost answers itself: what did Whinstone pay for if not the finality and closure that "settlement" and "closing accounts" plainly signify in the Parties' communications? The reality is that Whinstone and SBI entered into a valid and enforceable settlement agreement under Texas law, supported by offer, acceptance, mutual assent, and millions of dollars in consideration. Under settled Texas law, SBI and Whinstone entered into a valid and enforceable settlement agreement. At the very least, these facts present genuine and material issues that a jury must resolve; summary judgment on this record is unwarranted.

**B.     SBI and Whinstone entered into a valid and enforceable oral agreement.**

It is axiomatic that parties enter into a valid, binding contract when the following elements exist: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Palestine Water Well Servs., Inc. v. Vance Sand & Rock, Inc.,* 188 S.W.3d 321, 325 (Tex. App.—Tyler 2006, no pet.). The elements of proof are the same for oral contracts as for written contracts, except when enforcing oral contracts courts exclude the fifth element that requires execution and delivery. *Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 521 (Tex. App.—Eastland 2015, pet. denied). The terms of an oral contract may be proven by either circumstantial or direct evidence. *See id.* at 521 (citing *Harris v. Balderas*, 27 S.W.3d 71, 77 (Tex. App.—San Antonio 2000, pet. denied)). Evidence includes "the communications between the parties and the acts and circumstances that surround those

communications." *Id.* (citing *Palestine Water Well Servs.*, 188 S.W.3d at 325); *Wiley v. Bertelsen,* 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ).

       i.      *The Parties agreed to the essential terms of the agreement.*

SBI argues that the oral settlement agreement fails for want of "release language," as if a settlement must mimic a formalized, written release to be enforceable. Mot. Summ. J. (Nov. 21, 2025) at 12-13. That position misstates the law. As Texas courts have long recognized, oral settlement agreements—like other oral contracts—stand on the same footing as written agreements, requiring only offer, acceptance, mutual assent, and consideration. *Turner*, 485 S.W.3d at 521; *Harris*, 27 S.W.3d at 77. The law does not graft a "release clause" requirement onto oral settlements, and SBI cites no authority that imposes one.

Here, the evidence establishes both offer and acceptance in strict compliance with the agreed terms. On July 25, 2021, Tanemori, acting as SBI's general manager, made an express offer to resolve all outstanding accounts under the Hosting Agreement for a specified sum, subject to offset for shipping and crating costs. Ex. 3. His email to Harris identified an amount purportedly due and set a due date of July 28, 2021 "in accordance with the hosting contract." Ex. 3 at SBIC0001859. Tanemori's stated purpose was unambiguous: to "fulfill[] [Whinstone's] obligations for settlement" and "diffuse any potential issues quickly and professionally" so as to "avoid involving [SBI's] parent company's legal/finance divisions." *Id.*

That email was an offer in every legal sense—it specified the monetary terms, the scope ("settlement of the SBI Crypto hosting contract"), and the performance required. Whinstone wired $7,530,017.39 (paid in two installments, the first on or around July 28, 2021 for $7,293,888.27 and the second on or around March 1, 2022 for $237,129.12), in full compliance with the stated terms, thereby accepting and performing the agreement. Ex. 3; Ex. 7. Whether that conduct

constitutes acceptance—which it plainly does—is a quintessential question of fact for the jury. *Ishin Speed Sport, Inc. v. Rutherford,* 933 S.W.2d 343, 348 (Tex. App.—Ft. Worth 1996, no writ) (holding that whether conduct exhibits acceptance is a question of fact for the jury).

SBI's contemporaneous conduct confirms acceptance of the settlement. Upon receipt of the initial payment, Tanemori acknowledged that the payment was for the termination of the Hosting Agreement. Ex. 3. He did not reserve any rights, assert that additional amounts were due, or indicate that further claims would be pursued. *See* Ex. 8, Tanemori Dep. at 257:16-258:1; 290:8-12. McGonegal likewise understood that this payment was intended to settle "everything associated with the contract." Ex. 6, McGonegal Dep. at 191:12-19.

The offer was clear. The acceptance was unequivocal. The performance matched the terms exactly. Under Texas law, this is more than sufficient to establish offer and acceptance of an oral settlement agreement. SBI's later attempt to insist on "magic words" of release cannot erase the objective manifestations of agreement that occurred in July 2021, nor the fact that SBI accepted millions of dollars under that agreement without once suggesting additional claims remained.

### ii. There was a meeting of the minds on the settlement agreement.

SBI makes yet another flawed attempt to avoid the consequences of the settlement by arguing that its undisclosed "true intent" shows there was no meeting of the minds. In other words, SBI now asks the Court to disregard the plain words of its own negotiator, the payment terms it agreed to, and the millions of dollars it accepted—all in favor of an internal, uncommunicated plan to sue Whinstone later. That is not how Texas law works. A party cannot escape a contract by retroactively asserting secret intentions it never shared. Under Texas law, the existence of mutual assent is measured objectively, based on what the parties actually said and did, not on hidden thoughts never expressed: "[w]hen we determine whether there was a meeting of the minds, and

therefore an offer and acceptance, we objectively look at what the parties actually said and did rather than peering into the parties' subjective states of mind." *Turner*, 485 S.W.3d at 521; *see also Palestine Water Well Servs.,* 188 S.W.3d at 325.

Here, the objective evidence is overwhelming: SBI used the language of "settlement" and "closing accounts," identified the specific categories and timing of payments, and then accepted substantial consideration from Whinstone without objection or reservation. While it is not enough that one party thinks there was a contract, *see Williford Energy Co. v. Submergible Cable Servs.,* 895 S.W.2d 379, 384 (Tex. App.—Amarillo 1994, no writ), "[w]here the fact finder determines that one party reasonably drew the inference of a promise from the other party's conduct, that promise will be given effect in law." *Copeland v. Alsobrook*, 3 S.W.3d 598, 605 (Tex. App.—San Antonio 1999, pet. denied).

The record is replete with objective evidence that the Parties reached a meeting of the minds on the settlement. On July 25, 2021, Tanemori explicitly framed Whinstone's payment as fulfilling its "obligations for settlement," and set a fixed payment date of July 28 "in accordance with the hosting contract." *See* Ex. 3 at SBIC0001859. He coupled those terms with the stated objective to "avoid involving" SBI's parent company's legal division and to "diffuse any potential issues quickly and professionally." *Id.* As stated above, Whinstone accepted those terms by paying approximately $7.5 million to settle the claims. Ex. 4, Harris Dep. at 282:6-14; Ex. 5, McGonegal Dep. at 191:12-19. That understanding was objectively reinforced by Tanemori's email acknowledging receipt of the payment for "termination of the hosting service agreement" and thanking Whinstone. *See* Ex. 3 at SBIC0001857. At that moment, there was no reservation of rights, no indication that claims remained, and no assertion that further sums were due. *See* Ex. 8, Tanemori Dep. at 257:16-258:1; 290:8-12.

---

The same pattern recurred in early 2022 in the lead up to the true-up payment. Tanemori's February 2022 email asked Harris to "please advise when payment will be made to settle and close out accounts between us." *See* Ex. 7 at SBIC0002717. The March 1, 2022 true-up wire of $237,129.12 was in direct response to that request. *Id.* Again, SBI accepted the payment without objection or reservation.

Viewed objectively, these communications and actions leave no room for doubt. SBI proposed concrete payment terms with the express purpose of settlement and avoiding further legal intervention, Whinstone made payments as proposed (i.e. performed), and SBI accepted those payments without qualification. This mutual assent was manifested in conduct that a reasonable person would interpret as a final agreement to resolve the dispute. Under *Copeland*, a jury could—and ultimately will—infer from these facts that a promise was made and agreed upon, and that the promise was supported by mutual assent. *Copeland*, 3 S.W.3d at 605.

That SBI privately harbored an undisclosed intent to sue later, or had engaged outside counsel, does not alter the legal analysis. Texas law is clear: hidden intentions do not negate objectively manifested assent. *Turner*, 485 S.W.3d at 521. The only relevant inquiry is what the Parties said and did, and on that score the evidence shows an undeniable agreement. SBI's subjective, after-the-fact reinterpretation of events is legally irrelevant and cannot support summary judgment.

iii.    *The settlement agreement was supported by substantial consideration.*

Consideration is a bargained-for present exchange in return for a promise. *Arthur J. Gallagher & Co. v. Dieterich,* 270 S.W.3d 695, 702 (Tex. App.—Dallas 2008, no pet.) (citing *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 496 (Tex.1991)). "It can be either a benefit to the promisor or a detriment to the promisee. It may consist of some right, interest, or profit, or benefit that accrues to one party, or, alternatively, of some forbearance, loss or responsibility that is undertaken or incurred by the other party. A promise for a promise is sufficient consideration in Texas." *Copeland*, 3 S.W.3d at 605 (internal quotations omitted).

Here, SBI does not meaningfully dispute consideration—and for good reason. The settlement was supported by substantial consideration on both sides: Whinstone paid SBI $7,293,888.27 in July 2021 and $237,129.12 in March 2022, exactly as agreed, in exchange for SBI's promise to settle and close out all accounts and disputes under the Hosting Agreement. *See* Ex. 3 at SBIC0001857–59; Ex. 7 at SBIC0002717. Whinstone incurred a significant financial detriment, and SBI received a substantial monetary benefit, with the mutual exchange forming the agreed resolution.

These payments were not gratuitous; they were tendered and accepted pursuant to the parties' negotiated settlement terms, explicitly tied to "the termination of the hosting service agreement" and "closing out accounts between us." *See* Ex. 3; Ex.7. This bargained-for present exchange fully satisfies the consideration element under Texas law.

Thus, a valid and enforceable contract existed between SBI and Whinstone. At a minimum, there is sufficient evidence in the record to support a jury's ultimate finding that settlement agreement existed between SBI and Whinstone, and SBI breached that settlement agreement.

**C.    Whinstone's fraudulent inducement claim is based on the Parties' settlement agreement.**

4904-9024-4476.14

SBI does not challenge any of the basic elements of Whinstone's fraudulent inducement claim. *See* Mot. Summ. J. (Nov. 21, 2025) at Sect. IV(C). Rather, SBI argues that it is entitled to summary judgment on Whinstone's fraudulent inducement claim because a contract is an essential part of the claim and there was no contract between the parties. *Id.* SBI is wrong. As detailed above, the parties entered into a valid settlement agreement in which SBI released all of its claims against Whinstone related to the termination of the Hosting Agreement in exchange for Whinstone paying SBI approximately $7.5 million. *See* Sect. IV(A)-(B) *supra*.

The evidence is clear that the parties entered into a settlement agreement. *See, e.g.* Exs. 3 and 7, Ex. 4, Harris Dep. at 281:3-21. The details of the scope of SBI's release may now be in dispute; however, the fact that the parties entered into an agreement is not. That is precisely why Whinstone pleaded its claims in the alternative: either SBI breached the settlement agreement, in which it released all of its claims against Whinstone related to the Hosting Agreement, ***or*** SBI fraudulently induced Whinstone to enter into a settlement agreement in which it only intended to release some of its claims.

Fraudulent inducement exists where a party makes a material representation to induce entry into an agreement, knowing it is false, intending reliance, and causing injury. *See Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). The evidence here is stark: Smith's testimony could not have been clearer: SBI was negotiating with Whinstone to "get money out of Whinstone" while concealing its intent to sue Whinstone later, including for claims that even it recognized would likely fail due to lack of timely notice. Ex. 8, Tanemori Dep. at 275:19-276:8, 277:11-15; Ex. 9, Smith Dep. at 358:10-360:3; Ex. 10, SBI Corporate Rep Dep. (Smith) at 230:19-231:1; Ex. 11 at SBIC0000068. SBI engaged in months of negotiations and took millions of dollars in payments from Whinstone, all the while knowing it would file suit. *Id*. SBI never disclosed to Whinstone

that it believed other amounts were due or that it intended to file suit later. Ex. 9, Smith Dep. at

360:21-361:13, 363:19-364:25; Ex. 8, Tanemori Dep. at 286:8-24; 287:10-24; 289:4-11. Unlike

SBI's fraudulent inducement claim, which fails to identify any extra-contractual statements,

Whinstone's claim is supported by clear documentary evidence reflecting SBI's undisclosed intent

to pursue litigation despite its contemporaneous settlement assurances. Such conduct, when

coupled with specific assurances of settlement from Tanemori, easily create a jury question as to

whether SBI fraudulently induced Whinstone into settlement.

**D.    SBI has not met its threshold burden to obtain summary judgment on Whinstone's affirmative defenses.**

SBI moves for summary judgment on certain Whinstone affirmative defenses: (1) accord

and satisfaction, (2) release, (3) settlement, (4) waiver, (5) estoppel, (6) fraud, and (7) fraudulent

inducement. Mot. Summ. J. (Nov. 21, 2025) at 1, 17. In so doing, SBI fails to meet its burden of

proof. This alone forecloses summary judgment on these defenses.

First, SBI does not identify the essential elements of each of these affirmative defenses,

nor does it identify any evidence disproving any one of those essential elements. *See generally id.*

As a result, SBI fails to "demonstrate that there is no genuine issue of material fact on those

defenses." *Schoen v. Underwood*, No. W-11-CA-00016, 2012 WL 13034044, at *2 (W.D. Tex.

May 15, 2012) (Smith, J.); *see also Impact Finishing, Inc. v. Wild Card, Inc.*, 713 F. Supp. 3d 322,

348 (N.D. Tex. 2024) ("Here, Impact fails to even list the elements of Wild Card's remaining

affirmative defenses, let alone identify those elements which lack evidentiary support. Impact has,

therefore, failed to demonstrate that there is a lack of evidence to support 'an essential point' with

respect to these affirmative defenses."). Because SBI never shifted the burden, Whinstone is "not

obligated to produce any evidence" in response, and the Court cannot grant summary judgment on Whinstone's affirmative defenses. *Id.*

Second, even if the Court were to set aside SBI's failure to affirmatively disprove an essential element for each of Whinstone's affirmative defenses, the summary judgment record contains ample evidence creating genuine disputes of material fact for every element of each defense:

- <u>Accord and Satisfaction</u>: "exists when the parties have entered into a new contract, express or implied, which discharges the obligations under the original contract in a manner otherwise than as originally agreed." *Baylor Health Care Sys. v. Emps. Reinsurance Corp.*, 492 F.3d 318, 321-25 (5th Cir. 2007) (reversing grant of summary judgment due to existence of genuine issue of material fact as to "whether there was an accord and satisfaction").

    o **Evidence:** July 25–28, 2021 emails between Tanemori and Harris (Ex. 3 at SBIC0001859–57) showing an agreed payment of approximately $7.5 million "for settlement" and Tanemori's acceptance without reservation; Harris and McGonegal's testimony confirming intent to settle "everything associated with the contract." Ex. 4 Harris Dep. at 282:6–14; Ex. 5 McGonegal Dep. at 191:12–19.

- <u>Release/Settlement</u>: "the party asserting the defense is required to prove the elements of a contract" (*i.e.*, an offer, an acceptance, a meeting of the minds, a party's consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding). *Payne v. BNSF Ry. Co.*, 650 S.W.3d 891, 896 (Tex. App.—Fort Worth 2022, no pet.); *see also Beaumont Lamar Apartments, LLC v. Wallis Bank*, No. 4:23-CV-00341-O, 2024 WL 455343, at *5 (N.D. Tex. Feb. 6, 2024).

    o **Evidence:** Tanemori's July 25 email offering to settle all accounts, Harris's July 28 wire of $7.293 million, and Tanemori's "Thank you" acknowledgment without reserving rights (Ex. 3 at SBIC0001859–57); Harris and McGonegal's testimony confirming intent to settle "everything associated with the contract." Ex. 4 Harris Dep. at 282:6–14; Ex. 5 McGonegal Dep. at 191:12–19.

- <u>Waiver</u>: "the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *G.H. Bass & Co. v. Dalsan Properties-Abilene*, 885 S.W.2d 572, 577 (Tex. App.—Dallas 1994, no writ).

---

- o **Evidence**: SBI accepted approximately $7.5 million specifically designated to settle and close out accounts (Ex. 3; Ex. 7) and did not mention any further claims until nearly a year later.

- Estoppel: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Impact Finishing*, 713 F. Supp. 3d at 349.

  - o **Evidence:** Smith's and Tanemori's admission that SBI withheld its plan to sue until after settlement payments (Ex. 11 Email between Smith and Tanemori; Ex. 8, Tanemori Dep. at 275:19-276:8; Ex. 9, Smith Dep. at 358:10-360:3, coupled with Tanemori's assurances that payments would avoid "involving" SBI's legal division (Ex. 3), and Whinstone's reliance in wiring approximately $7.5 million (*see, e.g.* Ex. 4, Harris Dep. at 281:3-21).

- Fraud: "(1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury." *YNM Corp. v. Mgmt. Sols., Inc.*, No. 05-10-01279-CV, 2022 WL 1222712, at *5 (Tex. App.—Dallas Apr. 26, 2022, no pet.).

  - o **Evidence:** SBI's repeated "settlement" assurances (Ex. 3; Ex. 7) made while concealing its litigation plan (Ex. 9, Smith Dep. at 358:10-360:3, Ex. 8, Tanemori Dep. 286:8–24, 287:10–24); Harris's reliance in making the payment (*see, e.g.* Ex. 4, Harris Dep. at 281:3-21).

- Fraudulent Inducement: the same elements as fraud but with the added requirement of there being an existing contract. *See, e.g.*, *Patel v. Warwick Constr., Inc.*, No. 01-20-00208-CV, 2022 WL 175359, at *7 (Tex. App.—Houston [1st Dist.] Jan. 20, 2022, no pet.).

  - o **Evidence:** Oral settlement agreement formed via July 2021 emails and payments (Ex. 3; Ex. 7), induced by SBI's false assurances that payments would avoid "involving" SBI's legal division (Ex. 3).

Third, SBI—without citation to any evidence—improperly attempts to unilaterally define the scope of each of Whinstone's affirmative defenses. Mot. Summ. J. (Nov. 21, 2025) at 1, 17. Contrary to SBI's bald assertions, these defenses go beyond just SBI's failure to abide by the

Parties' settlement agreement entered into after contract termination and SBI's associated fraud. *Id.* For example, SBI waived its rights to bring claims, is estopped from doing so, and/or has committed fraud in numerous respects, including but not limited to:

- <u>RFU Date</u>: SBI received a convertible bond worth tens of millions of Euros as compensation for any alleged construction delays and settled any associated delays. *See, e.g.,* Ex. 14, Internal SBI email at SBIC0003054; and

- <u>Power Invoicing</u>: Whinstone agreed to settle power charges for the first couple months of operation, which included SBI's ability to bring claims for any alleged failures to timely or properly invoice for power. *See, e.g.*, Ex. 8, Tanemori Dep. at 277:16-278:4.

These are only examples. Taken together with the settlement-related evidence above, demonstrates that genuine disputes of material fact exist for every element of every affirmative defense challenged. Summary judgment must be denied.

## V.    <u>CONCLUSION</u>

The summary judgment record is replete with factual disputes over the existence, terms, and scope of the parties' settlement agreement, as well as SBI's fraudulent inducement of that agreement. Under settled Texas law, oral settlements are enforceable, and the jury must decide whether the payments and negotiations effected a binding resolution of all disputes, including the disputes that are the subject of this litigation. The same evidence raises fact issues on Whinstone's fraud claim. SBI's motion improperly attempts to resolve credibility disputes and weigh evidence in its favor. That is not the role of summary judgment. For these reasons, Whinstone respectfully requests that the Court deny SBI's Motion for Summary Judgment in its entirety.

4904-9024-4476.14

Dated: December 5, 2025                   Respectfully submitted,

                                          FOLEY & LARDNER LLP

                                    By:   /s/ J. Michael Thomas
                                          Robert T. Slovak
                                          Texas Bar No. 24013523
                                          rslovak@foley.com
                                          Steven C. Lockhart
                                          Texas Bar No. 24036981
                                          slockhart@foley.com
                                          J. Michael Thomas
                                          Texas Bar. No. 24066812
                                          jmthomas@foley.com
                                          Brandon C. Marx
                                          Texas Bar No. 24098046
                                          bmarx@foley.com
                                          2021 McKinney Avenue, Suite 1600
                                          Dallas, Texas 75201
                                          Telephone: (214) 999-3000
                                          Facsimile: (214) 999-4667

                                          **ATTORNEYS FOR DEFENDANT
                                          WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

                                          /s/ J. Michael Thomas
                                          J. Michael Thomas

4904-9024-4476.14