IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> WHINSTONE US, INC., <br><br> Defendant. | Civil Action No. 6:23-cv-252 |

**DEFENDANT WHINSTONE US, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE THE EXPERT OPINIONS OF CHARLES BYERS AND RANDY BOLTIN**

Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar. No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US, INC.**

Defendant Whinstone US, Inc. ("Whinstone") files this Reply in Support of Its Motion to Strike the Expert Opinions of Charles Byers and Randy Boltin.

## I.   INTRODUCTION

The Court must decide four fundamental issues:

1) Did Plaintiff SBI Crypto Co., Ltd. ("SBI") comply with its Rule 26 disclosure obligations and this Court's orders, thereby precluding automatic exclusion of Boltin as an expert witness and Byers' opinions on miner performance, IT industry standards in the cryptocurrency mining industry, and "thermal time constraints"?[1]

2) Did SBI establish that Byers is qualified to perform statistical analysis, extrapolate said analysis to SBI's entire lot of miners, and opine on the significance, meaning, and impact of weather data over forty miles away to establish causation?[2]

3) Did SBI show that Byers' opinions are derived from a valid, replicable methodology backed by sound foundation, as opposed to speculatory opinions caused by ad hoc analysis and an admitted lack of data?[3]

4) Whether Byers can opine on the meaning of the parties' hosting agreement ("Hosting Agreement") and whether Whinstone complied with that contract?[4]

The answer to all four questions is "no." SBU has not complied with Rule 26, and instead doubles-down on its disclosure failures, prejudicing Whinston's ability to rebut or cross examine.[5] SBI offers no credible qualifications for Byers' use of remote weather data or statistical extrapolation, attempting to downplay these opinions as mere "[c]ollect[ion of] historical daily temperatures or calculate[ed] percentages"[6]—contradicting SBI's admission that Byers intends to opine on air intake temperature data using this data.[7]

Further underscoring Byers' lack of qualifications and the lack of any causal link

---

[1] Mot. Strike (Nov. 13, 2025) at 3-4, 8-12 (ECF No. 148). Contemporaneous with this reply, Whinstone is filing an objection and motion to strike Byers' latest declaration (ECF No. 180-12).
[2] Mot. Strike (Nov. 13, 2025) at 4-5, 1-14.
[3] *Id*. at 5-7, 14-18.
[4] *Id*. at 5-6, 18.
[5] Resp. Mot. Strike (Dec. 1, 2025) at 2, 8-12 (ECF No. 180).
[6] *Id*. at 12-13.
[7] *Id*. at 20.

**REPLY IN SUPPORT OF MOTION TO STRIKE**
**CHARLES BYERS AND RANDY BOLTIN**                                                                                2

supporting any of his opinions, SBI erroneously conflates correlation with causation.[8] Instead of identifying any comprehensible methodology, SBI argues Byers' opinions need not be testable because he holds patents and reviewed selected communications and data, despite no experience in cryptocurrency mining.[9] Nor does SBI cite authority for Byers to interpret contracts, instead rebranding his legal conclusions as mere opinions that "touch on legal topics."[10] He does not.

Against that backdrop, SBI's last minute attempt to offer yet another Byers untimely opinion through a declaration (the "Untimely Declaration") is *prima facie* proof that Byers' opinions are inadmissible. The Court should therefore strike Boltin and Byers.

## II.    ARGUMENT AND AUTHORITIES

### A.    SBI Doubles-Down on Its Refusal to Comply.

When faced with its Rule 26 violations, SBI responds that it did not have to comply.[11] It does so at its peril as SBI cannot prove its misconduct is not substantially justified or harmless.[12]

First, SBI argues it did not need to disclose Boltin because he is not testifying at trial, and Byers may rely upon other expert opinions.[13] SBI only gets it half right. Rule 703 allows such reliance only if the underlying report is of a type experts in the field reasonably rely on and if it is reliable.[14] SBI fails both prongs. Byers has no experience with cryptocurrency mining facility testing and offers no evidence—and cannot offer evidence—that Boltin's report is of a type relied upon by qualified experts.[15] His knowledge is limited to "what the report tells me and what the e-mails promised," because he was absent for testing.[16] Boltin's test is also reliable because Byers

---

[8] *Id*. at 14.
[9] *Id*. at 1-2, 15-20.
[10] *Id*. at 20.
[11] *Id.* at 2, 8-12.
[12] *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996).
[13] Resp. Mot. Strike (Dec. 1, 2025) at 2, 8-12.
[14] *See, e.g.*, *Conn v. C.R. Bard, Inc*, No. 4:14-CV-298, 2021 WL 2346036, at *7 (S.D. Tex. June 8, 2021).
[15] *See, e.g.*, Mot. Strike (Nov. 13, 2025) Ex. 5 at 55:14-19.
[16] Resp. Mot. Strike (Dec. 1, 2025) Ex. B at 41:14-22.

**REPLY IN SUPPORT OF MOTION TO STRIKE**
**CHARLES BYERS AND RANDY BOLTIN**                                                                                3

failed to follow chain-of-custody and segregation procedures by combining dust from four different miners and putting his dust samples into used CVS prescription bottles—rendering the results of Boltin's test untraceable and unverifiable as a result of contamination and cross-pollination.[17] Independently, SBI cannot prove that Boltin's report "substantially outweighs [its] prejudicial effect."[18] Whinstone cannot cross-examine Boltin on critical issues such as testing methods, custody, and contamination. Byers therefore cannot rely upon it.

Second, despite SBI's bald assertions, Whinstone is not obligated to ask for any dust or collect its own samples.[19] Rule 26(a)(2)(B) requires **SBI** to provide the dust tested so that Whinstone can properly rebut and cross-examine. SBI did not, Rule 37 requires exclusion.

Third, SBI misreads *Texas Grain Storage, Inc. v. Monsanto Co.*, No. CV SA-07-CA-673-OG, 2009 WL 10700909 (W.D. Tex. May 26, 2009).[20] That case involved a challenge to reliability, not Rule 26 violations, and the court noted the movant had never sought to compel production.[21] Here, Whinstone obtained such an order, which SBI ignored.[22]

Finally, SBI, which has the burden of proof to avoid automatic exclusion, did not even brief all *Sierra Club* factors.[23] It did not meet its burden.[24] And it is wrong on the one factor it briefed (prejudice) because Whinstone lacks the data and dust samples to rebut or prepare for trial.

### B.     Byers Is Not Qualified to Extrapolate and Fails to Establish a Causal Link.

Byers does not limit his "expert" opinions to specific data subsets (*e.g.*, the KaboomRacks pictures and his miner disassembly).[25] Instead, he extrapolates from these data subsets so that his

---

[17] Mot. Strike (Nov. 13, 2025) Ex. 3 at 51-52; Resp. Mot. Strike (Dec. 1, 2025) Ex. B at 253:22-254:23.
[18] Fed. R. Evid. 703.
[19] Resp. Mot. Strike (Dec. 1, 2025) at 6.
[20] *Id.* at 11.
[21] *Texas Grain*, 2009 WL 10700909, at *6.
[22] *E.g.*, Resp. Mot. Strike (Nov. 21, 2025) at 6, 12-13.
[23] Resp. Mot. Strike (Dec. 1, 2025) at 9 n.10.
[24] *Sierra Club*, 73 F.3d at 571.
[25] *See* Resp. Mot. Strike (Dec. 1, 2025) at 9, 13-14.

opinion applies to *all* miners.[26] That is the essence of quantitative statistical analysis (*e.g.*, calculating the mean and standard deviation, creating a bell curve, conducting a regression analysis, performing randomization tests, etc.), for which Byers admits he is not qualified and did not perform.[27] Nor does correlation equal causation.[28] Byers has not and cannot establish either.

For example, Byers intends to testify that weather data from College Station—over forty miles away—is identical to conditions in Rockdale, and that outdoor air temperatures in Rockdale match miner intake temperatures inside a building.[29] This is plainly inaccurate. A qualified expert would need to analyze climatological differences between the two locations (*e.g.*, heat, sunlight, precipitation, humidity, etc.) and account for how building design, shade, and airflow affect temperature. Without those qualifications, explanations, or calculations to determine correlation and causation, his testimony is inadmissible.

C.  **SBI Admits that Byers' Opinions Are Unverifiable (*i.e.*, Speculation).**

The sole standard that SBI cites for Byers is "ASHRAE."[30] Byers has not and cannot identify a single cryptocurrency mining facility that uses (or has ever used) those standards,[31] and refuses to produce the "internet searches" that support his statement.[32] Byers ignores numerous categories of material information (*e.g.*, mining data, mining pool allocation data, mining pool

---

[26] *E.g.*, *id.* at 4 ("[B]yers concluded that '[v]arious design flaws, configuration problems, and poor operational procedures . . . led to a 45-55% reduction in the productivity of SBI's miners.").
[27] Mot. Strike (Nov. 13, 2025) Ex. 5 at 178:18-19, 178:21-22, 178:18-19, 178: 21-22, 257:19-21, 257:23-25.
[28] *Compare* Resp. Mot. Strike (Dec. 1, 2025) at 14 *with Falcon v. State Farm Lloyds*, No. 1:12-CV-491-DAE, 2014 WL 2711849, at *21 (W.D. Tex. June 16, 2014) ("'It is a general scientific principle that correlation does not imply causation; however, Armstrong has taken nothing more than a correlation and concluded that 'Ms. Falcon's signs/symptoms that have been experienced since the 2011 wildfire event and continue whenever occupying the Subject Property are the same as the health effects of the noted smoke components identified to be present in the Subject Property.'").
[29] Resp. Mot. Strike (Dec. 1, 2025) at 10.
[30] *Id.* at 16.
[31] Mot. Strike (Nov. 13, 2025) Ex. 5 at 68:8-19, 68:21-69:5, 69:7-20, 269:2-17.
[32] *Id.* at 139:25-140:2, 140:4-5, 143:1-144:18, 144:20-25, 145:2-6, 145:8-13, 145:15-146:12, 146:14-147:8, 147:10-14, 147:16-148:2, 148:4-148:19, 148:21-149:1, 149:3-19, 149:21-150:7, 150:23-151:21, 151:23-24, 154:19-24, 155:1-18, 155:20-21.

allocation methodology)[33] and failed to perform the analysis necessary to actually form an adequate foundation for his opinions.[34] Byers' opinions are mere *ipse dixit*.

SBI admits Byers' opinions cannot be tested, underscoring his failure to employ any methodology.[35] As SBI's self-proclaimed "causation expert," Byers was required to perform at least *some* level of testing to rule in or out other potential causes of alleged miner underperformance. He did none, leaving only an impermissible, untested hypothesis.[36]

**D.     SBI's Legal Authority Supports Whinstone's Position.**

Byers stated his intention to interpret the Hosting Agreement and opine that Whinstone "willfully violated" it.[37] Courts consistently bar such testimony. In SBI's case *Olivier v. Exxon Mobil Corp.*, 596 F. Supp. 3d 606 (M.D. La. 2022), the Fifth Circuit allowed an expert to apply regulations to case facts but prohibited opinions that the defendant "neglected" certain duties.[38] Likewise, in *Butler v. BNSF Ry. Co.*, No. 1:22-CV-00367-MJT, 2024 WL 2735020 (E.D. Tex. Mar. 26, 2024), the court excluded expert testimony on violations of law, standards of care, and reasonableness.[39] SBI's cases agree: Byers may not opine on contract interpretation or breach.

## II. CONCLUSION

The Court should strike Boltin and Byers' reports, including the Untimely Declaration, and preclude them from offering the opinions contained therein at trial. Whinstone further requests all such other relief to which it is entitled.

---

[33] Mot. Strike (Nov. 13, 2025) at 3 nn.9-10.
[34] *Id.* at 5-6, 14-17.
[35] When arguing "Whinstone cites no authority that *Daubert* requires testing in this context." Resp. Mot. Strike (Dec. 1, 2025) at 16.
[36] *E.g.*, *Hansen v. State Farm Lloyds*, No. CIV.A. H-01-1457, 2002 WL 34363619, at *3 (S.D. Tex. Apr. 12, 2002) (excluding expert, in part, when he "made no calculation on the amount of water required to expand the soil and uplift the foundation in support of his latest theory").
[37] Mot. Strike (Nov. 13, 2025) at Ex. 4 at 1, 39-40, 47-48, 75; Ex. 5 at 130:21-131:11, 159:12-25, 267:17-19, 267:21-268:1.
[38] *Olivier*, 596 F. Supp. 3d at 611.
[39] *Butler*, 2024 WL 2735020, at *5.

Respectfully Submitted,

FOLEY & LARDNER LLP

By: */s/Brandon C. Marx*
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar. No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR DEFENDANT WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2025, a copy of the foregoing document was filed electronically and a notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Brandon C. Marx*
Brandon C. Marx