IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,** *Plaintiff,* v. **WHINSTONE US, INC.,** *Defendant.* | Civil Action No.: 6:23-cv-252-ADA-DTG |

**PLAINTIFF'S RESPONSE TO WHINSTONE'S MOTION TO STRIKE PLAINTIFF SBI CRYPTO CO., LTD.'S DECLARATION OF CHARLES BYERS IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE CHARLES BYERS**

Plaintiff SBI Crypto Co., Ltd. ("Plaintiff" or "SBI") files this Response to the Motion to Strike Plaintiff SBI Crypto Co., Ltd.'s Declaration of Charles Byers in Support of Plaintiff's Response to Defendant's Motion to Strike Charles Byers (Dkt. 208) (the "Motion") filed by Defendant Whinstone US, Inc. ("Defendant" or "Whinstone") and respectfully shows the Court as follows:

**I.**
**SUMMARY OF ARGUMENT**

Whinstone's Motion is frivolous. Each of Whinstone's contentions regarding Byers' "new opinions" are contradicted by the record. Courts routinely allow experts to explain background information and facts through a declaration or affidavit in response to a motion to strike, which is exactly what SBI did in this case. Whinstone's challenges regarding the MVA Report are wholly unfounded as neither Whinstone nor its experts have ever challenged the MVA Report. Similarly, Whinstone does not challenge Byers' engineering qualifications. Finally, Whinstone's objection to Byers' review of the

PLAINTIFF'S RESPONSE TO WHINSTONE'S MOTION TO STRIKE PLAINTIFF SBI CRYPTO CO., LTD.'S DECLARATION OF CHARLES BYERS IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE CHARLES BYERS

Page 1 of 11

temperature data—that Whinstone recently located and produced for the first time after Byers' deposition—is a proper supplement under Rule 26.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

On March 28, 2025, SBI produced Charles Byers' ("Byers") Original Report (the "Original Report"), Byers' Curriculum Vitae, and MVA Scientific Consultant's ("MVA") Dust Analysis Report (the "MVA Report"). In his Original Report and at his deposition, Byers explained his process for collecting the dust samples, his use of MVA, and the conclusions he reached. [Dkt. 208-3 at 49-54]; [Dkt. 180-1 at 33:17-42:4, 250:21-255:11]. To date, Whinstone never requested the dust samples collected by Byers and analyzed by MVA, nor has Whinstone collected its own sample to conduct any testing. Whinstone never made any request to depose anyone from MVA, including the laboratory consultant that performed the dust composition analysis, Randy Boltin.[1] Whinstone's experts do not dispute any of the findings of the MVA Report. [Dkt. 180 at 6-7, 180-5 at 23-25, 180-6 at 8-9, 27-29, and 148-7 at 246:7-247:19]. Instead, Whinstone only challenges the "chain of custody" of the dust on SBI's miners. *Id.*

Similarly, Byers previously disclosed the temperature data analysis he performed using weather data recorded by an airport near College Station, Texas. [Dkt. 180 at 13, 180-2 at 174:15-176:3]. Whinstone's experts never performed their own analysis of any temperature data. Indeed, for the first time in its Motion to Strike the Expert Opinions of Charles Byers [Dkt. 148], Whinstone produced a website link to temperature data for

---

[1] Whinstone erroneously asserts that SBI had some affirmative obligation to produce the dust sample to Whinstone despite Whinstone never requesting it. This is akin to a defense attorney saying that plaintiff's counsel must ship the vehicle involved in a car accident to defense counsel rather than simply making it available for inspection upon request by counsel. Whinstone consistently misrepresents the facts and the Federal Rules of Civil Procedure that simply require a party to make physical evidence available upon request. *See* Fed. R. Civ. Pro. 34.

Rockdale, Texas (the "Rockdale Data"). Whinstone never previously produced this data, had its experts review the data, nor did they depose any of SBI's experts on this data. Both of SBI's experts, Byers and Phil Isaak ("Isaak") testified that the temperature databases they found did not have any historical temperature data for Rockdale, Texas when they prepared their reports. [Dkt. 180-2 at 174:15-176:3]; Isaak. Dep, Ex. A at 226:24-227:5. Because Whinstone produced additional data after Byers' deposition to challenge the completeness or accuracy of Byers' Original Report, Byers reviewed the newly identified Rockdale Data and found it further confirmed his analysis. [Dkt. 208-2 at ¶¶ 8-9]. Tellingly, after Byers explained that the Rockdale Data revealed even hotter temperatures than Byers' College Station temperature data, Whinstone chose not to raise the same objection to Isaak's temperature analysis. *Id*.

In response to new challenges and inaccuracies in Whinstone's Motion to Strike Byers' Opinions, Byers prepared a declaration (the "Declaration") explaining his qualifications, background information about MVA, and his review of the Rockdale Data. *See generally id.*; [Dkt. 180]. Whinstone takes a wholly contradictory position. According to Whinstone, SBI's experts cannot prepare declarations in response to Whinstone's various motions to strike, but simultaneously seeks to offer its own experts' declarations in support of its responses to SBI's motions to strike.[2] [Dkt. 130-7, Peters Declaration]; [Dkt. 143-3 Rayment Declaration]. Whinstone's Motion repeatedly misrepresents the record, this Court's prior rulings,[3] and the law. As such, the Court should deny the Motion.

---

[2] Notably, Whinstone's expert Richard Peters even offered testimony in his declaration which flatly contradicted his prior deposition testimony. [Dkt. 144].

[3] Whinstone's reference to the Court's September 11 ruling on Byers' supplemental report and the April 11 Discovery Dispute Chart have no relevance to this dispute. First, Byers supplemental report had nothing to do with the MVA Report. The supplemental report never mentioned the MVA Report [Dkt. 208-5] and, as seen by the arguments at the hearing, focused only on additional findings regarding SBI's operations in Russia. Second, Whinstone never raised any issues related to the MVA Report or the dust samples collected

## II.
## ARGUMENT AND AUTHORITIES

**A.   In Response to Whinstone's Numerous Mischaracterizations in its Motion to Strike, Byers' Declaration Properly Supplements his Report and Deposition Testimony.**

The mere fact that an expert "provides background information and gives supporting reasons and documentation for his opinions is not a basis to strike those portions of his Affidavit." *Lott v. Dutchmen Mfg., Inc.*, No. 9:05-CV-233, 2006 WL 6853589, at *2 (E.D. Tex. Sept. 25, 2006). "An affidavit may be appropriate to clarify confusion stemming from a challenged expert witness' deposition testimony." *Allen v. Ford Motor Co.*, No. 9:09CV100, 2010 WL 3791037, at *4 (E.D. Tex. Sept. 23, 2010). A declaration that provides mere clarifications of underlying assumptions or logical extensions of an initial report is a proper supplement and not an untimely disclosure. *Holcombe v. United States*, 516 F. Supp. 3d 660, 671 (W.D. Tex. 2021).

    1.   <u>Whinstone's assertions related to the MVA Report are devoid of any factual and legal support.</u>

To understand the sheer absurdity of Whinstone's Motion, this Court need look no further than Whinstone's assertion that "SBI trie[d] to introduce the following new opinions: … Characterization of [Byers'] qualifications (*i.e.,* shifting from information technology data center experience to 'high-performance electronic systems')." [Dkt. 208 at 6]. First, Whinstone never challenged Byers' qualifications to offer his engineering opinions. *See generally* [Dkt. 148]. Second, Byers' qualifications have never changed. Byers' Report sets forth his extensive experience and expertise on a wide-array of

---

by Byers in the April 11 Discovery Dispute Chart and the Court did not enter any ruling related to Byers Original Report or the MVA Report. Whinstone has never raised any discovery issue related to the MVA Report or the dust samples collected by Byers.

electrical and computer engineering topics, including two dozen patents related to "high-power computing and network equipment" and prior litigation experience involving "high-performance optical systems with thermal control and reliability implications." [Dkt. 208-3 at 6]. Further, in his deposition, Byers specifically testified that he is "an expert on the environmental operations of these types of high-performance electronics" and that he has "40 years of experience in high-performance, high-power system design." [Dkt. 180-2 at 215:11-216:4, 216:5-217:5]. Whinstone's Motion simply ignores Byers' Original Report and Deposition Testimony. Regardless, Winstone offers zero explanation for how an expert's characterization of his own expertise in a declaration constitutes a "new opinion" that warrants striking the Declaration.

Whinstone then further misrepresents Byers' deposition testimony to suggest Byers "tr[ied] to change testimony that he only opened up two crates and removed miners from one column in each crate to pull out a miner from each crate to now inspecting 'hundreds' of miners." [Dkt. 208 at 6]. In paragraph 4 of his Declaration, Byers specifically refers to Section 6.8.1.3 of his Original Report. [Dkt. 208-2 at ¶4]. In Section 6.8.1.3 of his Original Report titled "Environmental Conditions," Byers described his opinions regarding the significant accumulation of dust on SBI's miners and the impact of the dust. [Dkt. 208-2 at 50-52]. He explained in his Original Report[4] and during his deposition[5] that he opened two crates holding SBI's miners at a warehouse in Houston which contained approximately 200 miners and saw dust throughout the miners in those crates. Byers then stated he tore down or disassembled two miners and collected two dust

---

[4] [Dkt. 208-2 at 51].
[5] [Dkt. 180-2 at 250:21-253:16].

samples.[6] Whinstone's cited deposition testimony refers only to the collection of the two dust samples from five total miners. [Dkt. 208 at n.19]. Whinstone fails to offer any legal or factual support that Byers' explanation of his Original Report and his inspection constitutes a new opinion.

Whinstone also wrongly asserts that Byers offered new "opinions regarding the alleged amount of dust present during Byers' inspection, associated reasoning for the existence of that phenomenon, and the significance of certain results of the MVA report." [Dkt. 208 at 7]. Byers once again simply reiterates the same findings from his Original Report that SBI's miners from which he collected the dust sample were all "exposed to similar environmental and airborne duct contamination conditions at Rockdale." [Dkt. 208-2 at ¶ 4]. In his Original report, Byers explained he observed "significant dust accumulation and corrosion" on the SBI miners he inspected. [Dkt. 208-3 at 51]. He also explained that the MVA Dust Analysis showed similar material compositions for the dust collected from on top of the miners and the dust sample collected from inside a miner, leading Byers to the conclusion that the dust came from the Rockdale Facility. *Id.* at 52-54. Byers testified to all of this at his deposition. [Dkt. 180-2 at 259:17-260:3]. Whinstone only offers the conclusory statement that Byers offered new opinions without ever explaining what the new opinion is or how it deviates from his Original Report or deposition testimony.

Whinstone's last contention regarding the MVA Report is that Byers offered new opinions explaining "why Byers sent dust samples to MVA, how datacenters rely upon vendors like MVA to perform such testing, how Byers applied his experience interpreting

---

[6] *Id.* at 253:22-254:15.

PLAINTIFF'S RESPONSE TO WHINSTONE'S MOTION TO STRIKE PLAINTIFF SBI CRYPTO CO., LTD.'S DECLARATION OF CHARLES BYERS IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE CHARLES BYERS

Page 6 of 11

the MVA report, and what subject matter that Randy Boltin is an expert [sic]." [Dkt. 208 at 7]. In paragraph 5 of his Declaration, Byers simply points to his methodology as explained in Section 6.8.2 of his Original Report and the methodology contained in the MVA Report. [Dkt. 208-2 at ¶ 5]. Tellingly, Whinstone did not actually depose Byers on why he used MVA, the methodology MVA used, or what results Byers found significant from the MVA Report. [Dkt. 180-2 at 33:17-42:4].

Instead, Whinstone simply deposed Byers on whether he personally observed the testing MVA performed and what communications, if any, he had with MVA. *Id.* Similarly, Whinstone's experts reviewed the MVA Report and, instead of rebutting MVA's findings or the methodology employed, chose to simply claim that the dust on the miners could have accumulated while in sealed boxes after the miners left the Rockdale Facility. [Dkt. 180 at 6-7, 180-5 at 23-25, 180-6 at 8-9, 27-29, and 148-7 at 246:7-247:19]. Whinstone also chose to never depose Randy Boltin and instead, chose to remain willfully blind, then cry wolf over nonexistent Rule 26 violations. Thus, it became necessary and appropriate for Byers to offer a Declaration concisely explaining the background for the MVA Report and the opinions it informed in his Original Report. Such declarations are routinely permitted by courts; even Whinstone submitted such a declaration in this case.[7] *See Lott*, 2006 WL 6853589, at *2; *Allen*, 2010 WL 3791037, at *4; *Holcombe*, 516 F. Supp. 3d at 671.

    2.    <u>Whinstone's assertions regarding the temperature data in Byers' Declaration continue to misrepresent Byers' Original Report and deposition testimony.</u>

---

[7] [Dkt. 130-7, Peters Declaration]; [Dkt. 143-3 Rayment Declaration].

As it relates to Byers' analysis of temperature data, Whinstone raises three objections, but none of them have merit. First, Whinstone asserts Byers offered new opinions on the Rockdale data, which Whinstone wrongly alleges "has always been available on multiple internet sources." [Dkt. 208 at 6]. Second, Whinstone asserts Byers offered new opinions comparing the Rockdale Data to the College Station Data. *Id*. Third, Whinstone asserts Byers somehow made revisions to his analysis and shifted it from a quantitative to qualitative analysis. *Id*.

Whinstone offers no supporting testimony or other evidence that the Rockdale Data "has always been available on multiple internet sources." *Id*. Neither hyperlink included by Whinstone in its Motion were disclosed prior to Whinstone's Motion to Strike Byers. In fact, Whinstone identifies 2020 Weather History at H. H. Coffield Regional Airport, Weather Spark—the second website cited by Whinstone in its Motion—for the first time in this Motion. *Id*. at n.6. Whinstone can only attest to the availability of this data as of the time it drafted this Motion, which was well before Byers drafted his Original Report. Relatedly, Byers testified in his deposition as well as his Declaration that there existed no publicly available historic temperature data for Rockdale, Texas at the time he drafted his Original Report. [Dkt. 208-2 at ¶ 8]; [Dkt. 180-2 at 174:15-176:3]. Whinstone's experts apparently did not locate the Rockdale Data prior to their rebuttal reports because their experts do not mention any such data. Further, Whinstone did not present the Rockdale Data at its depositions of Byers. Thus, as Byers explains, Whinstone's Motion presented him with his first opportunity to examine the Rockdale Data. [Dkt. 208-2 at ¶ 8]. In response to a brand new issue raised by Whinstone after his deposition, Byers responded by examining the data and concluded it further confirmed his findings in his

Original Report that ambient temperatures exceeded the 29.5-degree Celsius air-intake temperature maximum in the Hosting Agreement. *Id.* at ¶¶ 8-9.

Byers' remaining explanations about his temperature analysis simply clarify the work he did, *i.e.* that he offered quantitative observations and drew conclusions based on his experience and review of the evidence.[8] Moreover, at no point did Whinstone identify a single error in Byers' "statistical or quantitative" analysis or explain why any of his data sets are fundamentally flawed or unreliable. *See generally* [Dkt. 148, 208]. As exhibited in the present matter, an expert properly conveys such an explanation through an affidavit or declaration in response to a motion to strike. *See Lott*, 2006 WL 6853589, at *2; *Allen*, 2010 WL 3791037, at *4; *Holcombe*, 516 F. Supp. 3d at 671.

### B. Whinstone Cannot Credibly Claim any Prejudice for Opinions its Own Experts do not Dispute.

SBI maintains that Byers' Declaration does not trigger any *Sierra Club* analysis because it does not contain any untimely disclosures. Regardless, Whinstone cannot credibly claim any prejudice, nor does it even attempt to in its Motion. Whinstone makes the conclusory statement that the Court determined "Whinstone will be prejudiced by having to expend additional time and money to respond to an improper disclosure." [Dkt. 208 at 9]. But Whinstone fails to explain how Byers' Declaration specifically prejudices Whinstone. *Id.* Indeed, Whinstone knew about the MVA Report and Byers' opinions in it since March 28, 2025, which its experts reviewed, and could not dispute its findings. [Dkt. 180 at 6-7, 180-5 at 23-25, 180-6 at 8-9, 27-29, and 148-7 at 246:7-247:19]. Similarly,

---

[8] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 155 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"); *Kozak v. Medtronic, Inc.*, 512 F. Supp. 2d 913, 918 (S.D. Tex. 2007) ("An expert's testimony does not always have to be based on scientific testing; it can be based on personal experience.").

Whinstone knew about Byers' analysis of the temperature data since March 28, 2025 and his methodology, which its experts also reviewed and rebutted. [Dkt. 180-6 at 26-28, 180-5 at 1, 15-18]. Thus, no additional rebuttal work is needed nor warranted by Whinstone's willful blindness. If, in fact, Whinstone knew about the Rockdale Data prior to its experts' disclosures and Byers' deposition, Whinstone could have disclosed the data or ask its experts review it. However, since the Rockdale Date reveals even hotter temperatures, the fact that Whinstone's experts did not review the data is even more telling.

Byers' Declaration is harmless and substantially justified as it was necessary to rebut Whinstone's repeated mischaracterizations and false statements in its Motion to Strike Byers. *See generally* [Dkt. 180]. Courts routinely allow such affidavits and declarations. Consequently, Whinstone offered two declarations in support of its responses to SBI's motions to strike. *See Lott*, 2006 WL 6853589, at *2; *Allen*, 2010 WL 3791037, at *4; *Holcombe*, 516 F. Supp. 3d at 671.

Finally, the Declaration is important to SBI as it offers context and explanation in support of SBI's Response to Whinstone's Motion to Strike Byers, which is a proper use for a declaration. *See id.*

## III.
### CONCLUSION

For the foregoing reasons, the Court should deny Whinstone's Motion to Strike Plaintiff SBI Crypto Co., Ltd.'s Declaration of Charles Byers in Support of Plaintiff's Response to Defendant's Motion to Strike Charles Byers.

Respectfully submitted,

By: */s/ Joshua M. Sandler*
Joshua M. Sandler
  Texas Bar No. 24053680
  jsandler@winstead.com
Cory Johnson
  Texas Bar No. 24046162
  cjohnson@winstead.com
Andrew Patterson
  Texas Bar No. 24131573
  apatterson@winstead.com
John D. Janicek
  State Bar No. 24125636
  jjanicek@winstead.com
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF
SBI CRYPTO CO. LTD**

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure via the court's e-filing system on December 15, 2025.

*/s/ Andrew Patterson*
Andrew Patterson