IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SBI CRYPTO CO., LTD.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**WHINSTONE US, INC.,**<br><br>*Defendant*. | **Civil Action No. 6:23-cv-252** |

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S MOTION IN LIMINE**

Plaintiff SBI Crypto Co., Ltd. ("SBI" or "Plaintiff") hereby submits its Objections to the Motion in Limine filed by Defendant Whinstone US, Inc. ("Whinstone" or "Defendant") (Dkt. 249) as follows:

**Motion *in limine* No. 1: Negotiation, execution, or performance of the Pyote Hosting Agreement.**

Evidence regarding the negotiation, execution, and (lack of) performance of the Pyote Hosting Agreement is plainly relevant to SBI's fraudulent inducement claims. SBI contends, and the evidence shows, that Whinstone performed a bait-and-switch involving the Pyote Hosting Agreement and the Rockdale Hosting Agreement. Dkt. 11 at ¶¶ 11-26. Specifically, Whinstone knew its ability to host miners at HODL Ranch in Pyote, Texas was officially dead by July 3, 2019. *See* Joint Pre-Trial Order Ex. A, SBI's Contentions; Dkt. 206 Ex. A at 2-3. Instead of informing SBI of the failed deal, however, Whinstone executed the Pyote Hosting Agreement on July 10, 2019, and then strung SBI along for weeks with the belief that SBI's miners would be up and running in Pyote by October. *Id*.

On August 30, 2019, SBI's representatives in Japan asked to schedule a visit to the

Pyote Facility. *Id.* In a desperate response to hide their malfeasance, Whinstone's CEO explained that the Pyote deal had fallen through "due to an impasse in the contract documents of the facility." *Id.* Whinstone then completed its bait-and-switch by claiming that it "used all the construction documents, power contract, and resource[s] [sic] procured for the [Pyote] location to speed the bidding process and prepare a ready-made project that [could] be deployed in weeks 20 weeks" in Rockdale, Texas ("Rockdale Facility"). *Id.*

Therefore, evidence regarding the negotiation, execution, and performance of the Pyote Hosting Agreement is plainly relevant to SBI's claims. Moreover, Judge Manske already ruled that "[t]he Court does not find that the merger clause or reliance disclaimer in the Agreement contains specific language adequate to meet [the] high standard" to bar SBI's fraud claims. Dkt. 27 at 8; Dkt. 26. Further, the parties explicitly agreed that "[n]either party excludes or limits its liability to the other party for … fraud or fraudulent misrepresentation." Dkt. 205 Ex. 1, the Hosting Agreement, at 16. Finally, Whinstone fails to show how this evidence would mislead the jury, or how that risk substantially outweighs its probative value. Therefore, the Court should deny Whinstone's Motion.

**Motion *in limine* No. 2: Power Purchase Agreement**

As demonstrated by Whinstone's own motion, evidence regarding Whinstone's failure to secure a Power Purchase Agreement prior to the execution of the Hosting Agreement is plainly relevant to SBI's claims. Whinstone represented to SBI that it could power up SBI's miners by December 2019 and that it had "secured for commercial access up to one (1) gigawatt of aggregated electricity that can be delivered to the Data Center … " *See* Joint Pre-Trial Order Ex. A, SBI's Contentions; Dkt. 206 Ex. A at 3-5.

Whinstone's undisputed lack of a Power Purchase Agreement prior to entering into

the Hosting Agreement establishes another example of Whinstone's fraud. *Id*. Furthermore, Whinstone's assertion that it eventually provided 50 MW of electricity to SBI leaves out critical context. Despite its promise in the Agreement that it would power up SBI's miners by December 2019, Whinstone did not secure a Power Purchase Agreement until May 2020 and did not power up SBI's miners until July and August 2020. *Id*. Whinstone's substantial delay—caused, in part, by Whinstone's false representations about its power capacity and ability to deliver electricity—damaged SBI. *Id*.

Thus, evidence and testimony regarding Whinstone's lack of a Power Purchase Agreement prior to entering the Hosting Agreement is plainly relevant to SBI's claims. Moreover, Judge Manske already ruled that "[t]he Court does not find that the merger clause or reliance disclaimer in the Agreement contains specific language adequate to meet [the] high standard" to bar SBI's fraud claims. Dkt. 27 at 8; Dkt. 26. Further, the parties explicitly agreed that "Neither party excludes or limits its liability to the other party for … fraud or fraudulent misrepresentation." Dkt. 205 Ex. 1, the Hosting Agreement, at 16. Finally, Whinstone fails to show how this evidence would mislead the jury, or how that risk substantially outweighs its probative value. Therefore, the Court should deny Whinstone's Motion.

**Motion *in limine* No. 3: Value of Bitcoin.**

This Motion is duplicative of several other motions filed by Whinstone and SBI refers this Court to SBI's Responses to Whinstone's Motion to Strike Valentine and Motion to Strike Valentine's Declaration. Dkt. 165; Dkt. 210 Ex. 1. Whinstone should not be permitted to relitigate currently pending motions as a motion in limine.

Regardless, SBI once again asserts that SBI sustained lost profits in the form of lost

bitcoin from its mining. To adequately compensate it for its losses, SBI is entitled to the bitcoin's present value. *Ahlgren v. Ahlgren*, 703 S.W.3d 378, 402 (Tex. App.—Corpus Christi-Edinburg 2023, pet. denied). Furthermore, SBI previously disclosed historical bitcoin prices in Dr. Valentine's initial expert report and Whinstone offers less-than credible reasons as to why SBI should not be allowed to present previously-disclosed information to the jury. Dkt. 165; Dkt. 210 Ex. 1.

**Motion *in limine* No. 4: Legal opinions on contract compliance and meaning of contractual terms.**

The Court should deny Whinstone's Motion as an improper and untimely attempt to relitigate its Motions to Strike Byers and Isaak. SBI incorporates by reference herein its Responses to each. Dkt. 180 at 20; Dkt. 230 at 10. Opinions that "touch on legal topics" are not automatically inadmissible. *Olivier v. Exxon Mobil Corp.*, 596 F. Supp. 3d 606, 611 (M.D. La. 2022). "[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied … " *Butler v. BNSF Ry. Co.*, No. 1:22-CV-00367-MJT, 2024 WL 2735020, at *5 (E.D. Tex. Mar. 26, 2024) (citing *Olivier*, 596 F. Supp. at 611). The court must determine "whether the expert's opinions bear on some factual inquiry or whether they bear solely on the legal conclusions urged." *Olivier*, 596 F. Supp. 3d at 611.

Courts routinely allow experts to testify as to industry standards and whether a party complied with industry standards as required under contract. *Hess Corp. v. Schlumberger Tech. Corp.*, 26 F.4th 229, 234 (5th Cir. 2022); *Nucor Corp. v. Requenez*, 578 F. Supp. 3d 873, 892 (S.D. Tex. 2022) (allowing expert testimony as to whether the steel joists complied with industry standards required by the contract); *BP Products N. Am. Inc. v. Int'l Maint. Corp.*, No. CIV.A. H-03-5218, 2005 WL 5976553, at *3 (S.D. Tex.

May 27, 2005) (expert had "extensive experience dealing with invoices to ensure they comply with contractual requirements" and "[a]s a result, he may present evidence based on his education and experience regarding what billing was proper or improper based on his understanding of the meaning of the contract provisions when considered in light of industry practices."); *Soo Line R. Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1375 (8th Cir. 1977) (expert may testify as to the defendant's noncompliance with the contract where the contract includes complex technical specifications.).

Furthermore, factual compliance with a contract is not an impermissible legal opinion. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 435 (5th Cir. 2006). Any testimony offered by lay witnesses on factual compliance with the Hosting Agreement should similarly be permitted. At a minimum, the Court should deny Whinstone's Motion at this stage.

**Motion *in limine* No. 5: Post-Hosting Agreement activity or conduct at the Facility.**

First, this Motion is too overbroad and vague, and any such evidence should be addressed on a case-by-case basis. Second, and in the alternative, should this Court grant Whinstone's Motion, the Court should modify it to similarly restrict Whinstone. Specifically, Whinstone has regularly sought to present evidence related to the performance of miners operated at the Facility following the termination of SBI's Hosting Agreement.

**Motion *in limine* No. 6: SBI's mining operations at and financial results from non-Facility operations.**

This Court should deny Whinstone's Motion for several reasons. First, this Motion is overbroad as to the evidence it seeks to exclude. Second, Whinstone falsely represents that SBI has "repeatedly rejected discovery on other SBI mining locations on relevance

grounds." SBI properly raised objections to Whinstone's discovery request, but still produced responsive documents and allowed for Whinstone to depose SBI's witnesses on SBI's mining operations at other facilities. Whinstone cannot credibly claim otherwise.

Third, Whinstone asserts, without any basis, that SBI has not produced source documents regarding its operations and mining pools. Whinstone cites to no deposition testimony or other evidence to suggest that any documents within SBI's possession, custody, or control have been withheld. SBI has produced voluminous records on its mining operations in Russia as Whinstone expressly acknowledges within its Motion. Whinstone has no basis for its assertion that 1,005 documents, plus an additional 182 documents is "minimal information." SBI's production includes the relevant contracts with Muroo, the third-party that hosted SBI's miners in Russia, communications with Muroo, invoices, due diligence documents, spreadsheets containing information related to the performance of SBI's miners including the mining rewards, and even a PowerPoint presentation SBI found in an old filing cabinet. Dkt. 96 A-1. All of this information is plainly relevant to SBI's claims as SBI sent 20,000 A10 miners from the same production batch as the 20,000 A10 miners sent to Rockdale. SBI's miners in Russia significantly outperformed SBI's miners in Rockdale. What is more, Whinstone deposed SBI's witnesses and experts on SBI's Russian mining operations. Whinstone cannot credibly claim it has "limited means (if any) for cross examination."

Finally, Whinstone's objection to a lack of personal knowledge and hearsay lacks merit and is overbroad. All of the documents have been produced by SBI and thus, SBI would have personal knowledge of these documents. SBI would also have personal knowledge of the communications it participated in with third parties and the performance of its miners at various locations. Regarding hearsay, this should be handled

on a document-by-document basis as various exceptions apply and cannot reasonably be presented as to the over 1,000 documents produced by SBI.

**Motion *in limine* 7: Canaan statements to SBI.**

Whinstone's Motion is overbroad and vague and any alleged statements should be addressed on a case-by-case basis. Whinstone asserts, without any basis, that all evidence or testimony regarding statements made by Canaan are hearsay and that no exception would apply. SBI cannot possibly address every single possible piece of evidence or testimony for the broad category of information Whinstone seeks to exclude (while failing to identify any documents).

Indeed, many statements made by Canaan do not qualify as hearsay as they may not be used for the truth of the matter asserted or meet various hearsay exceptions. Moreover, Whinstone's objection to the use of any such statements by SBI's experts similarly lacks merit. Specifically, Whinstone suggests that engineers offering analysis opinions on a product's failure mode do not regularly rely upon statements made by the manufacturer of the product. Regardless, Whinstone provides no basis for the assertion that SBI's experts cannot possibly lay such foundation while failing to cite any deposition testimony. Similarly, Whinstone does not identify any unfair prejudice that might result from SBI's experts using such information, or why Whinstone could not cross-examine them on any such statements or evidence. Whinstone has never, nor could it, assert that such statements have not been disclosed or available for review by its own experts. Therefore, the Court should deny Whinstone's Motion.

**Motion *in limine* No. 8: SBI's Bitcoin retention policy.**

Whinstone again asserts, without any basis and in contradiction to the evidence, that SBI failed to disclose "source data evidencing how much Bitcoin was mined and sold."

SBI produced various financial statements evidencing Bitcoin mined and sold. Further, even Whinstone's expert, Jeffrey Matthews, used the financial statements to calculate his own retention ratio. *See* Dkt. 195 Ex. B at 18. Whinstone then falsely asserts that the sole source for SBI's purported retention policy is Nick Vitalis. Nick Vitalis is simply the only SBI witness that Whinstone chose to question on SBI's retention policy. Tellingly, even after receiving Dr. Valentine's Initial Report, which calculated a retention ratio based off of conversations with Carson Smith, Jonathan Tanemori, and Nick Vitalis, Whinstone chose not to depose SBI's Corporate Representative on SBI's retention ratio from 2019-2021. Whinstone's deposition strategy does not provide a basis to exclude evidence.

**Motion *in limine* No. 9: SBI's alleged lost profits post-Hosting Agreement termination.**

Whinstone's Motion is wholly untimely and improper. The deadline for dispositive motions passed on November 21, 2025. Dkt. 118. Whinstone's Motion is effectively a dispositive motion as it argues that SBI is not entitled to lost profit damages following the termination of the Hosting Agreement. As such, it is untimely and should be denied. Regardless, SBI incorporates herein by reference its Response to Whinstone's Motion for Partial Summary Judgment. Dkt. 206.

Alternatively, Whinstone's Motion is an untimely *Daubert* motion as Whinstone specifically cites to its previously-filed Motion to Strike and simply copies its prior argument and authorities. The deadline for Whinstone to file its *Daubert* motion regarding Dr. Valentine passed on November 7, 2025. Whinstone should not be allowed to untimely re-litigate dispositive motions and *Daubert* motions. SBI incorporates herein by reference its Response to Whinstone's Motion to Strike Dr. Valentine and maintains that it is entitled to present post-termination damages to the jury. Dkt. 165; Dkt. 210 Ex.

1. Therefore, the Court should deny this Motion.

**Motion *in limine* No. 10: SBI's alleged lost profits post-RFU Date.**

Whinstone's Motion is wholly untimely and improper. The deadline for dispositive motions passed on November 21, 2025. Dkt. 118. Whinstone's Motion is effectively a dispositive motion as it argues that SBI is not entitled to lost profit damages related to the delay in operations caused by Whinstone. Whinstone even goes beyond the arguments it actually raised in its Motion for Partial Summary Judgment and seeks to introduce new dispositive arguments regarding SBI's damages. Whinstone now attempts to argue that SBI obtained compensation for its delay damages through a convertible bond. Motions in limine are not the vehicle to argue contested fact issues or to raise untimely dispositive motions. As such, it is untimely and should be denied. Regardless, SBI incorporates herein by reference its Response to Whinstone's Motion for Partial Summary Judgment. Dkt. 206.

**Motion *in limine* No. 11: Pictures or video of Ashton Harris drinking milk at his deposition.**

Whinstone's Motion is without merit. First, Whinstone cites no authority for why a witness's choice of beverage is *unfairly* prejudicial. In fact, Whinstone does not even argue that pictures or videos of Ashton Harris consuming milk during his deposition is *unfairly* prejudicial, which is the standard under Rule 403.

Second, Whinstone could not credibly claim any *unfair* prejudice because Ashton Harris is Whinstone's own witness and this occurred during Mr. Harris's second deposition. Regardless of whether Whinstone encouraged its Chief Technology Officer to consume this beverage during his second deposition or its counsel chose not to provide this direction to its witness, Whinstone will sustain no unfair prejudice in this context. At

the same rate, SBI should not be punished for Whinstone's actions (or inactions). Third, the Court should not restrict SBI's ability to impeach Mr. Harris, should SBI need to do so. Therefore, the Court should deny this Motion.

**Motion *in limine* No. 12: Third-Party reports / photos / videos / communications**

Whinstone's Motion is overbroad and vague. Moreover, a motion in limine seeking exclusion of all evidence produced in discovery by third-parties is improper. Whinstone cites no authority for such a position. Whinstone does not raise any objection to any specific document, but rather nakedly asserts that any third-party document, even if it involved SBI personnel, is somehow inadmissible for a lack of personal knowledge and hearsay. Moreover, SBI can sufficiently authenticate and establish personal knowledge, where necessary, for evidence involving these third parties.

For example, Lancium produced a business records affidavit authenticating the documents it produced. SBI hired KaboomRacks, who exchanged relevant pictures, videos, and communications with SBI's then-CEO Carson Smith. SBI produced Muroo documents and can clearly establish and authenticate the documents in its possession, custody, and control. Similarly, as it pertains to MVA, Charles Byers, SBI's retained expert, hired MVA to provide laboratory testing of a dust sample taken from SBI's miners. Whinstone does not even define what a "Facility vendor" is or what evidence it would exclude.

Next, much of the evidence Whinstone seeks to exclude would not constitute hearsay (such as pictures, videos, statements not used for the truth of the matter asserted, and admissions by Whinstone) or would satisfy various exceptions to hearsay such as the business records exception. Therefore, the Court should deny this Motion.

**Motion *in limine* No. 13: SBI lay testimony regarding Facility environment, conditions, and capabilities outside of visits.**

Whinstone's Motion is overbroad and vague. First, SBI's miners operated at the Rockdale Facility and Smith and Tanemori have personal knowledge of the performance of SBI's miners while at the Rockdale Facility. Second, SBI's personnel would have knowledge of any communications exchanged between them and persons at the Rockdale Facility including but not limited to Whinstone, Northern Data, and third-parties such as KaboomRacks. Therefore, the Court should deny Whinstone's Motion.

**Motion *in limine* No. 14: Other Whinstone litigation.**

Whinstone's Motion is overbroad and mischaracterizes testimony. First, allegations by other former Whinstone clients who operated at the Rockdale Facility at the same time as SBI, and who allege that Whinstone's Rockdale Facility caused other companies' miners to underperform or that Whinstone engaged in fraudulent conduct related to the Rockdale Facility, is plainly relevant to SBI's claims. Further, evidence of a witness's character for truthfulness is expressly allowed by Federal Rule of Evidence 609.

Second, Whinstone's experts repeatedly referenced or relied on information they learned through their retention by Whinstone and/or Riot in the Rhodium litigation. *See generally*, Dkt. 195 Ex. C; Dkt. 154. As such, Whinstone made that litigation relevant in this case. Should the Court grant Whinstone's Motion, the Court should modify to preclude Whinstone's experts from offering testimony or evidence related to the Rhodium litigation or any information they learned through the Rhodium litigation.

**Motion *in limine* No. 15: GMO's operations and Building A at the Facility.**

Whinstone's Motion misstates Judge Manske's prior ruling and lacks merit. First, Judge Manske did not make any evidentiary ruling, and did allow discovery into Building

A, GMO's building, for June 2020. Dkt. 55 at 6.

Second, it is undisputed that Whinstone utilized the same airflow and cooling designs for Building A and Building B. Documents produced in discovery revealed that Whinstone had the same problems with the overheating of miners in Building A. Whinstone also had problems with an over-pressurized hot aisle caused by a lack of intake and exhaust fans. The same complaints are made by SBI in this case. As such, the evidence is plainly relevant to SBI's claims and should not be excluded. Therefore, the Court should deny Whinstone's Motion.

**Motion *in limine* No. 16: Chad Harris' termination.**

Whinstone provides no explanation for why Harris's termination is not relevant, nor do they identify any unfair prejudice. Harris's termination by Riot, Whinstone's parent company, goes towards Harris's credibility. A witness's credibility is always relevant, particularly when that witness is the former CEO of a defendant accused of making fraudulent misrepresentations. Therefore, the Court should deny Whinstone's Motion.

**Motion *in limine* No. 17: Philip Isaak's opinions.**

Whinstone's Motion is untimely as it is merely an attempt to relitigate and expand upon its Motion to Strike Isaak. The deadline for Whinstone to challenge Isaak's opinions passed on December 1, 2025. Dkt. 118. As such, the Court should summarily deny this Motion. SBI incorporates herein by reference its Response to Whinstone's Motion to Strike and maintains that Whinstone's Motion to Strike lacks merit.

**Motion *in limine* No. 18: Valentine's opinions.**

Whinstone's Motion is untimely as it is merely an attempt to relitigate and expand upon its Motion to Strike Valentine and Motion to Strike Valentine's Declaration. *Daubert*

challenges were due fourteen days after Dr. Valentine's deposition and fourteen days after service of his declaration. Dkt. 118. Both deadlines have since passed. As such, the Court should summarily deny this Motion. SBI incorporates herein by reference its Responses to each and maintains that each such motion lacks merit. Dkt. 165; Dkt. 210 Ex. 1.

**Motion *in limine* No. 19: Byers' opinions.**

Whinstone's Motion is untimely as it is merely an attempt to relitigate and expand upon its Motion to Strike Byers and Motion to Strike Byers' Declaration. *Daubert* challenges were due fourteen days after Byers's deposition fourteen days after service of his declaration. Dkt. 118. Both deadlines have since passed. As such, the Court should summarily deny this Motion. SBI incorporates by reference herein its Responses to each and maintains that each such motion lacks merit. Dkt. 180; Dkt 231.

**Motion *in limine* No. 20: Schuler's opinions.**

Whinstone's Motion is untimely as it is merely an attempt to relitigate and expand upon its Motion to Strike Schuler. The deadline for challenges to Schuler passed on October 31, 2025. As such, the Court should summarily deny this Motion. SBI incorporates herein by reference its Response to Whinstone's Motion to Strike. Dkt. 150.

**Motion *in limine* No. 21: Carson Smith expert testimony on lost profits.**

First, Whinstone's Motion is overbroad as SBI's lost profits are inherently interconnected to SBI's allegations in this case, *i.e.*, the underperformance of SBI's cryptocurrency miners. Second, Fifth Circuit precedent and Rule 701 of the Federal Rules of Evidence consistently recognize that corporate officers may offer lay opinion testimony on the lost profits of a business based on the witness's particularized knowledge and experience. FED. R. EVID. 701 advisory committee's note to 2000 Amendments; *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 169 (5th Cir. 2010) ("[i]t would defy

reason" to exclude the Chief Financial Officer's lost profit testimony).

Third, Whinstone once again asserts, without any basis, that SBI failed to disclose the "source data" related to SBI's lost profits, despite SBI's repeated identification and explanation of the source data. Finally, any testimony by Carson Smith on SBI's lost profits would provide helpful context for the jury on complicated issues such as bitcoin mining, mining pools, and SBI's business model. Therefore, the Court should deny Whinstone's Motion.

**Motion *in limine* No. 22: Documents containing a foreign language or documents not translated in accordance with the parties' protocol.**

Whinstone's Motion is vague and overbroad as seemingly even one character in another language in a company logo or email address would render the entire document inadmissible. Additionally, should the Court grant Whinstone's Motion, the Motion should be modified to similarly apply to Whinstone.

**Motion *in limine* No. 25: Any comment by counsel that discloses or suggests the legal effect of the jury's answers to specific questions in the verdict form or jury charge.**

SBI objects to the extent that this Motion seeks to preclude counsel from utilizing the jury charge in closing arguments, or otherwise limit counsel's ability to argue how the jury should answer certain questions in the jury charge.

**Motion *in limine* No. 27: Any reference to the general reputation, prior business dealings, or character of any party, its owners, executives, officers, employees, agents, or affiliates, except as may be expressly permitted by the Court.**

Whinstone's Motion runs counter to the Federal Rules of Evidence regarding character evidence. Our evidentiary rules do not apply any such blanket prohibition on the use of character evidence, nor any presumption that it is automatically excludable.

Furthermore, SBI's allegations that Whinstone and its employees committed fraud

necessarily implicates and allows for the admission of evidence of the character, reputation, and/or prior business dealings of Whinstone, its owners, executives, officers, employees, agents, or affiliates. Therefore, the Court should deny Whinstone's Motion.

**Motion *in limine* No. 28: Any reference to or presentation of testimony from witnesses or exhibits that have not been timely disclosed during discovery and listed in the final pretrial order, except as expressly permitted by the Court.**

SBI objects to this Motion to the extent that it is vague and could be interpreted to limit impeachment or rebuttal evidence or otherwise limit the parties' ability to present evidence relating to statements made by non-testifying witnesses.

**Motion *in limine* No. 29: Any reference to the size, wealth, financial status, or net worth of Riot Platforms, Inc. ("Riot"), or the financial resources of any of Whinstone or Riot's principals, officers, or affiliates.**

The Court should deny this Motion because it impermissibly seeks to limit evidence relevant to the determination of punitive damages under § 41.011 of the Texas Civil Practice and Remedies Code.

**Motion *in limine* No. 30: Any use of pejorative characterizations or epithets directed toward any party, counsel, witness, or affiliate (e.g., "bully," "greedy," "corrupt"), whether directly or by implication.**

Whinstone's Motion runs counter to the Federal Rules of Evidence regarding character evidence. Our evidentiary rules do not apply any such blanket prohibition on the use of character evidence, nor any presumption that it is automatically excludable.

Furthermore, SBI's allegations that Whinstone and its employees committed fraud necessarily implicates and allows for the admission of evidence of the character, reputation, and/or prior business dealings of Whinstone, its owners, executives, officers, employees, agents, or affiliates. Therefore, the Court should deny Whinstone's Motion.

**Motion *in limine* No. 31: Any suggestion that the jury should "send a message" or punish a party beyond the scope of the claims and remedies permitted by law.**

SBI objects to this Motion to the extent that it impermissibly seeks to limit evidence relevant to the determination of punitive damages under CODE.

**Motion *in limine* No. 33: Any requests or attempts to have a witness read aloud from inadmissible documents in the presence of the jury.**

SBI objects to this request to the extent that it seeks to limit the presentation of impeachment evidence or expert testimony on documents that may otherwise be inadmissible.

Respectfully submitted,

By: */s/ Joshua M. Sandler*
   Joshua M. Sandler
    Texas Bar No. 24053680
    jsandler@winstead.com
   Cory Johnson
    Texas Bar No. 24046162
    cjohnson@winstead.com
   Andrew Patterson
    Texas Bar No. 24131573
    apatterson@winstead.com
   John D. Janicek
    State Bar No. 24125636
    jjanicek@winstead.com
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5103
Facsimile: (214) 745-5390

**ATTORNEYS FOR PLAINTIFF
SBI CRYPTO CO. LTD**

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing was served electronically on Defendant's counsel on January 12, 2026.

*/s/ Cory Johnson*
Cory Johnson
