# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SBI CRYPTO CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> WHINSTONE US, INC., <br><br> Defendant. | Civil Action No. 6:23-cv-252 |

## DEFENDANT WHINSTONE US, INC.'S MEMORANDUM ON DISPUTED ISSUES OF LAW

Defendant Whinstone US, Inc. ("Whinstone") submits this Memorandum on Disputed Issues of Law regarding Plaintiff SBI Crypto Co., Ltd.'s ("SBI") claims and damages.

**A. SBI's alleged lost profits are unrecoverable as a matter of law.**

As briefed in Whinstone's summary judgment and reply in support (ECF Nos. 164, 225) and Motion to Strike the Expert Opinions of Randall Valentine and reply in support (ECF Nos. 136, 182) (which are incorporated by reference herein), SBI seeks to recover lost profits that are not recoverable under Texas law.

First, SBI's only evidence of alleged lost profits—regardless of the asserted cause of action—is calculated based on the value of Bitcoin at the time of trial. *E.g.,* ECF No. 164 (Nov. 21, 2025) at 16. That is improper. Under Texas law, damages must be established at the time of the alleged breach or the time of the alleged fraudulent act. *See, e.g., Kinsel v. Lindsey*, 526 S.W.3d 411, 421 (Tex. 2017) (affirming that out-of-pocket losses arising from fraud are "determined at the time of the sale or transaction induced by the fraud"); *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) ("[B]enefit-of-the-bargain damages, which derive from an expectancy

theory, evaluate the difference between the value that was represented and the value actually received."); *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) (holding the two measures of direct damages for fraud are out-of-pocket losses and benefit-of-the-bargain damages *Woodyard v. Hunt*, 695 S.W.2d 730, 733 (Tex. App.—Houston [1st Dist.] 1985, no writ) ("[The jury] could not have made a proper award because damages are measured by comparing values represented and received at the time of sale, not at some future time."). SBI has failed to tie any measure of damages to any time of a specific breach or act of fraud. Thus, SBI has no legally sufficient evidence of alleged lost profits. *See, e.g.*, *E.g., Kinsel*, 526 S.W.3d at 421; *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002).

Second, SBI's only evidence of alleged lost profits is calculated on a gross profits basis, which is improper. *E.g.*, ECF No. 136 (Nov. 7, 2025) at 11-12. That is contrary to Texas law, which requires lost profits to be calculated on a net income or "net profits" basis. *E.g.*, *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 780 (5th Cir. 2017) ("Net profits are 'what remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business.'"); *Miga*, 96 S.W.3d at 213 ("Lost profits are damages for the loss of net income to a business measured by reasonable certainty."). Again, with no such evidence, no lost profits may be awarded. *E.g.*, *Thermotek*, 875 F.3d at 779 ("Failure to comply carries harsh consequences in Texas: 'If no evidence is presented to prove lost profits with reasonable certainty, the trial court must render a take-nothing judgment as to lost-profit damages.'").

Third, SBI ignores the Hosting Agreement's limitations on breach of contract damages. *E.g.*, ECF No. 164 (Nov. 21, 2025) at 17-19. It is well-settled that such contractual provisions are enforceable under Texas law. *E.g.*, *Glob. Octanes Texas, L.P., v. BP Expl. & Oil Inc.*, 154 F.3d

518, 521 (5th Cir. 1998) (quoting *Vallance & Co. v. Anda,* 595 S.W.2d 587, 590 (Tex. Civ. App.—San Antonio 1980, no writ). SBI's damages for delays are capped at a $15 per miner fee. ECF No. 164 (Nov. 21, 2025) Ex. 1 § 3.10.3. SBI also cannot recover for damages for the remainder of the Hosting Agreement's term when the termination was proper and not in dispute. *Compare id.* § 13.3 *with* ECF No. 11 (Jul. 6, 2023). Further still, the Hosting Agreement generally limits breach of contract damages to the greater amount of money for charges paid in the twelve months prior to the breach or $250,000. ECF No. 164 (Nov. 21, 2025) Ex. 1 §§ 8.6-.7. SBI cannot circumvent these provisions.

**B.  SBI must prove it satisfied the Hosting Agreement's notice provision for each of one its claims.**

"A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied." *Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 826 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Assoc. Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 283 (Tex.1998)). A contractual provision that bars a claim unless there is prior notice is a condition precedent to bringing suit. *Id.* at 825–26. "To construe [such] clause[s] as anything other than a condition precedent would be to ignore its plain language." *Id.*

While "substantial compliance" is the default "standard when evaluating whether a party complied with a contractual notice provision," that standard cannot be satisfied "[w]ithout a writing in some form." *James Constr. Grp., LLC v. Westlake Chem. Corp.,* 650 S.W.3d 392, 405 (Tex. 2022). Additionally, when the parties negotiate a specific notice time period (*i.e.*, one-year versus as soon as practicable), Texas courts strictly enforce the notice period. *E.g.*, *RD Mgmt., Inc. v. Third Coast Ins. Co.*, No. SA-24-CV-00711-XR, 2025 WL 1699951, at *5 (W.D. Tex. June 11, 2025). That is because the Fifth Circuit explained that a notice provision is an essential part of the

bargained-for exchange if it is "a specific provision negotiated by two sophisticated commercial parties…." *Starr Indem. & Liability Co. v. SGS Petroleum Serv. Corp.*, 719 F.3d 700, 703 (5th Cir. 2013); *see also Advanced Seismic Tech., Inc. v. M/V Fortitude*, 326 F. Supp. 3d 330, 336 n.7 (S.D. Tex 2018).

SBI cannot prove that it satisfied this condition precedent to bring each one of its claims. *E.g.*, ECF No. 164 (Nov. 21, 2025) at 6-10. Specifically, the Hosting Agreement provides that "Whinstone shall not be liable for any claim arising under this [Hosting Agreement] unless [SBI] gives Whinstone written notice of the claim within twelve months of becoming aware of the circumstances giving rise to the claim." *Id*. Ex. 1 § 8.11. SBI did not (and cannot) satisfy that requirement.

Indeed, SBI color-coded a Hosting Agreement of the parties' various alleged breaches more than a year before notice of any claims was provided to Whinstone—with SBI even describing its litigation position as "weak" and acknowledging claims were time-barred. ECF No. 164 (Nov. 21, 2025) at 4. In recognition of this bar to recovery, SBI has tried to point to other documents that have nothing to do with notice and do not satisfy the Hosting Agreement's notice provision. *Id*. at 8-9. SBI cannot avoid its burden—it must prove it timely provided written notice for **each** one of its numerous claims. *Starr*, 719 F.3d at 704-05; *RD Mgmt*., 2025 WL 1699951, at *5.

**C. The economic loss rule precludes SBI's various fraud claims.**

SBI's various fraud claims are duplicative of SBI's breach of contract claims. *E.g.*, ECF No. 164 (Nov. 21, 2025) at 10-12.[1] That is improper.

---

[1] *See also* SBI's Proposed Joint Statement ("SBI alleges that Whinstone fraudulently induced it to enter into the hosting service agreement and failed to provide the hosting services required under the parties' agreement. SBI alleges, *inter alia*, that Whinstone substantially delayed performance,

Texas applies the economic loss rule, which "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Payne v. Wells Fargo Bank Nat. Ass'n*, 637 F. App'x 833, 837 (5th Cir. 2016) (quoting *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex.2007)). "In determining whether a claim can be brought as a tort, consideration must be given to 'the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff.'" *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016) (citing *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996)).

The Fifth Circuit's reasoning in *Payne* is persuasive and applies to this case. There, the court found that the various misrepresentations that plaintiff alleged caused her injury directly related to the deed of trust and arose solely from her contractual relationship with Wells Fargo. 637 F. App'x at 837. The Fifth Circuit affirmed the district court's granting summary judgment "[b]ecause [Plaintiff's] fraud claim [was] premised on Wells Fargo's performance under the note, [and therefore] her claim [was] barred by the economic loss rule." *Id.*; *see also Garcia v. Universal Mortg. Corp.*, No. 3:12–CV–2460, 2013 WL 1858195, at *9 (N.D. Tex. May 3, 2012) (applying the economic loss rule to bar mortgagor's fraud claim because the loss directly related to the loan).

Similarly, here the various misrepresentations that SBI alleges caused it injury directly relate to the Hosting Agreement and arise solely from its contractual relationship with Whinstone:

---

designed its Rockdale Facility in a manner inconsistent with industry standards and unable to host SBI's miners, and failed to ensure proper environmental conditions for SBI's miners, resulting in reduced performance and equipment issues that negatively affected SBI's mining operations and profitability. SBI claims that Whinstone also misrepresented and fraudulently concealed substandard environmental conditions from SBI. SBI further contends that Whinstone then terminated the Agreement through other acts and omissions that constituted fraud and breach of the Agreement. SBI subsequently sued Whinstone for fraudulent inducement, breach of contract, and fraud by nondisclosure.").

- Whinstone allegedly misrepresented that "[t]he datacenter was well designed, and conformed to industry standards after operations began . . .", (ECF No. 11 (Jul. 7, 2023) at ¶ 48(1), ¶ 70(1)), which concerns Section of the 8.2 Hosting Agreement;

- Whinstone allegedly concealed that "the datacenter was not properly designed and did not conform to industry standards," (*id.* at ¶ 78(1).), which also concerns Section of the 8.2 Hosting Agreement;

- Whinstone allegedly misrepresented that "the datacenter and racks were built and configured to contractual requirements . . ." and "the datacenter could be built to contractual requirements", (*id.* at ¶¶ 48(2), ¶ 78(2)) as well as concealed that "the datacenter was not built to contractual requirements," (*id.* at ¶ 78(2).), which concerns Section of the 2.2.11 Hosting Agreement;

- Whinstone allegedly misrepresented "in [Hosting Agreement § 2.1.5] that building or other permits, city inspections, or certifications were not required with regard to providing services pursuant to the parties' contract", (*id.* at ¶ 48(3), *see also* ¶ 70(3)), and concealed that fact, (*id.* at ¶ 78(3).);

- Whinstone allegedly misrepresented that "the facility was not experiencing problems related to overheating or excessive dust, (*id.* at ¶¶ 48(4), 78(4)), and concealed the same, (*id.*at ¶ 78(4).), which concerns Section of the 2.2.13 Hosting Agreement;

- Whinstone allegedly misrepresented that "one (1) gigawatt of power was available at its Rockdale site [on or before October 24, 2019] and that 50 megawatts of power had been secured on October 24, 2019," (*id.* at ¶¶ 48(5), 70(5-6)), and concealed that those power amounts had not been "secured" "as of October 24, 2019," (*id.* ¶ at 78(5-6).) , which concerns Sections of the 8.13, 3.13.1 Hosting Agreement; and

- Whinstone allegedly misrepresented that "construction of the Rockdale facility was fully complete or near full completion," (*id.* at ¶ 70(7)), and concealing the same, (*id.* at ¶ 78(7).), which concerns Section of the 1.1 Hosting Agreement.

Critically, SBI cannot identify any independent legal duty owed by Whinstone apart from the obligations set forth in the Hosting Agreements—because none exists. And as detailed above, SBI only seeks the ***exact same*** economic damages directly connected to the Hosting Agreement's subject matter. Because the alleged harms are comprehensively covered by the contractual remedies, the economic loss rule precludes SBI from recasting those claims as fraud. *Payne*, 637 F. App'x at 837. If the fraud claims were genuinely independent of the contract claims, they would rest on distinct damages theories, which they do not.

### D. SBI cannot proceed on unpled claims.

SBI did not plead a claim for breach of the Hosting Agreement's confidentiality provision. *See generally* ECF No. 11 (Jul. 6, 2023) (ECF No. 11). With no live claim, SBI cannot proceed to trial on this theory by simply urging it in a summary judgment motion. *See, e.g.*, ECF 168 (Nov. 21, 2025) at 5-6; *Heatcraft Refrigeration Products LLC v. Freezing Equip. Co., LLC*, No. 3:20-CV-1689-L, 2022 WL 975611, at *4, 7-9 (N.D. Tex. Mar. 31, 2022) (striking new breach of contract claim raised in response to summary judgment on "new 'locked out' theory" that was not pled) (Lindsay, J.); *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 668 (W.D. Tex. 2017) ("Thus, '[t]o plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached. . . Without these factual allegations, Plaintiffs' breach of contract claim does not provide Baylor with fair notice of their claim required by Federal Rule of Civil Procedure 8.'") (Pitman, J.); *see also, cf., Galyean v. Guinn*, No. 4:21-CV-1287-BJ, 2023 WL 4938098, at *2 (N.D. Tex. July 7, 2023) (granting motion in limine prohibiting "any argument, mention, or exhibit to the jury, in any manner, any item of evidence relating to any unpled theory of contract formation or property ownership"). Equally problematic, SBI has never claimed termination of the contract was improper nor that the change of control clause Whinstone invoked for termination was fraudulently induced. To the contrary, SBI requested that provision. Def.'s Tr. Ex. # 96, attached as Exhibit A. Without pleading the foregoing claims and associated damages, these unpled claims fail as a matter of well-settled law as they are not before the Court. *See, e.g.*, *Waller v. Hoeppner*, No. 4:15-CV-670-P, 2021 WL 9508395, at *1 (N.D. Tex. Apr. 9, 2021) ("But the Court has never considered this claim because Plaintiffs have not properly pleaded it. It is not before the Court."); *Seghers v. Hilti, Inc.*, No. 4:16-CV-00244, 2017 WL 4652443, at *7 (S.D. Tex. Oct. 17, 2017) ("The Fifth Circuit has 'made clear that '[a] claim which is not raised in the

complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.'") (citing *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 415–16 (5th Cir. 2015)).

        Respectfully submitted,

        FOLEY & LARDNER LLP

By: */s/ Robert T. Slovak*
Robert T. Slovak
Texas Bar No. 24013523
rslovak@foley.com
Steven C. Lockhart
Texas Bar No. 24036981
slockhart@foley.com
J. Michael Thomas
Texas Bar. No. 24066812
jmthomas@foley.com
Brandon C. Marx
Texas Bar No. 24098046
bmarx@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

and

Craig D. Cherry
State Bar No. 24012419
Mark D. Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PLLC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
ccherry@cjsjlaw.com
msiegmund@cjsjlaw.com

**ATTORNEYS FOR DEFENDANT WHINSTONE US., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2026, a copy of the foregoing document was served via the Court's e-filing system and emailed to all counsel of record.

                                            */s/ Brandon C. Marx*
                                            Brandon C. Marx